**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

| | | |
|---|---|---|
| MARC S. KIRSCHNER, | ) | |
| as Trustee of the Refco Private Actions Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 07 CV 8165 (GEL) |
| -vs- | ) | |
| | ) | |
| PHILLIP R. BENNETT, SANTO C. | ) | ECF Filed |
| MAGGIO, ROBERT C. TROSTEN, MAYER, | ) | |
| BROWN, ROWE & MAW, LLP, GRANT | ) | |
| THORNTON LLP, and ERNST & YOUNG | ) | |
| U.S. LLP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

———————————————————————

## MEMORANDUM OF LAW IN SUPPORT PLAINTIFF'S MOTION TO REMAND TO NEW YORK STATE COURT

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND ...........................................................................................1

A.      The Events Leading Up To Refco's Bankruptcy Cases.........................................1

B.      The Non-Estate Private Actions Trust ...............................................................2

C.      The New York State Action...............................................................................4

D.      Defendants' Notice of Removal.........................................................................5

ARGUMENT ...............................................................................................................5

A.      This Court Does Not Have Subject Matter Jurisdiction Over the New York State Action...........................................................................................................5

         1.      The New York State Action Has No Effect on the Debtor.......................7

         2.      The New York State Action Would Not Impact on Property of the Refco Estates. ..........................................................................................8

         3.      The New York State Action Would Not Impact on the Distribution to Creditors...............................................................................................10

         4.      The New York State Action Would Not Impact the Administration of the Bankruptcy Case. ..................................................................................10

B.      Even if this Court Had Subject Matter Jurisdiction, Remand is Mandatory. ....................14

C.      The Applicable Factors Support Discretionary Abstention. ...............................................15

CONCLUSION.............................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Amanat,*
   338 B.R. 574 (S.D.N.Y. 2005)............................................................14

*In re Astropower Liquidating Trust,*
   335 B.R. 309 (Bankr. D.Del. 2005) ...................................................14

*Bay Shore Union Free Sch. Dist. v. Kain,*
   485 F.3d 730 (2d Cir. 2007).................................................................5

*Bd. of Governors v. MCorp Fin., Inc.,*
   502 U.S. 32, 112 S. Ct. 459, 116 L. Ed. 2d 358 (1991).....................12

*Celotex Corp. v. Edwards,*
   514 U.S. 300 (1995).............................................................................6

*In re Chargit Inc.,*
   81 B.R. 243 (Bankr. S.D.N.Y. 1987)...................................................6

*Crigger v. Fahnestock & Co., Inc.,*
   443 F.3d 230 (2d. Cir. 2006)..............................................................17

*In re Daley,*
   224 B.R. 307 (Bankr. S.D.N.Y. 1998).................................................6

*In re Dilbert's Quality Supermarkets, Inc.,*
   368 F.3d 922 (2d Cir. 1966)...............................................................10

*Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,*
   130 B.R. 405 (Bankr. S.D.N.Y. 1991) .........................................16, 17

*In re EXDS, Inc.,*
   352 B.R. 731 (Bankr. D.Del. 2006) ...................................................13

*In re Enron Corp.,*
   353 B.R. 51 (Bankr. S.D.N.Y. 2006) ...................................................7

*Falise v. Am. Tobacco, Co.,*
   241 B.R. 48 (Bankr. E.D.N.Y. 1999).....................................7, 8, 10, 12

*In re Fed.-Mogul Global, Inc.,*
   300 F.3d 368 (3d. Cir. 2002)................................................................8

*In re Federalpha Steel LLC,*
   341 B.R. 872 (Bankr. N.D. Ill. 2006) ................................................18

*In re Finnie,*
   2007 WL 1574294 (Bankr. S.D.N.Y. May 29, 2007).................7, 11, 16

*Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc.*,
    2002 WL 1300054 (S.D.N.Y. Jun. 11, 2002) ............................................8, 12, 16

*In re Ha-Lo Indus.*,
    330 B.R. at 672) ........................................................................................................9

*In re Insilco Techs., Inc.*,
    330 B.R. 512 (Bankr. D. Del. 2005) .....................................................................14

*In re Kassover*,
    336 B.R. 74 (Bankr. S.D.N.Y. 2006) ...................................................................13

*Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*
    304 F.3d 223 (2d. Cir. 2002) ................................................................................12

*Mt. McKinley Ins. Co. v. Corning Inc.*,
    399 F.3d 436 (2d Cir. 2005).............................................................................15, 17

*In re Olympia & York Maiden Lane Co. LLC*,
    1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999)...........................................11, 16

*In re Osage Exploration Co.*,
    39 B.R. 966 (Bankr. S.D.N.Y. 1984) ....................................................................16

*Rahl v. Bande*,
    316 B.R. 127 (S.D.N.Y. 2004)..............................................................................17

*Resnick v. Socolov*,
    5 A.D.3d 125 (N.Y. App. Div. 2004) ...................................................................17

*In re Resorts Int'l, Inc.*,
    372 F.3d, 154 (3d. Cir. 2004)..........................................................6, 9, 10, 12, 13

*Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*,
    285 B.R. 519 (M.D.Ala. 2002) ...........................................................................8, 9

*In re Savino Oil & Heating Co.*,
    1992 WL 118801 (E.D.N.Y. May 21, 1992) .........................................................16

*In re Shirley Duke Assocs.*,
    611 F.2d 15 (2d. Cir. 1979)...........................................................................7, 11, 16

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)...................................................................................................5

*In re Turner*,
    724 F.2d 338 (2d Cir. 1983)..........................................................................6, 7, 12

*Universal Well Servs., Inc. v. Avoco Natural Gas Storage*,
    222 B.R. 26 (W.D.N.Y. 1998)..........................................................................17, 18

*Von Richthofen v. Family M. Found. Ltd.*,
    339 B.R. 315 (S.D.N.Y. 2005)..............................................................................14

*W.G. v. Senatore*,
    18 F.3d 60 (2d Cir. 1994) ......................................................................5

## **STATUTES**

28 U.S.C. § 1334....................................................................14, 15, 17

28 U.S.C. § 1334(b) ...........................................................................6

28 U.S.C. § 1334(c) .........................................................................17

28 U.S.C. § 1334(c)(1).....................................................................16

28 U.S.C. § 1334(c)(2)................................................................14, 15

28 U.S.C. § 1452(b) .........................................................................16

28 U.S.C. § 157(b)(2)(A)-(P)............................................................9

28 U.S.C. § 157(b)(2)(B) ..................................................................9

United States Bankruptcy Code Title 11 ..........................................6

## **OTHER AUTHORITIES**

1 *Collier on Bankr.* § 3.08 at 3.8 (15th ed. 1983) .........................16

1 *Collier on Bankr*, ¶ 3.01[4][c][v], at 3-30 (15th ed. 1999) .........7

## PRELIMINARY STATEMENT

Defendants Mayer Brown LLP, Mayer Brown International LLP[1] and Grant Thornton LLP (the "Defendants") removed this action, filed by the Refco Private Actions Trust (the "PAT") in New York State Supreme Court (the "New York State Action"), on the ground that it is "related to" the Refco bankruptcy proceedings. Defendants' removal of this action seeks to extend federal "related to" jurisdiction far beyond the limits of both law and logic. The New York State Action asserts private claims that belonged to Refco's former foreign exchange currency customers, and any recoveries on these claims will be distributed to the parties that contributed their claims to the PAT. The New York State Action does not assert claims that ever belonged to any Refco debtor and its resolution will not impact the administration or allocation of Refco estate property, or have any connection or relationship to Refco's bankruptcy or its bankruptcy plan, which was confirmed almost a year ago. Defendants' assertion that there is "related to" federal jurisdiction over the New York State Action is belied by both the facts and settled Federal law. As this Court, respectfully, does not have subject matter jurisdiction over the New York State Action, it should be remanded to the New York State Supreme Court.

Even if this Court were to find that these state-law claims are somehow "related to" a federal bankruptcy proceeding, black letter law requires the Court to abstain from exercising jurisdiction. Moreover, the applicable discretionary abstention factors clearly warrant abstention.

## FACTUAL BACKGROUND

### A.    The Events Leading Up To Refco's Bankruptcy Cases.

Before the disclosure of fraud that led to its collapse, Refco presented itself to the public as one of the nation's leading independent providers of execution and clearing services for exchange

---

[1]    While Plaintiff's complaint named Mayer, Brown, Rowe, & Maw, LLP as a defendant, around the time the action was filed, Mayer Brown changed its name to Mayer Brown LLP and Mayer Brown International LLP.

traded derivatives and a major provider of brokerage services in the fixed income and foreign exchange ("FX") markets. *See* New York State Action Complaint (the "Complaint") at ¶ 4, attached as Exhibit A to the Declaration of Robert C. Juman, dated October 17, 2007 (the "Juman Dec."). Unbeknownst to innocent Refco customers, since the late 1990s, members of Refco's senior management, with the active participation of certain of Refco's professionals and financial advisors, engaged in a fraudulent scheme to conceal Refco's true financial condition so these senior executives could cash out their interests in Refco. Complaint at ¶¶ 36-90. This lucrative cashing out was ultimately realized through Refco's August 2004 leveraged buyout (the "LBO") and Refco's August 2005 initial public offering ("IPO"). *Id.* at ¶¶ 71-90.

On October 11, 2005, just two months after the IPO, Refco announced a previously undisclosed $430 million receivable due from an entity controlled by Refco's CEO, Philip R. Bennett. *Id*. at ¶ 88. This related-party receivable was but one piece of a scheme to conceal substantial Refco trading losses and operating expenses, record hundreds of millions in fictitious Refco income, and fund Refco's operating expenses and acquisitions with misappropriated customer assets, so as to allow certain Refco insider's to strip out Refco's assets. *Id*. at ¶¶ 36-90.

Following the subsequent announcement that Refco's financial statements for the preceding four years could no longer be relied upon, Refco's stock plummeted and the company (and certain of its subsidiaries) were forced into bankruptcy. *Id*. at ¶ 89-90.

**B.      The Non-Estate Private Actions Trust**

On December 15, 2006, approximately fourteen months after the Refco Chapter 11 cases were filed, the Modified Joint Chapter 11 Plan of Refco Inc. and Certain of it Direct and Indirect Subsidiaries was confirmed (the "Refco Plan"). *See* Declaration of Private Actions Trustee, Marc S. Kirschner, dated October 17, 2007 (the "Kirschner Dec."), at ¶ 6 and Ex. A. The Refco Plan, and the transactions described therein, became effective on December 26, 2006. *Id*. at ¶ 10.

Refco customers with claims against third-parties (such as Defendants herein) determined that it would be in their interests to pool their claims and transfer them to a private actions trust. Though such claim pooling and coordination could have occurred outside the Refco bankruptcy process and indeed, could have occurred regardless of whether Refco had gone into bankruptcy, the PAT was voluntarily created in conjunction with the Refco Plan to maximize efficiencies and coordinate strategies. The Private Actions Trustee, Marc S. Kirschner, was appointed at the time of the confirmation of the Refco Plan on December 26, 2006. Kirschner Dec. at ¶¶ 3, 10.

The mechanics of the PAT and all pertinent details regarding its operation, such as the allocation of beneficial interests in the PAT among those that contributed claims, the role of the PAT Trustee and PAT Committee, and the term of the PAT are set forth in the Refco Non-Estate Private Actions Trust Agreement (the "PAT Agreement"), attached to the Kirschner Dec. at Ex. B. Pursuant to Article 1.2(a) of the PAT Agreement, the only assets transferred to the PAT are "Non-Estate Refco Claims."[2] As further described in the Refco Plan, the PAT was formed to pursue "certain claims and causes of action against third-parties owned by Holders of Claims or Interests against RCM or the Debtors *and which claims, even after contribution, are not assets of the [Refco] Estates.*" Refco Plan at § 1.146 (emphasis added); *see also id.* at § 5.8(a).

As the PAT can only possess claims that were never assets of the Refco estates, the Refco estates never had any interest in or rights to the claims which were transferred to the PAT, and any recoveries obtained by the Private Actions Trustee will be distributed as PAT property to beneficiaries of the PAT, not as debtor property to creditors.

---

[2] The Refco Plan defines "Non-Estate Refco Claims" as "causes of action against: (i) all current and former officers, directors or employees of the Refco Entities; (ii) all persons or entities that conducted transactions with the Refco Entities; and (iii) all persons or entities that provided services to the Refco Entities, including, without limitation, all attorneys, accountants, financial advisors and parties providing services to the Refco Entities in connection with the public issuance of debt or equity." *See* Refco Plan at ¶1.126.

Moreover, only those who elected to assign their claims to the PAT became beneficiaries of the PAT. Significantly, not every Refco creditor and shareholder elected to join the PAT, and so the PAT beneficiaries are not co-extensive with the list of Refco creditors or shareholders. *See* Kirschner Dec. at ¶ 12. The amounts the PAT beneficiaries receive from these distributions will have no effect on the amount, if any, that these entities are entitled to receive by virtue of their status as creditors of the Refco estates. *See* Kirschner Dec. at ¶ 13.

Further, the Refco Plan provided for establishment of a separate Refco Litigation Trust to pursue estate claims and also for the irrevocable transfer of such claims to the Litigation Trust. *See* Kirschner Dec. at ¶ 14; Refco Plan at § 1.48 & 5.7(a). While Marc Kirschner was also appointed the Trustee of the Litigation Trust, the PAT and the Litigation Trust are two distinct entities, governed by different trust agreements, with different beneficiaries, pursuing different claims and with different, independent, distribution mechanisms. Kirschner Dec. at ¶ 15. Marc Kirschner serves in completely separate capacities as Trustee of the PAT and the Litigation Trust. *Id.*

## C.     The New York State Action

On August 27, 2007, nine months after the Refco Plan was consummated, the Private Actions Trustee filed suit in New York State Supreme Court against certain Refco insiders (Defendants Bennett, Maggio and Trosten) as well as the professionals and advisors (Mayer Brown LLP, Mayer Brown International LLP, Grant Thornton, LLP and Ernst & Young U.S. LLP) who actively assisted and were complicit in the fraud and breaches of fiduciary duty perpetuated by the Refco insiders.

The New York State Action asserts only state-law claims -- causes of action for breach of fiduciary duty, fraud, conversion, and aiding and abetting breach of fiduciary duty, fraud and conversion. Complaint at ¶¶ 210-238. These claims do not raise any federal question, the parties are

not diverse, and the New York State Action does not raise any claims or issues that arise under, arise in, or are related to a case under Title 11 of the United States Code.

**D.    Defendants' Notice of Removal**

On September 17, 2007, the removing Defendants (but not defendants Bennett, Maggio, Trosten, and Ernst & Young) filed a notice of removal on the purported ground that the New York State Action is "related to" the Refco Bankruptcy proceeding. *See* Notice of Removal, attached hereto as Exhibit B to the Juman Dec. at ¶ 4.

Defendants assert that the New York State Action is "related to" the Refco Bankruptcy proceeding on four grounds: (i) the outcome of the New York State Action "will impact distributions to and relative compensation for creditors of the estate"; (ii) one of the defendants, Grant Thornton, has "outstanding claims against Refco and RCM, including claims for contribution, that remain pending in the bankruptcy"; (iii) the former executives of Refco may pursue claims for contribution from the estate or its insurers for any judgment against them; and (iv) the PAT is "a creature" of the bankruptcy plan. *See* Notice of Removal at 3-5. None of these grounds has merit.

## ARGUMENT

**A.    This Court Does Not Have Subject Matter Jurisdiction Over the New York State Action.**

Subject matter jurisdiction is a threshold question because, without it, the "court cannot proceed at all." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998); *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 733 (2d Cir. 2007) ("[T]he parties' consent . . . cannot confer subject matter jurisdiction."); *W.G. v. Senatore*, 18 F.3d 60, 64 (2d Cir. 1994) ("Neither the court by exercising its inherent equitable discretion, nor the parties by entering into a stipulation, can confer jurisdiction where none has been authorized."); *see also In re Resorts Int'l, Inc.*, 372 F.3d 154, 161 (3d. Cir. 2004) ("[N]either the bankruptcy court nor the parties can write their own jurisdictional

ticket. Subject matter jurisdiction 'cannot be conferred by consent' of the parties.") (citation omitted).

Where bankruptcy matters are concerned, 28 U.S.C. § 1334(b) provides that federal subject matter jurisdiction exists only over claims that either arise under Title 11 of the United States Code (the Bankruptcy Code) or that arise in or are "related to" a case under Title 11.[3] Defendants concede, as they must, that the New York State Action does not raise any "core" issues -- *i.e.*, issues that arise under, or arise in, a case under Title 11. *See* Notice of Removal at 5. The only remaining question is whether this Court has "related to" jurisdiction over this matter.

Defendants suggest in their Notice of Removal that the test governing whether an action is "related to" a case under Title 11 is "whether the outcome of [a civil] proceeding could *conceivably* have any effect on the estate being administered in bankruptcy." *See* Notice of Removal at 3 (emphasis added). While Defendants are correct that the nexus test adopted by the Second Circuit speaks in terms of "conceivable impact" on a debtor's estate, "related to" jurisdiction is not limitless. *See*. *e.g.*, *Celotex Corp. v. Edwards*, 514 U.S. 300, 308-09 (1995) (noting that a bankruptcy court's "related to" jurisdiction "cannot be limitless"); *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983) ("Congress must have intended to put some limit on the scope of 'related to' jurisdiction."); *In re Daley*, 224 B.R. 307, 314 (Bankr. S.D.N.Y. 1998) ("'Related to' jurisdiction is broad, but not limitless."); *In re Chargit Inc.*, 81 B.R. 243, 247 (Bankr. S.D.N.Y. 1987) (For purposes of establishing "related to" jurisdiction, "[a]lthough the optimist may argue that anything is 'conceivable,' any practical definition of this term of art must be tempered by a measure of reasonableness.").

---

[3]  28 U.S.C. § 1334(b) provides, in relevant part, "[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

Courts in the Second Circuit have narrowed the breadth and application of "related to" jurisdiction. Where, as here, the action will have "[1] no effect on the debtor or '[will] not impact upon [2] the administration of the bankruptcy estate, or [3] on property of the estate, or [4] on the distribution to creditors,'" related to jurisdiction does not lie. *Falise v. Am. Tobacco, Co.*, 241 B.R. 48, 57 (Bankr. E.D.N.Y. 1999) *(quoting* 1 Collier on Bankr. ¶ 3.01[4][c][v], at 3-30 (15th ed. 1999)); *see also Turner*, 724 F.2d at 341 (limiting the scope of "related to" jurisdiction to situations where an action possesses a "significant connection" with a bankruptcy proceeding) (Friendly, J.); *In re Enron Corp.*, 353 B.R. 51, 61 (Bankr. S.D.N.Y. 2006) ("[R]elatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy estate, is so only remotely") (citation omitted). Under these settled criteria, this Court does not have related to jurisdiction over the New York State Action.

### 1. The New York State Action Has No Effect on the Debtor.

In the New York State Action, a private litigation trust is asserting private Refco customer state law claims against third-parties. The Bankruptcy Court had no subject matter jurisdiction over these third-party rights, and the claims are not, and never were, property of the Refco debtor estates. For this reason, the New York State Action can and will have no effect on the debtors. *See In re Finnie*, 2007 WL 1574294, at *12 (Bankr. S.D.N.Y. May 29, 2007) ("a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy." (quoting *In re Shirley Duke Assocs.*, 611 F.2d 15, 18 (2d. Cir. 1979)); *Falise*, 241 B.R. at 60 (finding no effect on the debtor where damages are sought from a third party for the benefit of a post-confirmation litigation trust).

The plain fact is that the claims asserted by the PAT in the New York State Action were never debtor property, and the Refco Plan does not make them debtor property. Even if the parties

to the bankruptcy had wanted to make these claims "related to" the bankruptcy, they could not draft the Refco Plan or the PAT Agreement to create subject matter jurisdiction where it does not exist.

## 2. The New York State Action Would Not Impact on Property of the Refco Estates.

The PAT asserts claims that are not, and never were, property of the Refco estates. As a result, no matter what the outcome of the New York State Action, there can be no effect on the property of the Refco estates.

Tacitly conceding this fact, Defendants attempt to manufacture some effect on the property of the Refco estates by suggesting that the outcome of the New York State Action *may* impact a contribution and/or indemnity claim that Grant Thornton filed against the Refco Debtors. This claim is, on its face, entirely hypothetical, unduly speculative, and an insufficient basis upon which to predicate federal jurisdiction. *See*, *e.g.*, *In re Fed.-Mogul Global, Inc*., 300 F.3d 368, 381-82 (3d. Cir. 2002) (affirming lack of subject matter jurisdiction where there was a potential for contribution or indemnification claims); *Falise*, 241 B.R. at 58 ("This litigation might impact the distribution of the Trust by increasing assets available to the claimants. This impact, however, is only relevant to the issue of bankruptcy jurisdiction when it affects the pre-confirmation estate. . . . [T]he mere possibility of increasing the size of the Trust's assets post-confirmation is insufficient to create jurisdiction."); s*ee also See Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc*., 2002 WL 1300054, at *2 (S.D.N.Y. Jun. 11, 2002); *Ret. Sys. of Ala. v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 527 n. 12 (M.D.Ala. 2002) (listing cases involving indemnification claims and concluding that 'related to' jurisdiction did not exist).[4]

---

[4] It is telling that while Defendants assert "related to" jurisdiction, they simultaneously acknowledge (as they must) that the claims asserted in the New York State Action are not core (*i.e.*, they are not issues that arise under the bankruptcy code or arise solely in cases under the bankruptcy code and have nothing to do with the bankruptcy process, *see* 28 U.S.C. § 157(b)(2)(A)-(P)) and that they do not consent to jurisdiction before the (footnote continued)

Indeed, any such claim defies logic. For Grant Thornton to successfully assert such a claim, it will need to have been found liable to the PAT (meaning it aided and abetted fraud and/or breach of fiduciary duty and/or conversion) and yet still be permitted to assert a claim for contribution or indemnity against Refco. Such a fact pattern is nothing more than academic fantasy and not an independent basis for federal jurisdiction. Moreover, if Grant Thornton is found to have been culpable in the fraud committed by members of Refco's management, any contribution or indemnity claim will likely be equitably subordinated in priority below other creditor claims due to Grant Thornton's wrongful conduct and will therefore have no actual impact whatsoever on the amount of property available for distribution to Refco creditors.[5]

Defendants' argument that the former executives of Refco "may pursue claims for contribution from the estate or its insurers" is equally baseless. As the former Refco executives[6] know, the Refco estates have no protectable interest in the directors and officers' insurance policy and they have asserted greater rights to policy proceeds than the Refco estates. Nor are the Refco Debtors indemnifying any costs or losses incurred by these former executives. Furthermore, the

---

bankruptcy court. *See* Notice of Removal at 5. It is wholly inconsistent for Defendants to concede that the New York State Action is not core, but then hinge their argument for "related to" subject matter jurisdiction on a "core" proceeding -- namely, the allowance or disallowance of claims by Grant Thornton and former directors and officers of Refco. *See* 28 U.S.C. § 157(b)(2)(B) (enumerating "allowance or disallowance of claims against the estate" as a "core" matter).

[5]    While Defendants' may argue that Grant Thornton's claim for $242,804.23 for pre-petition fees (*see* Kirschner Dec. at ¶ 16, Ex. C) might be disallowed (or allowed) depending on the outcome of the New York State Action, this is also an insufficient basis upon which to confer federal jurisdiction. *See In re Resorts Int'l*, 372 F.3d at 170 ("Resorts may have a claim against the Litigation Trust, and an award in the malpractice action could be distributed back to Resorts to pay on that claim. Such attenuated effect on the reorganized debtor does not create a close nexus to the bankruptcy plan or proceeding sufficient to confer bankruptcy court jurisdiction."); *In re Ha-Lo Indus.*, 330 B.R. at 672 ("While validity of the filed proofs of claim may be litigated some day, that provides no source for jurisdiction here.").

[6]    Notably, the former Refco executives named in the New York State Action -- Bennett, Maggio and Trosten -- are not seeking removal.

9

policy will almost certainly be exhausted by various other actions, including the criminal prosecution, in which the these Refco executive are defendants.

### 3. The New York State Action Would Not Impact on the Distribution to Creditors

As noted above, no matter how much the PAT recovers in the New York State Action, it will not impact in any way the distribution of Refco estate property to Refco creditors. The fact that the PAT beneficiaries also happen to be creditors of the Refco estates is entirely irrelevant -- the PAT distributions are simply not, and never were, Refco assets. Distributions on recoveries of claims transferred to the PAT will not reduce or impact on the amounts distributed to Refco creditors who happen to be PAT beneficiaries. *See* Kirschner Dec., at ¶13

### 4. The New York State Action Would Not Impact the Administration of the Bankruptcy Case.

After confirmation of a bankruptcy plan, the court's bankruptcy jurisdiction is extremely narrow, limited to "protect[ing] its confirmation decree, to prevent[ing] interference with the execution of the plan and to aid[ing] otherwise in its operation." *In re Dilbert's Quality Supermarkets, Inc.*, 368 F.3d 922, 924 (2d Cir. 1966); *see also Falise v. Am. Tobacco Co.*, 241 B.R. 48, 58 (E.D.N.Y. 1999) (distribution of trust assets to creditors is "only relevant to the issue of bankruptcy jurisdiction when it affects the pre-confirmation estate"); *see also In re Resorts Int'l, Inc.*, 372 F.3d 154, 157 (3d. Cir. 2004) ("Because the Bankruptcy Court confirmed the Reorganization Plan, the debtor's estate no longer exists.")

The New York State Action has absolutely nothing to do with administration of the bankruptcy proceeding or the administration of the Refco Plan. Indeed, the New York State Action asserts claims that could have been brought in state court regardless of whether the Refco bankruptcy case was ever filed. The only nexus between the New York State Action and the Refco bankruptcy case is that the beneficiaries of any recovery in the New York State Action might also be creditors of

the Refco estates. This coincidence does not mean that claims brought by a private litigation trust will have any impact on the estate. To the contrary: the claims asserted by the PAT will have no impact on the estate or its administration. *See In re Olympia & York Maiden Lane Co. LLC,* 1999 WL 58581, at * 7 (Bankr. S.D.N.Y. Jan. 25, 1999) (noting that an action that has no impact on the estate will not impact the bankruptcy court's administration of the estate); *see also In re Finnie,* 2007 WL 1574294, at *12 (noting the Second Circuit has held that "'[a]s a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy.'" (quoting *In re Shirley Duke Assocs.*, 611 F.2d at 18).

Unable to draw a logical nexus between the PAT's private customer claims and beneficiaries, Defendants argue that the PAT is a "creature" of the bankruptcy plan and part of its implementation. *See* Notice of Removal at 4. This argument exposes the overly broad jurisdictional scope upon which Defendants premise their removal. That holders of private claims against third-parties chose to assign their claims to a private litigation trust that was established in conjunction with the confirmation of the Refco Plan does not establish federal jurisdiction over those claims. The claims must affect the debtors' estate or the administration of the estate in some fashion. Mere incidental contact to a bankruptcy proceeding or a plan is insufficient to establish "related to" jurisdiction. *Turner*, 724 F.2d at 341 ("Congress must have intended to put some limit on the scope of 'related to' jurisdiction."); *Falise*, 241 B.R. at 61 ( adopting a standard whereby even the most tangential matters become 'related to' the bankruptcy "stand[s] in marked contrast to the limited jurisdiction possessed by the non-Article III bankruptcy courts."); *see also In re Resorts Int'l*, 372 F.3d at 161 ("Congress

has vested 'limited authority' in bankruptcy courts." (quoting *Bd. of Governors v. MCorp Fin., Inc.*, 502 U.S. 32, 40 (1991)).[7]

Defendants also argue that because the Refco Plan specified the mechanism for assigning claims to the PAT, disputes about the validity of these assignments will necessitate interpretation of the Refco Plan. But the Refco Plan cannot affect the validity of the PAT claims. Nor is it relevant to the merits of any of Plaintiff's state law claims. Furthermore, there are no disputes about the validity of any PAT members' claims and Defendants do not identify any. An argument that there may, sometime in the future, be hypothetical disputes about the validity of an assignment of a claim (and that something in the Refco Plan may be relevant to that question) is pure speculation and insufficient to support "related to" subject matter jurisdiction. *See, e.g., Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc.*, 2002 WL 1300054, at *2 (noting that "potential ramifications [from litigation] are insufficient to render the claims that have been asserted against the non-debtor Defendants 'related to' Debtor's bankruptcy proceeding.").[8]

---

[7]  The cases relied upon by Defendants in their Notice of Removal (at 4) are entirely distinguishable. *Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),* 304 F.3d 223 (2d. Cir. 2002) involved a "core" bankruptcy proceeding that was by definition connected to the bankruptcy reorganization. *See id.* at 231. As Defendants themselves concede, the New York State Action is not a "core" proceeding, and therefore cannot be analogized with *Luan*. Defendants also cite *Resorts*, which actually supports *Plaintiff's* argument that there is no nexus between the post-confirmation PAT and the Refco Plan. In *Resorts*, the court found that a litigation trust's claims against a third party lacked a "close nexus" to the bankruptcy plan because, among other things, the creditors "exchanged their creditor status to attain rights to the litigation claims." 372 F.3d at 169. The facts of this case are even more compelling than those in *Resorts* because here, the PAT's claims were *never* part of the estate and the beneficiaries of the PAT did not exchange their creditor status to become entitled to rights in the PAT.

[8]  Even if such a dispute were to arise, the fact that it might require a reference to a few clauses out of the sixty-six page Refco Plan does not mean that the New York State Action will "affect the interpretation" of the Refco Plan for purposes of related to jurisdiction. Indeed, such reference would only lead to the conclusion stated at the outset: the claims were never estate property. The test for determining whether "related to" subject matter jurisdiction exists is whether the state court will need to interpret or construe the Refco Plan to render a decision regarding the allegations in the New York State Action. *See In re Kassover*, 336 B.R. 74, 80 (Bankr. S.D.N.Y. 2006) (holding that because claims did not require the court to interpret the bankruptcy plan, the claims "can have no conceivable effect on the Chapter 11 case"). Simply put, whether Mayer Brown or Grant Thornton aided and abetted fraud or a duty owed to customers will not involve an interpretation of the Refco Plan. *See In re Resorts Int'l, Inc.*, 372 F.3d at 170.

Finally, Defendants rely on the Refco Plan's provision for jurisdiction in the Bankruptcy Court for the claims asserted by the PAT. *See* Notice of Removal, at 5. This argument is meritless.

First, Defendants fail to note that the Refco Plan provides for a retention of jurisdiction only "to the fullest extent *permitted by law*." Refco Plan, § 11.1 (emphasis added). The law is clear that boiler plate bankruptcy plan provisions that purport to preserve the bankruptcy court's jurisdiction are not sufficient to establish post-confirmation jurisdiction. *See, e.g.*, *See In re Resorts Int'l,* 372 F.3d. at 161 ("Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction, but neither the bankruptcy court nor the parties can write their own jurisdictional ticket.").

Second, while an attempt to preserve jurisdiction in a bankruptcy plan can, in some circumstances, indicate a close nexus between a claim and the bankruptcy case, that is not the case here. Cases which have held the retention of jurisdiction to be relevant proof of a close nexus have uniformly required an express, specific reference to a claim not present here. *See, e.g.*, *In re EXDS, Inc.*, 352 B.R. 731, 735-36 (Bankr. D.Del. 2006) (bankruptcy plan "describes plaintiff's Claims with sufficient specificity to warrant the application of post-confirmation jurisdiction" where it specifically mentions claims arising out of the acquisition of "GlobalCenter, Inc." and lists causes of action against specifically named customers, including "CBRE"); *In re Astropower Liquidating Trust*, 335 B.R. 309, 324 (Bankr. D.Del. 2005) (bankruptcy plan specifically references "causes of action arising out of or in connection with the Debtor's sale of stock in Xantrex Technology, Inc."). The Refco Plan merely states that the Bankruptcy Court retains jurisdiction to "[h]ear and determine causes of action by or on behalf of the Contributing Debtor, FXA, RCM, the Reorganized Debtors, the Litigation Trustee, the Private Actions Trustee or Post-Confirmation RCM." Refco Plan §11.1(k). There is no specific reference to the claims asserted in the New York State Action and no

indication that these claims are of any significance whatsoever to the Refco Plan. "If the litigation is truly so critical to the Plan's implementation, it would have been more specifically described in the . . . Plan so that creditors could have considered its effect when deciding whether to vote in favor of the Plan." *In re Insilco Techs., Inc.*, 330 B.R. 512, 525 (Bankr. D. Del. 2005) (no close nexus found between claim and bankruptcy plan because plan failed to specifically reference claim, instead merely creating a "Creditor Trust" to pursue generally defined "Rights of Action").

**B.     Even if this Court Had Subject Matter Jurisdiction, Remand is Mandatory.**

Even if this Court had subject matter jurisdiction over the New York State Action -- which it does not -- mandatory abstention and remand are required by 28 U.S.C. § 1334(c)(2). *See In re Amanat*, 338 B.R. 574, 582 (S.D.N.Y. 2005) (abstaining where mandatory abstention factors were satisfied). Under 28 U.S.C. § 1334(c)(2), a court must abstain from exercising jurisdiction over a removed action if (1) the remand motion was timely; (2) the action is based on a state law claim; (3) the state law claim is not a "core" bankruptcy proceeding; (4) the only basis for federal jurisdiction is § 1334; (5) the action was commenced in state court; and (6) the state court can timely adjudicate the matter. *See Von Richthofen v. Family M. Found. Ltd.,* 339 B.R. 315, 319 (S.D.N.Y. 2005). Each of these elements is satisfied by the New York State Action.

First, Plaintiff timely filed this motion for remand within 30 days of its removal to Federal court.

Second, as Defendants themselves concede, the New York State Action does not raise any "core" bankruptcy issues. *See* Notice of Removal at 5.

Third, there is no basis for federal jurisdiction beyond 28 U.S.C. § 1334. The New York State Action is brought by a New York-domiciled Private Actions Trustee against non-diverse defendants and does not assert any issues of federal law. *See* Complaint at ¶¶ 210-238 (alleging only state-law fraud, breach of fiduciary duty, conversion, and aiding and abetting claims).

14

Fourth, the New York State Action was commenced in state court on August 27, 2007. The removal of the case does not destroy the prior pendency of the New York State Action or preclude mandatory abstention. *See, e.g.*, *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446 (2d Cir. 2005) (holding that the mandatory abstention provisions of Section 1334(c)(2) apply to removed cases).

Fifth, this matter can be timely adjudicated in New York state court. The case involves claims based solely on New York state law, and the action will be assigned to the Commercial Division of the New York Supreme Court -- a division specifically created to handle complex financial cases on a fast-track basis before judges experienced at handling claims such as those asserted in the New York State Action. *See* Juman Dec. at ¶ 5. Significantly, the state law claims at issue in the New York State Action do not raise the same complex securities fraud issues arising in some of the Refco-related cases currently pending before this Court. Indeed, joining the New York State Action with claims that require the resolution of complex securities law questions, or that are subject to delayed discovery under the PSLRA, could potentially slow down prosecution of the Trustee's state law claims -- to the detriment of the PAT beneficiaries.

## C. The Applicable Factors Support Discretionary Abstention.

Underscoring the appropriateness of remand of the New York State Action, of the twelve factors used by courts in the Second Circuit to determine discretionary abstention,[9] all favor remand of the New York State Action. *See In re Olympia*, 1999 WL 58581, at * 7 (listing factors and noting that courts enjoy wide discretion to abstain under § 1334(c)(1)).

- *Efficient administration of the estate*. The claims asserted by the PAT are not and have never been Refco's property. The New York State Action thus has no impact on Refco's bankruptcy estate and exercising jurisdiction over it is unnecessary to ensure efficient

---

[9] 28 U.S.C. § 1452(b) allows a state proceeding removed due to bankruptcy jurisdiction to be remanded "on any equitable ground."

administration of the estate. *See, e.g., In re Finnie,* 2007 WL 1574294, at *12 (Bankr. S.D.N.Y. May 29, 2007) (noting the Second Circuit has held that ' "[a]s a general rule, a bankruptcy court has no jurisdiction to decide controversies between third parties which do not involve the debtor or his property, unless the court cannot complete its administrative duties without resolving the controversy.'" (quoting *In re Shirley Duke Assocs.*, 611 F.2d 15, 18 (2d. Cir. 1979)). To the contrary, where the Trustee has chosen state court as the forum in which to maximize results in the most efficient way possible for the beneficiaries of the PAT, his choice of forum should be given deference because it leads to the swiftest allocation of assets.

- **State law issues predominate.** State law issues do not merely predominate -- *they are the only issues* in the New York State Action. *See* Complaint at ¶¶ 210-238 (alleging only state-law fraud, breach of fiduciary duty, conversion, and aiding and abetting claims). Principles of federalism and comity therefore strongly favor abstention and remand. *See In re Savino Oil & Heating Co.*, 1992 WL 118801, at *3 (E.D.N.Y. May 21, 1992) ("The issues in the removed action are chiefly a matter of state law and the state court is a more appropriate forum for their adjudication"); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 208 (Bankr. S.D.N.Y. 1991) (finding equitable remand appropriate and noting that state courts are better able to respond to suits involving state law).

- **Unsettled nature of applicable law.** Any unique state law issues arising from the state law claims, including choice of law questions, should be made by a state court. *See In re Osage Exploration Co.*, 39 B.R. 966, 968 (Bankr. S.D.N.Y. 1984) ("the court has broad discretion to remand a claim or cause of action to the court from whence it came based upon a finding that a state court is a more appropriate forum to try a suit involving questions of state law." (citing 1 *Collier on Bankr.* § 3.08 at 3.8 (15 ed. 1983)).

- **Presence of related proceeding.** While there are federal securities claims proceeding in the Southern District of New York, including a class action claim against some, but not all, of the Defendants in the New York State Action, these federal securities-based claims raise legal issues that are simply not present in the New York State Action, which concerns only state-law issues. As a result, because of the need to resolve complex federal law issues, and because of the discovery stay imposed by the PSLRA, those securities claims could potentially slow down prosecution of the Trustee's state law claims -- to the detriment of PAT beneficiaries.

- **No other jurisdictional basis.** As acknowledged in Defendants' Notice of Removal, the only alleged basis for federal jurisdiction in this case is "related to" jurisdiction under 28 U.S.C. § 1334. There are no federal claims or issues in dispute, and the parties are not diverse.

- **Remoteness of the suit from the bankruptcy proceeding.** The claims at issue in this case are completely and entirely remote from the post-confirmation Chapter 11 cases. The claims were never property of the Refco Debtors' estates, and they were transferred by private litigants to the Private Actions Trust nine months ago.

16

- ***Substance of asserted core proceeding***.  As conceded by Defendants' Notice of Removal, no core issues are raised in or by the New York State Action.

- ***Feasibility of severing state law claims from 'core' matters***. Because this case is not "core," there is no need to sever state law claims from core bankruptcy matters.

- ***Burden on this Court's docket.***  Given the remoteness of this action to any federal interests, any additional burden to this Court's docket from the New York State Action cannot be justified.

- ***Forum shopping motivates claim of bankruptcy jurisdiction.***  Defendants' remand motion is clearly designed to gain some strategic advantage by anchoring the Defendants' concurrently pending application to the Joint Panel for Multidistrict Litigation as well as their removal of an action brought by the Litigation Trustee in Illinois state court.

- ***Jury trial right.***  Under New York law, the Trustee is entitled to a jury trial on its claims. *See, e.g., Crigger v. Fahnestock & Co., Inc.*, 443 F.3d 230, 234 (2d. Cir. 2006) (recognizing right to jury trial on common law fraud claims under New York law); *Resnick v. Socolov*, 5 A.D.3d 125 (N.Y. App. Div. 2004) (jury trial on breach of fiduciary duty and conversion claims).  Where, as here, a jury trial right exists, equitable remand is particularly appropriate.  *See, e.g., Drexel Burnham*, 130 B.R. at 409 ("Demands for jury trials in non-core proceedings have been considered a sufficient ground for an equitable remand.").

- ***All parties are nondebtors***.  The presence of a *few* nondebtors is enough to weigh against exercising § 1334(c) jurisdiction; the complete absence of any debtors, as is the case here, strongly counsels against exercising that jurisdiction.  *See Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 448-49 (2d Cir. 2005) (finding abstention appropriate because "the debtor is not involved in this lawsuit, and plaintiffs here seek to adjudicate the rights of non-debtors only."); *Rahl v. Bande*, 316 B.R. 127, 137 (S.D.N.Y. 2004) ("The fact that this proceeding involves only non-debtors weighs in favor of abstention or equitable remand."); *Universal Well Servs., Inc. v. Avoco Natural Gas Storage*, 222 B.R. 26, 32 (W.D.N.Y. 1998) (holding that where an action involved only non-debtors, and plaintiffs' claims were based exclusively on state law, abstention was appropriate) *In re Federalpha Steel LLC,* 341 B.R. 872, 883 (Bankr. N.D. Ill. 2006) (abstaining and remanding where claims were brought by Private Actions Trust, since "its plan confirmed, debtor Federalpha has left the scene").

## CONCLUSION

For the foregoing reasons, the New York State Action should be immediately remanded to

the New York County Supreme Court.


Dated: October 17, 2007

Respectfully submitted,


By: _/s/ Robert C. Juman_____

Richard I. Werder, Jr.
Michael B. Carlinsky
Susheel Kirpalani
Sascha N. Rand
Robert C. Juman

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601

*Attorneys for Plaintiff*
*Marc S. Kirschner, as Trustee for the Refco*
*Private Actions Trust*

18