UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
MARC S. KIRSCHNER,                              :      **Electronically Filed**
as Trustee of the Refco Private Actions Trust,  :
                                                :      Case No. 07-cv-08165 (GEL)
                              Plaintiff,         :
                                                :
                                                :
        v.                                      :
                                                :
PHILLIP R. BENNETT, SANTO C. MAGGIO,            :
ROBERT C. TROSTEN, MAYER, BROWN,                :
ROWE & MAW LLP, GRANT THORNTON LLP,             :
and ERNST & YOUNG US LLP,                       :
                                                :
                              Defendants.        :
-----------------------------------------------------------------x


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND TO NEW YORK STATE COURT


David E. Mollón                          John K. Villa
Steven M. Schwartz                       Michael S. Sundermeyer
WINSTON & STRAWN LLP                     Craig D. Singer
200 Park Avenue                          Thomas G. Ward
New York, NY 10166-4193                  WILLIAMS & CONNOLLY LLP
Tel: (212) 294-6700                      725 Twelfth Street, N.W.
Fax: (212) 294-4700                      Washington, D.C.  20005
                                         Tel: (202) 434-5000
Of counsel:                              Fax: (202) 434-5029
Bradley E. Lerman
Catherine W. Joyce                       Joel M. Cohen
Linda T. Coberly                         Anthony M. Candido
WINSTON & STRAWN LLP                     Timothy Casey
35 W. Wacker Drive                       CLIFFORD CHANCE US LLP
Chicago, Illinois 60601                  31 West 52nd Street
Fax: 312-558-5600                        New York, New York 10019
Tel: 312-558-5700                        Tel:(212) 878-8000
                                         Fax:(212) 878-8375

NY:1148094.1

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................. 2

ARGUMENT ................................................................................................ 5

I.      THIS CASE IS "RELATED TO" THE BANKRUPTCY AND THUS FALLS
        WITHIN THIS COURT'S JURISDICTION UNDER 28 U.S.C. § 1334(b).................... 5

        A.     This Action Is Significantly Interrelated with the Refco Bankruptcy
               Case and Dozens of Other Refco-Related Lawsuits. ............................... 6

        B.     This Litigation Is "Related To" the Bankruptcy Because It Raises the
               Threshold Question Whether the Pending Claims Are Property of the
               Estate and Whether the Private Actions Trust Has Standing To Sue. ................. 8

               1.     The PAT's claims are derivative and seek an unwarranted
                      preference for individual creditors of RCM................................. 10

               2.     The Bankruptcy Plan specifically reserves the PAT's asserted
                      claims to the estate, and the estate—through its purported
                      assignee the Litigation Trust—is suing these same defendants
                      to enforce them. ................................................................ 14

        C.     Success or Failure of the Private Actions Trust in This Litigation Will
               Affect the Estate and the Ability of Other Creditors To Collect by
               Virtue of the Relationship Between the Trusts. .................................... 15

        D.     Grant Thornton's Claim for Contribution Will Impact the Estate........................ 17

        E.     Indemnification Claims by the Individual Defendants Against
               Insurance Policies Belonging to Refco Provide a Further Basis for
               Jurisdiction.................................................................... 21

II.     ABSTENTION IS NEITHER MANDATORY NOR APPROPRIATE HERE.............. 22

        A.     Mandatory Abstention Does Not Apply Because the Case Could Not
               Be "Timely Adjudicated" Apart from the Rest of the Refco Litigation. .............. 22

        B.     For the Same Reasons, Permissive Abstention Would Be Inappropriate
               Here. ........................................................................ 24

CONCLUSION............................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*In re Adelphia Communications Corp. Securities & Derivative Litigation*,
    04 Civ. 4967, 2005 WL 1026559 (S.D.N.Y. May 2, 2005)............................18, 19, 20

*A.I.A. Holdings, S.A. v. Lehman Brothers., Inc.,*
    No. 97 Civ. 4978, 1999 WL 47223 (S.D.N.Y. Jan. 28, 1999) ....................................11

*Airline Pilots Association International v. America National Bank & Trust Co.,*
    156 B.R. 414 (S.D.N.Y. 1993)..............................................................................11, 12

*American Finance International Group-Asia v. Bennett*,
    05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007)...........................1, 11, 12

*Associated General Contractors, Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)..........................................................................................16

*Axis Reinsurance Co. v. Bennett et al.,*
    Adv. Proc. 07-01712 (RDD) (Bankr. S.D.N.Y. Oct. 19, 2007) ..................................21

*Beightol v. UBS  Painewebber (In re Global Crossing, Ltd. Sec. Litigation)*,
    311 B.R. 345 (S.D.N.Y. 2003).............................................................. passim

*Binder v. Pricewaterhouse & Co. (In re Resorts International Inc.)*,
    372 F.3d 154 (3d Cir. 2004).......................................................................5

*Bondi v. Grant Thornton, International (In re Parmalat)*,
    322 B.R. 44 (S.D.N.Y. 2005).........................................................17, 22, 23

*Celotex Corp. v. Edwards*,
    514 U.S. 300 (1995).................................................................................5

*Colorado River Water Conservation District v. United States*,
    424 U.S. 800 (1976).................................................................................24

*Conway v. Icahn & Co.,*
    16 F.3d 504 (2d Cir. 1994).......................................................................16

*Cumberland Oil Corp. v. Thropp*,
    791 F.2d 1037 (2d Cir. 1986)................................................................8, 9

*In re Cuyahoga Equipment Corp.*,
    980 F.2d 110 (2d Cir. 1992)..............................................................5, 18

*EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.)*,
    352 B.R. 731 (Bankr. D. Del. 2006) ...........................................................................7

*Falise v. America Tobacco Co.*,
    241 B.R. 48 (E.D.N.Y. 1999) ...................................................................................19

*In re Federal-Mogul Global, Inc.*,
    300 F.3d 368 (3d Cir. 2002)......................................................................................19

*In re Federalpha Steel LLC*,
    341 B.R. 872 (Bankr. N.D. Ill. 2006) ......................................................................25

*Harrow v. Street (In re Fruehauf Trailer Corp.)*,
    369 B.R. 817 (Bankr. D. Del. 2007) ......................................................................6, 7

*Hesselman v. Arthur Anderson, LLP (In re Global Crossing Sec. Litigation)*,
    No. 02 Civ. 910, 2003 WL 21659360 (S.D.N.Y. July 15, 2003) ...............................18

*Honigman v. Comerica Bank (In re Van Dresser Corp.)*,
    128 F.3d 945 (6th Cir. 1997) ...............................................................................9, 10

*JP Morgan Chase Bank v. Altos Hornos de Mex., S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005)......................................................................................8

*Jackson National Life Insurance Co. v. Ligator*,
    949 F. Supp. 200 (S.D.N.Y. 1996).......................................................................9, 11

*Kirschner v. Bencorp Casa de Bolsa, C.A. (In re Refco Inc.)*,
    Adv. Proc. No. 06-01745 (RDD), Judgment Ex. A at 129 (Bankr. S.D.N.Y.
    Dec. 29, 2006)...........................................................................................................12

*ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia
    Communications Corp.)*,
    285 B.R. 127 (Bankr. S.D.N.Y. 2002) ................................................................24, 25

*Manson v. Stacescu*,
    11 F.3d 1127 (2d Cir. 1993)......................................................................................12

*McCord v. Papantoniou*,
    316 B.R. 113 (E.D.N.Y. 2004) .................................................................................12

*Mitsui & Co. v. Hudson Tank Terminals Corp.*,
    790 F.2d 226 (2d Cir. 1986)......................................................................................16

*In re MortgageAmerica Corp.*,
    714 F.2d 1266 (5th Cir. 1983) ...................................................................................9

iii

*Nachom v. Citigroup, Inc. (In re Global Crossing, Ltd. Sec. Litigation)*,
    02 Civ. 910, 03 Civ. 4521, 2003 WL 22705127 (S.D.N.Y. Nov. 13, 2003) ..............20

*National America Insurance Co. v. Rupert Landscaping Co.*,
    187 F.3d 439 (4th Cir. 1999) ....................................................................13

*Nemsa Establishment, S.A. v. Viral Testing System Corp.*,
    No. 95 Civ. 0277, 1995 WL 489711 (S.D.N.Y. Aug. 15, 1995) ................................25

*New York City Employees' Retirement System v. Ebbers (In re WorldCom, Inc.*
    *Sec. Litigation)*,
    293 B.R. 308 (S.D.N.Y. 2003)........................................................................ passim

*Pacor, Inc. v. Higgins*,
    743 F.2d 984 (3d Cir. 1984).............................................................................5

*Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*,
    219 B.R. 363, 371 (Bankr. S.D.N.Y. 1998)................................................21

*Rahl v. Bande*,
    316 B.R. 127 (S.D.N.Y. 2004)........................................................................24

*In re Refco Capital Markets, Inc.*,
    06 Civ. 643  2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007)..........................................1

*Resolution Trust Corp. v. Best Products Co. (In re Best Products Co.)*,
    68 F.3d 26 (2d Cir. 1995) ...............................................................................8

*Retirement Systems. of Ala. v. J.P. Morgan Chase & Co.*,
    285 B.R. 519 (M.D. Ala. 2002) ....................................................................19

*Seinfeld v. Allen*,
    No. 02 Civ. 5018, 2005 WL 1231644 (S.D.N.Y. May 25, 2005), *aff'd*, 169 F.
    App'x 47 (2d. Cir. 2006) ..............................................................................14

*In re Seven Fields Development Corp. v. Ernst & Young LLP*,
    No. 06-3658, 2007 WL 85905 (3d Cir. Oct. 24, 2007)..................................................7

*Seward v. Devine*,
    888 F.2d 957 (2d Cir. 1989)..............................................................................9

*St. Paul Fire & Marine Insurance Co. v. Pepsico Inc.*,
    884 F.2d 688 (2d Cir. 1989)...........................................................................11

*Tringali v. Hathaway Machine Co.,*
   796 F.2d 553 (1st Cir. 1986) ........................................................................................22

## STATUTES

11 U.S.C. § 541(a)(1) (2000) ................................................................................................9

11 U.S.C. § 548 ....................................................................................................................13

28 U.S.C. § 1334(b) ........................................................................................................5, 15

28 U.S.C. § 1334(c)(2) .........................................................................................................22

28 U.S.C. § 157(b) (2000) .....................................................................................................9

## OTHER AUTHORITIES

Restatement (Second) of Judgments § 53 (1982) ................................................................16

N.Y. Dr. & Cr. Law 10-270 ff ..............................................................................................13

Uniform Fraudulent Transfer Act § 4 ..................................................................................13

7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, §1109.5 (15th ed.
   2007) ................................................................................................................................13

## PRELIMINARY STATEMENT

Defendants Grant Thornton LLP ("Grant Thornton"), Mayer Brown LLP, and Mayer Brown International LLP (collectively the "Removing Defendants") hereby oppose the motion to remand this action to state court. This lawsuit was brought by the Private Actions Trust ("PAT")—an entity created as part of Refco's plan of reorganization to pursue certain creditors' claims on a consolidated basis, fueled by funds from the estate. Here, the PAT asserts claims purportedly assigned to it by certain foreign exchange customers (or "FX Customers") of Refco Capital Markets, Inc. ("RCM"). These claims are similar in many respects to claims asserted in other RCM customer actions before this Court, including those that were recently dismissed by this Court. *See In re Refco Capital Mkts., Inc.*, 06 Civ. 643 (GEL), 2007 WL 2694469 (S.D.N.Y. Sept. 13, 2007); *Am. Fin. Int'l Group-Asia v. Bennett*, 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007). Here too, the defendants will seek dismissal on a number of grounds. The question presently before the Court, however, is whether it has jurisdiction to consider those motions to dismiss and to oversee this lawsuit in a coordinated fashion with the rest of the Refco litigation. The answer is an unqualified "yes."

The threshold for establishing federal jurisdiction over a case "related to" a bankruptcy is exceptionally low, requiring only that the case might have a "conceivable effect" on the estate or bears a significant "nexus" with the bankruptcy. That standard is more than satisfied here.

First, the PAT is a creature of the bankruptcy, and its lawsuit is closely intertwined with the Refco bankruptcy and with the other related litigation engendered by the bankruptcy, as evidenced by the Bankruptcy Court's order specifically retaining jurisdiction over suits by the PAT. These connections are sufficient to meet the "nexus" test for "related to" jurisdiction.

Second, the court presiding over this action will be required to decide an issue intimately related to the bankruptcy: whether the PAT's asserted claims are, in fact, the property of the

estate and must be asserted for the benefit of all creditors. By attempting to sue on these claims for the exclusive benefit of a few creditors, the PAT threatens a crucial goal of all bankruptcies: to ensure an equitable distribution of estate assets to *all* creditors.

Third, the success or failure of this lawsuit will have a direct and practical impact on assets distributed to Refco creditors because of the PAT's relationship to the Litigation Trust, another trust created by the bankruptcy plan and represented by the same Trustee and counsel.

Fourth, certain defendants here have claims for contribution and indemnification that make it all but inevitable that this litigation will affect distributions from the estate. Grant Thornton has a pending claim for contribution against the estate that would encompass any liability it incurs here. And certain individual defendants in this action are pursuing indemnification against Refco's insurance policies for any amounts they expend in defending themselves, including in this case. Those indemnification claims will impact the disposition of the policy proceeds, which are themselves the property of the estate and which will indirectly impact the insurance funds available to pay claims brought by other creditors of the estate.

Once it finds "related to" jurisdiction, this Court need not, and should not, abstain from hearing this action. This case cannot be "timely adjudicated" if it is returned to state court and separated from the mountain of Refco-related litigation already proceeding in this Court. It simply makes no sense to have this case pending in a different forum, before a different judge, thereby risking inconsistency and guaranteeing waste of judicial resources. For all these reasons, the Trustee's motion should be denied.

## **BACKGROUND**

The PAT is part of a two-trust scheme created by the Refco Plan of Reorganization ("Plan") with the full participation and support of Plaintiff Marc Kirschner—who was then Chapter 11 Trustee for RCM—and the attorneys for the estate and the creditors' committee. The

Plan created a "Litigation Trust," a familiar bankruptcy entity, to take assignment of the estate's causes of action and other property for purposes of post-confirmation liquidation and distribution to creditors according to the terms of the Plan.  It also created the PAT, which is an unusual device designed for the purpose of pursuing certain individual creditors' claims against third parties for the exclusive benefit of PAT beneficiaries.  The Plan and the Private Actions Trust Agreement limit the PAT to suing on "non-estate claims."  *See* Ex. A, Plan ¶¶ 1.146, 5.8; Ex. B, PAT Agreement at 2.  To enter the PAT, a potential claimant was required to assign his "non-estate claims" to the PAT for the purpose of bringing suit.  In return, that claimant became entitled to a pro rata share of any proceeds of PAT litigation, regardless of whether the source of those proceeds is his own claim or whether his claim is even colorable, much less successful.

The creation of the PAT, along with the Litigation Trust, offered participating creditors a number of special benefits—presumably as part of an effort to secure the creditors' support of the Plan.  As a risk-sharing pool, the PAT offered each creditor the opportunity to seek additional compensation apart from estate distributions and independent of the merits of the particular causes of action it held.  It also enabled creditors to pursue their claims without incurring litigation costs, as the PAT is funded by loans from the Litigation Trust (Ex. B, PAT Agreement at 1.6), which in turn was funded in part by the estate (Ex. A, Plan § 5.7(e)).  Participation in the PAT entitled creditors to receive certain proceeds from the Litigation Trust, as well as from the PAT itself.  Ex. C, PAT Election Form at 2-3.[1]  And, as a practical matter, participation in the PAT meant that the creditors' claims would be prosecuted by the same lawyers who had

---

[1]  Indeed, certain equity holders were not entitled to receive estate assets at all unless they agreed to contribute their claims to the PAT.  *See* Ex. D, Stipulation/Order entered October 19, 2007 at 4 (stipulation between Lead Plaintiffs and Plan Administrators, including Trustee Kirschner for RCM, reflecting that Plan "provides that holders of Allowed Class 8 Old Equity Interests shall only receive a distribution from the estates if they made a [PAT] Election").

represented the creditors' committee and are now representing the Litigation Trust—an obvious benefit in terms of efficiency and access to information. Ex. E, 12/15/06 Tr. at 102-06, 114-22 (principal cited advantage of multiple trust scheme was coordination of litigation strategy). The two trusts have common counsel, an overlapping committee of governance,[2] and the same Trustee, who is compensated based on benchmarks that combine the proceeds of the two trusts. Ex. B, PAT Agreement, sched. B.

In recognition of the continued role these trusts play in the administration of the estate, the Plan provides that the bankruptcy court retains jurisdiction over suits both by and against the trusts. According to Article XI of the Plan—which Kirschner championed in his capacity as Trustee of RCM's estate— "the Bankruptcy Court shall have exclusive jurisdiction (unless otherwise indicated) over all matters arising out of, and related to, the Chapter 11 Cases, this Plan and the RCM Settlement Agreement to the fullest extent permitted by law, including, among other things, jurisdiction to . . . (k) Hear and determine causes of action by or on behalf of . . . the Private Actions Trustee." Ex. A, Plan ¶ 11.1; Ex. F, RCM Settlement Agreement. *See also* Ex. G, Order of Confirmation ¶ 37.

Since creating the two trusts, Trustee Kirschner and his counsel[3] have taken control of both trusts and have filed a series of lawsuits in different forums, including this case and a largely duplicative action in Illinois pressing similar claims against the same defendants and others.[4]

---

[2]  The entities participating in trust governance include VR Global Partners, L.P and Capital Management Select Fund, Ltd., both of which have brought separate securities fraud actions based on the same basic facts set forth here.

[3]  Mr. Kirpalani, then of Milbank, Tweed, Hadley & McCloy LLP, represented the creditors' committee in the bankruptcy case; he has since moved to Quinn Emmanuel and represents the PAT in this litigation.

[4]  The Illinois action is pending before the Judicial Panel on Multi-District Litigation upon defendants' motion for transfer to this Court.

**ARGUMENT**

I.     **THIS CASE IS "RELATED TO" THE BANKRUPTCY AND THUS FALLS WITHIN THIS COURT'S JURISDICTION UNDER 28 U.S.C. § 1334(b).**

Under 28 U.S.C. § 1334(b), "the district courts shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11." This provision was designed to create "comprehensive" federal jurisdiction so that bankruptcy courts could deal "efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quotation marks and citation omitted).

In this Circuit, the test for determining whether a matter is sufficiently "related to" a bankruptcy is "whether its outcome might have any 'conceivable effect' on the bankrupt estate." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). This jurisdictional grant is broad and does not require presence of the debtor or the debtor's property in the proceeding. *Celotex*, 514 U.S. at 307 n.5. Litigation interconnected with the bankruptcy, that may affect the bankruptcy estate, that could alter creditors' recoveries or rights, or that otherwise has a nexus with a bankruptcy case is well within the wide borders of § 1334(b). *In re Cuyahoga*, 980 F.2d at 114; *Binder v. Pricewaterhouse & Co.* (*In re Resorts Int'l Inc.*), 372 F.3d 154, 167 (3d Cir. 2004); *New York City Employees' Ret. Sys. v. Ebbers* (*In re WorldCom, Inc. Sec. Litig.*), 293 B.R. 308, 321 (S.D.N.Y. 2003).

As discussed in detail below, this case is connected in several significant respects with the bankruptcy and will impact distributions from the estate in a manner that is at least "conceivable," if not assured. Thus this is an easy case for "related to" jurisdiction.

A.    **This Action Is Significantly Interrelated with the Refco Bankruptcy Case
and Dozens of Other Refco-Related Lawsuits.**

This litigation is inextricably intertwined with the bankruptcy and with dozens of other actions arising from, arising in, or related to the bankruptcy—a fact that is sufficient by itself to support jurisdiction.  "The existence of strong interconnections between the third party action and the bankruptcy has been cited frequently by courts in concluding that the third party litigation is related to the bankruptcy proceeding."  *In re WorldCom*, 293 B.R. at 321.

As discussed above, the PAT is a creature of the Refco bankruptcy, designed specifically as a mechanism for providing continued value and compensation to creditors.  It was cited as a central element of the Plan, both by counsel for the Creditors' Committee (who now represents the PAT in this case) and by Judge Drain.  Ex. E, 12/15/06 Tr. at 102-06, 114-22.  The PAT's litigation strategy is interrelated with other actions stemming from the bankruptcy, including lawsuits brought by the Litigation Trust on behalf of the estate.  *See Harrow v. Street (In re Fruehauf Trailer Corp.)*, 369 B.R. 817, 822 (Bankr. D. Del. 2007) (post-confirmation litigation trusts "by their nature maintain a connection to the bankruptcy even after the plan has been confirmed because they are constructed as instrumentalities for the execution of the plan") (internal quotations omitted).  As a critical component of the Plan's implementation, the coordinated litigation of these two trusts—including the PAT's lawsuits—unquestionably is "related to" the bankruptcy.

The connection between the PAT's claims and the bankruptcy is evident in the broad retention of jurisdiction contained in the Plan, which specifically includes suits by and against the PAT.  Ex. A, Plan art. XI; *see also* Ex. G, Order of Confirmation ¶ 37.  This reservation of jurisdiction reflects an understanding by both the parties and the Bankruptcy Court that claims brought by the PAT are necessarily closely related to the implementation of the Plan.  *See,*

*EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.)*, 352 B.R. 731, 738 (Bankr. D. Del. 2006)

("while the plaintiff cannot write its own jurisdictional ticket in the Plan, specifying the claims

that the plaintiff will bring after confirmation creates a closer nexus between those claims and

the bankruptcy case. . . .  As the Claims were manifestly contemplated by the Plan, litigating

them serves the implementation, consummation, and execution of the Plan, thereby creating a

greater nexus.") (alterations, citations and internal quotation marks omitted), abrogated on other

grounds by *In re Seven Fields Dev. Corp. v. Ernst & Young LLP*, No. 06-3658, 2007 WL 85905

(3d Cir. Oct. 24, 2007); *In re Fruehauf Trailer Corp.*, 369 B.R. at  827 (same).  At the very least,

the Trustee should be at pains to explain why, despite this clear language in the Plan, he has

repudiated his prior position that the federal courts have jurisdiction.

      More fundamentally, the connection between this suit and the bankruptcy is clear from

the factual allegations themselves.  The defendants here are named in this suit only because of

events underlying the bankruptcy.  According to the complaint, but for the alleged wrongful

transfers of funds from RCM to other Refco-related entities (for which defendants are blamed),

the named customers would not have suffered any damages and there most likely would not have

been a bankruptcy in the first place.  Compl. ¶¶ 5, 30-90.  *See In re WorldCom*, 293 B.R. at 321

(finding interrelatedness where named defendants present in suit because of events underlying

bankruptcy).

      As another relevant factor demonstrating the connection between this third-party suit and

the bankruptcy, RCM is absent as a defendant in this case only because of the bankruptcy.  *See*

*In re WorldCom*, 293 B.R. at 321 (citing this as a relevant factor).  Because of the bankruptcy

stay, these customers could not and did not sue RCM prior to confirmation, and were limited to

presenting claims in the bankruptcy.  As a result of the bankruptcy, the customers are now

enjoined from pursuing claims against RCM post-confirmation. *See* Ex. A, Plan at ¶ 10.4. The

bankruptcy therefore resulted in both the temporary and permanent absence of RCM as a

defendant in this case. Nevertheless, it is apparent from the complaint that, "despite [RCM's]

absence as a party, its conduct will remain at the heart of [Plaintiff's] litigation." *In re*

*WorldCom*, 293 B.R. at 321. That connection further supports a finding of "related to"

jurisdiction in this case.

> **B.    This Litigation Is "Related To" the Bankruptcy Because It Raises the Threshold Question Whether the Pending Claims Are Property of the Estate and Whether the Private Actions Trust Has Standing To Sue.**

In dispositive motions in this case, defendants will contend that the claims asserted by the

PAT belong to the estate, not to individual creditors. If any or all of the claims belong to the

Refco estate, then the PAT has no standing to bring them, and they should be dismissed. *See*

*Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986).

The court assuming jurisdiction over this action therefore will have to decide an issue

critically important to the estate: To whom does each of the pending claims rightfully belong?

Resolving that question will affect the potential value of the estate and the priority and recovery

of creditors. It is hard to conceive a more significant effect on the bankruptcy. *See Resolution*

*Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir. 1995) ("[T]he

power to prioritize distributions [among creditors] has long been recognized as an essential

element of bankruptcy law.").

Among the most important issues relating to any bankruptcy is determining what

property is (and is not) included in the estate. *See JP Morgan Chase Bank v. Altos Hornos de*

*Mex., S.A. de C.V.*, 412 F.3d 418, 426 (2d Cir. 2005) ("Bona fide questions of property

ownership . . . are antecedent to the distributive rules of bankruptcy administration because they

seek to determine whether an asset is actually part of the debtor's estate."). The Bankruptcy

Code defines the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (2000). Among these interests are causes of action in which the estate has a legal or equitable interest. *See Seward v. Devine*, 888 F.2d 957, 963 (2d Cir. 1989) (property of the estate includes "any causes of action possessed by the debtor").

Determining what claims are and are not property of the estate intimately affects the estate.[5] One of "the prime bankruptcy policies that pervades virtually every provision of the Code is that of 'equality of distribution among creditors,' and, conversely, one of the principal bankruptcy *bêtes noires* is the '"race of diligence" of creditors to dismember the debtor' before its assets are exhausted." *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1274 (5th Cir. 1983) (quoting H.R. Rep. No. 595, at 187 (1977)). If a claim is deemed property of the estate, the estate may pursue it for the equitable benefit of *all* creditors. By contrast, individual creditors cannot sue on estate claims for their personal benefit lest they receive an unlawful preference over other creditors. *See Cumberland Oil*, 791 F.2d at 1042 ("[11 U.S.C. § 541] has been construed to prevent individual shareholders and creditors from suing to enforce a right of the corporation when that corporation is in bankruptcy.") (citing cases).

Individual creditors and the estate cannot both assert estate claims, moreover, or the defendants will be subjected to the prospect of double recovery. *See, e.g., Jackson Nat'l Life Ins. Co. v. Ligator*, 949 F. Supp. 200, 203-07 (S.D.N.Y. 1996) (dismissing derivative claim seeking same damages as direct claim, citing danger of double recovery); *Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 949 (6th Cir. 1997) (Where only one recovery could be

---

[5]  Indeed, the issue is sufficiently fundamental to the bankruptcy case that it arguably is a "core" bankruptcy question. 28 U.S.C. § 157(b) (2000). In any event, to the extent issues presented here are proximate to core bankruptcy functions, this litigation certainly is "related to" the bankruptcy.

9

had, "[t]he estates' recovery takes precedence over [the creditor's]."). This risk is particularly

heightened where, as here, the Refco Litigation Trust is pursuing, in the Illinois action, precisely

the same claims on behalf of the estate that the PAT here asserts on behalf of selected creditors.

This Court need not make the determination on *this* motion whether the claims asserted

by the PAT in fact belong to the estate. What is significant for present purposes is that the court

exercising jurisdiction over this case will have to decide that substantial issue, which is

undeniably "related to" the bankruptcy. What follows is a preview of some of the arguments that

support a finding that the PAT's asserted claims in fact belong to the estate.

**1.    The PAT's claims are derivative and seek an unwarranted preference for individual creditors of RCM.**

According to the complaint, the individual defendants, allegedly aided by the

professional defendants, transferred funds from RCM to other Refco entities and, as a result of

those transfers, RCM was unable to meet its financial obligations to the named RCM customers.

*See* Compl. ¶¶ 5, 30-90. Assuming for purposes of this motion that these allegations are true,

they show that all losses suffered by the named customers are entirely derivative of losses

suffered by RCM. Under settled law, these claims are property of the estate, not of the

individual customers, and only the estate has standing to bring them.

The named FX Customers are but a subset of the RCM creditors who might claim losses

derivative of damages RCM allegedly suffered in the first instance. *See* Compl. ¶ 33 ("The

siphoning occurred with respect to all of RCM's customers"). None of the customers named

here can allege a "special injury" distinct from the injury to RCM or any other creditor. *See*

*Honigman*, 128 F.3d at 948 ("if [plaintiff] had slipped and fallen on a negligently maintained

floor at [defendant's] offices, he could recover irrespective of his status as [a creditor].

However, the estates' recovery here against [defendant] makes [plaintiff] whole in terms of the

10

loss caused by [defendant].”); *Jackson*, 949 F. Supp. at 205 (creditor retains individual right to sue only “where the plaintiff sustains a direct injury that is separate and distinct from the injury suffered by the corporation”).  To allow the named FX Customers to pursue these claims for their personal benefit would prioritize their interests over those held by other creditors in direct contradiction to the fundamental purpose of bankruptcy: to ensure an equitable distribution of assets among *all* creditors.

The Trustee cannot save these claims by arguing that the named former officers of RCM owed a duty of care directly to RCM currency exchange customers.  *See, e.g.*, Compl. ¶ 28.  A general duty to creditors *qua* creditors does not give individual creditors the right to pursue actions for their exclusive benefit in bankruptcy.  Rather, “[i]f a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee’s action.”  *St. Paul Fire & Marine Ins. Co. v. Pepsico Inc.*, 884 F.2d 688, 700-01 (2d Cir. 1989).  The only allegation of particularized injury made in this complaint depends on the assertion that RCM had a duty to maintain customer funds for the sole and specific purpose of servicing accounts belonging to the depositing customer.  *See, e.g.*, Compl. ¶¶ 22, 28.  Even if true, however,[6] these allegations identify only a general duty owed equally to all RCM customers—not a unique relationship between the individual defendants and each named customer that might entitle these customers to seek preference over other RCM customers.  Indeed the Bankruptcy Court, in an adversary proceeding in the Refco bankruptcy case, specifically concluded that an FX customer was not entitled to a constructive trust over the

---

[6]  Notably, this Court recently dismissed claims by similar FX customers based on highly similar allegations, for failure to plead facts sufficient to support the allegation that Refco officers owed these customers a duty of care. *Am. Fin. Int’l*, 05 Civ. 8988, 2007 WL 1732427 (S.D.N.Y. June 14, 2007).

11

proceeds in its account at RCM because "such a remedy[,] which effectively would prime those creditors[,] would be inequitable." *Kirschner v. Bencorp Casa de Bolsa, C.A. (In re Refco Inc.)*, Adv. Proc. No. 06-01745 (RDD), Judgment Ex. A at 129 (Bankr. S.D.N.Y. Dec. 29, 2006) (attached as Ex. I); *see also Manson v. Stacescu*, 11 F.3d 1127, 1130-31 (2d Cir. 1993) (because plaintiffs' injuries as creditors were solely a function of losses incurred by the company, "[i]f the Company were to recover its assets, the [plaintiffs'] injuries would be cured," and, therefore, plaintiffs did not have individual standing to sue).

Examination of the particular claims asserted by the PAT confirms that they are estate claims. The PAT alleges breach of fiduciary duty, fraud, and conversion by the individual defendants, and aiding and abetting all of the above by the professional defendants. The breach of fiduciary duty claims belong to the estate for the reasons discussed above: because the alleged breach affected the bankrupt entity and its creditors generally, not individual creditors individually. As this Court noted in dismissing similar claims in a parallel Refco action, "[u]nder New York law there is no fiduciary duty owed to the investing public, or to the customers of a corporation by a controlling shareholder, officer, or director of a corporation." *Am. Fin. Int'l Group-Asia*, 2007 WL 1732427 at * 4 (quoting *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* No. 97 Civ. 4978, 1999 WL 47223 at * 6 (S.D.N.Y. Jan. 28, 1999)). Even if there were such a duty, the claim for breach still would be an estate claim because the harm primarily injured RCM, and only derivatively the customers. "Breach of fiduciary duty by a corporation's officers or directors is usually a claim based on an injury which affects the corporation itself or all shareholders equally." *Airline Pilots Ass'n Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs, Inc.)*, 156 B.R. 414, 438, 439-40 (S.D.N.Y. 1993); *see also McCord v. Papantoniou*, 316 B.R. 113, 121-22 (E.D.N.Y. 2004) ("[C]laims for breach of fiduciary duty and

conversion concern the amount of property in the Debtor's estate available to creditors.").  The breach of fiduciary duty claims here are no exception; they are classic estate claims that cannot be usurped by individual creditors seeking a preference.

So too, the PAT's asserted fraud and conversion claims seek to redress the same alleged injury to RCM and all of its creditors.  While artfully pleaded, these claims are nothing more than repackaged claims for fraudulent conveyance, which the Bankruptcy Code reserves to the estate.  Plaintiff alleges that the named individual defendants caused property held by RCM to be transferred to other Refco entities and then to themselves for their own benefit at a time when RCM was insolvent and without RCM's receiving reasonably equivalent benefit or security.  *See* Compl. ¶¶ 27, 34.  These are the classic elements of a fraudulent conveyance claim.  *See* N.Y. Dr. & Cr. Law 10-270 ff.; Uniform Fraudulent Transfer Act § 4.  Under the Bankruptcy Code, such fraudulent conveyance claims specifically are reserved to the estate to bring for the benefit of all creditors.  *See* 11 U.S.C. § 548; *see also, e.g.*, 7 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy, §1109.5 (15th ed. 2007); *In re Ionosphere*, 156 B.R. at 439  ("The creditor of any bankrupt may allege that the prior dealings of other parties with the bankrupt rendered it insolvent; however, such a claim is for fraudulent conveyance properly brought by the Trustee"); *Nat'l Am. Ins. Co. v. Rupert Landscaping Co.,* 187 F.3d 439, 441 (4th Cir. 1999) (individual creditors denied standing when claims, even though not identical to fraudulent conveyance, share focus on improper and illegal conduct).

Plaintiff's attempt to restyle these fraudulent conveyance claims as independent fraud and conversion (and aiding and abetting) claims is unavailing.  "To allow selected creditors to artfully plead their way out of bankruptcy court would unravel the bankruptcy process and undermine an ordered distribution of the bankruptcy estate." *Nat'l  Am. Ins. Co.,* 187 F.3d at

442.  Like the breach of fiduciary duty claims, the "fraud" and "conversion"-based claims belong

to the estate.

> **2.    The Bankruptcy Plan specifically reserves the PAT's asserted claims to the estate, and the estate—through its purported assignee the Litigation Trust—is suing these same defendants to enforce them.**

Far from abandoning these claims to individual creditors, the Refco Plan itself expressly

reserves them to the estate.  Paragraph 5.10 of the Plan provides that "the Reorganized Debtors

and RCM shall retain all Retained Causes of Action notwithstanding the Confirmation of the

Plan and the occurrence of the Effective Date, to be administered and prosecuted after the

Effective Date pursuant to the terms of the Plan."  The term "Retained Causes of Action" is

defined at Paragraph 1.197 as "all of the Debtors' and RCM's claims, rights, actions, causes of

action, liabilities, obligations, suits . . . including, but not limited to, the Litigation Claims."  Ex.

A, Plan.  A "non-exclusive" list of these retained claims appears as Exhibit K to the Plan.  *See*

Ex. J.  Prominent on this list are actions against "professionals who provided services to the

Debtors and/or RCM prior to the Petition Date, as well as professionals who advised other

parties (including, but not limited to, insiders) in connection with prepetition transactions

involving the Debtors and/or RCM" and actions "against any and all former officers or insiders."

Appendix 2 to Exhibit K provides a list of the professionals against whom the estate has reserved

standing to bring claims.  That list includes Grant Thornton, Ernst & Young, and Mayer Brown,

defendants in this action.[7]  Given these specific Plan provisions, there is no question that the

claims here have been reserved to the estate.  *See Seinfeld v. Allen*, No. 02 Civ. 5018, 2005 WL

1231644 at * 4 (S.D.N.Y. May 25, 2005), *aff'd*, 169 F. App'x 47 (2d. Cir. 2006) (enforcing

bankruptcy plan language reserving specified claims to the estate).

---

[7]  A nearly identical definition of estate claims is found in Section 1 of the RCM Settlement Agreement, which also includes claims for "wrongful conversion of customer property" among those retained.

In fact, the estate, through the Litigation Trust as its purported assignee, is actually pursuing claims against these same defendants based on precisely the same alleged conduct and injury. In its lawsuit filed in Illinois, the Litigation Trust asserts several claims—including claims for fraud, breach of fiduciary duty and aiding and abetting—on behalf of the bankrupt RCM for allegedly "looting" RCM of its assets. Ex. K, LT Compl. ¶¶ 94-105, 349 ff. The allegedly "looted" assets include precisely the same funds the PAT seeks to recover in this action. *Id*. Both the estate and the creditors cannot assert the same claim. Here, if anyone can assert these claims, it is the estate (or its assignee, the Litigation Trust).[8]

For all of the above reasons, among others, the Removing Defendants intend to seek dismissal of the PAT's asserted claims in this action. Whether or not those motions ultimately prevail, however, their resolution will determine the contours of the bankruptcy estate and, therefore, will affect the ability of all creditors to receive equitable distributions. For this reason, this case implicates a central bankruptcy function and is "related to" the bankruptcy estate under 28 U.S.C. § 1334(b).

### C.    Success or Failure of the Private Actions Trust in This Litigation Will Affect the Estate and the Ability of Other Creditors To Collect by Virtue of the Relationship Between the Trusts.

The Trustee repeatedly insists that "no matter how much the Private Actions Trust recovers in the New York State Action, it will not impact in any way the distribution of estate property to Refco creditors." Pl.'s Mem. 10; *see also id*. at 1, 3, 4, 7-10. Repetition is no substitute for accuracy. In fact, success or failure in this action will impact the rights of the estate and its creditors in two very clear ways: (1) it will directly affect the potential recovery in

---

[8]    By pointing out that the claims belong to the estate, the Institutional Defendants do not intend to suggest that the estate is entitled to recover; nor do they waive any arguments or defenses they may have against the estate's claims – including without limitation arguments that the estate and the Litigation Trust are barred by principles of in pari delicto and/or the *Wagoner* Rule from bringing these claims.

15

the Litigation Trust's separate lawsuit, on behalf of the estate, for the same losses; and (2) it will either enable or preclude the repayment of loans owed by the PAT to the Litigation Trust.

First, as discussed above (*supra*, pp. 10, 12-13), the PAT and the Litigation Trust are *both* suing for the same losses.  Parties suing for the same injury cannot receive double recovery.  *See, e.g.*, *Associated Gen. Contractors, Inc.  v. Cal. State Council of Carpenters*, 459 U.S. 519, 544 (1983) (long-standing prohibition on derivative anti-trust claims motivated by risk of duplicate recoveries from common fund); *Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994) (in investor suit based on losses from broker's liquidation of investment account, damages awarded on multiple causes of action limited to value of account); *Mitsui & Co. v. Hudson Tank Terminals Corp.*, 790 F.2d 226 (2d Cir. 1986) (where both seller and buyer have right of action against bailee for damaged goods, and seller has sued and recovered full value of loss, prohibition on double recovery bars suit by buyer for same loss); Restatement (Second) of Judgments § 53 (1982) (where contracting party breaches joint obligation, judgment in action by one obligee precludes subsequent action by second obligee seeking recovery of the same shared loss).  Because there can be no double recovery, any success achieved by the PAT necessarily will diminish the recovery available to the Litigation Trust—and vice versa.

Second, the PAT is funded by loans from the Litigation Trust.  *See* PAT Agreement at 1.6.  Because the PAT has no other source of income than loans from the Litigation Trust and the proceeds of litigation, its ability to repay those loans depends on its success or failure in this and any other litigation it may bring.  Repayment or non-repayment of these loans affects the bankruptcy because it affects the assets of the Litigation Trust and, therefore, creditor recoveries through the Litigation Trust.  Ex. L, LT Agreement at 3.4, 6.1-6.4.  *See Beightol v. UBS Painewebber (In re Global Crossing, Ltd. Sec. Litig.)*, 311 B.R. 345, 347 (S.D.N.Y. 2003)

NY:1148094.1

(Lynch, J.); *accord Bondi v. Grant Thornton, Int'l (In re Parmalat)*, 322 B.R. 44, 47 (S.D.N.Y. 2005) (endorsing view that actions by Italian equivalent of bankruptcy trustee against former professional advisors of debtor are "related to" the bankruptcy because "the outcome of this action might have a conceivable effect on the [debtors'] estates by adding to their assets"); *In re WorldCom*, 293 B.R. 323 (contribution claims by defendants against debtor render action "related to" bankruptcy in light of "potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors").

Given the inherent link between PAT litigation and the amount of estate assets available for distribution to other creditors, this action is "related to" the bankruptcy, providing this Court with original jurisdiction under § 1334(b).

### D.    Grant Thornton's Claim for Contribution Will Impact the Estate.

Grant Thornton's pending claim for contribution against the estate provides an independent basis for "related to" jurisdiction. The proofs of claim filed by Grant Thornton include, among other things, contribution for damages to third parties in cases related to Refco's fraud.[9] Those claims are still pending in the bankruptcy court, having been adjourned without date so that they may be liquidated in the various lawsuits involving Grant Thornton. *See* Ex. M. If the Trustee were to succeed on his claims in this case, Grant Thornton would seek contribution for that liability through its pending proofs of claim. On the other hand, if Grant Thornton were to defeat the Trustee's claims, that too would impact distributions from the estate by leaving a greater portion for other creditors. In short, the outcome in this case will almost certainly affect

---

[9] Grant Thornton filed proofs of claim against the Debtors in July 2006, seeking at least $3,042,804.23. The claims include (i) fees for services rendered by Grant Thornton before the petition date (Claim ¶ 2); (ii) indemnification under contract for costs and fees associated with responding to the inquiries of certain regulatory agencies regarding Refco's financial statements (Claim ¶¶ 4-5); and (iii) a broad assertion of contribution rights. Grant Thornton amended its claims on March 16, 2007 to specify additional fees and costs it incurred since its original proofs of claim were filed. Currently, the claims total $4,356,371.30, plus amounts yet to be determined. All the claims remain pending in the bankruptcy court. *See* Ex. N.

17

distributions from the estate—which is more than enough to meet the "any-conceivable-effect"
test for "related to" jurisdiction. *In re Cuyahoga*, 980 F.2d at 114.

Courts in this District repeatedly have held that a claim for contribution against a
bankruptcy estate renders the lawsuit giving rise to the contribution claim "related to" the
bankruptcy. *See Hesselman v. Arthur Anderson, LLP (In re Global Crossing Sec. Litig.),* No. 02
Civ. 910, 2003 WL 21659360, at *1 n.2 (S.D.N.Y. July 15, 2003) (Lynch, J.); *In re WorldCom*,
293 B.R. at 318-320; *In re Global Crossing*, 311 B.R. at 347; *In re Adelphia Commc's Corp.
Sec. & Derivative Litig.*, 04 Civ. 4967, 2005 WL 1026559, at *5 (S.D.N.Y. May 2, 2005). "In
determining whether potential claims by third party defendants against the debtor for either
indemnification or contribution give rise to 'related to' jurisdiction over litigation to which the
debtor is not a party, courts in this Circuit, particularly since *In re Cuyahoga*, have generally
found jurisdiction where there is a 'reasonable' legal basis for the claim." *In re WorldCom*, 293
B.R. at 318 (collecting cases).

If the Trustee succeeds in holding Grant Thornton liable in this case, Grant Thornton's
claim for contribution based on that liability would easily meet the "reasonable basis" test. The
Trustee's claims are all based on the allegation that Refco insiders engaged in an elaborate fraud
so that Refco would remain alive and thriving. These claims are intertwined with Grant
Thornton's own claim for contribution based on Refco's wrongdoing. *In re WorldCom*, 293
B.R. at 321 (contribution claim had reasonable basis where defendants' liability would depend
on finding that debtor engaged in wrongful conduct). Under the circumstances, Grant Thornton
has at least a "reasonable" legal basis for its contribution claim—which is enough to link this
lawsuit to the bankruptcy.

NY:1148094.1

In the *WorldCom* case, Judge Cote found "related to" jurisdiction under remarkably similar facts. WorldCom's collapse spawned a bankruptcy and complex litigation relating to the company's fraud. One such lawsuit was filed in state court by a group of pension plans, seeking damages against WorldCom's former officers, directors, underwriters and accountants. After removal, Judge Cote found that the lawsuit would have at least a "conceivable effect" on the WorldCom bankruptcy, by virtue of the underwriters' pending proofs of claim, and accordingly "related to" jurisdiction attached. 293 B.R. at 318, 321 ("the conduct of WorldCom and the [] defendants was indisputably intertwined, [and] the theories of liability pressed by [plaintiff] are necessarily interconnected with the [] Defendants' rights to contribution.").

This Court reached a similar result in *Global Crossing*, which also involved a complex bankruptcy and a series of lawsuits alleging fraud. While various actions were pending in federal court, two individuals filed state court actions against their stockbrokers and against Global Crossing's founder. This Court found "related to" jurisdiction, holding that "as in *WorldCom*, the possibility that litigation against an officer of a bankrupt corporation could lead to a claim against the corporation for contribution based on the wrongdoing of other corporate employees would certainly have a 'conceivable effect' on the bankrupt estate." *In re Global Crossing*, 311 B.R. at 347; *see also In re Adelphia*, 2005 WL 1026559, at *5 (finding "related to" jurisdiction based on possibility of contribution).[10]

---

[10]   Tellingly, the Trustee ignores these cases and relies almost exclusively on case law from outside this District. *See* Remand Mot. 8. These cases are inapposite. In *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 384 (3d Cir. 2002), the Third Circuit rejected a "related to" jurisdiction argument based on indemnification claims that might not have accrued yet. Here, by contrast, the governing law holds that pending contribution claims may render a third-party suit "related to" the bankruptcy. The Trustee also cites *Ret. Sys. of Ala.  v. J.P. Morgan Chase & Co.*, 285 B.R. 519, 529 (M.D. Ala. 2002), in which the court held that a proof of claim for indemnification against WorldCom was insufficient to create "related to" jurisdiction. Judge Cote rejected this authority in her own *WorldCom* decision. 293 B.R. at 324. The Trustee's reliance on *Falise v. Am. Tobacco Co.*, 241 B.R. 48, 52 (E.D.N.Y. 1999), is similarly misplaced. The *Falise* court held that a lawsuit by a litigation trust was not "related to" any bankruptcy where the lawsuit would have no effect on the administration, property, or distributions of the estate. For the

This case is no different.  Here—as in *WorldCom* and *Global Crossing*—a defendant has a claim for contribution against the estate based on the same underlying corporate fraud for which it now faces third-party claims.  The fact that further litigation may be required for Grant Thornton to collect on its contribution claim does not change the analysis.  *See In re Worldcom*, 293 B.R. at 322 (rejecting argument that any claim for contribution or indemnification must be reduced to judgment to provide a basis for jurisdiction); *In re Adelphia*, 2005 WL 1026559, at *5 ("[I]ndemnification claims against Adelphia are to be litigated ultimately in, presumably the bankruptcy court, but not now on a remand motion.").  In short, Grant Thornton's claim has at least a "reasonable basis."  For purposes of defeating a remand motion, nothing more is required.[11]

The connection between this lawsuit and the estate is clear even from the Trustee's own arguments.  The Trustee contends that if Grant Thornton is found liable here, its contribution claims will be equitably subordinated and "will therefore have no actual impact whatsoever on the amount of property available for distribution to Refco creditors."  Remand Mot. at 9.  Of course, Grant Thornton in no way concedes that a finding of liability here would support equitable subordination.  But the Trustee's argument on this point concedes that the outcome here may drive the disposition of pending claims against the estate, at least to some extent.  Thus even the Trustee cannot seriously deny this suit's potential impact on the estate—an impact that is more than sufficient to support "related to" jurisdiction.

---

reasons discussed in this brief, that is not the case here.  In addition, the bankruptcy plan in *Falise* preserved jurisdiction only over "minor matters," whereas Refco's Plan does so far more broadly, encompassing the claims here.  *See supra* p. 4.

[11]  The Trustee also suggests that there can be no "related to" jurisdiction here because Refco's plan of reorganization has already been confirmed.  Remand Mot. 10.  This Court rejected that argument in the *Global Crossing* litigation.  *See Nachom v. Citigroup, Inc. (In re Global Crossing, Ltd. Sec. Litig.)*, 02 Civ. 910, 03 Civ. 4521, 2003 WL 22705127, at *1 (S.D.N.Y. Nov. 13, 2003) ("Contrary to plaintiff's suggestion, bankruptcy jurisdiction is not cut off the moment a plan of reorganization is confirmed, nor is the analysis under § 1334 of whether a case is 'related to' the bankruptcy proceedings otherwise modified.").

NY:1148094.1

**E.    Indemnification Claims by the Individual Defendants Against Insurance Policies Belonging to Refco Provide a Further Basis for Jurisdiction.**

The indemnification claims asserted by the individual defendants provide another connection between this lawsuit and the bankruptcy.  Several months ago, Phillip Bennett and Robert Trosten (defendants here) initiated an adversary proceeding in the Bankruptcy Court seeking access to Refco's liability insurance policies to cover their fees and expenses in defending against the various Refco-related civil and criminal proceedings.  Judge Drain held that they were entitled to coverage under these policies, which cover defense costs and any damages, settlements, or judgments that an insured person or the company is legally obligated to pay.  *See Axis Reinsurance Co. v. Bennett et al.*, Adv. Proc. 07-01712 (RDD) (Bankr. S.D.N.Y. Oct. 19, 2007) (appeal pending) (attached at Ex. O).  According to the Refco Plan Administrator, the insurance policies at issue are property of the Refco estate, and the recovery of costs and fees by the individual defendants under these policies will impact the estate by decreasing the amount available to other potential claimants:

> [W]ith respect to the recoveries, for example, that may be achieved by Mr. Bennett, the only thing that's doing is really reducing availability of insurance proceeds for other people who do have claims and whose claims would be reduced if they were able to receive insurance proceeds.

Tr. Sept. 11, 2007 Hr'g 06-50005 (RDD), Adv. Proc. 07-01712, at 39-40 (Ex. P); *see also* Plan § 5.9 (policies remain property of debtors) (Ex. A).

Like Grant Thornton's claims for contribution, these claims for indemnification provide a direct link between this lawsuit and the estate's assets.  *See Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 371 (Bankr. S.D.N.Y. 1998) (finding "related to" jurisdiction over state-law claims that would "affect property available for distribution to creditors of the bankruptcy estate through the proceeds of either the Directors and Officers' liability insurance coverage or if the [directors] are personally liable"); *see also*

21

*Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 560-61 (1st Cir. 1986) (debtor's liability insurance policy and proceeds remain part of estate). Thus these claims too are sufficient to confer "related to" jurisdiction with respect to this lawsuit.

## II.    ABSTENTION IS NEITHER MANDATORY NOR APPROPRIATE HERE.

The Trustee has failed to justify abstention in this case. As an initial matter, his motion is a motion for *remand*—not for mandatory or permissive abstention under Section 1334(c). *See In re Parmalat*, 322 B.R. at 49 ("A motion to abstain is a prerequisite to a decision to abstain under Section 1334(c)(2)."). But even assuming it is properly before the Court, the Trustee's request should be denied. The statute does not require abstention, and the Trustee has not articulated any good reason for separating this suit from the many related suits now pending before this Court.

### A.    Mandatory Abstention Does Not Apply Because the Case Could Not Be "Timely Adjudicated" Apart from the Rest of the Refco Litigation.

Abstention over claims that are "related to" a bankruptcy is mandatory only if, among other things, the moving party demonstrates that the action can be "timely adjudicated" in state court. 28 U.S.C. § 1334(c)(2). The burden is on the Trustee to establish that the matter can be "timely adjudicated." *See, e.g.*, *In re WorldCom*, 293 B.R. at 331. Under the circumstances here, the Trustee has not and cannot carry that burden.[12]

A state court action cannot be timely adjudicated—and thus mandatory abstention does not apply—where it is "but one piece of a much larger, extremely complex litigation puzzle" dominated by parallel federal actions that raise similar issues of fact and law and require overlapping discovery. *In re Parmalat*, 322 B.R. at 50. As this Court recently explained,

---

[12]   The statute also limits mandatory abstention to cases that do not present "core" bankruptcy issues. *See* 28 U.S.C. § 1334(c)(2). As discussed above, resolution of the Trustee's claims will require deciding whether they belong to the estate—an issue that is arguably "core" and would preclude mandatory abstention. *See supra* n. 5.

NY:1148094.1

> § 1334(c)(2) is intended to require federal courts to defer to the state courts to handle lawsuits which, although "related to" a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court. Far from promoting "timely adjudicat[ion]" of plaintiffs' claims, to remand here would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court.

*In re Global Crossing*, 311 B.R. at 349 (alteration in original). Other courts in this District have reached the same result, concluding that mandatory abstention did not apply in massive litigation arising out of other corporate collapses. *See, e.g.*, *In re Parmalat*, 322 B.R. at 51; *In re WorldCom*, 293 B.R. at 331.

In terms of its scope and complexity, the similarity between the Refco litigation and the litigation involving Parmalat, WorldCom, and Global Crossing is undeniable. As this Court is well aware, there are now dozens of cases relating to the fraud at Refco. Some of these have been formally consolidated; nearly all have been assigned to this Court and are proceeding on a coordinated basis. Like many others, this action asserts claims for fraud and breach of fiduciary duty against former officers of Refco and also seeks to impose liability on Refco's professional advisors. Thus this case raises the same facts and will call for the same discovery as the other federal lawsuits.

Under these circumstances, dispersing the pieces of this complex puzzle among different courts "would simply complicate and slow down the resolution of those claims, as well as of . . . matters already pending before this Court." *In re Global Crossing*, 311 B.R. at 349. Mandatory abstention therefore has no application in this case.[13]

---

[13] Given the difficulty of litigating this matter separately from the rest of the Refco litigation, the Trustee cannot establish "timely adjudication" simply by asserting that the case would be assigned to the Commercial Division,

NY:1148094.1

**B.** **For the Same Reasons, Permissive Abstention Would Be Inappropriate Here.**

The same analysis counsels against permissive abstention in this case. "Because district courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' there is a presumption in favor of the exercise of federal jurisdiction and against abstention." *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). The decision whether to abstain or remand on equitable grounds depends on a number of factors, including:

> (1) whether issues of state law predominate; (2) whether judicial economy would be served by abstention or equitable remand; (3) whether § 1334(b) is the sole basis for exercising federal jurisdiction; (4) whether the proceeding involves non-debtors; (5) "the degree of relatedness or remoteness of the proceeding to the main bankruptcy case"; and (6) the likelihood that the proceeding was commenced in a particular forum because of forum shopping on the part of one of the parties.

*Id.* (quoting *In re WorldCom*, 293 B.R. at 332). Given these factors, it would be not only inappropriate but highly inequitable to separate this case from the related cases already pending in this Court.

In terms of judicial economy, there is only one possible result here. Litigating this case along with the rest of the Refco litigation would conserve the resources of both the courts and the parties. *In re Global Crossing,* 311 B.R. at 350 (denying permissive abstention and equitable remand because "the desirability of maintaining all these actions in one forum clearly militates against any such action"); *ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc's Corp.)*, 285 B.R. 127, 145 (Bankr. S.D.N.Y. 2002) ("There is no good reason . . . to decide identical or nearly identical issues in two separate courts."). Indeed, the Trustee's

---

which supposedly handles cases on a "fast-track basis." Remand Mot. at 15; Juman Decl. ¶ 5. Whether or not the Commercial Division moves quickly in resolving the average case, its adjudication of this case could not possibly be "timely" if the case remains separate from the rest of the Refco litigation that this Court is coordinating. Moreover, in respect to timely adjudication, a "naked assertion is inadequate to carry the point." *In re WorldCom*, 293 B.R. at 331. That is all the Trustee has offered here.

24

decision to file in state court—despite the fact that the Plan giving rise to his powers specifically reserved federal jurisdiction over this suit—can only be described as forum shopping.

Under the circumstances, none of the other factors can overcome the tremendous efficiency to be gained by keeping these matters together. Although this case does indeed assert only state law claims, they are neither novel nor complex, so this factor is of minor significance. *See Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.*, No. 95 Civ. 0277, 1995 WL 489711, at *7 (S.D.N.Y. Aug. 15, 1995); *In re Adelphia*, 285 B.R. at 145 (although issues of state law predominated, this was only "a modest factor" favoring abstention and was outweighed by factors against abstention). And while this lawsuit does purport to assert the claims of non-debtors, it was brought by a trust created by the Bankruptcy Court as part of the Plan and, for the reasons discussed above, will almost certainly have an impact on the distribution of assets from the estate.[14] In short, none of the Trustee's arguments justify abstention, particularly in light of the overwhelming efficiencies to be gained by litigating this case along with the related Refco cases pending before this Court.[15]

## CONCLUSION

For the foregoing reasons, the Removing Defendants respectfully request that the Court deny Plaintiff's Motion to Remand.

---

[14] Notably, the only other case the Trustee cites that relates to a "Private Actions Trust" was not decided under the law of this Circuit and, in any case, can be distinguished on its facts. *See* Remand Mot. at 17 (citing *In re Federalpha Steel LLC*, 341 B.R. 872, 883 (Bankr. N.D. Ill. 2006)). The bankruptcy plan in *Federalpha* did not provide for the continuation of the bankruptcy estate—unlike the Plan here—and there was no possibility that the outcome of that case would impact the disposition of assets from the estate.

[15] Discovery is proceeding apace in most of these lawsuits. Thus the Trustee cannot seriously complain that his case may be impaired by a stay of discovery that may still be in effect in one or more of the lawsuits brought under the federal securities laws. *See* Remand Mot. at 15-16.

Dated: November 16, 2007
          New York, New York

                              Respectfully submitted,


                              By:_____/s/_____
                              David E. Mollón
                              Steven M. Schwartz
                              WINSTON & STRAWN LLP
                              200 Park Avenue
                              New York, NY 10166-4193

                              Of counsel:
                                  Bradley E. Lerman
                                  Linda T. Coberly
                                  Catherine W. Joyce
                                  WINSTON & STRAWN LLP
                                  35 W. Wacker Drive
                                  Chicago, IL 60601-9703

                              *Attorneys for Grant Thornton LLP*

Dated: Washington, D.C.
       November 16, 2007

                              WILLIAMS & CONNOLLY LLP

                    By:    _____
                           John K. Villa
                           Michael S. Sundermeyer
                           Craig D. Singer
                           Thomas G. Ward
                           725 Twelfth Street, N.W.
                           Washington, D.C.  20005
                           Tel: (202) 434-5000
                           Fax: (202) 434-5029

                           *Attorneys for Defendant Mayer Brown LLP*

Respectfully submitted,

CLIFFORD CHANCE US LLP

By: _____

Joel M. Cohen
Anthony M. Candido
Timothy Casey
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Tel:(212) 878-8000
Fax:(212) 878-8375

*Attorneys for the*
*UK Limited Liability Partnership*
*Mayer Brown International LLP*