UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
In re:                                            :          Chapter 11
                                                  :
Refco Inc., et al.,                               :          Case No. 05-60006 (RDD)
                                                  :
                              Debtors.            :          (Jointly Administered)
                                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE MODIFIED JOINT CHAPTER 11 PLAN OF REFCO INC. AND CERTAIN OF ITS DIRECT AND INDIRECT SUBSIDIARIES

WHEREAS, (i) Refco Inc. ("Refco" or the "Company") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),[1] (ii) the Official Committee of Unsecured Creditors of Refco Inc., et al. (the "Creditors' Committee"), (iii) the Additional Committee of Unsecured Creditors of Refco Inc., et al. (the "Additional Committee" and, together with the Creditors' Committee, the "Committees"), and (iv) Marc S. Kirschner, the chapter 11 trustee for Refco Capital Markets, Ltd. (the "RCM Trustee" and, collectively with the Debtors and the Committees, the "Plan Proponents") filed the Disclosure Statement With Respect to the Joint Chapter 11 Plan of Refco Inc. and Certain of Its Direct and Indirect Subsidiaries dated as of October 20, 2006 (the

---

[1] The following entities are Debtors in these Chapter 11 Cases: Bersec International LLC; Kroeck & Associates, LLC; Lind-Waldock Securities LLC; Marshall Metals, LLC; New Refco Group Ltd., LLC; Refco Administration, LLC; Refco Capital Holdings, LLC; Refco Capital LLC; Refco Capital Management, LLC.; Refco Capital Trading LLC; Refco Finance Inc.; Refco Financial, LLC; Refco Fixed Assets Management, LLC; Refco F/X Associates, LLC; Refco Global Capital Management LLC; Refco Global Finance Limited; Refco Global Futures, LLC; Refco Global Holdings, LLC; Refco Group Ltd., LLC; Refco Inc.; Refco Information Services, LLC; Refco Managed Futures, LLC; Refco Mortgage Securities, LLC; Refco Regulated Companies, LLC; Summit Management, LLC; and Westminster-Refco Management LLC.  Refco Capital Markets, Ltd. is a debtor in these chapter 11 cases, and is included within the definition of "Debtor" in this Order, but not a debtor-in-possession.

"Disclosure Statement")[2] and the Joint Chapter 11 Plan of Refco Inc. and Certain of Its Direct

and Indirect Subsidiaries dated as of October 20, 2006, as modified by the Modified Joint

Chapter 11 Plan of Refco Inc. and Certain of Its Direct and Indirect Subsidiaries dated December

4, 2006 (as subsequently amended, modified or supplemented, the "Plan"); and

WHEREAS, following the hearing to approve the Disclosure Statement held on

October 16, 2006 (the "Disclosure Statement Hearing"), the Court entered an Order Under 11

U.S.C. §§ 105, 502, 1125, 1126 and 1128 and Fed. R. Bankr. P. 2002, 3003, 3107, 3018 and

3020 (A) Scheduling Hearing on Confirmation of Plan; (B) Establishing Deadlines and

Procedures for (I) Filing Objections to Confirmation of Plan, (II) Claim Objections, and (III)

Temporary Allowance of Claims for Voting Purposes; (C) Determining Treatment of Certain

Unliquidated, Contingent or Disputed Claims for Notice, Voting and Distribution Purposes; (D)

Setting Record Date; (E) Approving (I) Solicitation Packages and Procedures for Distribution, (II)

Form of Notice of Hearing on Confirmation and Related Matters, and (III) Forms of Ballots; (F)

Establishing Voting Deadline and Procedures for Tabulation of Votes; and (G) Granting Related

Relief (the "Disclosure Statement Order"); and

WHEREAS, the Plan Proponents filed on December 12, 2006, the Certification of

Jane Sullivan With Respect to the Tabulation of Votes on the Joint Chapter 11 Plan of Refco Inc.

and Certain of Its Direct and Indirect Subsidiaries (the "Sullivan Certification") and the

Certification of Brian Osborne of Omni Management Group, LLC With Respect to the

Tabulation of Votes on the Joint Chapter 11 Plan of Refco Inc. and Certain of Its Direct and

---

[2]    Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms
in the Plan, a copy of which is annexed hereto as Exhibit A.  Any term used in the Plan or this Confirmation
Order that is not defined in the Plan or this Confirmation Order (defined below), but that is used in the
Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code
or the Bankruptcy Rules.

Indirect Subsidiaries (the "Osborne Certification", and together with the Sullivan Certification, the "Voting Certifications"); and

WHEREAS, the Court established December 15, 2006 at 10:00 a.m. (Eastern Time) as the date and time of the hearing pursuant to section 1129 of the Bankruptcy Code to consider Confirmation of the Plan (the "Confirmation Hearing"); and

WHEREAS, affidavits of service have been executed by and filed with the Court (the "Affidavits of Service"), with respect to the mailing of a notice of the Confirmation Hearing and the other solicitation materials in respect of the Plan in accordance with the Disclosure Statement Order; and

WHEREAS, affidavits of publication have been filed with the Court (the "Affidavits of Publication") with respect to the publication of the notice of the Confirmation Hearing in the national and global editions of <u>USA Today</u>, <u>The Wall Street Journal</u>, <u>The Financial Times</u>, and the national edition of <u>The New York Times</u>, the <u>Times of London</u>, and the <u>Singapore Straits Times</u>; and

WHEREAS, the Plan Proponents caused the Disclosure Statement, and the appropriate form of Ballot (the Disclosure Statement, the Plan and the Ballot, collectively, the "Solicitation Materials") to be distributed to the Holders of the following Claims to solicit votes to accept or reject the Plan: (i) with respect to the Contributing Debtors, Class 4 Senior Subordinated Note Claims, Class 5(a) Contributing Debtors General Unsecured Claims, Class 5(b) Related Claims and Class 6 RCM Intercompany Claims, (ii) with respect to FXA, Class 4 FXA Senior Subordinated Note Claims, Class 5(a) FXA General Unsecured Claims, Class 5(b) Related Claims and Class 6 FXA Convenience Claims, and (iii) with respect to RCM, Class 3 RCM FX/Unsecured Claims, Class 4 RCM Securities Customer Claims, Class 5 RCM Leuthold

3

Metal Claims, Class 6 RCM FX/Unsecured Convenience Claims, Class 7 RCM Securities Customer Convenience Claims and Class 8 Related Claims against RCM (collectively, the "Holders of Impaired Claims"); and

WHEREAS, the Plan Proponents filed with the Court certain exhibits to the Plan on November 27, 2006 (as subsequently amended, modified or supplemented, the "Exhibits")

WHEREAS, 16 objections to Confirmation of the Plan (the "Objections") were filed and served; and

WHEREAS, the Plan Proponents filed the Memorandum of Plan Proponents in Support of Confirmation of the Modified Joint Chapter 11 Plan of Refco, Inc. and Certain of Its Subsidiaries (the "Memorandum") on December 11, 2006; and

WHEREAS, the Confirmation Hearing was held on December 15, 2006 at 10:00 a.m. (Eastern Time); and

WHEREAS, based upon the legal authority set forth in the Memorandum and the record of the Confirmation Hearing, including the Court's bench rulings the Objections that have not been consensually resolved are overruled on the merits pursuant to this order (the "Confirmation Order").

NOW, THEREFORE, the Court having reviewed the Plan, the Disclosure Statement, the Disclosure Statement Order, the Voting Certifications and the December 14, 2006 Supplement thereto )the "Supplement"), the Affidavits of Service, the Affidavits of Publication, the Objections, the Memorandum and the other papers before the Court in connection with the confirmation of the Plan; the Court having heard the statements of counsel in support of Confirmation at the Confirmation Hearing, as reflected in the record at the Confirmation Hearing; and the Court having considered all testimony presented and evidence admitted at the

4

Confirmation Hearing and the representations by the parties on the record with respect to certain settlements, clarifications and non-material modifications of the Plan; the Court having taken judicial notice of the papers and pleadings on file in these Chapter 11 Cases; and the Court finding that (i) notice of the Confirmation Hearing and the opportunity of any party in interest to object to Confirmation were adequate and appropriate, in accordance with Bankruptcy Rule 2002(b) and the Disclosure Statement Order, as to all parties to be affected by the Plan and the transactions contemplated thereby and (ii) the legal and factual bases set forth at the Confirmation Hearing and as set forth in this Confirmation Order establish just cause for the relief granted herein; the Court hereby makes the following Findings of Fact, Conclusions of Law and Order.[3]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a)).  This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.    Plan Modification.  On December 4, 2006, the Plan Proponents filed a modification (the "Modification") to the Plan and served such Modification on the master service list, the Bankruptcy Rule 2002 service list and all parties that filed an Objection to the Disclosure

---

[3]    Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

Statement and/or the Plan.  The Modification does not materially adversely affect or change the treatment of any Holders of Claims or Interests.  Accordingly, pursuant to Bankruptcy Rule 3019, the Modification does not require additional disclosure under section 1125 of the Bankruptcy Code or re-solicitation of acceptances or rejections under section 1126 of the Bankruptcy Code, nor does the Modification require that Holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.  Disclosure of the Modification in the filing and service on December 4, 2006 and in the record at the Confirmation Hearing constitutes due and sufficient notice thereof under the circumstances of the Chapter 11 Cases.

C.    Judicial Notice.  This Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Cases.

D.    Burden of Proof.  The Plan Proponents have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

E.    Transmittal and Mailing of Materials; Notice.  The Solicitation Materials were transmitted and served upon all interested parties in compliance with the Disclosure Statement Order and in compliance with the Bankruptcy Rules, and such transmittal and service was adequate and sufficient.  Notice of the Confirmation Hearing and all deadlines in the Disclosure Statement Order was given in compliance with the Bankruptcy Rules and the Disclosure Statement Order and was good and sufficient notice in accordance with Bankruptcy

Rules 2002(b) and 3020(b)(2), and no other or further notice is required. Votes for acceptance or rejection of the Plan were solicited in good faith, after transmittal of a disclosure statement containing adequate information, and otherwise in compliance with Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017 and 3018.

F.     Impaired Classes Voting to Accept the Plan. As evidenced by the Voting Certifications and suplement, which certified both the method and results of the voting, Classes 4, 5 and 6 of each of the Contributing Debtors, FXA Classes 4 and 6 and RCM Classes 3, 4, 5, 6, 7, and 8 are each impaired and have each voted to accept the Plan pursuant to the requirements of sections 1124 and 1126 of the Bankruptcy Code. Thus, at least one impaired class of Claims has voted to accept the Plan in respect of each Debtor.

G.     Classes Deemed To Accept the Plan. Classes 1, 2 and 3 of each of the Contributing Debtors and FXA as well as RCM Classes 1 and 2 are not impaired under the Plan and are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.

H.     Classes Voting to Reject the Plan or Deemed to Reject the Plan. Holders of Class 7 Subordinated Claims against one or more of the Contributing Debtors and Class 8 Old Equity Interests, Holders of Class 7 FXA Subordinated Claims against FXA and Holders of Class 9 RCM Subordinated Claims against RCM are deemed to have rejected the Plan (the "Rejecting Classes") pursuant to section 1126(g) of the Bankruptcy Code because such Holders are not entitled to receive or retain any Distribution or property under the Plan on account of such Claims or Interests. Holders of FXA Class 5(a) Claims voted to reject the Plan (while the numerosity requirement of section 1126(c) was satisfied, the requirement that at least two-thirds in voting amount of allowed claims in a class vote to accept the Plan was not satisfied).

7

I.    Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The

Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section

1129(a)(1) of the Bankruptcy Code.

(i)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  In

addition to Administrative Claims and Priority Tax Claims, which need not be classified,

the Plan designates separate Classes of Claims and Interests for each of the twenty-seven

(27) Debtors, with such Debtors categorized into one of three (3) groups, including the

Contributing Debtors, FXA and RCM.[4]  The Claims and Interests placed in each Class

are substantially similar to other Claims and Interests, as the case may be, in each such

Class.  Valid business, factual and legal reasons exist for separately classifying the

various Classes of Claims and Interests created under the Plan, and such Classes do not

unfairly discriminate between Holders of Claims and Interests.  Thus, the Plan satisfies

sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).

Articles II and III of the Plan specify that the following classes are unimpaired under the

Plan—Contributing Debtors Classes 1, 2, and 3; FXA Classes 1, 2 and 3; and RCM

Classes 1 and 2—thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(iii)    Specify Treatment of Impaired Classes (11 U.S.C. §

1123(a)(3)).  Articles II and III of the Plan designate the following classes as impaired

under the Plan—Contributing Debtors Classes 4, 5(a), 5(b), 6, 7 and 8;  FXA Classes 4,

5(a), 5(b), 6 and 7;  RCM Classes 3, 4, 5, 6, 7, 8 and 9—and specify the treatment of

---

[4]    In addition, the Plan creates sub-Classes corresponding to each of the Contributing Debtors for Class 4 Senior
Subordinated Note Claims, Class 5(a) General Unsecured Claims and Class 5(b) Related Claims.

Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)     No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)     Implementation of Plan (11 U.S.C. § 1123(a)(5)).  Article V of the Plan, entitled "Means for Implementation of the Plan," sets forth numerous provisions to facilitate implementation of the Plan, including, but not limited to, (i) the continued corporate existence and dissolution of the Reorganized Debtors, (ii) the filing of corporate governance documents that will govern the Reorganized Debtors after the Effective Date; (iii) the designation of directors, managers and officers of the Reorganized Debtors; (iv) the designation of the Plan Administrator pursuant to section 5.5 of the Plan and the Plan Administrator Agreement; (v) the administration of post-Confirmation RCM; (vi) the creation of a Litigation Trust pursuant to the Litigation Trust Agreement; (vii) the creation of a Private Actions Trust in accordance with the terms set forth in the Private Actions Trust Agreement; (viii) the preservation of certain rights of action by the Reorganized Debtors; (ix) the dissolution of the Committees and creation of a Plan Committee; (x) the role of the Fee Committee subsequent to the Confirmation Date; (xi) the cancellation of existing securities and agreements;  (xii) ensuring that the Plan will not impair the Examiner's investigation and the filing of the Examiner's report in accordance with the provisions of the Examiner Order and the additional directions

given by this Court at the June 21, 2006 hearing; and (xiii) the sources of Cash available

for Plan Distribution.  The Plan provides adequate and proper means for its

implementation, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(vi)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

Section 5.3 of the Plan provides that the corporate governance documents of Reorganized

Refco and Reorganized FXA, inter alia, shall be restated to prohibit the issuance of non-

voting equity securities to the extent required by the Bankruptcy Code.  In addition, to the

extent the Plan Administrator decides it necessary, the corporate governance documents

of the Affiliate Debtors that will continue in existence following the Effective Date

pending the wind up of their businesses shall be restated to prohibit the issuance of non-

voting equity securities to the extent required by the Bankruptcy Code.  The form of each

restated corporate governance document attached as Exhibit C to the Plan includes a

provision prohibiting the issuance of non-voting equity securities.  Thus, the

requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(vii)    Selection of Officers, Directors and the Trustee (11 U.S.C. §
1123(a)(7)).  Pursuant to Section 5.4 of the Plan, the Plan Administrator shall serve as the

sole officer and director or manager of the Reorganized Debtors and the RCM Trustee

shall serve as the sole representative of RCM.  This manner of selection satisfies section

1123(a)(7) of the Bankruptcy Code because the Plan Administrator will be appointed by

the Joint Sub-Committee comprised of the Committee and the Additional Committee and

the RCM Trustee was appointed pursuant to a March 22, 2006 order issued by this Court

authorizing the appointment of one disinterested person as a Chapter 11 trustee for the

Estate of RCM.  The RCM Trustee is to wind down the RCM Estate in accordance with

the terms and conditions set forth in the RCM Settlement Agreement.  Thus, the Plan is consistent with the interests of creditors and equity security holders and with public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(viii)     Additional Plan Provisions (11 U.S.C. § 1123(b)).  The Plan's permissive provisions are appropriate, authorized by section 1123(b) of the Bankruptcy Code, and not inconsistent with the applicable provisions of the Bankruptcy Code.

(ix)     RCM's Chapter 11 Case (11 U.S.C. § 1112).  The Court has ruled that RCM's case should proceed under subchapter III of chapter 7 of the Bankruptcy Code, although the Court has deferred the effect of that ruling, permitting RCM to remain in chapter 11 proceedings.  In deferring the ruling, the Court found that RCM's case presents unusual circumstances within the meaning of Bankruptcy Code section 1112(b), which have permitted RCM's case not to be converted to chapter 7. Further, the Court directed that RCM work toward a global chapter 11 plan of reorganization with the other Debtors.  Accordingly, RCM's inclusion in the Plan, whether as a chapter 11 Plan Proponent, or as a chapter 7 party in interest to the settlements embodied in the Plan, is in compliance with the Bankruptcy Code.

J.     Compliance with Bankruptcy Rule 3016.  The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).  The Plan describes in specific and conspicuous language all acts to be enjoined under the Plan and identifies all entities that are subject to the injunctions set forth in Article X of the Plan in accordance with Bankruptcy Rule 3016(c).

K.    <u>Compliance with Bankruptcy Rule 3018</u>.  The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018.  The Solicitation Materials, including the Plan, were transmitted to all creditors entitled to vote on the Plan (<u>i.e.</u>, Holders of Impaired Claims, other than those in Classes deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code), sufficient time was prescribed for such creditors to accept or reject the Plan, and the Solicitation Materials and related solicitation procedures comply with section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

L.    <u>Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.  Specifically:

(i)    Each of the Debtors is a proper debtor under section 109 of the Bankruptcy Code.  As set forth above, the Court has ruled that RCM's case should proceed under subchapter III of chapter 7 of the Bankruptcy Code, although the Court has deferred the effect of that ruling, permitting RCM to remain in chapter 11 proceedings. In deferring the ruling, the Court found that RCM's case presents unusual circumstances within the meaning of Bankruptcy Code section 1112(b), which have permitted RCM's case not to be converted to chapter 7.  Further, the Court directed that RCM work toward a global chapter 11 plan of reorganization with the other Debtors.  Accordingly, RCM, whether as a chapter 11 Plan Proponent, or as a chapter 7 party in interest to the settlements embodied in the Plan, is in compliance with the Bankruptcy Code.

(ii)    The Plan Proponents have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.

12

(iii)     The Plan Proponents have complied with the applicable

provisions of the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement

Order in transmitting the Plan, the Disclosure Statement, the Ballots and related

documents and notices and in soliciting and tabulating votes on the Plan.

M.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  The Plan

Proponents have proposed the Plan in good faith and not by any means forbidden by law, thereby

satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Plan has been

proposed in good faith, this Court has examined the totality of the circumstances surrounding the

formulation of the Plan.  The Plan provides for the liquidation and distribution of the Debtors'

assets and the wind-down of the Debtors' corporate affairs.  The Plan Proponents involved

various creditor constituencies throughout the Plan formulation process.  Key Settlements

reached with the RCM Trustee, the Committees, the Ad Hoc Equity Committee, the Secured

Lender Agent, the Indenture Trustee and certain Holders of Secured Lender Claims and Senior

Subordinated Note Claims have paved the way for the Plan, which will enable maximum

distributions to all of the Debtors' creditors, without the cost and delay of litigation.

N.     <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

Any payment made or to be made by the Plan Proponents, the Debtors or by a person issuing

securities or acquiring property under the Plan, for services or for costs and expenses in or in

connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter

11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby

satisfying section 1129(a)(4) of the Bankruptcy Code.

O.     <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Plan

complies with section 1129(a)(5) of the Bankruptcy Code.  Pursuant to Section 5.4 of the Plan,

the Plan Administrator shall serve as the sole officer and director or manager of the Reorganized

Debtors and the RCM Trustee shall serve as the sole representative of RCM.  This manner of

selection satisfies section 1123(a)(7) of the Bankruptcy Code because the Plan Administrator

was appointed by the Joint Sub-Committee comprised of the Committee and the Additional

Committee and the RCM Trustee was appointed by order of this Court.  The RCM Trustee is to

wind down the RCM Estate in accordance with the terms and conditions set forth in the RCM

Settlement Agreement.  The appointment to, or continuance in, such offices of all such persons is

consistent with the interests of Holders of Claims against and Interests in the Debtors and with

public policy.  No insider is proposed to serve as an officer or director of the Reorganized

Debtors.

        P.     No Rate Changes (11 U.S.C. § 1129(a)(6)).  After confirmation of the Plan,

the Debtors' businesses will not involve rates established or approved by, or otherwise subject to,

any governmental regulatory commission.  Thus, section 1129(a)(6) of the Bankruptcy Code is

not applicable in these Chapter 11 Cases.

        Q.     Best Interests Test (11 U.S.C. § 1129(a)(7)).  The Plan satisfies section

1129(a)(7) of the Bankruptcy Code.  The liquidation analysis attached as Exhibit B to the

Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (a)

are persuasive and credible, (b) have not been controverted by competent evidence and (c)

establish that each Holder of an Impaired Claim or Interest either has accepted the Plan or will

receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of

the Effective Date, that is not less than the amount that such Holder would receive or retain if the

Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

R.     Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8)).

Classes 1, 2 and 3 of each of the Contributing Debtors and FXA and RCM Classes 1 and 2 are

Unimpaired by the Plan and, thus, are conclusively presumed to have accepted the Plan under

section 1126(f) of the Bankruptcy Code.  Classes 4, 5, and 6 of each of the Contributing Debtors,

FXA Classes 4 and 6, and RCM Classes 3, 4, 5, 6, 7, and 8 have voted to accept the Plan in

accordance with sections 1126(c) and (d) of the Bankruptcy Code.  FXA Class 5(a) voted to

reject the Plan.  As set forth above, the Rejecting Classes are deemed to reject the Plan and,

therefore, the Debtors were not required to solicit votes to accept or reject the Plan from Holders

of Claims or Interests in such Classes.  Although section 1129(a)(8) has not been satisfied with

respect to FXA Class 5(a) and the Rejecting Classes, the Plan is confirmable because the Plan

satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.  As set forth in the

Voting Certifications, the percentages of Holders of Claims in Classes entitled to vote that voted

to accept the Plan are attached hereto as Exhibit C.

S.     Treatment of Administrative, Priority and Tax Claims (11 U.S.C. §
1129(a)(9)).  The treatment of Administrative Claims, Priority Tax Claims and Non-Tax Priority

Claims pursuant to Sections 3.1, 3.2 and 3.3 of the Plan satisfies the requirements of sections

1129(a)(9)(A), (B) and (C) of the Bankruptcy Code.

T.     Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10)).  Classes 4, 5,

and 6 of each of the Contributing Debtors, FXA Classes 4 and 6, and RCM Classes 3, 4, 5, 6, 7,

and 8 are Impaired Classes of Claims that have voted to accept the Plan with respect to all of the

Debtors, and, to the Debtors' knowledge, do not contain insiders whose votes have been counted.

Therefore, the requirement of section 1129(a)(10) of the Bankruptcy Code that at least one Class

of Claims against or Interests in the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, has been satisfied.

U.      Feasibility (11 U.S.C. § 1129(a)(11)).    The Plan provides for the liquidation of the Debtors' remaining assets and a distribution of Cash to creditors in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan.  The Plan also provides for the payment in full of all Allowed Administrative Expenses.  Therefore, the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

V.      Payment of Fees (11 U.S.C. § 1129(a)(12)).    All fees payable under section 1930 of title 28, United States Code, as determined by this Court, have been paid or will be paid on the Effective Date pursuant to Section 12.4 of the Plan, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

W.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).    All retiree benefits will be treated as executory contracts that are subject to rejection pursuant to section 7.1 of the Plan (to the extent such rejection does not violate sections 1114 and 1129(a)(13) of the Bankruptcy Code).  Thus, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

X.      Principal Purpose (11 U.S.C. § 1129(d)).    The principal purpose of the Plan is neither the avoidance of taxes nor the avoidance of section 5 of the Securities Act of 1933 (15 U.S.C. § 77e et seq.), and no governmental unit has objected to the Confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

Y.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.

Holders of Claims and Interests in the Rejecting Classes are Impaired and deemed to have

rejected the Plan.  The Plan Proponents presented uncontroverted evidence at the Confirmation

Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to the

Rejecting Classes as required by the "cramdown" requirements of section 1129(b)(1) of the

Bankruptcy Code.  Thus, the Plan may be confirmed notwithstanding the Debtors' failure to

satisfy section 1129(a)(8) of the Bankruptcy Code.  Upon Confirmation and the occurrence of

the Effective Date, the Plan shall be binding upon the members of  the Rejecting Classes and

FXA Class 5(a).

Z.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before

the Court in these Chapter 11 Cases, the Plan Proponents and each of their respective directors,

officers, employees, shareholders, members, agents, advisors, accountants, investment bankers,

consultants, attorneys, and other representatives have acted in good faith within the meaning of

section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the

Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities

relating to the solicitation of acceptances of the Plan and their participation in the activities

described in section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by

section 1125(e) of the Bankruptcy Code and the exculpation and injunctive provisions set forth

in Article X of the Plan.

AA.    <u>No Objection to Assumed Contracts and Leases</u>.  No non-Debtor party to

any executory contract or unexpired lease to be assumed pursuant to Article VII of the Plan has

objected to the assumption thereof or any such objections have been withdrawn.

BB.    <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and the conditions to confirmation set forth in section 9.1 of the Plan.

CC.    <u>Retention of Jurisdiction</u>.  Subject to the provisions of this Order, the Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan and/or section 1142 of the Bankruptcy Code.

DD.    <u>Rule 9019 Settlements; Releases and Discharges</u>.  The Plan is premised on a series of interdependent settlements and compromises (each, a "Settlement" and, collectively, the "Settlements") of various debtor-creditor, inter-debtor, and inter-creditor disputes (each, a "Dispute" and, collectively, the "Disputes").  The Settlements among the Debtors, the RCM Trustee, the Committees, the Ad Hoc Equity Committee, the Secured Lender Agent, the Indenture Trustee, certain Holders of Secured Lender Claims and Senior Subordinated Note Claims, certain customers of RCM, and other creditors of RCM and the Debtors (collectively, the "Settlement Negotiation Parties") and their respective financial and legal professionals are reflected in the relative recoveries of the various creditor groups under the Plan and are designed to achieve a global, consensual resolution of these Chapter 11 Cases.  The Disputes being resolved by the Settlements are adequately described in Article II of the Disclosure Statement, the Memorandum and by the testimony adduced at the Confirmation Hearing.  Pursuant to Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the Settlements constitute good faith compromises and settlements of all disputes among the Settlement Negotiation Parties.  The proposed recoveries reflect a fair and reasonable allocation of the aggregate value of the Debtors, and the recoveries provided to Holders of Claims of the Contributing Debtors, RCM and FXA under the Plan are substantially higher than

18

the lowest point in the range of reasonable litigation outcomes in the absence of the Settlements, based on the assets and liabilities of the Contributing Debtors, RCM and FXA on a stand-alone basis.  In addition, the releases and discharges described in Article X of the Plan constitute good faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for consideration and are in the best interest of the Holders of Claims and Interests, are within the range of possible litigation outcomes, are fair, equitable, reasonable and are integral elements of the restructuring and resolution of the Chapter 11 Cases in accordance with the Plan.  Each of the release, indemnification and exculpation provisions set forth in the Plan:

     (i)     falls within the jurisdiction of this Court under 28 U.S.C. §§ 1334(a), (b) and (d);

     (ii)     is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

     (iii)     is an integral element of the Settlements embodied in the Plan;

     (iv)     confers material benefit on, and is in the best interest of, the Debtors, their Estates and creditors;

     (v)     is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Cases with respect to the Debtors, their organization, capitalization, operation and reorganization to the extent provided in the Plan; and

     (vi)     is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

EE.     The failure to effect the release, indemnification and exculpation provisions of the Plan would seriously impair the Debtors' ability to confirm the Plan. Accordingly, the compromises and settlements embodied in the release, discharge, indemnification and exculpation provisions described in Article X of the Plan are approved.

FF.     The administration of the RCM Estate in accordance with the Plan and the RCM Settlement Agreement by the RCM Trustee, whether in chapter 11 or chapter 7, is consistent with the requirements of Bankruptcy Code section 748.

GG.     The Plan is, as to the RCM Estate, consistent with the requirements of Bankruptcy Code sections 726 and 752, taking into account the settlements contained in the RCM Settlement Agreement.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     Solicitation Procedures.  Votes for the acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code and all other rules, laws and regulations, and the solicitation procedures and solicitation are hereby approved.

2.     Confirmation.  The Plan, attached hereto as Exhibit A, is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

3.     Objections.  All Objections that have not been withdrawn, waived or settled are overruled on the merits.

20

4.    <u>Provisions of Plan and Order Non-Severable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

5.    <u>Claims Bar Dates for Administrative Claims</u>.  As set forth in Section 12.3 of the Plan, unless previously paid prior to the Confirmation Date, all requests for payment of Administrative Claims against all Debtors and RCM that were not previously filed pursuant to prior orders of the Court must be filed no later than thirty (30) days after the Effective Date or be forever barred.  The Reorganized Debtors and the RCM Trustee shall have until the Administrative Claims Objection Deadline to object to such claims.

6.    <u>Plan Classification Controlling</u>.  The classifications of Claims and Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.

7.    <u>Binding Effect</u>.  The Plan, and all compromises and settlements contemplated thereby or incorporated by reference therein, shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Interests, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors and any Chapter 7 trustee appointed to administer any of the Estates.  If the Chapter 11 Case of RCM is converted to a case under Chapter 7 of the Bankruptcy Code, all aspects of the Plan relating to RCM, including all settlements, compromises and releases, shall nonetheless be and remain binding with full force and effect as a settlement between the RCM Chapter 7 estate and the estates of the Debtors enforceable among the Debtors' estates and against all parties in interest in the Chapter 11 Cases.  The Effective Date shall constitute the effective date of the settlement between the RCM Chapter 7 estate and the Estates of other Debtors.  The conversion of the RCM

21

Chapter 11 Case prior the Effective Date shall not impair the Effective Date occurring with respect to the other Debtors.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, and all Plan related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

       8.     <u>No Revesting of Assets (11 U.S.C. § 1141(b) and (c))</u>.  Other than as set forth herein, or in the Litigation Trust Agreement, the remaining property of the respective Estates, other than the Contributed Claims, which shall be transferred to and vest in the Litigation Trust, shall not revest in the Debtors or RCM on or following the Confirmation Date or Effective Date, but shall remain property of the respective Estates and continue to be subject to the jurisdiction of the Court until distributed to Holders of Allowed Claims in accordance with the provisions of the Plan, this Confirmation Order and the RCM Settlement Agreement.  From and after the Effective Date, all such property shall be distributed in accordance with the provisions of the Plan, this Confirmation Order and the RCM Settlement Agreement, without further order of the Court (except as specifically required).  For the avoidance of doubt, the Debtors' or RCM's insurance policies shall remain property of their respective Estates in accordance with section 5.9 of the Plan, and shall not be subject to the rejection provisions of section 7.1 of the Plan.

       9.     <u>Merger of Subsidiaries into Refco Inc</u>.  In the event that, after the Effective Date, the Plan Administrator determines that it is appropriate, each of the Affiliate Debtors shall be dissolved or merged with and into Refco Inc., with Refco Inc. as the surviving entity.  Notwithstanding anything to the contrary in section 5.1 of the Plan, any mergers in fact of each of the Affiliate Debtors, other than FXA, with and into Refco Inc. referenced in such section shall occur no earlier than the Effective Date.  Upon the occurrence of any such merger, the Plan

22

Administrator, on behalf of the Reorganized Debtors, shall file all appropriate and required documentation with applicable state governmental agencies to reflect the occurrence of such mergers.

          10.    <u>Continued Corporate Existence and Dissolution of Reorganized Debtors</u>. FXA and, until they are wound up and potentially merged with and into Refco Inc. pursuant to section 5.1 of the Plan, the Affiliate Debtors shall continue to exist as Reorganized Refco, Reorganized FXA and/or the applicable Reorganized Affiliate Debtor, respectively, after the Effective Date pursuant to the certificate of incorporation, certificate of formation or other corporate governance document, as applicable, and by-laws, operating agreement or other corporate governance document in effect prior to the Effective Date, except to the extent that such corporate governance documents are amended under the Plan, for the limited purposes of liquidating all of the assets of each of the Estates, and making Distributions in accordance with the Plan.  As soon as practicable after the Plan Administrator, liquidates or otherwise disposes of assets of the Estates of the Reorganized Debtors and makes the final Distribution under the Plan, the Plan Administrator shall, at the expense of the Estates of the Reorganized Debtors and in consultation with the Plan Committee, (i) provide for the retention and storage of the books, records, and files that shall have been delivered to or created by the Plan Administrator until such time as all such books, records, and files are no longer required to be retained under applicable law (except for those books, records and files turned over to the Litigation Trustee in accordance with the terms of the Litigation Trust Agreement), and file a certificate informing the Court of the location at which such books, records, and files are being stored, (ii) file a certification stating that the Plan Administrator has liquidated or otherwise disposed of the assets of the Estates of the Reorganized Debtors and made a final Distribution under the Plan, (iii) file

the necessary paperwork with the applicable office of the secretary of state to effectuate the

dissolution of the Reorganized Debtors in accordance with the laws of the applicable state, and

(iv) resign as the sole officer, manager or director, as applicable, of the Reorganized Debtors.

Upon the filing of the certificates described in sub-section (ii) of the preceding sentence, the

Reorganized Debtors shall be deemed dissolved for all purposes without the necessity for any

other or further actions to be taken by or on behalf of the Reorganized Debtors or payments to be

made in connection therewith.  The RCM Trustee shall have sole discretion with respect to

determining the timing and manner of dissolution of Post-Confirmation RCM in accordance with

the RCM Settlement Agreement and applicable provisions of the Bankruptcy Code.

           11.    Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).  On

the Effective Date, all executory contracts or unexpired leases of the Debtors shall be deemed

rejected in accordance with, and subject to, the provisions and requirements of sections 365 and

1123 of the Bankruptcy Code, except those executory contracts and unexpired leases that (i)

previously shall have been assumed, assumed and assigned, or rejected by the Debtors, (ii)

previously shall have expired or terminated pursuant to its own terms before the Effective Date,

(iii) are the subject of a pending motion to assume or reject on the Confirmation Date, or (iv) are

identified in Exhibit D to the Plan as a contract or lease to be assumed.  Entry of the

Confirmation Order by the Court shall constitute approval of such rejections and assumptions

pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

           12.    Effectuating Documents and Further Transactions.  Pursuant to the Plan,

the Plan Administrator on behalf of the Reorganized Debtors, and the RCM Trustee, on behalf of

Post-Confirmation RCM, shall be authorized to execute, deliver, file, or record such documents,

instruments, releases, and other agreements and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.     <u>Corporate Action</u>.  Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under the Plan that would otherwise require approval of the stockholders, members, directors or managers of one or more of the Debtors, RCM, the Reorganized Debtors or Post-Confirmation RCM shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable law of the states in which the Debtors, RCM, the Reorganized Debtors or Post-Confirmation RCM are incorporated or formed without any requirement of further action by the stockholders, members, directors or managers, as applicable, of the Debtors, RCM, the Reorganized Debtors or Post-Confirmation RCM.

14.     <u>Plan Documents</u>.  There being no objections to any of the Plan Documents contemplated by the Plan, and any amendments, modifications and supplements thereto, and all documents and agreements introduced therein or contemplated by the Plan (including all exhibits and attachments thereto and documents referred to therein) the execution, delivery and performance thereof by the Reorganized Debtors are authorized and approved, without need for further corporate action or further order or authorization of the Court.  The Debtors and the Reorganized Debtors, as appropriate, are authorized and empowered to make any and all modifications to any Exhibits that may be agreed to by the parties thereto and are consistent with the Plan.

15.     <u>No Discharge of Claims; Injunction</u>.  Pursuant to section 10.4 of the Plan, Confirmation shall not discharge Claims against the Contributing Debtors, FXA and RCM; *provided*, *however*, that no Holder of a Claim against or Interest in any Contributing Debtor,

FXA and RCM may, on account of such Claim or Interest, seek or receive any payment or other

Distribution from, or seek recourse against the Estates of any Contributing Debtor, FXA or

RCM, the Reorganized Debtors, Post-Confirmation RCM or their respective successors or their

respective properties, except as expressly provided in the Plan. Accordingly, except as otherwise

provided in the Plan, from and after the Confirmation Date all Persons who have held, hold, or

may hold Claims against or Interests in the Debtors or RCM are (i) permanently enjoined from

taking any of the following actions against the Estate(s) of the Contributing Debtors, FXA, RCM,

the Plan Administrator, the RCM Trustee, the Reorganized Debtors, Post-Confirmation RCM or

any of their property on account of any such Claims or Interests and (ii) preliminarily enjoined

from taking any of the following actions against any of the Contributing Debtors, FXA, RCM,

the Reorganized Debtors, Post-Confirmation RCM or their property on account of such Claims

or Interests: (A) commencing or continuing, in any manner or in any place, any action or other

proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment,

award, decree, or order; (C) creating, perfecting, or enforcing any lien or encumbrance; and (D)

commencing or continuing, in any manner or in any place, any action that does not comply with

or is inconsistent with the provisions of the Plan; *provided*, *however*, that (x) nothing contained

in the Plan shall preclude such Persons from exercising their rights pursuant to and consistent

with the terms of the Plan and (y) the preliminary injunction of actions against the Contributing

Debtors, FXA and RCM, the Reorganized Debtors, Post-Confirmation RCM, and their property

(if any) shall be dissolved and terminate one (1) day following the dissolution of the Reorganized

Debtors and Post-Confirmation RCM and completion of the winding up of their affairs.

Notwithstanding anything to the contrary set forth in the Plan, creditors' rights of setoff and

recoupment are preserved, and the injunctions referenced in sections 10.4 and 10.5 of the Plan

shall not enjoin the valid exercise of such rights of setoff and recoupment.  By accepting

Distributions pursuant to the Plan, each Holder of an Allowed Claim or Allowed Interest shall be

deemed to have specifically consented to the injunctions set forth in Article X of the Plan.

    16. <u>Cancellation of Securities, Instruments, and Agreements Evidencing

Claims and Interests</u>.  With the exception of the equity interests of any Refco Entity held by any

Debtor, RCM or Non-Debtor Affiliate pending wind-up and dissolution of such entities pursuant

to this Plan, on the Effective Date and concurrently with the applicable Distributions made

pursuant to Article V of the Plan, the promissory notes, share certificates (including treasury

stock), other instruments evidencing any Claims or Interests, and all options, warrants, calls,

rights, puts, awards, commitments, or any other agreements of any character to acquire such

Interests shall be deemed canceled and of no further force and effect, without any further act or

action under any applicable agreement, law, regulation, order, or rule, and the obligations of the

Debtors or RCM under the notes, share certificates, and other agreements and instruments

governing such Claims and Interests shall be discharged; *provided*, *however*, that the Senior

Subordinated Notes Indenture shall continue in effect solely for the purposes of allowing the

Senior Note Indenture Trustee to enforce the indemnity provisions of the Senior Subordinated

Note Indenture on account of the Senior Subordinated Note Indenture Trustee's service on the

Plan Committee, to effectuate the Distributions to be made on account of Senior Subordinated

Note Claims under the Plan and, to the extent necessary, enforce the Senior Subordinated Note

Indenture Trustee Charging Lien, after which point the Senior Subordinated Note Indenture shall

be cancelled and discharged.  The Holders of or parties to such canceled notes, share certificates,

and other agreements and instruments shall have no rights arising from or relating to such notes,

share certificates, and other agreements and instruments, or the cancellation thereof, except the rights provided pursuant to the Plan.

17. <u>Exemption from Certain Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer, or in connection with, the Plan, any merger agreements; agreements of consolidation, restructuring, disposition, liquidation or dissolution; deeds; bills of sale; and transfers of tangible property, shall not be subject to any stamp tax, recording tax, transfer tax, or other similar tax.

18. <u>Final Fee Applications</u>.  All Professionals and other entities requesting compensation or reimbursement of Professional Fee Claims pursuant to sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code for services rendered prior to the Confirmation Date shall file and serve on the Reorganized Debtors and counsel for the Reorganized Debtors and on the RCM Trustee and his counsel an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date, unless otherwise ordered by the Court.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Reorganized Debtors, counsel for the Reorganized Debtors, the RCM Trustee and his counsel, and the requesting Professional or other entity no later than thirty (30) days (or such other period as may be allowed by order of the Court) after the date on which the applicable request for compensation or reimbursement was served.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327, 328, 330, 331 or 1103 of the Bankruptcy Code in seeking retention or

compensation for services rendered after such date shall terminate. Professional Fee Claims relating to fees and expenses incurred after the Effective Date shall be paid in the ordinary course of business.

19.    Professional Fee Claims Escrow Account. On the Effective Date, the Reorganized Debtors and Post-Confirmation RCM (or the RCM Trustee in the event that the RCM Chapter 11 Case previously has been converted to a case under subchapter III of chapter 7) shall fund a segregated bank account consisting of 110% of (x) the amount of any holdbacks on previously billed and paid amounts, *provided*, *however*, that the 10% holdback of fees pursuant to the December 7, 2006 Order Granting Professionals' Applications for Allowance of Interim Compensation and Reimbursement of Expenses (June 1, 2006 Through September 30, 2006) is hereby released and may be remitted to the following Professionals: (i) Bingham McCutchen LLP, (ii) FTI Consulting, Inc., (iii) Houlihan Lokey Howard & Zukin Capital, Inc., (iv) Kasowitz, Benson, Torres & Friedman LLP, (v) Milbank, Tweed, Hadley & McCloy LLP, and (vi) Skadden, Arps, Slate, Meagher & Flom LLP and (y) the amount of estimated additional fees and expenses expected to be incurred by each Professional through the Effective Date in accordance with section 12.3(c) of the Plan. Amounts held in such segregated account shall be used by the Reorganized Debtors and Post-Confirmation RCM (or the RCM Trustee in the event of conversion) to pay amounts not previously paid by the Reorganized Debtors and Post-Confirmation RCM (or the RCM Trustee in the event of conversion) and subsequently allowed by the Court following compliance with the interim compensation procedures established by the Court in these Chapter 11 Cases and/or a hearing on the Professionals' final fee applications. When all Professional Fee Claims have been paid in full, amounts remaining in the segregated

account, if any, shall be returned to the Reorganized Debtors and Post-Confirmation RCM (or the RCM Trustee in the event of conversion) .

20.    <u>Termination of Injunctions and Automatic Stay</u>.  Pursuant to Section 10.5 of the Plan, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all of the property of the Estates of the Contributing Debtors, FXA, the Reorganized Debtors and Post-Confirmation RCM have been distributed in accordance with the terms of the Plan or any Plan Document, and the Estate of Post-Confirmation RCM shall have been fully administered and the RCM Trustee discharged from his duties, or as soon after the Effective Date that the Plan Administrator may determine that it is appropriate for each of the Affiliate Debtors to be merged with and into Refco Inc., with Refco Inc. as the surviving entity;  *provided*, *however*, that any injunction that by its terms is permanent or otherwise is intended to survive the Effective Date and Distributions hereunder (whether by law or pursuant to order of the Court), shall be continued without modification, notwithstanding anything to the contrary contained in the Plan.

21.    <u>Injunction</u>.  Except as otherwise expressly provided in the Plan, this Confirmation Order, or a separate order of this Court, the injunctions set forth in Section 10.4 of the Plan are approved.

22.    <u>Settlements, Compromises and Releases</u>.  All Settlements of Disputes embodied in the Plan, are approved as fair, equitable, reasonable and in the best interests of the Debtors, the Reorganized Debtors and their Estates, and creditors and interest holders, and shall be, and hereby are, effective and binding on all persons and entities who may have had standing to assert such claims or causes of action, and no person or entity shall possess such standing to

assert such claims or causes of action after the Effective Date.  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019(a) the settlements, compromises, releases, discharges, exculpations, and injunctions set forth in the Plan, including, but not limited to, the releases set forth in Section 10.2 of the Plan and implemented by this Confirmation Order shall be, and hereby are, approved as fair, equitable, reasonable and in the best interests of the Debtors, the Reorganized Debtors and their estates, creditors and interest holders.

23.    <u>Litigation Trust</u>.  The Litigation Trust shall be established for pursuit of the Contributed Claims and shall become effective on the Effective Date as set forth in Section 5.7 of the Plan and in accordance with the terms and conditions set forth in more detail in the Litigation Trust Agreement.  On the Effective Date, the Contributed Claims, held by the Debtors and RCM on behalf of the Litigation Trust Beneficiaries shall be transferred to the Litigation Trust in exchange for Litigation Trust Interests for the ratable benefit of the Litigation Trust Beneficiaries.  Upon transfer of the Contributed Claims to the Litigation Trust, except as otherwise provided in the Litigation Trust Agreement, the Debtors, RCM, the Reorganized Debtors, Post-Confirmation RCM and the Plan Administrator shall have no interest in or with respect to the Contributed Claims or the Litigation Trust; *provided*, *however*, that, notwithstanding such transfer to the Litigation Trust, such claims shall not be merged into a single entity but shall be deemed asserted on behalf of each applicable Estate holding such claim immediately prior to contribution, and shall remain separate and distinct from other Estates in connection with the prosecution thereof.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and in accordance with section 5.7(a) of the Plan, Marc S. Kirschner is hereby appointed the Litigation Trustee as a representative of each of the Estates, and the Litigation Trustee shall be deemed the successor-in-interest to each of the Contributing Debtors, FXA, and the RCM

31

Trustee, a "similar official duly appointed with respect to the Company," and/or a "comparable authority of the Company," for purposes of any applicable directors and officers insurance policy, including, without limitation, with respect to (i) the Exclusion F to the Directors, Officers and Corporate Liability Insurance Policy issued to Refco Inc. by U.S. Specialty Insurance Company (Policy No. 24-MGU-05-A10821) (the "U.S. Specialty Policy"), together with the excess policies that follow form to the U.S. Specialty Policy issued by Lexington Insurance Company (Policy No. 1620294), Axis Reinsurance Company (Policy No. RNN 506300), Allied World Assurance Company (U.S.), Inc. (Policy No. AW0418197), and Arch Insurance Company (Policy No. 24-MGU-05-A10821); and (ii) Exclusion G to the Management Liability and Company Reimbursement Insurance Policy issued to Refco Inc. by XL Specialty Insurance Company (Policy No. ELU091406-06).  The terms of the Litigation Trust Agreement are hereby approved.

24.    <u>Private Actions Trust</u>.  The Private Actions Trust shall become effective on the Effective Date as set forth in section 5.8 of the Plan and in accordance with the terms and conditions set forth in more detail in the Private Actions Trust Agreement to hold certain claims and causes of action against third-parties owned by Holders of Claims or Interests against RCM or the Debtors and which claims, even after contribution, are not assets of the Estates.  The appointment of Marc S. Kirschner as Private Actions Trustee is hereby approved.  The terms of the Private Actions Trust Agreement are hereby approved.

25.    <u>Plan Administrator; Plan Administrator Agreement</u>.  Pursuant to section 5.5.(a) of the Plan, the Joint Sub-Committee has designated RJM, LLC, a New Jersey limited liability company, as Plan Administrator.  The appointment of RJM, LLC as Plan Administrator is hereby approved.  The Plan Administrator shall serve until resignation or discharge and the

appointment of a successor Plan Administrator.  The terms of the Plan Administrator Agreement are hereby approved.

26.    <u>Non-Occurrence of Effective Date</u>.  If the Effective Date has not occurred within the time period provided in Section 9.2 of the Plan, the Plan Proponents reserve all rights to seek an order from the Court directing that the Confirmation Order be vacated, that the Plan be null and void in all respects, and/or that any settlement of Claims provided for in the Plan, other than those contained in the RCM Settlement Agreement, be null and void.  In the event that the Court shall enter an order vacating the Confirmation Order, the time within which the Debtors may assume and assign, or reject all executory contracts and unexpired leases not previously assumed, assumed and assigned, or rejected, shall be extended for a period of 60 days after the date the Confirmation Order is vacated, without prejudice to further extensions.

27.    <u>Authorization to Consummate Plan</u>.  Notwithstanding Bankruptcy Rule 3020(e), the Confirmation Order shall take effect immediately upon its entry and the Debtors are authorized to consummate the Plan immediately after entry of this Confirmation Order in accordance with Section 9.2 of the Plan.

28.    <u>Notice of Entry of Confirmation Order and the Effective Date</u>.  Within five (5) Business Days of the Effective Date, the Debtors shall serve a notice (the "Confirmation and Effective Date Notice") in substantially the form attached hereto as <u>Exhibit B</u> (the form of which is hereby approved), pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) on all parties that received notice of the Confirmation Hearing; *provided*, *however*, that the Debtors or the Reorganized Debtors shall be obligated to serve the Confirmation Notice only on the record holders of Claims or Interests as of the Confirmation Date.  The Debtors shall also publish the Confirmation and Effective Date Notice in the national and global editions of <u>USA Today</u>, <u>The</u>

Wall Street Journal, The Financial Times, and the national edition of The New York Times, the Times of London, and the Singapore Straits Times.

29.    Continuation of RCM Settlement Agreement.  Neither any term or provision of the Plan, nor any failure of such Plan to proceed or be confirmed or consummated, nor any conversion of the RCM Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, will in any way affect the terms or effectiveness of the RCM Settlement Agreement, which will at all times operate and be binding in accordance with its terms.

30.    Continuation of Early Payment Order.  Neither any term or provision of the Plan or the Confirmation Order, nor any failure of such Plan to proceed or be confirmed or consummated nor any conversion of the RCM Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, will in any way affect the terms or effectiveness of the Early Payment Order, which will at all times operate and be binding in accordance with its terms.

31.    Voting Deadline and Procedures for Tabulation of Votes.  Any Ballot received after the Voting Deadline, to the extent otherwise valid under the Disclosure Statement Order, shall be effective to effect any applicable Ballot elections.

32.    Contributing Non-Debtor Affiliate Trigger Date.  For the avoidance of doubt, the term "positive Cash" contained in section 1.62 of the Plan shall mean, as to each Non-Debtor Affiliate, an amount not less than 90% of the amount projected to be received from such Non-Debtor Affiliate in the Houlihan Contributing Debtor Projections, which projections were prepared in accordance with section 9.1(f) of the Plan.

33.    Old Equity Interest Forms.

(a)    The Private Actions Trust Election for Holders of Old Common Stock of Refco Inc. (the "Common Stock Election Form") and the Private Actions Trust Election

for Holders of Certain Subordinated Claims (the "Subordinated Claim Election Form" and, together with the Common Stock Election Form, the "Old Equity Interest Forms"), substantially in the forms attached to the Plan as Exhibit M, are hereby approved.

(b)    The Common Stock Election Form and the Plan (with exhibits F and G only) shall be mailed, within ten business days after entry of this Order, to (i) each holder of record of Refco Inc. common stock as of December 20, 2006; and (ii) each broker, commercial bank, transfer agent, trust company, dealer or other intermediary or nominee (each, a "Nominee") identified by Financial Balloting Group as an entity through which beneficial owners indirectly hold Refco Inc. common stock.

(c)    The Subordinated Claim Election Form and the Plan (with exhibits F and G only) shall be mailed, within ten business days after entry of this Order, to (i) each holder of a timely-filed claim in the Refco Inc. chapter 11 case arising from rescission of a purchase or sale of Refco Inc. common stock, for damages arising from the purchase of sale of such stock, or for reimbursement or contribution allowable under section 502 of the Bankruptcy Code on account of such claim (all such holders, the "Subordinated Claimants"), at the address listed on such holder's claim, and (ii) the lead plaintiffs (the "Lead Plaintiffs") and their counsel in the securities class action styled In re Refco Inc. Securities Litigation, Case No. 05 Civ. 8626 (GEL) (S.D.N.Y.).

(d)    The record date for purposes of determining creditors entitled (i) to receive the Subordinated Claim Election Form and related materials; (ii) to make the Private Actions Trust Election; and (iii) to receive distributions, if any, on account of such election, shall be December 8, 2006 (the "Subordinated Claim Record Date").  While the Common Stock Election Form shall be mailed to holders of record as of December 20, 2006, there shall be no

35

record date for determining holders of Refco Inc. common stock entitled to make the Private

Actions Trust Election.

(e)     If a holder's Private Action Trust Election is not received by

Financial Balloting Group (for holders of section 510(b) subordinated claims) or effectuated

through the electronic delivery of Old Equity Interests to the account established for that purpose

(for holders of Refco Inc. common stock) on or before 5:00 p.m. Eastern Time on January 30,

2007, such holder's Private Actions Trust Election shall not count or be effective.

34.     <u>Resolution of Certain Director and Officer Indemnification Objections</u>.

(a)     In accordance with section 6.4 of the Plan, timely filed Claims

arising in favor of present or former officers or directors under contract, statute, or entity

governance documents of any of the Debtors, by reason of such officer or director actually being

an officer or director of a Debtor, (collectively, "Officer and Director Claims") shall be entitled

to be asserted against the estate of each and every such Debtor to the same extent as provided for

under applicable law.  To the extent that an officer or director has a Claim against more than one

Debtor based on the foregoing sentence, each such Claim, shall, without regard to their multiple

or counterpart nature, be allowed or disallowed and shall be entitled to such payment as is

provided for in their respective class of claims, until the underlying liability is fully satisfied.

(b)     Further, nothing in the Plan or Confirmation Order shall permit

Officer and Director Claims to be treated as Subordinated Claims or otherwise subordinated,

except in the manner and to the extent the Bankruptcy Code and Rules and decisional law,

including applicable nonbankruptcy law (both substantive and procedural), would otherwise

allow absent the particular provisions of this Plan.  Neither the Plan nor the Confirmation Order

makes any finding as to whether any Officer and Director Claims are subject to subordination

and there are no pending actions to subordinate any of the Officer and Director Claims.  To the extent that any such action is commenced, nothing in either the Plan or the Confirmation Order shall affect the rights of the Plan Proponents or any other party in interest to object to or seek subordination of such claims or the rights and defenses of the directors and officers in opposing such subordination actions, it being the intent of the parties that such rights and defenses are expressly preserved.

(c)    Notwithstanding anything in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order, including, but not limited to, the injunction provisions, shall be construed to prevent present or former directors and officers of the debtors from seeking and obtaining coverage and payments from insurance policies of Refco Inc. or from insurance policies of any other Refco Entity, including, but not limited to, in the case of such directors or officers who have previously commenced such litigation, by litigation against relevant insurance companies, nor to prevent insurance companies from making such payments. Nothing in the previous sentence, however, shall be construed to grant relief (retrospective or prospective) from any stay or injunction that is not contained in the Plan to permit the directors and officers of the debtors from seeking and obtaining coverage and payments from insurance policies of Refco Inc. or from insurance policies of other Refco Entities.

(d)    Notwithstanding anything in the Plan or Confirmation Order to the contrary, nothing in the Plan or Confirmation Order constitutes a judgment or finding as to the appropriateness of the Private Actions Trust or Trustee acting as a plaintiff in any given action which the Trust or Trustee may bring, nor does it constitute a judgment or finding as to the personal or subject matter jurisdiction of any court in which such an action may be brought, all standing and jurisdictional defenses of defendants to such actions being hereby expressly

preserved; *provided*, *however*, that, to the extent any Private Actions may not be maintained by the Private Actions Trust or Trustee, such actions shall revert to the grantors of such Non-Estate Refco Claims.

35.    Resolution of Objections of New York Financial and Hillier Capital Management.

(a)    On the Effective Date, RCM shall transfer to the FXA Estate the sum of $2.0 million.

(b)    The Plan Administrator shall form a committee of FXA customers who did not do business with FXA in Japan (the "Non-Japan FXA Customer Committee") to oversee and direct the litigation involving FXA assets in Japan.  New York Financial shall serve as the chair of the committee and Hillier Capital Management shall be appointed to the committee as a member.  The Non-Japan FXA Customer Committee shall have consent rights with respect to any settlement regarding the litigation involving FXA assets in Japan. Furthermore, all reasonable expenses born in connection with the role of chair of the Non-Japan FXA Customer Committee shall be born by the FXA Estate.

(c)    Upon the later of the Effective Date or the presentment of a statement indicating the amount of such Claim, New York Financial LLC and Hillier Capital Management shall be granted an Allowed Administrative Expense Claim against the FXA Estate pursuant to section 503(b) of the Bankruptcy Code in an aggregate collective amount not to exceed $200,000.

36.    Resolution of Objections of West Loop Associates, LLC.

(a)     Pursuant to an order entered on the date hereof in the chapter 7 case of Refco LLC, West Loop Associates, LLC ("West Loop")  shall be paid the sum of $3.75 million in cash by Refco LLC on or before the Effective Date.

(b)     West Loop shall release all claims against the Debtors and against Refco LLC.  In addition, West Loop shall be barred from bringing any action against any third party as to the potential matters set forth in Exhibit K of the Plan, *provided*, *however*, that West Loop shall expressly retain all rights to bring actions against the following:  Mark Goodman & Associates, 550 West Jackson Associates Limited Liability Company, Mark Goodman, Phillip R. Bennett, Santo Maggio, and Grant Thornton.

(c)     West Loop shall have an Allowed Claim against RGL in the amount of $20 million, but such Claim shall be satisfied in full by distribution of the Litigation Trust Interests allocable to such Claim; *provided, however*, any and all Litigation Trust Interests distributable on account of such Allowed Claim shall be deemed to have been assigned  by West Loop to the Contributing Debtors for distribution to Holders of Allowed Contributing Debtors General Unsecured Claims.

(d)     The Contributing Debtors shall transfer $1.875 million from Contributing Debtors Cash Distribution to the RCM Trustee for addition to the RCM Cash Distribution.

37.     <u>Retention of Jurisdiction</u>.  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, the

Plan and the RCM Settlement Agreement to the fullest extent permitted by law, including, but

not limited to, the matters set forth in Article XI of the Plan.

                38.    <u>Resolution of Securities Plaintiff's Objection</u>.

                (a)    Nothing contained in the Plan or any Order confirming the Plan

shall be deemed to release, enjoin or bar any claims, or the prosecution of any claims, asserted or

to be asserted in the Securities Litigation, entitled In re Refco Securities Litigation, Case No. 05

civ 8626 (SDNY), by or on behalf of the Lead Plaintiffs as defined therein or putative class

members therein, against (i) any of the Secured Lender Releasees that acted as an underwriter,

book running manager or initial purchaser in connection with the underwriting, offering,

distribution, or sale of the 9% Senior Subordinated Notes due 2012 issued by certain of the

Debtors or of any equity securities of Refco Inc., with respect to any act or failure to act by any

such Secured Lender Releasee, in its capacity as underwriter, book running manager or initial

purchaser, in connection with the underwriting, offering, distribution, or sale of the 9% Senior

Subordinated Notes due 2012 issued by certain of the Debtors or of any equity securities of

Refco, Inc. and (ii) such other non-Debtor defendants, who are named or to be named in the

Securities Litigation, including, without limitation, certain of the Debtor's non-Debtor affiliates,

current or former officers and directors, underwriters, audit committee members, Thomas H. Lee

Partners affiliates, Grant Thornton and BAWAG, but not including the Released Parties (other

than in such capacities as described in (i) above), the Contributing Non-Debtor Affiliates

identified on Exhibit L to the Modified Plan, as of December 4, 2006, and the Contributing Non-

Debtor Affiliate Management identified in Schedule 1.56 of the Modified Plan, as of December 5,

2006, to the extent that the Lead Plaintiffs or the putative class members receive a distribution

under the Modified Plan.  To the extent either Exhibit L or Schedule 1.56 is modified subsequent

to December 4 or 5, 2006, respectively, Lead Plaintiffs and the Plan Proponents reserve their

rights with respect to the release afforded to any additional Contributing Non-Debtor Affiliates

or Contributing Non-Debtor Affiliate Management under the Modified Plan or any amendments

thereto.

        (b)    Notwithstanding anything in the Plan or this Confirmation Order to

the Contrary, in making the Private Actions Trust Election, the transfer of (i) Non-Estate Refco

Claims or (ii) the proceeds of any Class Action Claims by any of the plaintiffs in the Securities

Litigation described in paragraph 38(a) hereof shall not include the transfer of any recovery

received by such plaintiffs in any pending action against BAWAG.

        39.    <u>Resolution of Objection of the FXCM Parties.</u>

        (a)    Nothing in the Plan, including Article 10 of the Plan, shall impair

the right of FXCM Sellers (as defined in that certain Limited Objection of the FXCM Parties to

Confirmation of Joint Chapter 11 Plan of Refco Inc. and Certain of Its Direct and Indirect

Subsidiaries (docket no. 3649) (the "FXCM Objection")) from arguing that they are entitled to an

equitable remedy of rescission of RGL's purchase of the FXCM Equity Stake (as defined in the

FXCM Objection); *provided, however,* any action seeking such a remedy will be heard by this

Court unless this Court has permitted the FXCM Sellers to bring such an action in a different

forum.

        40.    <u>Extension of Certain Plan Provisions to RCM Trustee</u>.  The provisions set

forth on <u>Exhibit D</u> hereto shall govern and pertain in the RCM Trustee's administration of Post-

Confirmation RCM and the RCM Estate in the event that RCM's Chapter 11 Case is not

converted to a chapter 7.

41.     <u>BAWAG Allocation Order and BAWAG Proceeds</u>.  The BAWAG Allocation Order, as defined in the Plan, includes this Order.  The Debtors are hereby authorized to utilize the BAWAG Proceeds in accordance with the Plan and the BAWAG Allocation Order after giving effect to this Order and, specifically, the BAWAG Proceeds may be used to pay the obligations owing to RCM under the Cash Management Advance Agreement dated as of October 16, 2006, and to implement the other Distributions contemplated in the Plan.  In addition, without altering the deemed allocation of BAWAG Proceeds set forth in the Plan, for purposes of making Cash Distributions, the BAWAG Contingent Proceeds shall be used to satisfy the Senior Subordinated Note Distribution to the extent such funds are available to the Estates prior to the payment in full of the Senior Subordinated Note Distribution.

42.     <u>Exemption from Securities Laws</u>.  The exemption from the requirements of Section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, exchange or transfer of a security provided for in the Plan, including, without limitation, the distribution and subsequent transfer of Litigation Trust Interests and Private Actions Trust Interests, or registration or licensing of an issuer of, underwriter of, or broker dealer in, such security is authorized by section 1145 of the Bankruptcy Code and shall apply to the extent set forth in the Plan.

43.     <u>References to Plan Provisions</u>.  The failure to specifically include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

44.     <u>Confirmation Order Controlling</u>.  To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in the Confirmation Order shall govern.

45.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

Dated: New York, New York
       December <u>15</u>, 2006

/s/Robert D. Drain_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT A</u>**

**MODIFIED JOINT CHAPTER 11 PLAN OF REFCO INC. AND
CERTAIN OF ITS DIRECT AND INDIRECT SUBSIDIARIES**

[Intentionally Omitted]

[Filed with the Bankruptcy Court on December 14, 2006]

**EXHIBIT B**

**FORM OF CONFIRMATION AND EFFECTIVE DATE NOTICE**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re:                                    :        Chapter 11
                                          :
Refco Inc., et al.,[5]                    :        Case No. 05-60006 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF (A) ENTRY OF ORDER CONFIRMING THE MODIFIED JOINT PLAN OF REORGANIZATION OF REFCO, INC. AND ITS DIRECT AND INDIRECT SUBSIDIARIES, (B) OCCURRENCE OF EFFECTIVE DATE, AND (C) BAR DATE FOR FILING CLAIMS**

      1.     **Confirmation of the Plan.**  On December ___, 2006, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered its Findings of Fact, Conclusions of Law, and Order Confirming the Modified Joint Chapter 11 Plan of Refco Inc. and Certain Of Its Direct and Indirect Subsidiaries (the "Confirmation Order").  Unless otherwise defined herein, capitalized terms used in this Notice shall have the meaning ascribed to such terms in the Joint Chapter 11 Plan of Refco Inc. and Certain Of Its Direct and Indirect Subsidiaries dated October 20, 2006, as modified by the Modified Joint Chapter 11 Plan of Refco Inc. and Certain Of Its Direct and Indirect Subsidiaries dated December 4, 2006 (together the "Plan").  Copies of the Confirmation Order and Plan are available upon written request to the claims agent at Omni Management Group, LLC, 16161 Ventura Boulevard, PMB 607, Encino, CA 91436 (Attn: Nova Lachman).  The documents may also be examined by any party-in-interest between the hours of 8:30 A.M. and 5:00 P.M. EST, Monday through Friday, at the Office of the Clerk of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004-1408.  These documents are also available from the Bankruptcy Court's website at http://www.nysb.uscourts.gov (a PACER account is required).

---

[5]    The following entities are Debtors in these Chapter 11 Cases: Bersec International LLC; Kroeck & Associates, LLC; Lind-Waldock Securities LLC; Marshall Metals, LLC; New Refco Group Ltd., LLC; Refco Administration, LLC; Refco Capital Holdings, LLC; Refco Capital LLC; Refco Capital Management, LLC.; Refco Capital Trading LLC; Refco Finance Inc.; Refco Financial, LLC; Refco Fixed Assets Management, LLC; Refco F/X Associates, LLC; Refco Global Capital Management LLC; Refco Global Finance Limited; Refco Global Futures, LLC; Refco Global Holdings, LLC; Refco Group Ltd., LLC; Refco Inc.; Refco Information Services, LLC; Refco Managed Futures, LLC; Refco Mortgage Securities, LLC; Refco Regulated Companies, LLC; Summit Management, LLC; and Westminster-Refco Management LLC.  Refco Capital Markets, Ltd. is a debtor in these chapter 11 cases, but not a debtor-in-possession.

2.      **Effective Date.**  The conditions to consummation of the Plan set forth in Article IX of the Plan were satisfied (or waived) on December ___, 2006.  Thus in accordance with the terms of the Plan, the Plan became effective on December ___, 2006 (the "Effective Date").  All references in the Plan and the Confirmation Order to the Effective Date are to December ___, 2006.

3.      **Bar Dates**

(a)      **Administrative Claims Bar Date.**  "Administrative Claim(s)" are defined in Section 1.8 of the Plan.  In accordance with Section 12.3 of the Plan, all Administrative Claims, unless paid prior to the Confirmation Date, shall be filed with the Bankruptcy Court, and served on each of (i) the undersigned counsel to the Debtors, (ii) counsel to the Creditors Committee: Milbank, Tweed, Hadley, & McCloy LLP, 1 Chase Manhattan Plaza, New York, NY 10005 (Attn: Luc A. Despins, Esq., Susheel Kirpalani, Esq., and Dennis C. O'Donnell, Esq.), (iii) counsel to the Additional Committee: Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, NY 10019 (Attn: David S. Rosner, Esq., and Andrew K. Glenn, Esq., and Jeffrey R. Gleit, Esq.), and (iv) counsel to the RCM Trustee: Bingham McCutchen LLP, 399 Park Avenue, New York, NY 10022 (Attn: Tina L. Brozman, Esq., Timothy B. DeSieno, Esq., and Mark W. Deveno, Esq.) (collectively "Notice Parties"), so as to be actually received no later than thirty (30) days after the Effective Date, , unless otherwise ordered by the Bankruptcy Court (the "Administrative Claims Bar Date").  Any request not timely filed and served for payment of an Administrative Claim shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors.  The Debtors or the Reorganized Debtors may settle an Administrative Claim without further Bankruptcy Court approval.  Unless the Debtors or the Reorganized Debtors object to an Administrative Claim by the Administrative Claims Objection Deadline (which, pursuant to Section 1.7 of the Plan, is currently (a) the later of (i) sixty (60) days after the Effective Date or (ii) thirty (30) days after the filing of such Administrative Claim, or (b) such other date specified in the Plan or ordered by the Bankruptcy Court, but which deadline may be extended), such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

(b)      **Deadline for Submitting Professional Fee and Substantial Contribution Claims.**  In accordance with Section 12.3(b) of the Plan, all Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code for services rendered before the Effective Date shall file an application for allowance of compensation and reimbursement of expenses with the Clerk of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10036-6522, and serve on the Notice Parties, as defined above in paragraph 3(a), so as to be received no later than sixty (60) days after the Effective Date, or ___, 2006.  Objections to applications of Professional and other entities for compensation and reimbursement of expenses must be filed with the Bankruptcy Court no later than thirty (30) days (or such other period as may be allowed by order of the Bankruptcy Court) after the date on which the applicable request for compensation or reimbursement was served.

(c)      **Bar Date for Proofs of Claim Relating to Rejected Executory Contracts Or Unexpired Leases.**  Pursuant to Section 7.1 of the Plan and the Confirmation Order, the Confirmation Order shall constitute an order under section 365(a) and 1123 of the Bankruptcy Code approving the rejection or assumption, as applicable, of all prepetition executory contracts and unexpired leases to which any Debtor is a party unless such contract or lease (a) previously shall have been assumed, assumed and assigned, or rejected by the Debtors, (b) previously shall have expired or terminated pursuant to its own terms before the Effective Date, (c) are the subject of a pending motion to assume or reject on the Confirmation Date, or (d) are identified in Exhibit D of the Plan as a contract or lease to be

assumed. If the rejection of an executory contract or unexpired lease pursuant to section 7.1 of the Plan gives rise to a Claim by the other party or parties to such contract or lease, such Claim shall be forever barred and shall not be enforceable against the applicable Debtor or its Estate, the Reorganized Debtors, the Plan Administrator, or their respective successors or properties unless a proof of Claim is filed and served on the Reorganized debtors and counsel for the Reorganized Debtors within thirty (30) days after service of a notice of the Effective Date or such other date as is prescribed by the Bankruptcy Court.

4.      **Releases by Debtors and RCM.**  As of the Effective Date, for good and valuable consideration, the Debtors and RCM (in their individual capacities and as debtors and debtors in possession) will be deemed to release forever, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtors, RCM, the Reorganized Debtors or Post-Confirmation RCM to enforce this Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, RCM, Post-Confirmation RCM, the Chapter 11 Cases, this Plan, the Disclosure Statement or the RCM Settlement Agreement and that could have been asserted by or on behalf of the Debtors, RCM,  their Estates, the Reorganized Debtors or Post-Confirmation RCM, including pursuant to principles of substantive consolidation, piercing the corporate veil, alter ego, domination, constructive trust and similar principles of state or federal creditors' rights laws, in any such case, against the Released Parties.  For the avoidance of doubt, Released/Subordinated Claims shall include any and all claims and causes of action against the Released Parties, acting in such capacity, arising from or relating to (w) the Debtors' and RCM's centralized cash management system and intercompany transfers other than the RCM Intercompany Claim and Intercompany Claims with respect to Non-Debtor Affiliates, (x) the leveraged recapitalization in August 2004, (y) the initial public offering, and any related transactions effectuated in August 2005/September 2005, and (z) any transfer or payment made in respect of the Credit Agreement or the Senior Subordinated Note Indenture, including any redemption of Senior Subordinated Notes, which shall include any Claim or cause of action arising therefrom pursuant to sections 541, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

5.      **Releases by Holders of Claims and Interests in Respect of Released Parties.** On the Effective Date, each Holder of an Impaired Claim, including, but not limited to any Holder of an Impaired Claim against RCM that receives a Distribution in consideration for the obligations of the Debtors, RCM, the Reorganized Debtors and Post-Confirmation RCM under the Plan and the Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed to forever release, waive, and discharge all claims, demands, debts, rights, causes of action, or liabilities (other than the right to enforce Released Parties' obligations under the Plan, the Confirmation Order, and the contracts, instruments, releases, agreements, and documents delivered under the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, RCM the Chapter 11 Cases, the Plan, or the Disclosure Statement, in any such case, against the Released Parties.

6.      **Releases and Subordination by Holders of Claims and Interests in Respect of Contributing-Non-Debtor Affiliates and Contributing Non-Debtor Affiliate Management.**  On each Contributing Non-Debtor Affiliate Trigger Date, each Holder of an Impaired Claim, including, but not limited to, any Holder of an Impaired Claim against RCM that receives a Distribution under the Plan in consideration for the obligations of the Debtors, RCM, the Reorganized Debtors and Post-Confirmation

RCM under the Plan and the Cash and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Plan, shall be deemed to (a) subordinate all claims of the type described in section 10.2(b) of the Plan against the applicable Contributing Non-Debtor Affiliate to all other existing claims against and equity interests in such Contributing Non-Debtor Affiliate, and (b) release all claims of the type described in section 10.2(b) of the Plan against parties who are Contributing Non-Debtor Affiliate Management of such Contributing Non-Debtor Affiliate; *provided*, *however*, that the RCM Trustee, with the consent of the Plan Committee, may deem any subordination referenced in section 10.2(c) of the Plan to be a "release" of claims (and may request the Bankruptcy Court to enter an Order confirming the same) to the extent the RCM Trustee determines such a release necessary to ensuring that the applicable Contributing Non-Debtor Affiliate winds up its affairs and distributes on a net basis (whether on account of equity or intercompany balances) positive Cash to the Contributing Debtors and RCM or, if insufficient Cash will be available for Distribution to RCM and the Contributing Debtors, otherwise releases all Intercompany Claims of the Contributing Non-Debtor Affiliate against RCM and the Contributing Debtors.

7.    **Qualifying Plan Releases.**  In order to obtain for the estates of the Debtors the full benefits of the Early Payment Order, including the final allowance of Secured Lender Indemnification Claims at zero for purposes of the Chapter 11 Cases pursuant to paragraph 9(a) and (b) of the Early Payment Order, all Secured Lender Released Claims, unless previously made effective under the Early Payment Order, shall be fully, finally and forever released on the Effective Date.  For the avoidance of doubt, the releases provided under this section 10.2(d) of the Plan shall be interpreted such that their scope will satisfy the requirements under the Early Payment Order for the Plan to be a Qualifying Plan thereunder.

8.    **Releases by Recipients of BAWAG Proceeds.**  On the Effective Date, or in the case of Holders of RCM Securities Customer Claims and RCM FX/Unsecured Claims, the later of the Effective Date and the date at which an RCM Related Claim Subordination Form is provided (i) each Holder of a Secured Lender Claim, (ii) each Holder, that has not affirmatively exercised its option to be excluded from any Distribution of BAWAG Proceeds prior to the Voting Deadline, of (A) a Senior Subordinated Note Claim, or (B) a Contributing Debtors General Unsecured Claim, or (iii) each Holder, that has provided an RCM Related Claim Subordination form electing to receive RCM BAWAG Proceeds, of (A) an RCM Securities Customer Claim or (B) an RCM FX/Unsecured Claim, shall be deemed to forever release, waive, and discharge all claims, demands, debts, rights, causes of action, or liabilities against BAWAG, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way arising from or relating to Refco or the RGHI Entities (each as defined in the BAWAG Settlement), and any transactions involving such parties, including, but not limited to, claims or actions arising from or related to (a) the allegations set forth in the Complaint and the Counterclaim (each as defined in the BAWAG Settlement), (b) the allegations set forth in the Adversary Proceeding (as defined in the BAWAG Settlement), or (c) any allegations that could have been made by any of the Refco Parties (as defined in the BAWAG Settlement); *provided however*, that pursuant to the Securities Class Action Stipulation, any Holder of a Claim or Interest against the Debtors, that is also a member of the securities class action class described in the Securities Class Action Stipulation may, assuming approval of the Securities Class Action Stipulation (and the settlement contained therein), elect to receive BAWAG Proceeds without releasing BAWAG of its Securities Class Action claims as set forth in this paragraph.

9.    **Injunction Related to Releases.**  The Confirmation Order shall permanently enjoin the commencement or prosecution by any entity, whether directly, derivatively, or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities

released pursuant to the Plan or the Early Payment Order, including, but not limited to, the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities released in section 10.2 of the Plan.  For the avoidance of doubt, neither the Litigation Trust nor the Private Actions Trust shall bring any action to recover on any Released/Subordinated Claims.  Notwithstanding any provision contained herein or any provision in any documents incorporating or implementing in any manner the Plan to the contrary, nothing in the Plan or the transactions approved thereby is intended to or shall release any non debtor of any liabilities or obligations to the United States of America or its agencies or subdivisions (the "United States"), nor shall it enjoin or bar any claim by the United States against any Non-Debtor Affiliate.

          10.    **Exculpation and Limitation of Liability**.  To the maximum extent permitted by the Bankruptcy Code and applicable law, none of the (a) Debtors, (b) RCM, (c) the Reorganized Debtors, (d) the Plan Administrator, (e) any professionals retained by the Debtors or the RCM Trustee pursuant to an order of the Bankruptcy Court, (f) the Committees (including any present and former members thereof), (g) the RCM Trustee, (h) the parties to the RCM Settlement Agreement and the Plan Support Agreement (in such capacities), (i) the Post-Petition Management, (j) Post-Confirmation RCM, (k) the chapter 7 trustee appointed in Refco LLC's chapter 7 case, (l) AlixPartners, (m) the members of the Portfolio Management Advisory Committee and the Plan, Negotiation, and Litigation Advisory Committee, in each case, established under the RCM Settlement Agreement and in each case acting in such capacities, (n) the Ad Hoc Equity Committee, (o) the Ad Hoc Committee of  Senior Subordinated Note Holders. (p) the Senior Subordinated Note Indenture Trustee in its role of effectuating Distributions to Holders of Senior Subordinated Notes nor (q) any of their respective representatives, agents, officers, directors, employees, advisors, or attorneys shall have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the RCM Settlement Agreement or, if on or prior to the Effective Date, RCM's Chapter 11 Case is converted to a chapter 7 case to be administered under subchapter III of chapter 7, related to, or arising out of, the chapter 7 case, formulating, negotiating, or implementing this Plan, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

          11.    **No Discharge of Claims; Injunction.**  Pursuant to section 10.4 of the Plan, Confirmation shall not discharge Claims against the Contributing Debtors, FXA and RCM; *provided*, *however*, that no Holder of a Claim against or Interest in any Contributing Debtor,  FXA and RCM may, on account of such Claim or Interest, seek or receive any payment or other Distribution from, or seek recourse against the Estates of any Contributing Debtor, FXA or RCM, the Reorganized Debtors, Post-Confirmation RCM or their respective successors or their respective properties, except as expressly provided in the Plan.  Accordingly, except as otherwise provided in the Plan, from and after the Confirmation Date all Persons who have held, hold, or may hold Claims against or Interests in the Debtors or RCM are (i) permanently enjoined from taking any of the following actions against the Estate(s) of the Contributing Debtors, FXA, RCM, the Plan Administrator, the RCM Trustee, the Reorganized Debtors, Post-Confirmation RCM or any of their property on account of any such Claims or Interests and (ii) preliminarily enjoined from taking any of the following actions against any of the Contributing Debtors, FXA, RCM, the Reorganized Debtors, Post-Confirmation RCM or their property on account of such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (C) creating, perfecting, or enforcing any lien or encumbrance; and (D) commencing or continuing, in any manner or in any place, any action that does not comply with or is

599994-Chicago Server 2A - MSW

inconsistent with the provisions of the Plan; provided, however, that (x) nothing contained in the Plan shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan and (y) the preliminary injunction of actions against the Contributing Debtors, FXA and RCM, the Reorganized Debtors, Post-Confirmation RCM, and their property (if any) shall be dissolved and terminate one (1) day following the dissolution of the Reorganized Debtors and Post-Confirmation RCM and completion of the winding up of their affairs. Notwithstanding anything to the contrary set forth in the Plan, creditors' rights of setoff and recoupment are preserved, and the injunctions referenced in sections 10.4 and 10.5 of the Plan shall not enjoin the valid exercise of such rights of setoff and recoupment. By accepting Distributions pursuant to the Plan, each Holder of an Allowed Claim or Allowed Interest shall be deemed to have specifically consented to the injunctions set forth in Article X of the Plan.

Dated:  December ___, 2006
      New York, New York


| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | KASOWITZ, BENSON, TORRES & FRIEDMAN LLP |
| By:  /s/  J. Gregory St. Clair | By:  /s/  David S. Rosner |
| J. Gregory Milmoe (JGM 0919) | David S. Rosner (DR 4214) |
| Sally McDonald Henry (SMH 0839) | Andrew K. Glenn (AG 9934) |
| J. Gregory St. Clair (GS 8344) | Jeffrey R. Gleit (JG 8710) |
| Four Times Square | 1633 Broadway |
| New York, New York 10036 | New York, New York 10019 |
| (212) 735-3000 | (212) 506-1700 |
| Counsel for Refco Inc., et al., Debtors and Debtors-In-Possession | Counsel for the Additional Committee of Unsecured Creditors of Refco Inc., et al. |
| MILBANK, TWEED, HADLEY & McCLOY LLP | BINGHAM MCCUTCHEN LLP |
| By:  /s/  Susheel Kirpalani | By:  /s/  Tina L. Brozman |
| Luc A. Despins (LD 5141) | Tina L. Brozman (TB 0845) |
| Susheel Kirpalani (SK 8926) | Timothy B. DeSieno (TD 4316) |
| Dennis C. O'Donnell (DO 3648) | Mark Deveno (MD 8708) |
| 1 Chase Manhattan Plaza | Helder P. Pereira (HP 0408) |
| New York, New York 10005 | 399 Park Avenue |
| (212) 530-5000 | New York, NY 10022 |
| | (212) 705-7000 |
| Counsel to the Official Committee of Unsecured Creditors of Refco Inc., et al. | Counsel for the Chapter 11 Trustee for Refco Capital Markets Ltd. |

**EXHIBIT C**

| CONTRIBUTING DEBTORS | | |
|---|---|---|
| Classes Entitled to Vote | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) |
| Contributing Debtors Class 4 | 100.00% (289,095,000) | 100.00% (54) |
| Contributing Debtors Class 5(a).01. – Bersec International LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).02 – Kroeck & Associates, LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).03 – Lind-Waldock Securities LLC | 98.54% (204,806,982.70) | 85.71% (6) |
| Contributing Debtors Class 5(a).04 – Marshall Metals, LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).05 – New Refco Group Ltd., LLC | 99.51% (204,806,982.70) | 75.00% (6) |
| Contributing Debtors Class 5(a).06 – Refco Administration, LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).07 – Refco Capital Holdings, LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).08 – Refco Capital Management, LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).09 – Refco Capital LLC | 100.00% (205,930,983.35) | 96.97% (32) |
| Contributing Debtors Class 5(a).10 – Refco Capital Trading LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).11 – Refco Finance Inc. | 99.99% (204,806,982.70) | 85.71% (6) |
| Contributing Debtors Class 5(a).12 – Refco Financial, LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).13 – Refco Fixed Assets Management, LLC | 100.00% (204,833,460.05) | 100.00% (8) |
| Contributing Debtors Class 5(a).14 – Refco Global Capital Management LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).15 – Refco Global Finance Limited | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).16 – Refco Global Futures, LLC | 100.00% (206,575,302.8) | 87.50% (7) |
| Contributing Debtors Class 5(a).17 – Refco Global Holdings, LLC | 100.00% (204,806,982.70) | 100.00% (6) |
| Contributing Debtors Class 5(a).18 – Refco Group Ltd., LLC | 83.60% (401,000,914.52) | 89.29% (25) |

| | | |
|---|---|---|
| Contributing Debtors<br>Class 5(a).19 – Refco Inc. | 99.54%<br>(214,353,400.45) | 95.74%<br>(135) |
| Contributing Debtors<br>Class 5(a).20 – Refco Information Services, LLC | 100.00%<br>(204,806,982.70) | 100.00%<br>(6) |
| Contributing Debtors<br>Class 5(a).21 – Refco Managed Futures, LLC | 100.00%<br>(204,806,982.70) | 100.00%<br>(6) |
| Contributing Debtors<br>Class 5(a).22 – Refco Mortgage Securities, LLC | 100.00%<br>(204,806,982.70) | 100.00%<br>(6) |
| Contributing Debtors<br>Class 5(a).23 – Refco Regulated Companies, LLC | 100.00%<br>(204,806,982.70) | 100.00%<br>(6) |
| Contributing Debtors<br>Class 5(a).24 – Summit Management, LLC | 100.00%<br>(204,806,982.70) | 100.00%<br>(6) |
| Contributing Debtors<br>Class 5(a).25 – Westminster-Refco Management LLC | 100.00%<br>(204,806,982.70) | 100.00%<br>(6) |
| Contributing Debtors<br>Class 5(b).01. – Bersec International LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(6) |
| Contributing Debtors<br>Class 5(b).02 – Kroeck & Associates, LLC | 100.00%<br>(614,679,244.57) | 100.00%<br>(60) |
| Contributing Debtors<br>Class 5(b).03 – Lind-Waldock Securities LLC | 100.00%<br>(658,497,215.80) | 100.00%<br>(59) |
| Contributing Debtors<br>Class 5(b).04 – Marshall Metals, LLC | 100.00%<br>(671,223,449.97)) | 100.00%<br>(61) |
| Contributing Debtors<br>Class 5(b).05 – New Refco Group Ltd., LLC | 100.00%<br>(671,223,449.97)) | 100.00%<br>(61) |
| Contributing Debtors<br>Class 5(b).06 – Refco Administration, LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(62) |
| Contributing Debtors<br>Class 5(b).07 – Refco Capital Holdings, LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(61) |
| Contributing Debtors<br>Class 5(b).08 – Refco Capital Management, LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(61) |
| Contributing Debtors<br>Class 5(b).09 – Refco Capital LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(62) |
| Contributing Debtors<br>Class 5(b).10 – Refco Capital Trading LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(62) |
| Contributing Debtors<br>Class 5(b).11 – Refco Finance Inc. | 100.00%<br>(671,223,449.97) | 100.00%<br>(61) |
| Contributing Debtors<br>Class 5(b).12 – Refco Financial, LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(62) |
| Contributing Debtors<br>Class 5(b).13 – Refco Fixed Assets Management, LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(62) |
| Contributing Debtors<br>Class 5(b).14 – Refco Global Capital Management LLC | 100.00%<br>(671,223,449.97) | 100.00%<br>(62) |
| Contributing Debtors<br>Class 5(b).15 – Refco Global Finance Limited | 100.00%<br>(643,894,837.97) | 100.00%<br>(62) |
| Contributing Debtors<br>Class 5(b).16 – Refco Global Futures, LLC | 100.00%<br>(671,223,449.97) | 100%<br>(62) |
| Contributing Debtors<br>Class 5(b).17 – Refco Global Holdings, LLC | 100.00%<br>(671,223,449.97) | 100%<br>(62) |
| Contributing Debtors<br>Class 5(b).18 – Refco Group Ltd., LLC | 100.00%<br>(671,223,449.97) | 100%<br>(64) |

| | | |
|---|---|---|
| Contributing Debtors<br>Class 5(b).19 – Refco Inc. | 100.00%<br>(671,223,449.97) | 100.00%<br>(62) |
| Contributing Debtors<br>Class 5(b).20 – Refco Information Services, LLC | 100.00%<br>(671,223,449.97) | 100%<br>(62) |
| Contributing Debtors<br>Class 5(b).21 – Refco Managed Futures, LLC | 100.00%<br>(658,497,215.80) | 100.00%<br>(60) |
| Contributing Debtors<br>Class 5(b).22 – Refco Mortgage Securities, LLC | 100.00%<br>(671,223,449.97) | 100%<br>(61) |
| Contributing Debtors<br>Class 5(b).23 – Refco Regulated Companies, LLC | 100.00%<br>(669,672,867.59) | 100.00%<br>(60) |
| Contributing Debtors<br>Class 5(b).24 – Summit Management, LLC | 100.00%<br>(671,223,449.97) | 100%<br>(62) |
| Contributing Debtors<br>Class 5(b).25 – Westminster-Refco Management LLC | 100.00%<br>(655,229,287.01) | 100.00%<br>(59) |
| Contributing Debtors<br>Class 6 | 100.00%<br>(2,278,164,695.00) | 100.00%<br>(1) |

## FXA

| Classes Entitled to Vote | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) |
|---|---|---|
| FXA<br>Class 5(a) | 37.71%<br>(15,864,395.55) | 42.80%<br>(113) |
| FXA<br>Class 5(b) | 100.00%<br>(671,223,449.97) | 100.00%<br>(62) |
| FXA<br>Class 6 | 86.27%<br>(4,377,017.29) | 87.74%<br>(1,524) |

## RCM

| Classes Entitled to Vote | Percentage Accepting (Dollar Amount) | Percentage Accepting (Number of Claims) |
|---|---|---|
| RCM<br>Class 3 | 99.63%<br>(767,634,691.58) | 88.44%<br>(130) |
| RCM<br>Class 4 | 99.10%<br>(2,333,477,363.99) | 98.53%<br>(134) |
| RCM<br>Class 5 | 100.00%<br>(17,106,620.40) | 100.00%<br>(2) |
| RCM<br>Class 6 | 94.55%<br>(609,106.46) | 94.87%<br>(222) |
| RCM<br>Class 7 | 100.00%<br>(116,024.25) | 100.00%<br>(34) |
| RCM<br>Class 8 | 100.00%<br>(0.00) | 100.00%<br>(1) |

## EXHIBIT D

(a)      *RCM Trustee Administration Agreement.*  Prior to or on the Effective Date, the RCM Estate shall execute an RCM Administration Agreement in substantially the form of Exhibit E to the Plan (i.e., the Plan Administrator Agreement), revised as appropriate, with the RCM Trustee. Any nonmaterial modifications to the RCM Administration Agreement by RCM prior to the Effective Date are hereby ratified. The RCM Administration Agreement will contain provisions permitting the amendment or modification of the RCM Administration Agreement necessary to implement the provisions of this Plan.

(b)      *Compensation Of The RCM Trustee for Wind-Down.*  The RCM Trustee shall be compensated for all wind-down services from the RCM Wind-Down Reserve pursuant to the terms and conditions of the RCM Administration Agreement. Any professionals retained by the RCM Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred from the Wind-Down Reserve. The payment of the reasonable fees and expenses of the RCM Trustee and its retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court; *provided*, *however*, that any disputes related to such fees and expenses shall be brought before the Bankruptcy Court.

(c)      *Indemnification.*  RCM shall indemnify and hold harmless (i) the RCM Trustee (in its capacity as such and as officer, director or manager, as applicable of RCM), (ii) such individuals as may serve as officers, directors or managers, as applicable of RCM, if any, and (iii) the agents, financial advisors, attorneys, consultants, independent contractors, representatives, and other professionals of the RCM Trustee, in their capacities as such (the "RCM Administrative Professionals") (collectively, the "Indemnified Parties"), from and against, and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees, arising out of or due to their actions or omissions, or consequences of such actions or omissions, other than acts or omissions resulting from such Indemnified Party's willful misconduct or gross negligence, with respect to RCM or the implementation or administration of the Plan or RCM Administration Agreement. To the extent an Indemnified Party asserts a claim for indemnification as provided above, the legal fees and related costs incurred by counsel to the Indemnified Party in the defense of such claims giving rise to the asserted right of indemnification shall be advanced to such Indemnified Party (and such Indemnified Party undertakes to repay such amounts if it ultimately shall be determined that such Indemnified Party is not entitled to be indemnified therefor) out of the RCM Wind-Down Reserve or any insurance purchased using the RCM Wind-Down Reserve. The indemnification provisions of the RCM Administration Agreement shall remain available to and be binding upon any former RCM Trustee or the estate of any decedent RCM Trustee and shall survive the termination of the RCM Administration Agreement.

(d)      *Insurance.*  The RCM Trustee shall be authorized to obtain and pay for out of the RCM Wind-Down Reserve all reasonably necessary insurance coverage for itself, its agents, representatives, employees, or independent contractors, and RCM, including, but not limited to, coverage with respect to (i) any property that is or may in the future become the property of

RCM or its Estate and (ii) the liabilities, duties, and obligations of the RCM Trustee and its agents, representatives, employees, or independent contractors under the RCM Administration Agreement (in the form of an errors and omissions policy or otherwise), the latter of which insurance coverage may, at the sole option of the RCM Trustee, remain in effect for a reasonable period (not to exceed seven years) after the termination of the RCM Administration Agreement.

(e)     *Tax Reporting and Compliance*.  The RCM Trustee is hereby authorized, on behalf of RCM, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of RCM for all taxable periods ending after the Petition Date through, and including, the Effective Date. .

(f)     *Resolution of Disputed Claims*.  The RCM Trustee shall have the authority to object to and settle Disputed Claims against the RCM Estate in the same manner as set forth in section 5.5(h) of the Plan, *provided*, *however*, that reference to the Plan Committee in section 5.5(h)(ii) shall not apply to the RCM Trustee.