loans; and (f) as a result of the foregoing breaches of fiduciary duty, RGL was insolvent or operating in the zone of insolvency.

457.   RGHI, Bennett, and Grant knew that their representations to the innocent RGL directors, officers and agents, including inside counsel and others, regarding the financial health of RGL and its affiliates were false because they were intimately involved in and directed the RGHI Receivable scheme, the RTLs, the diversion of RCM assets to RGL and its affiliates, and the other fraudulent conduct alleged herein.

458.   RGHI, Bennett, and Grant were in a position of unique and superior knowledge regarding the true facts concerning the condition of RGL, the true substance and scope of the RGHI Receivable, the RTLs, the diversion of RCM assets to fund Refco's operations, and the fact that the appearance of RGL's financial health and strength was fabricated.

459.   In the alternative, Bennett and Grant are liable for aiding and abetting each other's and/or RGHI's breach of its fiduciary duties to RGL because, among other things, they were aware of the existence of those duties, yet actively participated in and knowingly and substantially assisted the breach of those duties, as alleged herein.

460.   As a proximate result of these breaches of fiduciary duty, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against RGHI, Bennett, and Grant for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## EIGHTEENTH CLAIM FOR RELIEF
### (Fraud Claim by RGL Against Bennett, Maggio, and Trosten)

461.    Paragraphs 1 to 460 are incorporated as if fully set forth herein.

462.    Bennett, Maggio, and Trosten were the masterminds behind the fraudulent scheme alleged herein, controlling and directing every aspect of the fraud.

463.    In order to facilitate a lucrative sale of their interests in Refco, Bennett, Maggio, and Trosten engaged in a fraudulent scheme through which they propped up the perceived financial condition of RGL and its affiliates and caused RGL to enter into an imprudent LBO whereby RGL was saddled with $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, and was left unable to satisfy it obligations, including its obligation to repay the RCM intercompany loans.

464.    In furtherance of this scheme, Bennett, Maggio, and Trosten affirmatively misrepresented Refco's financial condition to the innocent RGL directors, officers and agents, including inside counsel and others, and falsely represented that RGL did not engage in any material related-party transactions.

465.    Bennett, Maggio and Trosten knew the falsity of the foregoing material misrepresentations and concealed, among other things, the following fraudulent components of their overall scheme: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates used RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and its suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

466.    Bennett, Maggio, and Trosten knew that their representations regarding the financial health of RGL and its affiliates were false because they were intimately involved in and directed the RGHI Receivable scheme, the RTLs, the diversion of RCM assets to RGL and its affiliates, and the other fraudulent conduct alleged herein.

467.    Bennett, Maggio, and Trosten made the foregoing material omissions and affirmative misrepresentations with the intent to deceive RGL, the innocent RGL directors, officers and agents, including inside counsel and others, so as to induce RGL to enter into an imprudent LBO which would solely benefit the Refco Insiders at RGL's expense.

468.    As officers of RGL, Bennett, Maggio, and Trosten had fiduciary duties to, and a special relationship of confidence and trust with, RGL and, given RGL's insolvent condition, its creditors, including RCM.

469.    The innocent RGL directors, officers and agents, including inside counsel and others, were justified in relying on Bennett, Maggio, and Trosten, who were Refco senior officers (with fiduciary duties to Refco) and whose statements regarding Refco's financial health were backed by outside professional advisors, including MB, GT, E&Y, PwC, and the Investment Banker Defendants.

470.    Bennett, Maggio, and Trosten were in a position of unique and superior knowledge regarding the true facts concerning the condition of RGL, the true substance and scope of the RGHI Receivable, the RTLs, the diversion of RCM assets to fund Refco's operations, and the fact that the appearance of RGL's financial health and strength was fabricated.

471.    As expected and anticipated by Bennett, Maggio, and Trosten, and those acting in active concert or participation with them, RGL entered into the LBO in ignorance of its true precarious financial condition. Had the true facts been fully disclosed, RGL would not have entered into the LBO.

472.    In entering into the LBO, RGL relied to its detriment on the appearance of financial health and strength fraudulently created by Bennett, Maggio, and Trosten with the active

participation and assistance of the Professional Defendants, and on its ignorance of the true facts with respect to RGL's true precarious financial condition.

473.    The true facts concerning the foregoing omissions and misrepresentations were material, and the innocent RGL directors, officers and agents, including inside counsel and others, would not have permitted the LBO to go forward had they known them.

474.    The innocent RGL directors, officers and agents, including inside counsel and others, were justified in relying on Bennett, Maggio, and Trosten who were RGL's directors and officers (with fiduciary duties to RGL) and whose statements regarding Refco's financial health were backed by RGL's outside professional advisors, including GT, MB, E&Y, PwC, and the Investment Banker Defendants.

475.    In the alternative, Bennett, Maggio, and Trosten are liable for aiding and abetting each other's fraudulent conduct because, among other things, they actively participated in and knowingly and substantially assisted each other's misrepresentations and omissions.

476.    As expected and anticipated by Bennett, Maggio, and Trosten, as a proximate result of their fraudulent omissions and misrepresentations, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against Bennett, Maggio, and Trosten for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## NINETEENTH CLAIM FOR RELIEF
### (Malpractice Claim by RGL Against MB)

477.    Paragraphs 1 to 476 are incorporated as if fully set forth herein.

478.    At all relevant times, MB was employed by and acted as the outside counsel to RGL and its affiliates.

479.    MB provided legal advice to RGL and its affiliates regarding, among other things: (a) the customer agreements utilized by RGL and its affiliates; (b) the applicability and impact of United States and foreign regulations and law on RGL's activities and operations; (c) corporate governance of Refco; (d) loan and financing transactions entered into by RGL and its affiliates; and (e) the disclosures filed with regulators and the public in connection with the LBO.

480.    MB owed a duty of care to RGL on account of its professional relationship with RGL.

481.    MB breached its duty of care to RGL by preparing, negotiating, and facilitating the RTLs and failing to advise the innocent RGL directors, officers and agents, including inside counsel and others that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs MB prepared were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

482.    Given MB's knowledge of the RGHI Receivable, MB's preparation of the documents for the RTL transactions and MB's role as legal advisor to RGL, MB knew that RGL was not in a suitable condition to undergo the LBO.

483.    Any law firm acting properly under the ethical standards of the profession would have revealed these facts and required their disclosure in RGL's financial statements and/or to the innocent RGL directors, officers and agents, including inside counsel and others.

484.    As a proximate result of MB's breach of its duty of care, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and

other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

### TWENTIETH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty Claim by RGL Against MB)

485.    Paragraphs 1 to 484 are incorporated as if fully set forth herein.

486.    At all relevant times, MB served as RGL's outside counsel and provided legal services to RGL.

487.    At the same time, MB served as RGHI's counsel and provided legal services to RGHI.

488.    As RGL's outside counsel, MB had a fiduciary duty to protect RGL's interests.

489.    MB had an undisclosed conflict of interest and breached its fiduciary duties to RGL by facilitating an LBO that benefited RGHI at RGL's expense.

490.    As a proximate result of MB's breach of its fiduciary duties, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-FIRST CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claims by RGL Against MB)

491.  Paragraphs 1 to 490 are incorporated as if fully set forth herein.

492.  By virtue of its role as outside counsel for RGL and its affiliates, MB knew and/or consciously avoided knowing that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs MB prepared were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; (f) as a result of the foregoing, RGL and its affiliate were insolvent or were operating in the zone of insolvency; and (g) Bennett, Maggio, Trosten, Grant and RGHI were, by virtue of the foregoing, breaching their fiduciary duties to RGL.

493.  MB was aware of its own role in the Refco Insiders and RGHI's overall scheme.

494.  Notwithstanding this knowledge, MB knowingly and substantially assisted in Bennett, Maggio, Trosten, Grant, and RGHI's breaches of their fiduciary duties to RGL by, among other things: (a) preparing the documentation for each of the RTLs, which were used to conceal the existence of the RGHI Receivable at the end of each relevant reporting and audit period; (b) advising Refco in connection with an LBO that would leave RGL unable to satisfy its obligations, including repayment of the funds diverted from RCM; (c) improperly advising RCM that it could transfer its customer funds to RGL and its affiliates despite knowing that these entities did not have the financial wherewithal to satisfy these additional obligations; and (d) failing to disclose its knowledge of the RGHI Receivable and the RTLs to the innocent RGL directors, officers and agents, including inside counsel and others.

495.    As a proximate result of MB's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-SECOND CLAIM FOR RELIEF
### (Aiding and Abetting Fraud Claim by RGL Against MB)

496.    Paragraphs 1 to 495 are incorporated as if fully set forth herein.

497.    MB had actual knowledge of and/or consciously avoided knowing that Bennett, Maggio, and Trosten concealed from the innocent RGL directors, officers and agents, including inside counsel and others, the following components, among others, of their fraudulent scheme: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs MB prepared were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

498.    MB was aware of its own role in Bennett, Maggio, and Trosten's overall scheme.

499.    Notwithstanding this knowledge, MB knowingly and substantially assisted in Bennett, Maggio, and Trosten's fraud by, among other things: (a) preparing the documentation for

each of the RTLs which were used to conceal the existence of the RGHI Receivable at the end of each relevant reporting and audit period; (b) advising Refco in connection with an LBO that would leave RGL unable to satisfy its obligations, including repayment of the funds diverted from RCM; (c) improperly advising RCM that it could transfer its customer funds to RGL and its affiliates despite knowing that these entities did not have the financial wherewithal to satisfy these additional obligations; and (d) failing to disclose its knowledge of the RGHI Receivable and the RTLs to the innocent RGL directors, officers and agents, including inside counsel and others.

500.    As a proximate result of MB's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-THIRD CLAIM FOR RELIEF
### (Malpractice Claim by RGL Against GT)

501.    Paragraphs 1 to 500 are incorporated as if fully set forth herein.

502.    At all relevant times, GT was employed by and acted as RGL's auditor.

503.    GT owed a duty of care to RGL on account of its professional relationship with RGL.

504.    GT breached its duty of care to RGL by, among other things, issuing unqualified audit opinions that were false and failing to require disclosure in RGL's financial statements or to advise the innocent RGL directors, officers and agents, including inside counsel and others that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the

129

RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

505. Any audit examination conducted with the care and diligence required of professional auditors would have revealed these facts and required their disclosure in RGL's financials and/or to the innocent RGL directors, officers and agents, including inside counsel and others.

506. As a proximate result of GT's breach of its duty of care, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-FOURTH CLAIM FOR RELIEF
### (Negligent Misrepresentation Claim by RGL Against GT)

507. Paragraphs 1 to 506 are incorporated as if fully set forth herein.

508. At all relevant times, GT was employed by and acted as RGL's auditor.

509. As RGL's auditor, GT had a duty to RGL to verify the accuracy of the information concerning RGL's financial condition.

510. In its annual financial audits of RGL, GT negligently misrepresented RGL's financial condition and negligently issued unqualified audit opinions that were false despite knowing, or negligently disregarding, that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating

130

expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

511.    As RGL's auditors, GT knew and intended that the innocent RGL directors, officers and agents, including inside counsel and others, regulators, investors, and future purchasers of Refco would and did reasonably rely on the unqualified audit opinions that GT issued.

512.    RGL's reliance on GT's false statements was reasonable and justified under the circumstances.

513.    As a proximate result of GT's material misrepresentations and omissions about RGL's financial condition, which gave the appearance of financial health and strength, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-FIFTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claims by RGL Against GT)

514.    Paragraphs 1 to 513 are incorporated as if fully set forth herein.

515.    By virtue of its role as RGL's auditor, GT knew and/or consciously avoided knowing that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency; and (g) Bennett, Maggio, Trosten, Grant, and RGHI were, by virtue of the foregoing, breaching their fiduciary duties to RGL.

516.    GT was aware of its own role in the Refco Insiders and RGHI's overall scheme.

517.    Notwithstanding this knowledge, GT knowingly and substantially assisted in Maggio, Bennett, Trosten, Grant, and RGHI's breaches of their fiduciary duty to RGL by, among other things, issuing unqualified audit opinions that were false, and failing to require disclosure in RGL's audited financial statements or to advise the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo

132

the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

518.    As a proximate result of GT's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-SIXTH CLAIM FOR RELIEF
### (Aiding and Abetting Fraud Claim by RGL Against GT)

519.    Paragraphs 1 to 518 are incorporated as if fully set forth herein.

520.    GT had actual knowledge of and/or consciously avoided knowing that Bennett, Maggio, and Trosten concealed from the innocent RGL directors, officers and agents, including inside counsel and others, the following components, among others, of their fraudulent scheme: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

521. GT also knew that Bennett, Maggio, and Trosten affirmatively misrepresented to the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things, there were no material related-party transactions.

522. GT was aware of its own role in Bennett, Maggio, and Trosten's overall scheme.

523. Notwithstanding this knowledge, GT knowingly and substantially assisted in Bennett, Maggio, and Trosten's fraud by, among other things, issuing unqualified audit opinions that were false and failing to require disclosure in RGL's financial statements or to advise the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

524. As a proximate result of GT's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-SEVENTH CLAIM FOR RELIEF
### (Malpractice Claim by RGL Against E&Y)

525.    Paragraphs 1 to 524 are incorporated as if fully set forth herein.

526.    E&Y prepared federal, state, and municipal tax returns for Refco, assisted Refco in audits, and repeatedly provided tax consulting and advice with respect to numerous Refco transactions, including corporate restructurings among the various Refco entities, proposed sales and acquisitions by Refco, potential third-party investments involving Refco, and the actual sale of a 10% interest in RGL to BAWAG.

527.    E&Y owed a duty of care to RGL on account of its professional relationship with RGL.

528.    E&Y breached its duty of care to RGL by, among other things, preparing false tax returns for RGL without disclosing in RGL's tax documents or advising the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; and (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period.

529.    Any tax return prepared with the care and diligence required of a professional tax preparer would have revealed these facts, and such a professional tax preparer would have required their disclosure in RGL's tax documents.

530.    As a proximate result of E&Y's breach of its duty of care, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against E&Y for the amount of damages sustained, including attorneys'

fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-EIGHTH CLAIM FOR RELIEF
### (Negligent Misrepresentation Claim by RGL Against E&Y)

531.    Paragraphs 1 to 530 are incorporated as if fully set forth herein.

532.    E&Y prepared federal, state, and municipal tax returns for Refco, assisted Refco in audits, and repeatedly provided tax consulting and advice with respect to numerous Refco transactions, including corporate restructurings among the various Refco entities, proposed sales and acquisitions by Refco, potential third-party investments involving Refco, and the actual sale of a 10% interest in RGL to BAWAG.

533.    As RGL's tax advisor and preparer, at all relevant times, E&Y owed duties to provide RGL with accurate information concerning the tax obligations of RGL.

534.    In preparing RGL's tax returns, E&Y negligently misrepresented RGL's financial condition by preparing and filing inaccurate federal, state, and municipal tax returns on behalf of RGL that failed to disclose that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; and (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue.

535.    E&Y should have known, but instead negligently disregarded, the falsity of the RGL tax returns that it prepared.

536.    As RGL's tax preparer and advisor, E&Y knew and intended that the innocent RGL directors, officers and agents, including inside counsel and others, regulators, investors, and future purchasers of Refco would and did reasonably rely on the tax returns E&Y prepared.

537.    RGL's reliance on E&Y's false statements was reasonable and justified under the circumstances.

538.    As a proximate result of E&Y's material misrepresentations and omissions about RGL's financial condition, which gave the appearance of financial health and strength, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against E&Y for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## TWENTY-NINTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claims by RGL Against E&Y)

539.    Paragraphs 1 to 538 are incorporated as if fully set forth herein.

540.    By virtue of its role as RGL's tax advisor and preparer, E&Y knew and/or consciously avoided knowing that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition to facilitate a lucrative sale of the Refco Insiders' interests for more than these interests were worth; and (e) Bennett, Maggio, Trosten, Grant, and RGHI were, by virtue of the foregoing, breaching their fiduciary duties to RGL.

541.    E&Y was aware of its own role in the Refco Insiders and RGHI's overall scheme.

542.    Notwithstanding this knowledge, E&Y knowingly and substantially assisted in Bennett, Maggio, Trosten, Grant, and RGHI's breaches of their fiduciary duties to RGL by, among other things: (a) preparing and filing inaccurate federal, state, and municipal tax returns on behalf of

137

RGHI and Refco that concealed the existence of the RGHI Receivable (and, along with it, RGL's trading losses and operating expenses); (b) preparing and filing federal, state, and municipal tax returns on behalf of RGL that falsely reflected interest income associated with the RGHI Receivable; and (c) advising the Refco Insiders in connection with the concealment of trading losses through the Minglewood transaction.

543.    As a proximate result of E&Y's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against E&Y for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## THIRTIETH CLAIM FOR RELIEF
### (Aiding and Abetting Fraud Claim by RGL Against E&Y)

544.    Paragraphs 1 to 543 are incorporated as if fully set forth herein.

545.    E&Y had actual knowledge of and/or consciously avoided knowing that Bennett, Maggio, and Trosten concealed from the innocent RGL directors, officers and agents, including inside counsel and others the following components, among others, of their fraudulent scheme: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; and (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition to facilitate a lucrative sale of the Refco Insiders' interests for more than these interests were worth.

546.   E&Y was aware of its own role in Bennett, Maggio, and Trosten's overall scheme.

547.   Notwithstanding this knowledge, E&Y knowingly and substantially assisted in Bennett, Maggio, and Trosten's fraud by, among other things: (a) preparing and filing inaccurate federal, state, and municipal tax returns on behalf of RGHI and Refco that concealed the existence of the RGHI Receivable (and, along with it, RGL's trading losses and operating expenses); (b) preparing and filing federal, state, and municipal tax returns on behalf of RGL that falsely reflected interest income associated with the RGHI Receivable; and (c) advising the Refco Insiders in connection with the concealment of trading losses through the Minglewood transaction.

548.   As a proximate result of E&Y's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against E&Y for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

### THIRTY-FIRST CLAIM FOR RELIEF
### (Malpractice Claim by RGL Against PwC)

549.   Paragraphs 1 to 548 are incorporated as if fully set forth herein.

550.   PwC provided consulting services to RGL in numerous accounting and financial relevant reporting matters, including analyzing the propriety of the LBO and preparing registration statements and other documents to be filed with the SEC in connection with the LBO and IPO, reviewing and strengthening Refco's internal accounting controls, and serving as Refco's *de facto* Chief Accounting Officer. In addition, PwC served as RGL's tax preparer and tax consultant for the tax year beginning January 1, 2004.

551.   PwC owed a duty of care to RGL on account of its professional relationship with RGL.

552. PwC breached its duty of care to RGL by, among other things, advising and guiding Refco through the LBO and IPO, preparing and commenting on disclosures filed with the United States regulators in connection with Refco's LBO and IPO, and preparing false tax returns for RGL without disclosing in these disclosures and tax returns or advising the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

553. Given PwC's role as RGL's *de facto* Chief Accounting Officer and its role as a financial and accounting consultant for RGL in connection with RGL's LBO and its preparation for the IPO, PwC knew that RGL was not in a position to undergo the LBO.

554. As a proximate result of PwC's breach of its duty of care, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against PwC for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## THIRTY-SECOND CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claims by RGL Against PwC)

555.    Paragraphs 1 to 554 are incorporated as if fully set forth herein.

556.    By virtue of its role as a financial and tax advisor and *de facto* Chief Accounting Officer for Refco, PwC knew and/or consciously avoided knowing that, among other things: (a) there were undisclosed material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including RCM's intercompany loans; (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency; and (g) Bennett, Maggio, Trosten, Grant, and RGHI were, by virtue of the foregoing, breaching their fiduciary duties to RGL.

557.    PwC was aware of its own role in the Refco Insiders and RGHI's overall scheme.

558.    Notwithstanding this knowledge, PwC knowingly and substantially assisted in Bennett, Maggio, Trosten, Grant, and RGHI's breaches of fiduciary duties to RGL by, among other things: (a) advising and guiding Refco through the LBO; (b) preparing and commenting on disclosures filed with the United States regulators in connection with Refco's LBO, which failed to disclose the RGHI Receivable, the RTLs, the RCM intercompany receivables, or Refco's inability to repay these loans to RCM; and (c) preparing false tax returns for RGL which failed to disclose or account for the RGHI Receivable and the RTLs.

559.    As a proximate result of PwC's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco

Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against PwC for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## THIRTY-THIRD CLAIM FOR RELIEF
### (Aiding and Abetting Fraud Claim by RGL Against PwC)

560.    Paragraphs 1 to 559 are incorporated as if fully set forth herein.

561.    PwC had actual knowledge of and/or consciously avoided knowing that Bennett, Maggio, and Trosten concealed from the innocent RGL directors, officers and agents, including inside counsel and others, the following components, among others, of their fraudulent scheme: (a) there were material related-party transactions between Refco and RGHI through which substantial undisclosed Refco trading losses and operating expenses were moved off Refco's books and concealed; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RTLs were used to conceal the RGHI Receivable at the end of each relevant reporting and audit period; (d) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (e) the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; and (f) as a result of the foregoing, RGL was insolvent or operating in the zone of insolvency.

562.    PwC was aware of its own role in Bennett, Maggio, and Trosten's overall scheme.

563.    Notwithstanding this knowledge, PwC knowingly and substantially assisted in Bennett, Maggio, and Trosten's fraud by, among other things: (a) advising and guiding RGL through the LBO; (b) preparing and commenting on disclosures filed with the United States regulators in connection with Refco's LBO which failed to disclose the RGHI Receivable, the RTLs, the RCM

142

intercompany receivables, or Refco's inability to repay these loans to RCM; and (c) preparing false tax returns for RGL which failed to disclose or account for the RGHI Receivable and the RTLs.

564. As a proximate result of PwC's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against PwC for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## THIRTY-FOURTH CLAIM FOR RELIEF
### (Malpractice Claim by RGL Against Credit Suisse)

565. Paragraphs 1 to 564 are incorporated as if fully set forth herein.

566. At all relevant times, Credit Suisse was employed by and acted as RGL's "exclusive financial advisor" in connection with marketing and selling RGL.

567. Among other responsibilities, Credit Suisse was charged with "evaluating the business, operations and financial position of [RGL]" and assisting RGL with evaluating proposals from potential purchasers and with structuring and negotiating the sale of the company.

568. Credit Suisse owed a duty of care to RGL on account of its professional relationship with RGL.

569. Credit Suisse was grossly negligent in breaching its duty of care to RGL by, among other things, developing an LBO in which RGL would be left with unreasonably small capital to pay its debts, including its obligation to repay the RCM intercompany loans.

570. As a proximate result of Credit Suisse's breach of its duty of care, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against Credit Suisse for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## THIRTY-FIFTH CLAIM FOR RELIEF
### (Negligent Misrepresentation Claim by RGL Against Credit Suisse)

571.    Paragraphs 1 to 570 are incorporated as if fully set forth herein.

572.    At all relevant times, Credit Suisse was employed by and acted as RGL's "exclusive financial advisor."

573.    Among other responsibilities, Credit Suisse was charged with "evaluating the business, operations and financial position of [RGL]" and assisting RGL with evaluating proposals from potential purchasers and with structuring and negotiating the sale of the company.

574.    As RGL's exclusive financial advisor, Credit Suisse owed duties to provide RGL with accurate information concerning the financial condition of RGL, including its ability to satisfy its obligations after the LBO.

575.    In the projections it prepared in connection with the LBO, Credit Suisse negligently misrepresented that, among other things, RGL would be able to satisfy its obligations after the LBO, despite knowing, or negligently disregarding, that the LBO which would line the Refco Insiders' pockets would leave RGL with insufficient capital to meet its obligations, including repayment of RCM's intercompany loans, and render RGL insolvent or operating in the zone of insolvency.

576.    Credit Suisse should have known, and negligently disregarded, the falsity of the foregoing material misrepresentations and omissions.

577.    As RGL's exclusive financial advisor, Credit Suisse knew and intended that the innocent RGL directors, officers and agents, including inside counsel and others, regulators, investors, and future purchasers of Refco would and did reasonably rely on the projections that Credit Suisse prepared in connection with their evaluation of the LBO.

144

578.    RGL's reliance on Credit Suisse's false projections was reasonable and justified under the circumstances.

579.    As a proximate result of Credit Suisse's material misrepresentations and omissions about RGL's financial condition, which gave the appearance of financial health and strength, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against Credit Suisse for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## THIRTY-SIXTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claim by RGL Against Credit Suisse, BAS, and Deutsche)

580.    Paragraphs 1 to 579 are incorporated as if fully set forth herein.

581.    By virtue of their roles as financial advisors to Refco in connection with the LBO and the IPO, Credit Suisse, BAS, and Deutsche knew and/or consciously avoided knowing that, among other things: (a) RGL and its affiliates were using RCM's assets to finance their operations and acquisitions so as to prop up RGL's overall perceived financial condition and suitability to undergo the LBO; (b) the LBO which would line the Refco Insiders' pockets would cause RGL to incur $1.4 billion in new LBO debt and leave RGL with insufficient capital to meet its obligations, including repaying RCM's intercompany loans; (c) the LBO would render RGL insolvent or in the zone of insolvency; and (d) by having RGL enter into the LBO, Bennett, Maggio, Trosten, Grant, and RGHI were thereby breaching their fiduciary duties to RGL.

582.    Credit Suisse, BAS, and Deutsche were aware of their own roles in the Refco Insiders and RGHI's overall scheme.

583.    Notwithstanding this knowledge, Credit Suisse, BAS, and Deutsche knowingly and substantially assisted in Bennett, Maggio, Trosten, Grant, and RGHI's breaches of their fiduciary duties to RGL by, among other things, purposefully advising and facilitating an LBO through which RGL's assets were distributed to Refco Insiders and other RGL equity holders and RCM's right to repayment was subordinated to $1.4 billion in new LBO debt, thereby leaving RGL unable to satisfy its obligations, including repaying the RCM intercompany loans, and insolvent or operating in the zone of insolvency.

584.    As a proximate result of Credit Suisse, BAS, and Deutsche's knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against Credit Suisse, BAS, and Deutsche for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## THIRTY-SEVENTH CLAIM FOR RELIEF
### (Aiding and Abetting Fraud Claim by RGL Against the RTL Defendants)

585.    Paragraphs 1 to 584 are incorporated as if fully set forth herein.

586.    Each of the RTL Defendants knew and/or consciously avoided knowing that Bennett, Maggio, and Trosten concealed from the innocent RGL directors, officers and agents, including inside counsel and others, that, among other things, the RTLs were concealing a related-party receivable at the end of each relevant reporting and audit period.

587.    The RTL Defendants were aware of their own roles in Bennett, Maggio, and Trosten's scheme to conceal the RGHI Receivable.

588.    Notwithstanding this knowledge, the RTL Defendants knowingly and substantially assisted in Bennett, Maggio, and Trosten's fraud by, among other things, knowingly entering into

and facilitating the fraudulent RTL transactions, without which Bennett, Maggio, and Trosten could not have fraudulently concealed Refco's true financial condition.

589.    As a proximate result of the RTL Defendants' knowing and substantial assistance, RGL entered into the LBO whereby it incurred $1.4 billion in new LBO debt, distributed its assets to the Refco Insiders and other RGL equity holders, was no longer able to repay the funds diverted from RCM to RGL and its affiliates, and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against the RTL Defendants for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial.

## REFCO INC. CLAIMS

### THIRTY-EIGHTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty Claim by Refco Inc. Against Bennett and Maggio)

590.    Paragraphs 1 to 589 are incorporated as if fully set forth herein.

591.    At all relevant times, Bennett and Maggio owed fiduciary duties of loyalty, care, honesty, and good faith to Refco Inc. (hereinafter defined to include Refco's corporate parents -- RGL and New Refco Group -- prior to the IPO).

592.    Bennett and Maggio breached these fiduciary duties by, among other things: (a) engaging in an IPO transaction based on inaccurate financial information that saddled Refco Inc. with liabilities to the purchasers of its stock; (b) causing Refco Inc. to pay down, as part of the IPO structure, $231 million in debt obligations owed by RGL, which was insolvent; and (c) distributing Refco Inc.'s assets to the Refco Insiders and other New Refco Group equity holders without paying down the significant amounts RGL owed to RCM.

593.    As a proximate result of Bennett and Maggio's breaches of their fiduciary duties, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

147

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against Bennett and Maggio for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

## THIRTY-NINTH CLAIM FOR RELIEF
### (Malpractice Claim by Refco Inc. Against MB)

594.    Paragraphs 1 to 593 are incorporated as if fully set forth herein.

595.    At all relevant times, MB was employed by and acted as Refco's outside counsel.

596.    MB provided legal advice to RGL and its affiliates regarding, among other things: (a) the customer agreements utilized by RGL and its affiliates; (b) the applicability and impact of United States and foreign regulations and law on RGL's activities and operations; (c) corporate governance of Refco; (d) loan and financing transactions entered into by RGL and its affiliates; (e) the disclosures filed with regulators and the public in connection with the IPO; and (f) its legal opinion based on its review of the IPO prospectus.

597.    MB owed a duty of care to Refco Inc. on account of its professional relationship with Refco Inc.

598.    MB breached its duty of care to Refco Inc. by, among other things, reviewing and commenting on the documents necessary to facilitate the IPO and the disclosures submitted in connection with the IPO, and providing a legal opinion in connection with the IPO without advising Refco Inc.'s innocent directors, officers and agents, including inside counsel and others, that, among other things: (a) substantial Refco trading losses and operating expenses were being concealed by the RGHI Receivable; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RGHI Receivable was being concealed at the end of each relevant reporting and audit period through the RTLs MB prepared, negotiated, and facilitated; (d) RCM funds were being used to pay the operating expenses of RGL and its affiliates so as to make Refco's overall perceived financial condition suitable for the IPO; (e) Refco's financial statements were inaccurate and that, as a result of the IPO, Refco Inc. would be saddled

148

with liabilities to the purchasers of its stock; and (f) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary, and distribute Refco Inc.'s assets to the Refco Insiders, other New Refco Group equity holders, and the Investment Banker Defendants without first paying down other significant Refco Inc. obligations, including the amounts owed to RCM.

599.    Given MB's knowledge of the RGHI Receivable, MB's preparation of the documents for the RTL transactions, MB's role as legal advisor to Refco in all matters, including corporate governance and United States and foreign regulations and law governing Refco's operations, activities, and use and treatment of client funds, securities, and other property, and preparation and review of Refco's customer agreements, MB knew that Refco Inc. was not in a suitable financial condition to undergo the IPO.

600.    Any law firm acting properly under the ethical standards of the profession would have revealed these facts and required their disclosure in Refco Inc.'s financial statements and/or to Refco Inc.'s innocent directors, officers and agents, including inside counsel and others.

601.    As a proximate result of MB's breach of its duty of care, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

### FORTIETH CLAIM FOR RELIEF
#### (Aiding and Abetting Breach of Fiduciary Duty Claim by Refco Inc. Against MB

602.    Paragraphs 1 to 601 are incorporated as if fully set forth herein.

603.    By virtue of its role as outside counsel for Refco Inc. and its affiliates, MB knew and/or consciously avoided knowing that, among other things: (a) substantial Refco trading losses and operating expenses were being concealed by the RGHI Receivable; (b) hundreds of millions of

dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RGHI Receivable was being concealed at the end of each relevant reporting and audit period through the RTLs MB prepared, negotiated, and facilitated; (d) RCM funds were being used to pay the operating expenses of RGL and its affiliates so as to make Refco's overall perceived financial condition suitable for the IPO; (e) as a result of the IPO, Refco Inc. would be saddled with liabilities to the purchasers of its stock; and (f) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary, and distribute Refco Inc.'s assets to the Refco Insiders, other New Refco Group equity holders, and the Investment Banker Defendants without first paying down other significant Refco Inc. obligations, including the amounts owed to RCM; and (g) Bennett and Maggio were thereby breaching their fiduciary duties to Refco Inc.

604.    MB was aware of its own role in Bennett and Maggio's overall scheme.

605.    Notwithstanding this knowledge, MB substantially assisted in Bennett and Maggio's breaches of their fiduciary duties to Refco Inc. by, among other things: (a) preparing the documentation for each of the RTLs which were used to conceal the existence of the RGHI Receivable at the end of each relevant reporting and audit period; and (b) advising on and facilitating the IPO by reviewing IPO documents and disclosures and preparing a legal opinion in connection with the IPO without disclosing to Refco's innocent directors, officers and agents, including inside counsel and others, the foregoing facts of Bennett and Maggio's breaches of their fiduciary duties.

606.    As a proximate result of MB's knowing and substantial assistance, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

### FORTY-FIRST CLAIM FOR RELIEF
### (Malpractice Claim by Refco Inc. Against GT)

607.    Paragraphs 1 to 606 are incorporated as if fully set forth herein.

608.    At all relevant times, GT was employed by and acted as Refco Inc.'s auditor.

609.    GT owed a duty of care to Refco Inc. on account of its professional relationship with Refco Inc.

610.    GT breached its duty of care to Refco Inc. by, among other things, issuing unqualified audit opinions that were false and failing to require disclosure in the financial statements which accompanied the IPO prospectus or to advise Refco Inc.'s innocent directors, officers and agents, including inside counsel and others, that, among other things: (a) substantial Refco trading losses and operating expenses were being concealed by the RGHI Receivable; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RGHI Receivable was being concealed at the end of each relevant reporting and audit period through the RTLs; (d) Refco's financial statements were inaccurate and that, as a result of the IPO, Refco Inc. would be saddled with liabilities to the purchasers of its stock; and (e) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary.

611.    Any audit examination conducted with the care and diligence required of professional auditors would have revealed these facts and required their disclosure in the audited financial statements attached to the IPO prospectus.

612.    As a proximate result of GT's breach of its duty of care, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT for the amount of damages sustained, including attorneys' fees, related expenses and, pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

**FORTY-SECOND CLAIM FOR RELIEF**
**(Aiding and Abetting Breach of Fiduciary Duty Claim by Refco Inc.**
**Against GT**

613.    Paragraphs 1 to 612 are incorporated as if fully set forth herein.

614.    By virtue of its role as Refco Inc.'s auditor, GT knew and/or consciously avoided knowing that, among other things: (a) substantial undisclosed Refco trading losses and operating expenses were being concealed by the RGHI Receivable; (b) hundreds of millions of dollars in fictitious accrued interest on the RGHI Receivable was being recorded by RGL as revenue; (c) the RGHI Receivable was being concealed at the end of each relevant reporting and audit period through the RTLs; (d) RCM funds were being used to pay the operating expenses of RGL and its affiliates so as to make Refco's overall perceived financial condition suitable for the IPO; (e) as a result of the IPO, Refco Inc. would be saddled with liabilities to the purchasers of its stock; and (f) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary, and distribute Refco Inc.'s assets to Bennett, Maggio, and Trosten, other New Refco Group equity holders, and the Investment Banker Defendants without first paying down other significant Refco Inc. obligations, including the amounts owed to RCM; and (g) Bennett and Maggio were thereby breaching their fiduciary duties to Refco Inc.

615.    GT was aware of its own role in Bennett and Maggio's overall scheme.

616.    Notwithstanding this knowledge, GT substantially assisted in Bennett and Maggio's breaches of their fiduciary duties to Refco Inc. by, among other things, issuing unqualified audit opinions that were false, failing to disclose Refco's true financial position in the audited financial statements attached to the IPO prospectus, and failing to advise Refco's innocent directors, officers and agents, including inside counsel and others, of these facts.

617.    As a proximate result of GT's knowing and substantial assistance, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against MB for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

## FORTY-THIRD CLAIM FOR RELIEF
### (Malpractice Claim by Refco Inc. Against Credit Suisse)

618.    Paragraphs 1 to 617 are incorporated as if fully set forth herein.

619.    At all relevant times, Credit Suisse was employed by and acted as Refco Inc.'s "exclusive financial advisor" in connection with the LBO and IPO.

620.    Among other responsibilities, Credit Suisse was charged with "evaluating the business, operations and financial position of [RGL]" and assisting Refco Inc. with evaluating proposals from potential purchasers and with structuring and negotiating the sale of the company.

621.    Credit Suisse owed a duty of care to Refco Inc. on account of its professional relationship with Refco Inc.

622.    Credit Suisse was grossly negligent in breaching its duty of care to Refco Inc. by, among other things, failing to advise Refco Inc.'s innocent directors, officers and agents, including inside counsel and others, that, among other things: (a) the IPO would leave Refco Inc. with insufficient capital to pay its obligations including over $2 billion it owed to RCM; and (b) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary.

623.    As a proximate result of Credit Suisse's breach of its duty of care, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against Credit Suisse for the amount of damages sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion million and are to be determined at trial.

153

## FORTY-FOURTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty Claim by Refco Inc.
### Against Credit Suisse, BAS, and Deutsche)

624.    Paragraphs 1 to 623 are incorporated as if fully set forth herein.

625.    By virtue of their roles as financial advisors to Refco in connection with the LBO and the IPO, Credit Suisse, BAS, and Deutsche knew and/or consciously avoided knowing that, among other things: (a) RGL and its affiliates had borrowed upwards of $2 billion in RCM funds to finance their operations, fund acquisitions, and improve Refco's overall perceived financial condition so that the Refco Insiders could facilitate a lucrative cashing-out of their interests through the IPO; (b) the IPO would leave Refco Inc. with insufficient capital to pay its obligations, including over $2 billion it owed to RCM; (c) as part of the IPO, Refco Inc. would pay down $231 million in debt obligations owed by RGL, an insolvent subsidiary, and distribute Refco Inc.'s assets to the Refco Insiders, other New Refco Group equity holders, and the Investment Banker Defendants without first paying down other significant Refco Inc. obligations; and (d) Bennett and Maggio were thereby breaching their fiduciary duties to Refco Inc.

626.    By virtue of the foregoing knowledge, Credit Suisse, BAS, and Deutsche were aware of their roles in Bennett and Maggio's overall scheme.

627.    Notwithstanding this knowledge, Credit Suisse, BAS, and Deutsche substantially assisted in Bennett and Maggio's breaches of their fiduciary duties to Refco Inc. by, among other things, purposefully facilitating the IPO and providing inaccurate financial projections that failed to take into account repayment of RCM's intercompany loans.

628.    As a proximate result of Credit Suisse, BAS, and Deutsche's knowing and substantial assistance, Refco Inc. undertook an IPO based on an inaccurate understanding of its financial condition and was thereby damaged.

WHEREFORE, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against Credit Suisse, BAS and Deutsche for the amount of damages

sustained, including attorneys' fees, related expenses, and pre- and post-judgment interest, which are in excess of $1 billion and are to be determined at trial.

WHEREFORE, as to all the foregoing claims, Marc S. Kirschner, as Trustee of the Refco Litigation Trust, prays for a judgment in his favor and against GT, MB, E&Y, PwC, the Investment Banker Defendants, Bennett, Maggio, Trosten, Grant, RGHI, and the RTL Defendants for the amount of damages sustained, including attorneys' fees, related expenses and pre- and post-judgment interest, which are in excess of $2 billion and are to be determined at trial and demands trial by jury for all matters asserted by law.

Dated: August 21, 2007

Respectfully submitted,

MARC S. KIRSCHNER, as Trustee of the
Refco Litigation Trust

By: _____
One of His Attorneys

Of Counsel
Richard I. Werder, Jr.
Michael B. Carlinsky
Susheel Kirpalani
Sascha N. Rand
Robert C. Juman
QUINN EMANUEL URQUHART
OLIVER & HEDGES, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Phone: (212) 849-7000
Facsimile: (212) 849-7100

John R. McCambridge
Todd C. Jacobs
Gary M. Miller
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Facsimile: (312) 558-1195
Firm No. 17044

131028

155

# GLOSSARY

**AA** - Arthur Andersen

**BAS** - Banc of America Securities LLC (Professional Defendant)

**BAWAG** - Bank fur Arbeit und Wirtschaft und Osterreichische Postparkasse Aktiengesellschaft

**Beckenham** - Beckenham Trading Co. Inc. (RTL Defendant)

**Bennett** - Phillip R. Bennett (Refco Insider)

**CFTC** - Commodity Futures Trading Commission

**CIM Ventures** - CIM Ventures, Inc. (RTL Defendant)

**Coast** - Coast Asset Management, LLC (f/k/a Coast Asset Management LP) (RTL Defendant)

**Collins** - Joseph P. Collins, MB partner

**Collis** - Charles Collis, RCM Outside Director

**The Company** - Refco Inc. and its direct and indirect subsidiaries

**Credit Suisse** - Credit Suisse Securities (USA) LLC (f/k/a Credit Suisse First Boston LLC) (Professional Defendant)

**CRM** - Deutsche's Credit Risk Management committee

**CS Land** - CS Land Management, LLC (RTL Defendant)

**Deere Park** - Deere Park Capital LLC

**Delta Flyer** - Delta Flyer Fund, LLC (RTL Defendant)

**Deutsche** - Deutsche Bank Securities Inc. (Professional Defendant)

**E&Y** - Ernst & Young U.S. LLP (Professional Defendant)

**Eastern** - Eastern Trading Company

**EMF Core Fund** - EMF Core Fund, Ltd. (RTL Defendant)

**EMF Financial** - EMF Financial Products, LLC (RTL Defendant)

**The Examiner** - Bankruptcy Court-appointed Examiner

**Flanagan** - Eric M. Flanagan (RTL Defendant)

**Grant** - Tone N. Grant (Refco Insider)

**GT** - Grant Thornton LLP (Professional Defendant)

**Ingram Micro** - Ingram Micro, Inc. (RTL Defendant)

**Investment Banker Defendants** - Credit Suisse, BAS and Deutsche

**IPO** - 2005 Refco initial public offering

**Krieger** - Andrew Krieger (RTL Defendant)

**LBO** - 2004 Refco leveraged buy-out

**Liberty Corner** - Liberty Corner Capital Strategies, LLC (RTL Defendant)

**Maggio** - Santo C. Maggio (Refco Insider)

**Management Letter** - GT management deficiency letter

**MB** - Mayer, Brown, Rowe & Maw LLP (Professional Defendant)

**Minglewood** - Minglewood Investments, LLC

**NASD** - National Association of Securities Dealers

**New Refco Group** - New Refco Group Ltd., LLC

**NFA** - National Futures Association

**Petitt** - Christopher Petitt (RTL Defendant)

**Pigott** - William T. Pigott (RTL Defendant)

**The Plan** - Modified Joint Chapter 11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries

**PwC** - PricewaterhouseCoopers LLP (Professional Defendant)

**RCC** - Refco Capital LLC

**RCM** - Refco Capital Markets, Ltd.

**RCM Outside Directors** - Anthony Whaley and Charles Collis

**Refco** - Refco Inc. and certain of its direct and indirect subsidiaries

**The Refco Insiders** - Bennett, Maggio, Trosten and Grant

**RGHI** - Refco Group Holdings, Inc. (Defendant)

**RGF** - Refco Global Finance Ltd.

**RGL** - Refco Group Ltd., LLC

**RSL** - Refco Securities, LLC

**RTL** - Round trip loan transaction

**RTL Defendants** - Liberty Corner, Pigott, EMF Financial, EMF Core Fund, Delta Flyer, Flanagan, Ingram Micro, CIM Ventures, Beckenham, Krieger, Coast, CS Land, and Petitt

**THL** - Thomas H. Lee Partners

**Trosten** - Robert C. Trosten (Refco Insider)

**The Trust** - Refco Litigation Trust

**Wells Ltd.** - RGHI subsidiary

**Whaley** - Anthony Whaley, RCM Outside Director