**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————

MARC S. KIRSCHNER,                                              )
as Trustee of the Refco Private Actions Trust,     )
                                                                              )
         Plaintiff,                                              )
                                                                              )   Case No. 07 CV 8165 (GEL)
    -vs-                                                                )
                                                                              )   ORAL ARGUMENT REQUESTED
PHILLIP R. BENNETT, SANTO C. MAGGIO,     )
ROBERT C. TROSTEN, MAYER, BROWN,     )
ROWE & MAW, LLP, GRANT THORNTON     )
LLP, and ERNST & YOUNG U.S. LLP,                )
                                                                              )
         Defendants.                                          )
                                                                              )
                                                                              )
—————————————————————————

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND TO NEW YORK STATE COURT

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

I.    THIS COURT SHOULD REMAND THE NEW YORK ACTION BECAUSE
      DEFENDANTS HAVE FAILED TO ESTABLISH THE EXISTENCE OF
      "RELATED TO" JURISDICTION ...................................................................................2

      A.    Mere "Interconnections" Between The New York Action And The Refco
            Bankruptcy Proceeding Do Not Establish "Related To" Jurisdiction ....................3

            1.    That the PAT was Created in Conjunction with the Refco Plan
                  Does Not Create "Related To" Jurisdiction...................................................4

            2.    That There is Some Overlap Between the Facts Underlying the
                  New York Action and the Refco Bankruptcy is Insufficient to
                  Create Related to Jurisdiction .......................................................................5

            3.    The Boilerplate Retention of Jurisdiction Provision in the Refco
                  Plan was Not Intended to, and Cannot, Create "Related to"
                  Jurisdiction Over the New York Action .......................................................6

            4.    The Relationship Between the PAT and the Litigation Trust does
                  Not Establish "Related to" Jurisdiction .......................................................7

      B.    Defendants' Intention to Move to Dismiss Plaintiff's Claims on the
            Ground That They Are Property of the Estate Does Not Create "Related
            To" Jurisdiction..................................................................................................9

II.   GRANT THORNTON'S CONTRIBUTION CLAIM AND THE
      INDEMNIFICATION CLAIMS OF THE INDIVIDUAL DEFENDANTS
      AGAINST INSURANCE PROCEEDS DO NOT PROVIDE A BASIS FOR
      "RELATED TO" JURISDICTION ...............................................................................12

III.  EVEN IF THIS COURT FINDS "RELATED TO" JURISDICTION TO EXIST,
      ABSTENTION PURSUANT TO § 1334(C) IS MANDATORY ....................................16

      A.    Pursuant to § 1334(c)(2) this Court Must Abstain from Exercising
            Jurisdiction Over The New York Action...............................................................16

      B.    This Court Should Abstain Pursuant to § 1334(c)(1) ...........................................19

CONCLUSION.................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Adelphia*,
 2005 WL. 1026559 (S.D.N.Y. May 2, 2005) .......................................................13

*Adelphia Comm'ns Corp. v. Assoc. Elec. & Gas Ins. Servs., Ltd (In re Adelphia Comm'ns Corp.)*,
 285 B.R. 580 (S.D.N.Y. 2002)................................................................14, 15

*Aldinger v. Howard*,
 427 U.S. 1 (1976)..........................................................................................5

*American Financial Int'l Group Asia, L.L.C. v. Bennett*,
 2007 WL. 1732427 (S.D.N.Y. June 14, 2007) .....................................................10

*Andrew Greenberg, Inc. v. Svane, Inc.*,
 36 A.D. 3d 1094 (N.Y. App. Div. 2007) ...........................................................11

*Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower Liquidating Trust)*,
 335 B.R. 309 (Bankr. D. Del. 2005) ...................................................................7

*Beightol v. UBS Painwebber (In re Global Crossing Ltd. Secs. Litig.)*,
 311 B.R. 345 (S.D.N.Y. 2003)..........................................................................3, 4

*Bondi v. Grant Thornton Int'l (In re Parmalat)*,
 322 B.R. 44 (S.D.N.Y. 2005)...........................................................................4, 18

*California Public Employees' Retirement Sys. v. WorldCom, Inc.*,
 368 F.3d 86 (2d Cir. 2004)...............................................................................14

*In re Canion*,
 196 F.3d 579 (5th Cir. 1999) .............................................................................5

*Celotex Corp. v. Edwards*,
 514 U.S. 300 (1995)........................................................................................3, 4

*Cumberland Oil Corp. v. Thropp*,
 791 F.2d 1037 (2d Cir. 1986).............................................................................11

*EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.)*,
 352 B.R. 731 (Bankr. D. Del. 2006) ....................................................................7

*Falise v. Am. Tobacco, Co.*,
 241 B.R. 48 (Bankr. E.D.N.Y. 1999).................................................................3, 4, 5

*In re Federal-Mogul Global, Inc.*,
 282 B.R. 301 (Bankr. D. Del. 2002) ...................................................................3, 5

*General Elec. Capital Corp. v. Pro-Fac Coop.*,
 No. 01 Civ. 10215, 2002 WL. 1300054 (S.D.N.Y. 2002) .......................................13

*Geruschat v. Ernst & Young LLP (In re Seven Fields Dev. Corp.),*
    505 F.3d 237 (3d Cir. 2007)............................................................................6, 7

*In re Global Crossing Ltd. Secs. Litig.,*
    311 B.R. 345 (S.D.N.Y 2003)................................................................3, 4, 6, 13, 18

*Insilco Techs., Inc. v. DLJ Merchant Banking, Inc. (In re Insilco Techs., Inc.),*
    330 B.R. 512 (Bankr. D. Del. 2005) ..................................................................7

*Leisnoi, Inc. v. United States,*
    170 F.3d 1188 (9th Cir. 1999) ..........................................................................9

*Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. (In re Dow Corning Corp.),*
    86 F.3d 482 (6th Cir. 1996) ..............................................................................13

*Manson v. Stacescu,*
    11 F.3d 1127 (2d Cir. 1993)..............................................................................11

*Pacor v. Higgins,*
    743 F.2d 984 (3d Cir. 1984)........................................................................5, 7, 13

*Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.),*
    980 F.2d 110 (2d Cir. 1992)........................................................................3, 4, 5

*In re Resorts Int'l,*
    372 F.3d 154 (3d Cir. 2004)..............................................................................6

*Stoe v. Flaherty,*
    436 F.3d at 214 ................................................................................................17

*Tech. Outsource Solutions, LLC v. ENI Tech., Inc.,*
    2003 WL. 252141 (W.D.N.Y. Jan. 23, 2003).................................................16

*Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.),*
    278 B.R. 42 (Bankr. D. Del. 2002) ...................................................................17

*United States v. Sweeny,*
    418 F. Supp. 2d 492 (S.D.N.Y. 2006)..............................................................11

*Von Richthofen v. Family M. Found. Ltd.,*
    339 B.R. 315 (S.D.N.Y. 2005)..........................................................................16

*In re WorldCom,*
    293 B.R. at 308 ..................................................................2, 4, 5, 6, 13, 18

## **Statutes**

11 U.S.C. § 1334.......................................................................................... passim

## PRELIMINARY STATEMENT

Notwithstanding their vigorous efforts, defendants Mayer Brown LLP, Mayer Brown International LLP, and Grant Thornton LLP cannot change the following dispositive facts: the Refco Non-Estate Private Actions Trust (the "PAT") was formed to pursue private, non-estate claims, held by former RCM customers, and the claims asserted in the New York Action[1] will have no conceivable impact or effect on any Refco Debtor, its property, the distribution of such property or the administration of the Debtors' estates which are being liquidated. Accordingly, the PAT's claims are not "related to" the Refco Bankruptcy proceeding pursuant to § 1334(b).

Unable to direct the Court to any clear effect that the PAT's New York Action might have on any Refco Debtor's liquidation, Defendants advance four arguments in an effort to manufacture "related to" jurisdiction. First, Defendants attempt to extend "related to" jurisdiction far beyond the "conceivable effect" test established by Second Circuit precedent to cover actions that exhibit mere "interconnections" with a bankruptcy. Defendants next engage in a disingenuous bait and switch and assert, in direct contradiction to the governing documents, that the PAT's claims will impact the distribution of Refco *estate* property. Taking a similar tack, Defendants assert that there is "related to" jurisdiction over this action on the mere pretext that they will argue (at a later date) that the PAT claims belong to the estate and should be dismissed. Finally Defendants insist that "related to" jurisdiction exists over this action because it may, hypothetically, allow Grant Thornton to assert a contribution claim against Refco Capital Markets, Ltd. ("RCM") (an illusory claim that, even if asserted, would be disallowed or equitably subordinated and *extinguished* under the Refco Plan) or cause Refco Director and Officer Insurance policy proceeds to be used to defend against this action.

---

[1] Unless otherwise indicated, defined terms shall have the meaning ascribed to them in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Remand to New York State Court (the "Remand Motion").

None of these arguments establishes that the New York action will have any conceivable effect on a Refco Debtor, its property or its liquidation.

Furthermore, even if "related to" jurisdiction exists, abstention is *mandatory* under § 1334(c)(2). Indeed, tacitly conceding that the relevant factors for mandatory abstention are satisfied, Defendants' sole contention is that this action might be adjudicated *faster* in this Court—an assertion that is both questionable and irrelevant. When determining whether it must abstain under § 1334(c)(2), the Court must evaluate whether the state court can *timely* adjudicate claims so as not to derail the administration of the debtor's bankruptcy estate; not which court—state or federal—can resolve the action faster. In contrast to the cases cited by Defendants, the Refco Debtors are not undergoing a reorganization; they are being liquidated pursuant to a plan that was confirmed a year ago. Furthermore, the New York Action asserts discrete state law claims that are peripheral to the many complicated issues this Court will need to address in the pending Refco-related actions. Moreover, even if the action is remanded, the PAT Trustee has agreed to coordinate fact discovery with the other Refco-related actions. Defendants fail to establish why, under these circumstances, the Commercial Division of the New York Supreme Court can not timely adjudicate this action.

## I. THIS COURT SHOULD REMAND THE NEW YORK ACTION BECAUSE DEFENDANTS HAVE FAILED TO ESTABLISH THE EXISTENCE OF "RELATED TO" JURISDICTION

As stated in the principal case upon which Defendants' rely, *N.Y. City Employees' Retirement Sys. v. Ebbers (In re WorldCom Secs. Litig.)*, "[a] party seeking to remove an action from state to federal court bears the burden of proving federal jurisdiction. . . If there is doubt as to whether federal jurisdiction exists, remand is appropriate." 293 B.R. 308, 316-17 (S.D.N.Y. 2003) (citations omitted). Because Defendants have failed to establish that the New York action will affect any Refco Debtor, its property or its liquidation, related to jurisdiction does not exist and remand is required.

A.     Mere "Interconnections" Between The New York Action And The Refco Bankruptcy Proceeding Do Not Establish "Related To" Jurisdiction

In their Opposition to Plaintiff's Motion to Remand to New York State Court ("the Opposition"), Defendants assert that four "interconnections" between the New York Action and the Refco Bankruptcy Proceeding give rise to "related to" jurisdiction. As set forth in the PAT Trustee's Remand Motion, mere interconnections do not create "related to" jurisdiction. A case is related to a pending bankruptcy proceeding within the meaning of § 1334(b) only if its outcome might have a "conceivable effect" on the bankruptcy estate. *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 308-309 (1995) (noting that the "conceivable effect" test is not limitless.); *Beightol v. UBS Painwebber (In re Global Crossing Ltd. Secs. Litig.)*, 311 B.R. 345, 347 (S.D.N.Y. 2003) (stating that "related to" jurisdiction exists where the outcome of an action might "alter the debtor's rights, liabilities, options, or freedom of action . . . [or] impact[] upon the handling and administration of the bankrupt estate"). Jurisdiction over purely state law claims only exists if the outcome of the action affects (1) the debtor; (2) property of the estate; (3) distribution of such property to creditors; or (4) administration of the bankruptcy estate. *See Falise v. Am. Tobacco, Co.*, 241 B.R. 48, 57 (Bankr. E.D.N.Y. 1999) (*quoting* 1 Collier on Bankr. ¶ 3.01[4][c][v], at 3-30 (15th ed. 1999)); *see also In re Federal-Mogul Global, Inc.*, 282 B.R. 301, 307 (Bankr. D. Del. 2002) ("'conceivable' or not, the bottom line is whether the resolution of an ostensibly unrelated claim will have an 'effect on the estate'").

Moreover, the Supreme Court has recognized a disparity in the breadth of "related to" jurisdiction between *reorganizations*, where the third party action may interfere with the debtor's ability to successfully reorganize, and *liquidations*, where the debtor ceases to exist. *See Celotex*,

514 U.S. at 310; *see also In re WorldCom Secs. Litig.*, 293 B.R. at 317.[2]  Where, as here, the third

party action purportedly relates to the liquidation of a debtor (here, RCM) in which substantially all

of the debtor's assets have been distributed,[3] the potential that the third party action might affect the

administration of the estate is significantly reduced.

The four purported "interconnections" Defendants identify fail to establish that the

New York Action will have any effect on RCM, its property, the distribution of its property, or its

liquidation, or that of any other Refco Debtor.

> 1.    That the PAT was Created in Conjunction with the Refco Plan Does Not
>        Create "Related To" Jurisdiction

Defendants' continuing effort to create "related to" jurisdiction by characterizing the PAT as

"a creature of the Refco bankruptcy" (Opp. at 6) is unavailing. The mere fact that the PAT was

created in conjunction with the Refco Plan is irrelevant; the question is whether the *claims* the PAT

asserts might affect the debtor, its property, or the administration of its estate.  *See In re Cuyahoga*,

980 F.2d at 114; *Falise*, 241 B.R. at 57.  Defendants fail to identify why the PAT's origination in the

Refco Plan requires that any *claims* the PAT asserts will affect the administration of the Refco

Debtor estates.

Indeed, as stated in the Remand Motion, it was not even necessary for the PAT to be formed

in connection with the Refco Plan.  (Remand Mot. at 3.)  The FX customers could have created an

identical trust to advance the same claims asserted in the New York Action outside of the Refco

---

[2]    Significantly, in each of the principle cases upon which Defendants rely, the debtor was the subject of an
unconfirmed reorganization proceeding. *See Bondi v. Grant Thornton Int'l (In re Parmalat)*, 322 B.R. 44, 45
(S.D.N.Y. 2005); *Beightol v. UBS Painwebber (In re Global Crossing, Ltd. Secs. Litig.)*, 311 B.R. 345
(S.D.N.Y. 2003); *In re WorldCom, Inc.*, 293 B.R. at 334 (S.D.N.Y. 2003).  In sharp contrast, the Refco
Debtors are being liquidated pursuant to a bankruptcy plan that was confirmed a year ago.

[3]    *See* Declaration of Marc S. Kirschner, dated December 17, 2007 ("Kirschner Decl."), at ¶ 9 ("The
bankruptcy estate of RCM is close to being fully administered, and it is my expectation that almost all—
meaning more than 95%, [or $2.851 billion]—of its assets will be distributed by the end of 2007.").

Plan.  Telling1y, Defendants fail to cite a single Second Circuit case in which claims asserted by a

post-confirmation litigation trust—let alone a *private* litigation trust asserting the private direct

claims of former debtor customers—were held to be related to a bankruptcy solely because the trust

was created in conjunction with a bankruptcy plan.

>    2.    That There is Some Overlap Between the Facts Underlying the New York
>          Action and the Refco Bankruptcy is Insufficient to Create "Related to"
>          Jurisdiction

Defendants next contend that this action is related to the Refco liquidation because it arises

out of the same nucleus of facts which gave rise to the bankruptcy.  (Opp. at 6 (citing *In re*

*WorldCom Secs. Litig.*, 293 B.R. at 321).)  It is well-established that "the mere fact that there may be

common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate

does not bring the matter within the scope of [§ 1334(b)].  Judicial economy itself does not justify

federal jurisdiction."  *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (citing *Aldinger v.*

*Howard*, 427 U.S. 1, 15 (1976)); *see also In re Canion*, 196 F.3d 579, 585 (5th Cir. 1999) (same); *In*

*re Federal-Mogul Global, Inc.*, 282 B.R. 301, 306 (Bankr. D. Del. 2002) (same); *In re Cuyahoga*,

980 F.2d at 114; *Falise*, 241 B.R. at 57.

Defendants' reliance on *In re WorldCom* in this regard is misplaced.  In *WorldCom*, the court

concluded that there was "related to" jurisdiction over securities law actions brought against third

parties where, unlike here, the debtor was undergoing reorganization and the plaintiffs had conceded

that the securities actions would give rise to colorable contribution claims against the debtor that

would have a conceivable effect on the estate.  *See In re WorldCom*, 293 B.R.at  321.  *WorldCom*

did not, however, hold that mere "interconnections" between an action and a bankruptcy give rise to

"related to" jurisdiction.  To the contrary, the court made the unremarkable observation that the

factual "interconnections" between the allegations underlying an action against a third party and the

bankruptcy proceeding supported its conclusion that the contribution claims in that case had a

"reasonable basis." *See id.* at 321. Neither *WorldCom*, nor any other case cited by Defendants, holds that mere factual overlap with a bankruptcy establishes "related to" jurisdiction over a third party action.[4]

        3.       The Boilerplate Retention of Jurisdiction Provision in the Refco Plan was Not Intended To, and Cannot, Create "Related To" Jurisdiction Over the New York Action

Defendants' reliance on the retention of jurisdiction clause in the Refco Plan is also misplaced. A general retention of jurisdiction provision in a bankruptcy plan cannot create federal jurisdiction where there is no evidence that the claims at issue will have a conceivable effect on the administration of the debtor's estate. *See, e.g.*, *Geruschat v. Ernst & Young LLP (In re Seven Fields Dev. Corp.)*, 505 F.3d 237, 256 (3d Cir. 2007) ("[I]n the absence of statutory federal jurisdiction, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant.") (quotation omitted). As Defendants themselves concede, it is not possible for parties to "write their own jurisdictional ticket" by including jurisdictional provisions in a Bankruptcy Plan. (Opp. at 7); *see also In re Resorts Int'l*, 372 F.3d 154, 161 (3d Cir. 2004).

Furthermore, the Refco Plan's generalized, catch-all retention of jurisdiction provision does not mention the claims asserted in the New York Action and does not, as Defendants contend, establish acknowledgement by the PAT Trustee that the PAT is "closely related to the implementation of the Plan." (*see* Opp. at 6.) The Refco Plan that Marc Kirschner supported, in his capacity as the Chapter 11 Trustee for RCM, provides that the Bankruptcy Court retains jurisdiction over an extensive laundry list of items, including "all matters arising out of, and related to, the

---

[4]   Furthermore, Defendants' assertion that "related to" jurisdiction exists because Refco would have been a defendant to this action but for the bankruptcy (Opp. at 7) is also meritless. *See Global Crossing*, 2003 WL 21659360, at *1 ("whether the debtor is a party to this action . . . [is] not determinative" of whether there is "related to" jurisdiction.)

Chapter 11 Cases, this Plan and the RCM Settlement Agreement to the fullest extent permitted by law." The Plan lists numerous core issues related to the Plan, as well as other issues over which the Bankruptcy Court has jurisdiction. Included among the list is the catch-all language that the Bankruptcy Court could, to the extent *permitted by law*, "[h]ear and determine causes of action by or on behalf of the Contributing Debtor, FXA, RCM, the Reorganized Debtors, the Litigation Trustee, the Private Actions Trustee or Post-Confirmation RCM." Refco Plan § 11.1(k). The provision contains no specific reference to the claims asserted in the New York Action and does not indicate or suggest that adjudication of these claims is central to, or might have any impact on, the implementation or administration of the Refco Plan or estate.

Courts have uniformly held that a generalized retention of jurisdiction provision, such as the one at issue here, is insufficient to establish "related to" jurisdiction. *See In re Seven Fields Dev. Corp.*, 505 F.3d at 256; *Insilco Techs., Inc. v. DLJ Merchant Banking, Inc. (In re Insilco Techs., Inc.)*, 330 B.R. 512, 525 (Bankr. D. Del. 2005) (bankruptcy plan's retention of jurisdiction provision did not establish close nexus between claim and plan because plan failed to specifically reference claim); *EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.)*, 352 B.R. 731, 735-36 (Bankr. D. Del. 2006) (even under the *Pacor* nexus test a bankruptcy plan must describe plaintiff's claims with sufficient specificity to warrant application of post-confirmation "related to" jurisdiction); *Astropower Liquidating Trust v. Xantrex Tech., Inc. (In re Astropower Liquidating Trust)*, 335 B.R. 309, 324 (Bankr. D. Del. 2005) (broad boiler plate retention of jurisdiction clause is not the kind of express, specific reference to a claim courts require to find "related to" jurisdiction).

    4.    The Relationship Between the PAT and the Litigation Trust does Not Establish "Related to" Jurisdiction

Defendants next assert that there is "related to" jurisdiction over the action because a recovery by the PAT may "affect the potential recovery in the Litigation Trust's separate lawsuit"

and "will either enable or preclude the repayment of loans owed by the PAT to the Litigation Trust." (Opp. at 15-16.)   Defendants' premise—that Litigation Trust assets are Refco *estate* assets—is contrary to the governing documents and entirely false.  As is set forth in extensive briefing to the District Court for the Northern District of Illinois in connection with the Litigation Trustee's motion to remand its state law claims to Illinois state court (where they were originally filed), the Refco Debtors irrevocably transferred their claims to the Litigation Trust  a year ago in connection with the confirmation of the Refco Plan.  *See* Decl. of Marc S. Kirschner in Support of Plaintiff's Motion to Remand to Illinois State Court, dated September 25, 2007 (without exhibits), at ¶¶ 10-11, attached as Ex. A to the Declaration of Sascha N. Rand, dated December 17, 2007 ("Rand Decl."), and the Litigation Trust Agreement at § 1.2(a), attached as the Ex. B to the Rand Decl.; *see also* Refco Plan § 5.7(b), attached as Ex. A to the Decl. Marc S. Kirschner in Support of Plaintiff's Motion to Remand to New York State Court, dated October 17, 2007.  As the governing Litigation Trust and Refco Plan documents establish, the Refco Debtors transferred all interest in and title to their claims to the Litigation Trust, and any recoveries on these claims will be property of the Litigation Trust, not the Refco estates.  *See id.*[5]  Consequently, any conceivable impact that a recovery by the PAT on its claims  in this action could have on the Litigation Trust is irrelevant to the question of whether there is "related to" jurisdiction over the New York Action.

*     *     *     *     *

---

[5]   Furthermore, even if a Court might ultimately determine that the claims asserted by the Litigation Trust are "related to" the Refco bankruptcy, it would be directly contrary to the plain language of the governing Refco Plan and Trust documents irrevocably transferring the Refco estate claims to the Litigation Trust for such a decision to be based on a finding that the Litigation Trust assets and recoveries are Refco estate property.

In sum, the purported "interconnections" Defendants identify, either independently or collectively, fail to establish that the New York Action will have any conceivable effect on any Refco Debtor, its property, the distribution of its property, or its liquidation.

**B.      Defendants' Intention to Move to Dismiss Plaintiff's Claims on the Ground That They Are Property of the Estate Does Not Create "Related To" Jurisdiction**

In their effort to manufacture "related to" jurisdiction, Defendants next contend that jurisdiction exists simply because they intend to seek dismissal of this action on the ground that it asserts estate claims. (Opp. at 10.) This contention is specious. A party cannot manufacture federal "related to" subject matter jurisdiction over an action simply by utilizing the pretext that it will raise a bankruptcy issue in seeking dismissal at a later date. *See, e.g.*, *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1192 (9th Cir. 1999) (party's "bare assertion" that a dispute over the ownership of particular property existed was insufficient to confer federal jurisdiction under the Quiet Title Act). If Defendants' position were correct, a defendant could manufacture "related to" jurisdiction over any claim merely by asserting in opposition to a motion to remand that its motion to dismiss will argue that the claims at issue belong to the estate or will touch on other issues of bankruptcy law.

Furthermore, the dismissal Defendants intend to seek will not affect any Refco Debtor or its liquidation. To be sure, Defendants are not asking that the PAT claims be pursued by the Refco estates, thereby potentially increasing estate recoveries. To the contrary, Defendants assert that any injuries that are the subject of this action will be redressed by the claims advanced by the Litigation Trust in its pending action, and they intend to seek an outright dismissal of the PAT claims. (Opp. at 15.) Dismissal of the PAT's claims will not, however, affect any Refco estate or its administration. The only effect of a dismissal would be a bar to the adjudication of the FX customers' direct conversion, breach of fiduciary duty, and fraud claims. No Refco *estate* will be increased, reduced, or otherwise impacted by such a result. On the other hand, if Defendants' motion to dismiss is

denied, Plaintiff's position that its claims are not property of the estate will be vindicated. Either way, the outcome of Defendants' proposed motion will have no impact on the estate.

The PAT Trustee does not believe it appropriate for the Court to address the merits of Defendants' purported ground for dismissal in connection with the briefing of this jurisdictional motion. Nonetheless, a brief response addressing the frivolity of Defendants' argument is warranted. The New York Action seeks to recover for the injury caused to certain former FX customers who were fraudulently induced to entrust FX trading assets to Refco only to have them improperly converted and put at risk, breaching the fiduciary duties owed to these customers. *See* Compl. at ¶¶ 213-38. In contrast to the bare allegations asserted in the complaint in *American Financial Int'l Group Asia, L.L.C. v. Bennett*, 2007 WL 1732427, at * 5 (S.D.N.Y. June 14, 2007), the New York Action pleads a litany of facts giving rise to the fiduciary duties owed directly to these FX customers. *See, e.g.*, New York Action Compl. ¶ 28 (a)-(r).[6] The Complaint in this action asserts claims based on the specific fraudulent inducement of these customers, the breaches of specific fiduciary duties owed to them, and the conversion of their assets. (Compl. ¶¶ 213-38.) It is well settled that "where the thrust of a plaintiff's claim is to vindicate his or her personal rights as an individual and not on behalf of the corporation, the claim will be considered direct or individual to the creditor." *Andrew Greenberg, Inc. v. Svane, Inc.*, 36 A.D. 3d 1094, 1097 (N.Y. App. Div. 2007)

---

[6] These facts include, among others: RCM's role as a broker-dealer for the FX customers; the custodial and entrustment nature of the relationship between RCM and the FX customers and the entrustment of the FX customers' funds to RCM for the specific limited purpose of conducting FX transactions pursuant to their instructions; the terms and conditions of the agreement entered into between RCM and its FX customers at the time each FX account was opened; the periodic account statements that RCM provided to its FX customers which showed, among other things, customer orders being fulfilled in a way that reflected customer ownership; the structure of the relationship whereby each RCM customer was assigned a dedicated salesperson who was responsible for that customer's account and FX transactions; the lack of any communication from RCM to FX customers that would have indicated to the FX customers that their orders would not be executed or that RCM could not be relied upon to return their funds when instructed to do so. *See* Complaint at ¶ 28.

(quotations omitted); *accord Manson v. Stacescu*, 11 F.3d 1127, 1130 (2d Cir. 1993) (recognizing right to sue where plaintiff sustains an injury that is separate and distinct from the injury suffered by the corporation).[7]

Finally, Defendants' purported concern that the PAT's claims may lead to a double recovery (Opp. at 9) has no relevance to the issue before the Court.  At the appropriate juncture (which, most assuredly, is not in connection with this jurisdictional motion or any motion before adequate factual and expert development of the damages suffered by the respective plaintiffs), a court will determine if the damages sought by the claims asserted here are, in fact, duplicative of the damages sought by the Litigation Trust.  If it is concluded that there is no overlap, Defendants will be potentially liable for all damages sought in the claims asserted by both the PAT and the Litigation Trust.  If, on the other hand, there is overlap, the PAT will only be entitled to recover for certain specified damages, or for damages above and beyond those sought by and/or ultimately awarded to the Litigation Trust.  Moreover, if the Litigation Trust claims are dismissed, there will be no risk of double recovery.  In all cases, however, the PAT claims will have no effect on the Litigation Trust's recovery.

---

[7]  Similarly, Defendants' assertion that the fraud and conversion claims set forth in the New York Action are nothing more than "repackaged" fraudulent conveyance claims (Opp. at 13-14) is meritless.  A fraudulent conveyance, at its core, is an action to force a transferee to return property taken without fair consideration. *See, e.g.*, *United States v. Sweeny*, 418 F. Supp. 2d 492, 498 (S.D.N.Y. 2006).  Neither Mayer Brown, Grant Thornton, or any of the other Defendants are transferees of FX customer assets.  Thus, the New York Action does not seek the return of transferred FX customer property; it seeks *damages* based on state law claims of breach of fiduciary duty, fraud, and conversion.  *See, e.g., Cumberland Oil Corp. v. Thropp*, 791 F.2d 1037, 1042 (2d Cir. 1986) (finding that plaintiff did not simply replead fraud claims where plaintiff's claim was not one to recover misappropriated corporate assets, but one to recover damages for intentional fraud—a right of recovery belonging to the plaintiff, not the debtor); *see also Andrew Greenberg, Inc.*, 36 A.D.3d at 1097; *Manson*, 11 F.3d at 1130.

## II. GRANT THORNTON'S CONTRIBUTION CLAIM AND THE INDEMNIFICATION CLAIMS OF THE INDIVIDUAL DEFENDANTS AGAINST INSURANCE PROCEEDS DO NOT PROVIDE A BASIS FOR "RELATED TO" JURISDICTION

Defendants next contend that "related to" jurisdiction is established by Grant Thornton's proof of claim filed against the Refco Debtors reserving a purported right to seek contribution from Refco. (Opp. at 17.)  This hypothetical and unsupportable claim is insufficient to establish "related to" jurisdiction over the New York Action.  Grant Thornton cannot establish that there is any "reasonable legal basis" on which a contribution claim against RCM (or any of the other Refco Debtors) could be successfully advanced.  For Grant Thornton to have a contribution claim, it will have to be found culpable in this action for aiding and abetting the conversion, fraud, and breaches of fiduciary duty perpetrated by certain directors of RCM.  A finding of misconduct in connection with this (or any other) action[8] will result in the disallowance of its purported contribution claim under § 502(e)(1)(A) of the Bankruptcy Code or equitable subordination of its claim pursuant to § 510(c)(1) which, under the Refco Plan, will extinguish the claim.[9]  Consequently, Grant Thornton's contribution claim, even if asserted, will have no effect on the Refco estate.  Grant Thornton is the only Defendant that filed a proof of claim and the other Defendants are altogether barred from asserting such claims.

---

[8]  As Grant Thornton has been named as a Defendant in at least four other Refco-related actions, findings of wrongdoing in any of these actions will disallow and vitiate Grant Thornton's purported contribution claim against RCM or the other Refco Debtors.  These actions include:  *Mazur et al. v. Refco, Inc. et al.* (Case No. 05-8626) (S.D.N.Y); *Thomas H. Lee Equity Fund V, L.P. et al v. Grant Thornton LLP* (Case No. 07-8663) (S.D.N.Y.); *VR Global Partners, L.P. et al. v. Bennett et al.* (Case No. 07-8686) (S.D.N.Y.); *In re Refco Capital Markets, Ltd. Brokerage Customer Securities Litigation* (Case No. 06-0643).  In addition, Grant Thornton is a defendant in *Global Management Worldwide Ltd v. Bennett, et al.,* which was dismissed by Judge Lynch without prejudice (Case No. 06-0643) (S.D.N.Y.), but which lead Plaintiff indicates will be re-filed.

[9]  Section 3.3(c)(vii) of the Refco Plan expressly provides that any subordinated claim asserted against RCM "shall be cancelled and extinguished."  *See also* Refco Plan §1.224 (defining "subordinated claims" as those "subordinated pursuant to section 510(c) of the Bankruptcy Code").

Defendants' reliance on *WorldCom* is also misplaced. In *WorldCom*, unlike here, the plaintiffs conceded that there was a reasonable basis for the defendants' contribution claims because the claims were expressly provided for by statute under the securities laws. *See id.* at 321. Nor did the plaintiffs contend, as is the case here, that such claims would be subordinated and thereby extinguished under the governing bankruptcy plan or otherwise disallowed.[10] Moreover, because the *WorldCom* debtor was in reorganization proceedings and the court was dealing with potential contribution and indemnity claims asserted by numerous defendants, the potential effect on the administration of the estate was significant. *See Worldcom*, 293 B.R. at 319 (analogizing effect of potential contribution/indemnity claims on *Worldcom* to situation presented in *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482 (6th Cir. 1996), where the court was concerned with the threat that thousands of indemnification and/or contribution claims posed to a successful reorganization); *but see In re Pacor*, Inc. 743 F.2d 984, 994 (3d Cir. 1984) (rejecting single hypothetical contribution claim as basis for "related to" jurisdiction); *General Elec. Capital Corp. v. Pro-Fac Coop.*, No. 01 Civ. 10215, 2002 WL 1300054, at * 2 (S.D.N.Y. 2002) (single indemnity claim was an "insufficient" basis to establish "related to" jurisdiction). No similar concern is present here, given that Refco is being *liquidated* pursuant to a plan that was confirmed a year ago.[11]

---

[10]   While the plaintiffs in *WorldCom* argued that the contribution claim was a contingent claim under § 502(e)(1)(B) of the Bankruptcy Code, they did not contend, as the PAT Trustee has here, that the claim would be equitably subordinated or disallowed. *WorldCom*, 293 B.R. at 321-322.

[11]   The other two cases relied upon by the Defendants are similarly inapposite. Like *WorldCom*, *Global Crossing*, 311 B.R. 347 (S.D.N.Y 2003), involved a reorganization, not a liquidation, and the plaintiff, like the plaintiffs in *WorldCom*, did not dispute that the contribution claim had a reasonable basis or that it would have a conceivable effect on the debtor. In *In re Adelphia*, 2005 WL 1026559 (S.D.N.Y. May 2, 2005), the Court based its finding of "related to" jurisdiction on the existence of the contractual indemnification obligations owed to the directors pursuant to the debtor's by-laws, not as Defendants assert (Opp. at 19), a hypothetical contribution claim.

Moreover, as the Second Circuit observed, "related to" jurisdiction in *WorldCom* was supported by the contractual indemnification rights the defendants had against the debtor and the fact that the *WorldCom* debtor had paid the defendant directors' attorneys' fees. *See California Public Employees' Retirement Sys. v. WorldCom, Inc.*, 368 F.3d 86, 96 (2d Cir. 2004).[12] Here, Defendants have not (and cannot) assert any such alternative grounds to support "related to" jurisdiction. *See* Defendants' Notice of Removal at ¶ 7(b); Opp. at 17, n. 9 (conceding by omission any purported right to indemnification in connection with the defense of the New York Action); Kirschner Decl. at ¶ 7 (no advances of attorneys' fees made to Refco former executives who are defendants to this Action). For these numerous reasons, *WorldCom* is entirely inapposite.

Defendants next assert that the New York Action will impact the Refco estates' interests in the Refco's director and officer insurance policy (the "D&O Policy"). This argument is also meritless. As a threshold matter, it is far from settled that the proceeds of such policies are property of the debtor's estate or that any unused proceeds would affect the amount of estate property to be distributed to creditors. *See, e.g.*, *Adelphia Comm'ns Corp. v. Assoc. Elec. & Gas Ins. Servs., Ltd (In re Adelphia Comm'ns Corp.)*, 285 B.R. 580 (S.D.N.Y. 2002) (recognizing split in authority as to whether D&O insurance proceeds are estate property and collecting cases). Moreover, as was the case in *Adelphia*, the Refco Debtors can only draw on the D&O Policy to the extent that the estate advances defense costs to the directors and officers and seeks indemnification under the Policy. *Id.* at 53. To date, the Refco Estates have not advanced costs to any former Refco director or officer named as a defendant in this action or any other pending action brought by the PAT, the Litigation

---

[12]  Despite recognizing that the District Court's finding of "related to" jurisdiction may have been supported by these alternative grounds, the Second Circuit still pointedly observed that the connection between the plaintiffs' claims and the WorldCom bankruptcy proceeding was "*tenuous.*" *California Public Employees' Retirement Sys.*, 368 F.3d at 96.

Trust or any other Refco Estate administrator, and have no intention of doing so. *See* Decl. of Marc S. Kirschner in Support of Plaintiff's Motion to Remand, dated December 17, 2007 at ¶ 7. Accordingly, as in *Adelphia*, because there presently is "[n]o cognizable equitable and legal interest in the proceeds from the D&O policies, [the Debtor] cannot be ascribed to hold a property interest in those proceeds." *Id*.

Defendants are also incorrect in their assertion that the New York Action will use D&O Policy proceeds that could have been used to fund defense costs of other former, unspecified, Refco executives, thereby purportedly reducing these executives' claims for indemnity against the Refco estates. (*See* Opp. at 21.) The New York Action will have no such impact. First, it is telling that Defendants do not identify who these purported former executives are or what proofs of claim, if any, they filed in the Refco bankruptcy proceeding. Moreover, as Bennett, Trosten, and the other Refco executives are drawing on the D&O Policy in connection with their defense of over thirty other actions,[13] including a criminal trial beginning in March, 2008, all layers of the D&O policy will inevitably be exhausted. Regardless of whether any proceeds are used to defend against this action, no D&O policy proceeds will be available to reduce any purported claims that other former Refco executives may have filed against the Refco estates.

---

[13]  The former Refco executives named as defendants in the New York Action have also been named in the following actions, among many others, some of which were subsequently terminated: *Bankruptcy Trust of Gerard Sillam et al v. Refco Group, LLC et al* (Case No. 05-10072) (S.D.N.Y.); *In re Refco Capital Markets, Ltd. Brokerage Customer Securities* (Case No. 06-00643) (S.D.N.Y.); *Unovalores Ltd. v. Bennett* (Case No. 05-05859) (N.J.D.); *Bankruptcy Trust of Gerard Sillam and Gerard Sillam v. Refco Group* (Case No. 05-08099) (S.D.N.Y.); *Mazur et al v. Refco, Inc. et al* (Case No. 05-08626) (S.D.N.Y.); *Frontpoint Financial Services Fund, LP v. Refco, Inc. et al* (Case No. 05-08663) (S.D.N.Y.); *Lieber v. Refco, Inc. et al* (Case No. 05-08667) (S.D.N.Y.); *VR Global Partners, L.P. et al v. Bennett et al* (Case No. 05-08686) (S.D.N.Y.); *Capital Management Selected Fund Ltd. et al v. Bennett et al* (Case No. 05-08688) (S.D.N.Y.).

## III.    EVEN IF THIS COURT FINDS "RELATED TO" JURISDICTION TO EXIST, ABSTENTION PURSUANT TO § 1334(C) IS MANDATORY

### A.    Pursuant to § 1334(c)(2) this Court Must Abstain from Exercising Jurisdiction Over the New York Action[14]

Defendants do not dispute that five of the six elements for mandatory abstention are met in this case.[15]  Moreover, with respect to the *only* element at issue—whether the New York Action can be timely adjudicated in state court—Defendants identify no characteristics of, or any circumstances presently facing, the New York Commercial Division that might prevent it from timely adjudicating a commercial matter such as the New York Action which involves solely state law claims.  (*See* Opp. at 22-23.)  As indicated in the Motion to Remand, the Commercial Division was specifically created to put complex financial cases on a fast-track basis before judges experienced at handling precisely the type of state law claims asserted in Plaintiff's Complaint.  (*See* Mot. at 15); *see also Tech. Outsource Solutions, LLC v. ENI Tech., Inc.*, 2003 WL 252141, at *4 (W.D.N.Y. Jan. 23, 2003) (noting that the Commercial Division was "designed to be a 'world class forum for the resolution of business disputes'" and remanding the case before it to state court pursuant to § 1334(c)(2)).

Unable to demonstrate any practical reasons why this action cannot be timely adjudicated in state court, defendants erroneously assert that, *as a matter of law*, a state court action can *never* be

---

[14]   Defendants first suggest that the issue of mandatory abstention is not properly before this Court because Plaintiff's initial motion papers, while clearly arguing that in the event this Court finds "related to" jurisdiction it must abstain pursuant to § 1334(c)(2), were titled "motion for *remand*—not for mandatory or permissive abstention under Section 1334(c)."  (Opp. at 22.)  Review of the table of contents and pages 14-17 of the Remand Motion leaves no question that Plaintiff seeks for this Court to abstain from exercising jurisdiction in the event that it finds "related to" jurisdiction, and these arguments were sufficiently developed to allow Defendants to respond.

[15]   Section 1334(c)(2) directs a district court to abstain from exercising "related to" jurisdiction where (1) the party seeking abstention timely moves for it; (2) the proceeding is based on state law claims; (3) the matter is a non-core "related" proceeding; (4) federal jurisdiction is based solely on 28 U.S.C. § 1334; (5) the (footnote continued)

timely adjudicated where it is "'but one piece of a much larger, extremely complex litigation puzzle' dominated by parallel federal actions that raise similar issues of fact and law and require overlapping discovery." (Opp. at 22.) Whether or not there may be efficiencies derived by coordinating cases that are linked to the same corporate collapse is not relevant to this Court's § 1334(c)(2) analysis. As the Third Circuit explained in *Stoe v. Flaherty*, "Section 1334(c)(2) is based on comity and, on its face, reflects a congressional judgment that a party who wishes to litigate a state claim in a state court, but finds himself in federal court solely because the controversy is related to a bankruptcy, should be able to insist upon a state adjudication if that will not adversely affect the bankruptcy proceedings." 436 F.3d 209, 214 (3d Cir. 2007).[16] Thus, "the issue under § 1334(c)(2) is not whether the action would be *more quickly* adjudicated in [Federal] Court than in the state court, but rather, whether the action can be *timely adjudicated* in the state court." *Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*, 278 B.R. 42, 50 (Bankr. D. Del. 2002).

Furthermore, given that fact discovery will be voluntarily coordinated with the Refco-related actions pending before this Court,[17] there is no reason why the New York Action would, in fact, be adjudicated any less quickly in the Commercial Division than it would be in this Court. The New York Action asserts state law claims for fraudulent inducement and breaches of fiduciary duty in connection with the conversion of the assets entrusted to Refco by its former FX customers.

---

proceeding was commenced in state court; and (6) the proceeding can be timely adjudicated in state court. *See Von Richthofen v. Family M. Found. Ltd.*, 339 B.R. 315, 319 (S.D.N.Y. 2005).

[16]   In a lengthy footnote, the Third Circuit explained that the legislative history makes clear that § 1334(c)(2) is based on comity and respect for state law. *Stoe*, 436 F.3d at 214 n.1.

[17]   The Private Actions Trustee and the Litigation Trustee took an active role in the negotiation of the deposition protocol (the "Protocol") which was presented to the Court and the subject of discussion at the December 10, 2007 conference. The PAT Trustee and the Litigation Trustee have agreed to coordinate deposition discovery in accordance with the terms of this Protocol, regardless of which court the actions filed by PAT and Litigation Trust are adjudicated in.

These are discrete claims, distinct and entirely separable from the complex claims and issues at the core of the Refco-related actions pending before this Court.[18]

This is a different situation from that presented in the three cases cited by Defendants— *Global Crossing*, *WorldCom*, and *Parmalat*, where the actions at issue were based on allegations and claims that went to the very heart of the issues and allegations to be adjudicated in the related actions already pending before each respective court. *See In re Global Crossing*, 311 B.R. at 350 (retaining jurisdiction over a fraud action against stockbroker and Global Crossing's founder and former co-chairman that focused on the central allegations of fraud at the heart of Global Crossing's case); *In re WorldCom*, 293 B.R. at 308 (retaining jurisdiction over federal securities and common law fraud action that focused on the central allegations that gave rise to WorldCom's demise); *Bondi v. Grant Thornton Int'l (In re Parmalat)*, 322 B.R. 44 (S.D.N.Y. 2005) (involving claims brought by extraordinary commissioner that focused on allegations similar to those in the Securities Fraud Action pending before the Court). In sharp contrast, the New York Action asserts narrow claims that are exactly the type of confined state law claims that "can be promptly resolved in state court without interfering with the proceedings pending in the federal courts." *Global Crossing*, 311 B.R. at 350.[19]

---

[18]  Indeed, as the New York Action does not raise the same complex securities fraud issues arising in some of the Refco-related cases pending before this Court, retention of federal jurisdiction would inevitably join this action with claims that require the resolution of complex securities law questions and may, in fact, cause delay in the resolution of Plaintiffs' claims, rather than avoiding it.

[19]  The only additional ground Defendants raise against mandatory abstention is the frivolous contention that they have successfully injected a "core" issue into the Court's analysis by indicating that they will seek dismissal of the PAT claims on the ground that they belong to the estate (*see* Opp. at 22 n.12). The relevant inquiry under § 1334(c)(2) is whether the matter itself is core or non-core. Defendants already conceded that the New York Action does not raise any core issues in their Notice of Removal. *See* Notice of Removal ¶ 10 . Furthermore, that Defendants' motion to dismiss will purport to address a "core" issue is not a suitable ground for exercising jurisdiction over this Action for the reasons discussed above.

The PAT properly chose to assert its New York state law claims in New York state court. The New York Commercial Division is fully capable of adjudicating this action in a timely manner. Given that the Refco Plan was confirmed a year ago and the New York Action asserts non-estate claims against non-debtor third parties that pertain only to the conversion of former Refco FX customer accounts, adjudication of this action in the Commercial Division will not delay or derail the liquidation of RCM or the other Refco estates. Accordingly, pursuant to § 1334(c)(2), Plaintiff's choice of forum must be respected and this Court is required to abstain from exercising related to jurisdiction.

### B.    This Court Should Abstain Pursuant to § 1334(c)(1)

In its Motion to Remand, the PAT Trustee explained why each of the numerous considerations that may factor into a district court's decision to abstain pursuant to § 1334(c)(1) weighs in favor of abstention in this case. (Remand Mot. at 15-17.) In particular, Plaintiff asserted that because its claims are based *entirely* on state law, principles of comity and respect for state law warrant abstention. *Id.* With one exception, Defendants do not even dispute that each of the identified factors weighs in favor of abstention. Instead, Defendants argue that the single factor they believe weighs in their favor—judicial economy—trumps all other considerations. (*See* Opp. at 24-25). Even if it were true that there may be marginal efficiency gains by litigating Plaintiff's claims alongside the other actions pending before this Court (which the PAT Trustee does not concede), such gains do not outweigh the interest of comity, respect for state law, and other important considerations that, in this case, clearly weigh in favor of abstention.[20]

---

[20] Judicial economy, unlike comity and respect for state law, is not identified in the text of § 1334(c)(1) as a foremost consideration in a district court's decision to abstain. If Congress wanted district courts to base their decisions to abstain on the most efficient course of action, it would have stated so in the statute. Instead, Congress directed the courts to be particularly mindful of comity and respect for state law, and any other (footnote continued)

## **CONCLUSION**

For the foregoing reasons, and those set forth in Plaintiff's Motion to Remand, the New York

Action should be remanded to the Commercial Division of the New York Supreme Court.

DATED:     New York, New York     QUINN EMANUEL URQUHART
           December 17, 2007        OLIVER & HEDGES, LLP

By: /s/ Richard I. Werder, Jr._____
Richard I. Werder, Jr.
    *rickwerder@quinnemanuel.com*
Susheel Kirpalani
    *susheelkirpalani@quinnemanuel.com*
Sascha N. Rand
    *sascharand@quinnemanuel.com*
Robert Juman
    *robertjuman@quinnemanuel.com*
51 Madison Avenue, 22nd Floor
New York, New York  10010
Tel:  (212) 849–7000

Attorneys for Plaintiff Marc S. Kirschner as
Trustee of the Refco Non-Estate Private
Actions Trust

---

considerations that may fall within the interest of justice.  Accordingly, Defendants' suggestion that judicial economy is dispositive of this issue is contrary to the plain text of the statute.