UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
MARC S. KIRSCHNER, as Trustee of the Refco               :
Private Actions Trust,                                      :
                                                            :
                        Plaintiff,                          :
                                                            :              07 Civ. 8165 (GEL)
        -v-                                                 :
                                                            :              **OPINION AND ORDER**
PHILLIP R. BENNETT, SANTO C. MAGGIO,                     :
ROBERT C. TROSTEN, MAYER, BROWN,                           :
ROWE & MAW, LLP, GRANT THORNTON                            :
LLP, and ERNST & YOUNG U.S. LLP,                            :
                                                            :
                        Defendants.                         :
                                                            :
------------------------------------------------------------x

Robert C. Juman, Richard I. Werder, Jr.,
Michael B. Carlinsky, Susheel Kirpalani,
Sascha N. Rand, Quinn Emanuel Urquhart Oliver
& Hedges LLP, New York, NY, for Plaintiff.

David E. Mollón, Steven M. Schwartz, Bradley E.
Lerman, Catherine W. Joyce, Linda T. Coberly,
Winston & Strawn LLP, New York, NY, and
Chicago, IL, for Defendant Grant Thornton LLP.

Craig D. Singer, John K. Villa, Michael S.
Sundermeyer, Thomas G. Ward, Williams &
Connolly LLP, Washington, DC, for Defendant
Mayer Brown LLP.

Joel M. Cohen, Anthony M. Candido, Timothy
Casey, Clifford Chance U.S. LLP, New York, NY,
for Defendant Mayer Brown International LLP.

GERARD E. LYNCH, District Judge:

    Plaintiff Marc S. Kirschner, in his capacity as Trustee of the Refco Private Actions Trust

("Trustee" or "Private Actions Trustee"), originally filed this action in New York State Supreme

Court asserting claims under New York state law against certain Refco insiders, professionals, and advisors for, *inter alia*, fraud, breach of fiduciary duty, and conversion. Defendants Grant Thornton LLP, Mayer Brown LLP, and Mayer Brown International LLP[1] (collectively, the "Removing Defendants"), subsequently removed the action to this Court on the ground that the case is "related to" Refco's Chapter 11 bankruptcy, 28 U.S.C. § 1334(b), which is currently pending in this district, see In re Refco, Inc., No. 05-60006 (RDD) (Bankr. S.D.N.Y.). The Trustee now moves to remand for lack of subject matter jurisdiction, or in the alternative, to abstain under 28 U.S.C. §§ 1334(c)(1) and (c)(2).

The issues raised in this case are substantially similar to those raised by the parties in In re Refco, Inc. Securities Litigation, No. 07 Civ. 11604, 2008 WL 1827644 (S.D.N.Y. April 21, 2008). There, the Trustee of the Refco Litigation Trust ("Litigation Trustee") filed an action in Illinois state court asserting state law claims against certain Refco insiders, professionals, and advisors, including the defendants in this case. The case was removed to the Northern District of Illinois and subsequently transferred by the Panel on Multidistrict Litigation ("MDL Panel") to this Court, where a multitude of other Refco-related actions are pending. The Litigation Trustee moved to remand or, in the alternative, to abstain. This Court denied the motion, holding that the action was sufficiently "related to" the Refco bankruptcy to support jurisdiction and that neither mandatory nor discretionary abstention was warranted. Id. at *13. For largely the same reasons, the motion of the Private Actions Trustee in this case to remand, or in the alternative, to abstain, will likewise be denied.

---

[1] Although the Trustee's complaint named "Mayer, Brown, Rowe & Maw, LLP" as a defendant, that defendant has since changed its name to "Mayer Brown LLP" and "Mayer Brown International LLP." (P. Mem. 1 n.1.)

**BACKGROUND**

I.    **Events Leading to Refco's Bankruptcy**

Prior to its implosion in the fall of 2005, Refco presented itself to the public as a leading independent provider of execution and clearing services for exchange-traded derivatives and a major provider of brokerage services in the fixed income and foreign exchange markets. (Compl. ¶ 4.[2]) Beginning in the late 1990s, members of Refco's senior management, allegedly with the active participation of certain of Refco's professionals and financial advisors (collectively, the "defendants"), engaged in a fraudulent scheme to artificially boost Refco's performance and conceal Refco's true financial condition so that these senior executives, through the company's August 2004 leveraged-buy-out and August 2005 initial public offering ("IPO"), could cash out their interests in Refco on lucrative terms. (Id. ¶¶ 71-90.) Defendants allegedly carried out this scheme by "conceal[ing] substantial Refco trading losses and operating expenses, record[ing] hundreds of millions in fictitious Refco income, and fund[ing] Refco's operating expenses and acquisitions with misappropriated customer assets." (P. Mem. 2, citing Compl. ¶¶ 36-90.)

On October 10, 2005, just two months after its IPO, Refco announced that it had discovered an undisclosed $430 million receivable due from an entity controlled by Refco's CEO, Philip R. Bennett. (Compl. ¶¶ 88-89.) As a result, the company announced that its financial statements for the preceding four years could no longer be relied upon. (Id. ¶ 89.)

---

[2] All references to the complaint in this opinion are to the complaint originally filed in New York State Supreme Court. (Juman Decl. Ex. A.) All factual allegations in the complaint are assumed to be true for purposes of this motion. See Merritt v. Shuttle, Inc., 245 F.3d 182, 186 (2d Cir. 2001).

Following these disclosures, Refco's stock plummeted and the company, along with many of its subsidiaries, was forced into bankruptcy. (Id. ¶¶ 89-90.)

## II.     The Refco Private Actions Trust

On December 15, 2006, approximately fourteen months after Refco filed for bankruptcy, the United States Bankruptcy Court for the Southern District of New York confirmed the Modified Joint Chapter 11 Plan of Refco Inc. and Certain of its Direct and Indirect Subsidiaries (the "Plan"). (See Kirschner Decl. ¶ 6; id. Ex A.) The Plan provided for the establishment of two different post-confirmation trusts, each with its own Trustee and governing trust agreement: (1) the Litigation Trust, which was created to pursue "estate" claims — i.e., causes of action owned by the Refco Debtors themselves;[3] and (2) the Private Actions Trust ("PAT"), which was formed to prosecute "non-estate" claims — i.e., claims owned by Refco creditors or shareholders

---

[3] As this Court explained in In re Refco:

> The Plan provided for the establishment of a Litigation Trust and the appointment of a Litigation Trustee to pursue such "claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that any [Refco] Debtor or RCM [(Refco Capital Markets Ltd.) ] may hold against any Person." Pursuant to the Plan, all "Contributed Claims," defined as "any and all Litigation Claims of the Debtors, RCM or their estates," would be irrevocably transferred to the Litigation Trust on the effective date of the Plan. In exchange, "the Litigation Trust Beneficiaries," who are the holders of allowed general unsecured claims against the Refco Debtors, would receive "Litigation Trust Interests," which would be allocated on the basis of the beneficiaries' allowed claims under the confirmed Plan.

2008 WL 1827644, at *2 (citations omitted).

that were "independent" of those held by the Refco Debtors.[4]  (Id. ¶¶ 12, 14.)  Pursuant to the PAT Agreement, funding for the PAT was provided in the form of loans from the Litigation Trust.  (Id. Ex. B § 1.6.)

As described in the Plan, the PAT was formed to pursue "certain claims and causes of action against third-parties owned by Holders of Claims or Interests against RCM or the Debtors and which claims, even after contribution, are not assets of the [Refco] Estates."  (Id. Ex. A ¶ 1.146.)  In order to join the PAT, Refco creditors or shareholders were required to assign their independent, "non-estate" claims to the PAT.  (Id. ¶ 12.)  Only those creditors and shareholders who voluntarily assigned their claims became PAT beneficiaries, and not every Refco creditor and shareholder elected to join the PAT.  (See id.)  In exchange for contributing their claims, PAT beneficiaries became entitled to a pro rata share of any proceeds of PAT litigation.  Recoveries by the PAT would be distributed only to those creditors and shareholders who contributed claims to the PAT, while recoveries by the Litigation Trust would be distributed to all Refco creditors.  The PAT thus "offered each creditor the opportunity to seek additional

---

[4] Under the Plan, "Non-Estate Refco Claims" are defined as:

> non-estate causes of action arising from any matter involving any Refco Entity including, without limitation, causes of action against: (i) all current and former officers, directors or employees of the Refco Entities; (ii) all persons or entities that conducted transactions with the Refco Entities; and (iii) all persons or entities that provided services to the Refco Entities, including, without limitation, all attorneys, accountants, financial advisors and parties providing services to the Refco Entities in connection with the public issuance of debt or equity.

(Kirschner Decl. Ex. A ¶ 1.126.)

compensation apart from estate distributions and independent of the merits of the particular causes of action it held." (D. Mem. 3.)

On December 26, 2006, both the PAT and the Litigation Trust became effective and plaintiff Marc Kirschner was appointed as Trustee for both trusts. (Kirschner Decl. ¶¶ 10-11, 14.)

### III. Procedural History

On August 27, 2007, nine months after the Plan was confirmed, the Private Actions Trustee filed this action in New York State Supreme Court asserting state-law claims against defendants for breach of fiduciary duty, fraud, conversion, and aiding and abetting breach of fiduciary duty, fraud, and conversion. (Compl. ¶¶ 210-238.) As noted above, certain defendants removed the case to this Court on the ground that the action is "related to" the Refco bankruptcy pending in this district. 28 U.S.C. § 1334(b); see id. § 1452(a).[5] The Trustee now moves to remand the case for lack of subject matter jurisdiction. See 28 U.S.C. § 1447(c). In the alternative, the Trustee contends that even if the Court has subject matter jurisdiction, abstention is both mandatory and warranted in the exercise of discretion under 28 U.S.C. § 1334(c).

### DISCUSSION

### I. Subject Matter Jurisdiction

#### A. Removal and Jurisdiction in Bankruptcy Cases

The party seeking removal of an action from state to federal court bears the burden of proving federal jurisdiction. See In re WorldCom, Inc. Secs. Litig., 293 B.R. 308, 316 (S.D.N.Y.

---

[5] See California Pub. Employees' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 103 (2d Cir. 2004) (noting that "removal under [§ 1452(a)], unlike removal under Section 1441(a), does not require the unanimous consent of the defendants").

2003), citing Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998). With regard to bankruptcy-related claims, 28 U.S.C. § 1452(a) provides that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a); see Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 131-32 (1995) (Ginsburg, J., concurring) (finding that § 1452 was "meant to enlarge, not to rein in, federal trial court removal/remand authority for claims related to bankruptcy cases").

The propriety of removal under § 1452(a) is predicated on the scope of federal jurisdiction under 28 U.S.C. § 1334, which provides, in relevant part:

> [N]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings *arising under title 11, or arising in or related to cases under title 11*.

28 U.S.C. § 1334(b) (emphasis added). None of the parties contends that this action is a proceeding "arising under" Title 11 or "arising in" a Title 11 case. Thus, the only jurisdictional dispute is whether the Trustee's claims, which arise solely under New York state law, are sufficiently "related to" the Refco bankruptcy to establish federal jurisdiction.

### 1. "Related to" Jurisdiction

The Removing Defendants contend that "related to" jurisdiction exists in this case because: (1) the PAT is a "creature" of the Refco bankruptcy, and its lawsuit is "closely intertwined" with the bankruptcy and other related litigation; (2) the court exercising jurisdiction over this case will have to decide (through resolution of the Removing Defendants' impending dispositive motion) whether the claims asserted by the PAT belong to the estate or to the

individual creditors, an issue which is "undeniably 'related to' the bankruptcy"; (3) the success or failure of this lawsuit will directly impact the amount of assets distributed to Refco creditors by virtue of the PAT's relationship to the Litigation Trust; and (4) certain defendants have filed proofs of claim for contribution and indemnification and the outcome of this action will affect those claims and, consequently, the amount of estate property distributed to creditors. (D. Mem. 1-2, 6-22.)  The Trustee asserts that none of these grounds provides a basis for federal jurisdiction.

As this Court noted in In re Refco, 2008 WL 1827644, at *3-4, the applicable test for "related to" jurisdiction in this circuit is that articulated by the Third Circuit in In re Pacor, Inc.:

> [T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could *conceivably have any effect* on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

743 F.2d 984, 994 (3d Cir. 1984) (emphasis added) (citations omitted); see In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992); In re WorldCom, 293 B.R. at 317 (noting that "[t]he dominant standard for 'related to' jurisdiction is that set forth by the Third Circuit in In re Pacor" ). Although the reach of the Pacor test is broad, it is not "limitless," Celotex Corp. v. Edwards, 514 U.S. 300, 308 (1995), and numerous courts both in this and other circuits have held that "the scope of bankruptcy court jurisdiction diminishes with plan confirmation," In re Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004); accord In re Pegasus Gold Corp., 394 F.3d

8

1189, 1194 (9th Cir. 2005); Guccione v. Bell, No. 06 Civ. 492, 2006 WL 2032641, at *4 (S.D.N.Y. July 20, 2006); In re General Media, Inc., 335 B.R. 66, 73 (S.D.N.Y. 2005).

The rationale for diminished federal jurisdiction post-confirmation rests on the notion that a reorganized debtor is "emancipated" by confirmation and that "just like any other corporation[,] it must protect its interests in the way provided by the applicable non-bankruptcy law, without any special swaddling." In re Boston Reg'l Med. Ctr., Inc., 410 F.3d 100, 106 (1st Cir. 2005) (internal quotation marks omitted); see id. ("[A]pplying the general [Pacor] rule without qualification after the confirmation of a reorganization plan . . . not only would work an unwarranted expansion of federal court jurisdiction but also would unfairly advantage reorganized debtors by allowing such firms to funnel virtually all litigation affecting them into a single federal forum."). As this Court noted in In re Refco, however, the First Circuit has distinguished between post-confirmation reorganization plans and liquidation plans, holding that in the latter scenario, "the compass of related to jurisdiction persists undiminished after plan confirmation." Id. at 107; see In re Refco, 2008 WL 1827644, at *7-8. In a liquidation plan, "the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend." Id. at 106. Accordingly, the First Circuit has reasoned that "there is much less reason to depart from the general [Pacor] rule for related to jurisdiction" when the plan at issue is a liquidating plan because "the specter of endless bankruptcy jurisdiction and a kindred concern about unfairly advantaging reorganized debtors" does not exist. Id.

Although several courts in this circuit have cited the First Circuit's approach approvingly, see, e.g., In re Cross Media Mktg. Corp., 367 B.R. 435, 444 (Bankr. S.D.N.Y. 2007); In re Agway, Inc., Adv. Pro. No. 04-80269, slip op. at 7-8 (Bankr. N.D.N.Y. Mar. 6,

9

2006); In re General Media, 335 B.R. at 73 n.7, the Second Circuit has not yet addressed the issue squarely.  Although the First Circuit's reasoning is persuasive, it is unnecessary for the resolution of this case to adopt its distinction between reorganization and liquidation plans because even if federal jurisdiction is diminished post-confirmation, the claims of the Private Actions Trustee here, like those of the Litigation Trustee in In re Refco, are nevertheless sufficiently "related to" the Refco bankruptcy to support jurisdiction.

According to the line of decisions holding that federal jurisdiction shrinks post-confirmation,

> a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements.  First, the matter must have a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan and second, the plan must provide for the retention of jurisdiction over the dispute.

In re Kassover, 336 B.R. 74, 79 (S.D.N.Y. 2006); see Guccione, 2006 WL 2032641, at *4; In re General Media, Inc., 335 B.R. at 73; see also In re Resorts, 372 F.3d at 168-69.  In this case, both requirements for post-confirmation jurisdiction are satisfied.  With regard to the "retention of jurisdiction" requirement, it is undisputed that the Plan expressly preserves jurisdiction over any "causes of action by or on behalf of . . . the Private Actions Trustee."  (Kirschner Decl. Ex. A § 11.1(k)).  This action, moreover, clearly shares a "close nexus" to the Refco bankruptcy as the PAT itself is a creation of the Plan, and the claims being asserted do not "belong[] to the litigation trust personally," In re Premium Escrow Servs., Inc., 342 B.R. 390, 399 (Bankr. D. Colo. 2006), but rather, are precisely those causes of action that were transferred by Refco's creditors and shareholders to the PAT pursuant to the Plan and the PAT Agreement.  Indeed, the Plan specifically contemplates the assignment to the PAT of non-estate causes of action against,

*inter alia*, "all current and former officers, directors or employees of the Refco Entities" and "all attorneys, accountants, financial advisors and parties providing services to the Refco Entities" (Kirschner Decl. Ex. A ¶ 1.126.) — in short, exactly the defendants in this case. Because the very claims being prosecuted by the Trustee here "were manifestly contemplated by the Plan, litigating them serves the implementation, consummation, and execution of the Plan." In re EXDS, Inc., 352 B.R. 731, 738 (Bankr. D. Del. 2006) (internal quotation marks and alteration omitted), abrogated on other grounds by In re Seven Fields Dev. Corp., 505 F.3d 237 (3d Cir. 2007); see In re Agway, slip op. at 9 (finding "sufficient nexus" for "related to" jurisdiction where, *inter alia*, "the Liquidating Trust was given the power to prosecute the action under the terms of the Debtor's Plan").

The Trustee nevertheless contends that federal jurisdiction does not exist because the claims assigned to the PAT "are not, and never were, property of the Refco estates." (P. Mem. 8.) As a result, any recovery in this case will be distributed directly to the PAT beneficiaries, and, according to the Trustee, adjudication of the claims will not affect the Refco Debtors, the administration of the estate, or the distribution of estate property to creditors. (Id. at 7-14.) Even accepting as true the Trustee's contention that the claims asserted in this case are all "non-estate" claims, that fact alone is not dispositive of the jurisdictional inquiry. See Celotex, 514 U.S. at 308 (observing that "related to" jurisdiction encompasses "more than simple proceedings involving the property of the debtor or the estate"). As explained above, the Trustee's claims in this case are precisely those that were transferred to the PAT by Refco creditors and shareholders pursuant to the Plan and the PAT Agreement. The Trustee's claims thus "arise under the Plan," and prosecution of this action directly implicates the "implementation" and "execution" of the

"confirmed plan [and] incorporated litigation trust agreement." In re General Media, 335 B.R. at 73, 75 (internal quotation marks omitted). Under the governing legal standard, these facts are sufficient to establish post-confirmation "related to" jurisdiction. See In re Refco, 2008 WL 1827644, at *10.

Contrary to the Trustee's contention, moreover, the outcome of this action will, in at least one way, directly affect the assets available for distribution to Refco creditors. As noted above, the PAT is funded by loans from the Litigation Trust and has no source of income other than the proceeds of PAT litigation. (See Kirschner Decl. Ex. B § 1.6.) Accordingly, the PAT's ability to repay its loan obligations to the Litigation Trust depends entirely on its success or failure in this and any other action it may bring. Repayment or non-repayment of these loans, in turn, affects the assets of the Litigation Trust, and, consequently, creditor recoveries through the Litigation Trust. Accordingly, a direct causal chain links the resolution of the PAT's claims in this action with the amount of Litigation Trust assets available for distribution to Refco creditors, thus further evidencing the "close nexus" between the PAT's claims and the Refco bankruptcy. See In re Boston Reg'l Med. Ctr., 410 F.3d at 107 ("[The liquidating entity's] success or lack of success in securing a share of the trust corpus will directly impact the amount of the liquidating dividend eventually paid to [the debtor's] creditors. That is a matter intimately connected with the efficacy of the bankruptcy proceeding."); Bondi v. Grant Thornton Int'l, 322 B.R. 44, 47 & n.10 (S.D.N.Y. 2005); In re WorldCom, 293 B.R. at 323.

The Court's exercise of jurisdiction in this case is also entirely consistent with Congress's intent in enacting § 1344(b) "to grant *comprehensive* jurisdiction to the bankruptcy courts so that they might deal *efficiently and expeditiously with all matters* connected with the

bankruptcy estate." Celotex, 514 U.S. at 308 (emphasis added) (internal quotation marks omitted); see In re Boston Reg'l Med. Ctr., 410 F.3d at 105 ("Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the *entire universe of matters* connected with bankruptcy estates." (emphasis added)). Indeed, as in In re Refco, "[t]he efficiency gains that result from asserting jurisdiction in this case are particularly striking given the multitude of other Refco-related actions currently pending before this Court, many of which involve many of the same parties and arise out of the same set of facts as those described in the Trustee's complaint." 2008 WL 1827644, at *10.

In sum, even assuming *arguendo* that federal jurisdiction diminishes post-confirmation, the existence of a "close nexus" between the Trustee's claims and the Refco bankruptcy, coupled with the Plan's express retention of jurisdiction over those claims, suffices to establish "related to" jurisdiction in this case.[6] Accordingly, the Trustee's motion to remand on the ground of lack of subject matter jurisdiction must be denied.

## II. Abstention

### A. Mandatory Abstention

The Trustee asserts that even if subject matter jurisdiction exists, abstention is required by 28 U.S.C. § 1334(c)(2). Section 1334(c)(2) provides, in relevant part:

> [u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in

---

[6] Accordingly, the Court need not address the Removing Defendants' alternative arguments for jurisdiction.

> a court of the United States absent jurisdiction under this section, the district court *shall abstain* from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added). A party seeking mandatory abstention under § 1334(c)(2) thus must demonstrate that:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; [and] (6) that action can be "timely adjudicated" in state court.

In re Worldcom, 293 B.R. at 331. "A party is not entitled to mandatory abstention if it fails to prove any one of the statutory requirements." Id.; see Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 446-47 (2d Cir. 2005) (holding that mandatory abstention can be applied in a case that has already been removed from state court).

As in In re Refco, 2008 WL 1827644, at *11-12, mandatory abstention is not warranted here because the Trustee has not met its burden of proving that its claims can be "timely adjudicated" in New York state court. 28 U.S.C. § 1334(c)(2). The Trustee's only evidence of "timely adjudicat[ion]" is the declaration of its own counsel that, upon remand, the action "would be assigned to the Commercial Division of the New York Supreme Court," which "was established as a means of improving the efficiency and judicial treatment of complex commercial disputes." (Juman Decl. ¶ 5.) Whatever might be true in the general run of cases filed in the Commercial Division, this action is clearly distinguishable, constituting "but one piece of a much larger, extremely complex litigation puzzle." Bondi, 322 B.R. at 50. As this Court has repeatedly explained:

> [Section] 1334(c)(2) is intended to require federal courts to defer to the state courts to handle lawsuits which, although "related to" a bankruptcy, can be promptly resolved in state court without interfering with the proceedings pending in the federal courts. That intention simply has no application to litigation of this sort, in which a case properly removed to federal court is intertwined both with complex bankruptcy proceedings and equally complex securities class actions pending in federal court.

2008 WL 1827644, at *12, quoting In re Global Crossing, Ltd. Sec. Litig., 311 B.R. 345, 349 (S.D.N.Y. 2003); see Bondi, 322 B.R. at 50; In re WorldCom, 293 B.R. at 331. Indeed, far from promoting "timely adjudicat[ion]" of the Trustee's claims, to remand this action to the New York state court "would simply complicate and slow down the resolution of those claims, as well as of the matters already pending before this Court." In re Global Crossing, 311 B.R. at 349 (alteration in original). For these reasons, mandatory abstention pursuant to § 1334(c)(2) is unwarranted.

      B.    Discretionary Abstention

Discretionary abstention is also inappropriate. Section 1334(c)(1) provides that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding . . . related to a case under title 11." 28 U.S.C. § 1334(c)(1). Federal courts, however, must be "sparing" in their exercise of discretionary abstention, Winstar Holdings, LLC v. Blackstone Group L.P., No. 07 Civ. 4634, 2007 WL 4323003, at *5 (S.D.N.Y. Dec. 10, 2007), because they possess a "virtually unflagging obligation . . . to exercise the jurisdiction given them," Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976); see id. at 813 (observing that federal courts may abstain only for a few "extraordinary and narrow exception[s]"). Relevant considerations in determining whether to abstain pursuant to

15

§ 1334(c)(1) include "comity and federalism, judicial economy, and efficiency." In re Worldcom, 293 B.R. at 332.

As was true in In re Refco, "there is little basis to invoke comity to the state courts, and every reason to invoke . . . federal jurisdiction." 2008 WL 1827644, at *12, quoting Winstar, 2007 WL 4323003, at *5. Although the Trustee's claims are based entirely on New York state law, the state law claims are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of state law that would "warrant abstention based on comity concerns." In re Worldcom, 293 B.R. at 332; see Rahl, 316 B.R. at 135. As the case was promptly removed, moreover, New York state courts have invested little or no time in the case. See Winstar, 2007 WL 4323003, at *5. This action also shares a close relationship with the Refco bankruptcy proceeding as the claims being prosecuted by the Trustee are the very causes of action that were assigned to it by Refco creditors and shareholders pursuant to the confirmed Plan. See supra at 10-13. Finally, as Judge Cote astutely observed in a substantially similar case:

> it is beyond cavil that judicial economy and efficiency are best served by exercising the jurisdiction that so clearly exists. The MDL panel has consolidated scores of cases before this Court to promote the expeditious and efficient resolution of the claims arising from the collapse of WorldCom. The litigation is proceeding apace. Motions to remand . . . and to dismiss have been fully briefed, and . . . important discovery issues addressed. With the consolidation of the litigation in one court, the motion practice and discovery process can be managed to protect the rights of all parties and to preserve, to the extent possible, the maximum amount of assets for recovery by plaintiffs with meritorious claims.

In re Worldcom, 293 B.R. at 333. Given the "scores" of other Refco-related cases consolidated by the MDL Panel and currently pending before this Court, id., and given the Court's denial of the Litigation Trustee's virtually identical motion in In re Refco, 2008 WL 1827644, at *13, the

16

Private Actions Trustee has advanced no persuasive reason why a different outcome should result here. Accordingly, the Trustee's request for discretionary abstention under § 1334(c)(1) must be denied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand, or in the alternative, to abstain, is denied.

SO ORDERED.

Dated: New York, New York
       May 6, 2008

_____
GERARD E. LYNCH
United States District Judge