```
82FVBENP                      Plea
```

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4                v.                    05 CR 001192 (NRB)

5   PHILLIP BENNETT,

6                Defendant.

7   ------------------------------x

8                                      New York, N.Y.
                                       February 15, 2008
9                                      5:40 p.m.

10
                                       
11  Before:

12                  HON. NAOMI REICE BUCHWALD,

13                                      District Judge

14                           APPEARANCES

15  MICHAEL J. GARCIA
         United States Attorney for the
16       Southern District of New York
    NEIL M. BAROFSKY
17  CHRISTOPHER L. GARCIA
         Assistant United States Attorneys
18
    KRAMER LEVIN NAFTALIS & FRANKEL
19       Attorneys for Defendant
    GARY P. NAFTALIS
20  DAVID S. FRANKEL
    ADAM C. FORD
21  DARREN A. LAVERNE

22  ALSO PRESENT:  WILLIAM JOHNSON, Postal Inspector
                   KRIS MOON, Postal Inspector
23                 ANNE RAILTON, Law Student

24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300
```

82FVBENP                        Plea

1            (In open court)

2            (Case called)

3            THE DEPUTY CLERK:  The case is United States against

4     Phillip Bennett; docket number 05 CR 1192.  Is the government

5     ready to proceed?

6            MR. BAROFSKY:  Yes.  Neil Barofsky for the government.

7     With me at counsel table, with your Honor's permission, is

8     Christopher Garcia of our office, our postal inspectors on the

9     case, William Johnson and Kris Moon, as well as our legal

10    intern, Annie Railton, who's been assisting the trial of this

11    matter.  Good evening, your Honor.

12            MR. GARCIA:  Good evening, your Honor.

13            THE DEPUTY CLERK:  Is the defense ready to proceed?

14            MR. NAFTALIS:  Yes, we are.  Gary Naftalis for

15    Mr. Bennett, along with David Frankel.

16            THE COURT:  Mr. Naftalis?

17            MR. NAFTALIS:  Your Honor, we have an application on

18    behalf of Mr. Bennett to withdraw his plea of not guilty to the

19    charges in the indictment and to offer to plead guilty to the

20    charges in the indictment.

21            THE COURT:  All right.  Mr. Bennett, would you stand

22    please.  Would you raise your right hand.

23            (Defendant sworn)

24            THE COURT:  And would you state your full name for me

25    please.

82FVBENP                    Plea

1          THE DEFENDANT:  Phillip Roger Bennett.

2          THE COURT:  And Mr. Bennett, how old are you?

3          THE DEFENDANT:  59, your Honor.

4          THE COURT:  Why don't you sit down.  Mr. Bennett, what

5     was the highest grade in school that you completed?

6          THE DEFENDANT:  University.  Grade, twelfth grade, I

7     think it is, your Honor.

8          THE COURT:  You have the equivalent of a college

9     degree.

10          THE DEFENDANT:  Yes, master of arts.

11          THE COURT:  And are you now or have you currently been

12     under the care of a doctor or psychiatrist?

13          THE DEFENDANT:  No, your Honor.

14          THE COURT:  And have you ever been hospitalized or

15     treated for alcoholism or narcotics addiction?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  Are you under the influence of any drug or

18     alcohol today?

19          THE DEFENDANT:  I'm not, no, your Honor.

20          THE COURT:  And how are you feeling physically today?

21          THE DEFENDANT:  Fine, your Honor.  Thank you.

22          THE COURT:  Mr. Bennett, have you had the opportunity

23     to review the charges against you and your plea with

24     Mr. Naftalis and Mr. Frankel and perhaps some other lawyers, as

25     well?

82FVBENP                           Plea

1              THE DEFENDANT:  I have, your Honor, yes.

2              THE COURT:  And have you been satisfied with the

3     advice and counsel that Messrs. Naftalis and Frankel have given

4     to you?

5              THE DEFENDANT:  I have, yes.

6              THE COURT:  Are you ready to change your plea at this

7     time?

8              THE DEFENDANT:  I am, your Honor.

9              THE COURT:  And what is your plea at this time, guilty

10    or not guilty?

11             THE DEFENDANT:  It's guilty, your Honor.

12             THE COURT:  Mr. Bennett, in order to determine whether

13    your plea is voluntary and made with a full understanding of

14    the charges against you and the consequences of your plea, I

15    will make certain statements to you and I will ask you certain

16    questions.  I want you to understand that I need not accept

17    your plea unless I am satisfied that you are, in fact, guilty,

18    and that you fully understand your rights.  I'm tempted to ask

19    the government to pick a few favorite charges instead of all of

20    these, but, okay.

21             Mr. Bennett, you've been charged in the 20-count

22    indictment.

23             The first count charges you with a conspiracy to

24    commit securities fraud, wire fraud, bank fraud, and money

25    laundering, and to make false filings to the SEC.  This crime

82FVBENP                          Plea

1    carries a maximum sentence under the law of five years

2    imprisonment, a maximum fine of the greatest of $250,000 or

3    twice the gross pecuniary gain derived from the offense or

4    twice the gross pecuniary loss to persons other than yourself

5    as a result of the offense, and a $100 special assessment, and

6    a maximum term of supervised release of three years.

7            Do you understand that those are the charges in Count

8    One of the indictment and the maximum statutory penalties

9    applicable to those charges?

10            THE DEFENDANT:  I do, your Honor, yes.

11            THE COURT:  Counts Two and Three of the indictment

12    charge you with securities fraud.  Each of these counts carries

13    a maximum sentence of 20 years in prison, a maximum fine of

14    $5,000,000 or twice the gross pecuniary gain derived from the

15    offense or twice the gross pecuniary loss to a person other

16    than yourself as a result of the offense, a $100 special

17    assessment, and a maximum term of supervised release of three

18    years.

19            Do you understand that those are the charges in Counts

20    Two and Three and the maximum penalties under law for those

21    charges of securities fraud?

22            THE DEFENDANT:  I do, your Honor.

23            THE COURT:  Count Four charges you with making a false

24    filing with the Securities and Exchange Commission.  And this

25    crime carries a maximum statutory penalty of 20 years in

82FVBENP                    Plea

 1   prison, a maximum fine of the greatest of $5,000,000 or twice

 2   the gross monetary gain derived from the offense or twice the

 3   gross monetary loss to a person other than yourself as a result

 4   of the offense, a $100 special assessment, and a maximum term

 5   of supervised release of three years.

 6          Do you understand that those are the charges in Count

 7   Four and the maximum penalties applicable to those charges?

 8          THE DEFENDANT:  I do, your Honor.

 9          THE COURT:  Counts Five and Six of the indictment

10   charge you with making a false filing with the Securities and

11   Exchange Commission -- excuse me, with the Securities and

12   Exchange Commission.  Each of these counts carries a maximum

13   sentence under the law of five years imprisonment, a maximum

14   fine of the greatest of $250,000 or twice the gross pecuniary

15   gain derived from the offense or twice the gross pecuniary loss

16   to a person other than yourself as a result of the offense, and

17   a $100 special assessment, and a maximum supervised release

18   term of three years.  Do you understand that those are the

19   charges in Counts Five and Six of the indictment and the

20   maximum penalties provided for by law for those crimes?

21          THE DEFENDANT:  Yes, I do, your Honor.

22          THE COURT:  And Counts Seven through Thirteen of the

23   indictment charge you with wire fraud.  Each of these counts

24   carries a maximum possible sentence of 20 years in prison, a

25   maximum fine of the greatest of $250,000 or twice the gross

82FVBENP                    Plea

1    pecuniary gain derived from the offense or twice the gross

2    pecuniary loss to a person other than yourself as a result of

3    the offense, a $100 special assessment, and a maximum term of

4    supervised release of three years.

5           Do you understand that those are the charges in Counts

6    Seven through Thirteen, and the maximum penalties under the

7    statute for those charges?

8           THE DEFENDANT:  Yes, I do, your Honor.

9           THE COURT:  All right.  Count Fourteen charges you

10   with making material misstatements to auditors.  And this crime

11   carries a maximum sentence of 20 years imprisonment, a maximum

12   fine of $5,000,000 or twice the gross pecuniary gain derived

13   from the offense or twice the gross pecuniary loss to a person

14   other than yourself as a result of the offense, a $100 special

15   assessment, and a maximum term of supervised release of three

16   years.

17          Do you understand that that is the crime charged in

18   Count Fourteen of the indictment, and the maximum penalty

19   provided for by statute for Count Fourteen?

20          THE DEFENDANT:  Yes, I do, your Honor.

21          THE COURT:  Count Fifteen of the indictment charges

22   you with bank fraud.  And this crime carries a maximum sentence

23   of 30 years in prison, a maximum fine of the greatest of

24   $1,000,000 or twice the gross pecuniary gain derived from the

25   offense or twice the gross pecuniary loss to a person other

82FVBENP                      Plea

1    than yourself as a result of the offense, a $100 special

2    assessment, and a maximum term of supervised release of five

3    years.

4         Do you understand that that is the charge in Count

5    Fifteen, and that those are the maximum penalties provided for

6    by law?

7         THE DEFENDANT:  Yes, your Honor.  Forgive me, yes,

8    your Honor.

9         THE COURT:  Counts Sixteen through Twenty charge you

10   with money laundering.  Each of these counts carries a maximum

11   possible sentence of ten years imprisonment, a maximum fine of

12   the greatest of $250,000, twice the gross pecuniary gain

13   derived from the offense or twice the gross pecuniary loss to a

14   person other than yourself as a result of the offense, and a

15   $100 mandatory special assessment, and a maximum supervised

16   release term of five years.

17        Do you understand that those are the crimes charged in

18   Counts Sixteen through Twenty, and the maximum possible penalty

19   provided by law?

20        THE DEFENDANT:  Yes, your Honor.

21        THE COURT:  Do you also understand that the Court must

22   impose an order of restitution by law?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  And do you understand that you are also

25   subject to mandatory asset forfeiture?

82FVBENP                          Plea

1            THE DEFENDANT:  Yes, your Honor.

2            THE COURT:  And do you understand that you have the

3    right to plead not guilty and the right to a trial on the

4    charges against you and, in fact, the right to a jury trial?

5            THE DEFENDANT:  Yes, your Honor.

6            THE COURT:  At this time, I'd ask the government to

7    recite the elements of the crimes charged.

8            MR. BAROFSKY:  Yes, your Honor.  For Count One,

9    conspiracy, the government would have to prove the following

10   elements:

11           First, that an agreement or understanding existed to

12   commit the objects charged in the indictment.  Second, the

13   defendant knowingly became a member of that agreement or

14   understanding.  And third, that one of the conspirators

15   knowingly committed at least one overt act in furtherance of

16   the conspiracy during the life of the conspiracy.

17           With respect to Counts Two and Three, securities

18   fraud, the government would have to prove, first, that Bennett,

19   in connection with the purchase or sale of securities, and for

20   Count Two, that would be the notes described in the indictment,

21   and in Count Three, the common stock of Refco described in the

22   indictment, he did one or more of the following:  He either

23   employed a device, scheme, or artifice to defraud or made an

24   untrue statement of a material fact or omitted to state a

25   material fact which made what was said under the circumstances

82FVBENP                      Plea

1    misleading or engage in an act, practice, or course of business

2    that operated or would operate as a fraud or deceit on a

3    purchaser or seller.   Second, that Bennett acted knowingly,

4    willfully, and with intent to defraud.   And, third, that he

5    used or caused to be used any means or instruments of

6    transportation or communication in interstate commerce, but he

7    used the mails in furtherance of the fraudulent conduct.

8         With respect to Count Four, which charges false filing

9    under the Exchange Act, the first element the government would

10   have to prove is that Refco was required by the Securities

11   Exchange Act of 1934 to file the 10-K that's described in Count

12   Four.   And, second, the defendant knowingly and willfully made

13   or caused to be made a materially false or misleading statement

14   in that document or omitted to state any material fact required

15   to be stated therein or necessary to make the statements

16   therein not misleading.

17        With respect to Counts Five and Six, false filings

18   under the Securities Act, the government would have to prove,

19   again, first, that Refco was required under the Securities Act

20   of 1933 to file the S4, which is described in Count Five, and

21   the S1 registration statement described in Count Six.   And,

22   second, that Bennett knowingly and willfully made or caused to

23   be made a materially false or misleading statement in those

24   documents or omitted to state any material fact required to be

25   state therein or necessary to make the statements therein not

82FVBENP                    Plea

1    misleading.

2          With respect to Counts Seven through Thirteen of wire

3    fraud, the government would have to prove, first, that a scheme

4    to defraud must have existed; that Bennett must have

5    participated in the scheme with intent to defraud; that

6    misrepresentations or omissions must have related to material

7    facts were made in furtherance of the fraud; that the scheme

8    was executed to obtain money or property; and that in the

9    execution of the scheme, Bennett used or caused to be used the

10   interstate wires listed in the indictment.  And here for Count

11   Seven is the June 22nd of 2004 email from Robert Trosten; in

12   Count Eight, the August 3, '04 email from Robert Trosten; in

13   Count Nine, the April 6, '05 transmission of the S4 from New

14   York to Virginia; in Count Ten, the July 19th, 2005

15   transmission of 10-K from New York to Virginia; in Count

16   Eleven, the August 5th, 2004 transmission of $4,000,000 from

17   New York to Illinois; in Count Twelve, the August 5th, 2004

18   transmission of $40,000,000 from New York to Illinois; and in

19   Count Thirteen, the August 8th, 2005 transmission of the S1

20   registration statement from New York to Virginia.

21          For Count Fourteen, material misstatements to

22   auditors, the government would have to prove, first, that Refco

23   was a public company that was required to submit financial

24   statements to the SEC; second, that Bennett was a

25   director/officer of Refco; third, Bennett knowingly and

82FVBENP                    Plea

1    willfully made, caused to be made, a materially false or

2    misleading statement or omitted to state a material fact

3    necessary order to make the statements made in light of the

4    circumstances under which such statements were made not

5    misleading to an accountant, and that the statement was made in

6    connection with the audit or examination of the financial

7    statements of Refco required to be made pursuant to the Act.

8         Count Fifteen charges the defendant with bank fraud.

9    And specifically, that on August 5th, 2004, defrauded HSBC.

10   And the government would have to prove, first, there was a

11   scheme to defraud a bank by means of materially false or

12   fraudulent pretenses, representations, or promises; second,

13   that Bennett executed or attempted to execute the scheme with

14   intent to defraud the bank, here, again, HSBC; and third, at

15   the time of the execution of the scheme, HSBC had its deposits

16   insured by the FDIC.  And I'll represent to the Court that at

17   the relevant time periods, HSBC's deposits were insured by the

18   FDIC.

19        And finally, Counts Sixteen through Twenty charge the

20   defendant with money laundering.  And the government would have

21   to prove, first, that Bennett engaged or attempted to engage in

22   monetary transactions involving criminally derived property of

23   a value greater than $10,000; second, that the property

24   involved in the monetary transaction was, in fact, derived and

25   specified unlawful activity; third, that Bennett acted

82FVBENP                    Plea

1    knowingly.  And for these purposes, wire fraud, bank fraud, and

2    securities fraud are all specified unlawful activities and

3    would have to prove each of the transactions listed in the

4    indictment in Counts Sixteen through Twenty, basically the wire

5    transactions which are described therein.

6         THE COURT:  Mr. Bennett, do you understand that if you

7    pled not guilty and went to trial, that the burden would be on

8    the government to prove each and every element of every crime

9    charged beyond a reasonable doubt in order to convict you of

10   that crime?

11        THE DEFENDANT:  I do, your Honor.

12        THE COURT:  Do you understand that at a trial you

13   would have the right to be represented by an attorney at all

14   stages of the proceeding and, if necessary, an attorney would

15   be appointed for you?

16        THE DEFENDANT:  Yes, I do.

17        THE COURT:  And do you understand that at a trial you

18   would have the right to confront and cross-examine witnesses

19   and the right not to be compelled to incriminate yourself?

20        THE DEFENDANT:  I do, your Honor.

21        THE COURT:  And do you understand that at a trial you

22   would be presumed innocent until such time, if ever, the

23   government established your guilt by competent evidence to the

24   satisfaction of the trier of fact beyond a reasonable doubt?

25        THE DEFENDANT:  Yes, your Honor.

82FVBENP                    Plea

1      THE COURT:  And do you understand that at a trial you

2  would have the right to testify and would also be entitled to

3  compulsory process; in other words, the right to call other

4  witnesses on your behalf?

5      THE DEFENDANT:  Yes, your Honor.

6      THE COURT:  And do you understand that if your plea is

7  accepted, that there will be no further trial of any kind, so

8  that by pleading guilty, you are waiving your right to a trial?

9      THE DEFENDANT:  I do understand that, your Honor, yes.

10      THE COURT:  And do you understand that if you are

11  sentenced to a period of supervised release, and if you violate

12  the terms of your supervised release, that an additional period

13  of jail time may be imposed without credit for the time that

14  you've previously spent on supervised release?

15      THE DEFENDANT:  Yes, your Honor.

16      THE COURT:  Do you understand that in connection with

17  your plea of guilty, that the Court may ask you certain

18  questions about the offense to which you have pled; and if you

19  answer those questions under oath and on the record and in the

20  presence of your counsel, that your answers are false may later

21  be used against you in a prosecution against you for perjury or

22  false statement?

23      THE DEFENDANT:  Yes, your Honor.

24      THE COURT:  And I recall, Mr. Bennett, you're a

25  citizen of Great Britain.

82FVBENP                          Plea

1           THE DEFENDANT:  I am, your Honor, yes.

2           THE COURT:  Do you understand that following any

3    sentence that you receive, that you will likely be deported?

4           THE DEFENDANT:  That is my understanding, your Honor,

5    yes.

6           THE COURT:  And do you understand that in determining

7    your sentence, that the Court is obligated to calculate the

8    applicable sentencing guidelines range, and to consider that

9    range and any possible departures under the guidelines and

10   other sentencing factors under the statute which entitles the

11   Court to consider the nature and circumstances of the offense

12   and the history and characteristics of the defendant?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And have you reviewed with your counsel

15   the government's letter to them of yesterday which explains the

16   government's position as to the sentence that you face if the

17   sentencing guidelines are applied to your case?

18          THE DEFENDANT:  I have reviewed it, your Honor,

19   correct.

20          THE COURT:  Actually, that was said very badly.  Let

21   me just try it again so that there's no confusion.

22          Have you reviewed that letter with your lawyers which

23   sets forth the government's calculation of the sentence that

24   you face under the sentencing guidelines?

25          THE DEFENDANT:  I have reviewed it.

82FVBENP                    Plea

1          THE COURT:  And do you understand that the government

2     calculates that under the guidelines, that you face a sentence

3     of life imprisonment; and that it has calculated that the

4     maximum possible statutory sentence is 315 years; and that the

5     fine range is from 25,000 to $5,000,000?

6          THE DEFENDANT:  I understand that, your Honor,

7     correct.

8          THE COURT:  And do you understand that that

9     calculation by the guidelines -- that by the government is just

10    based on the information they currently have?

11         THE DEFENDANT:  Yes, your Honor.

12         THE COURT:  And do you further understand that the

13    government's letter doesn't bind either the Court or the

14    probation department, and that ultimately the sentence that you

15    receive will be determined by the Court?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Mr. Bennett, have any threats or promises

18    been made to you to make you plead guilty?

19         THE DEFENDANT:  No, your Honor.

20         THE COURT:  Have any understandings or promises been

21    made to you concerning the sentence that you will receive?

22         THE DEFENDANT:  None.

23         THE COURT:  Is your plea voluntary?

24         THE DEFENDANT:  It is, your Honor.

25         THE COURT:  Mr. Bennett, did you commit the crimes

82FVBENP                    Plea

1    that you've been charged with in the indictment?

2                THE DEFENDANT:  I did, your Honor.

3                THE COURT:  Would you tell me in your own words what

4    you did?

5                THE DEFENDANT:  Your Honor, during the period that I

6    served as CEO of Refco, I agreed with other Refco executives to

7    enter into a series of transactions at the end of Refco's

8    financial reporting periods to make it appear as if a

9    receivable due to Refco from Refco Upholdings, Inc., a related

10   party, was instead due from an independent third-party

11   customer.

12           The IGHI receivable was composed of, amongst other

13   things, historical customer losses, bad debts, and expenses

14   that IGHI had incurred on behalf of Refco.

15           I, along with other Refco executives, have caused

16   Refco to enter into these transactions in order to conceal the

17   size and nature of the IGHI receivable.  We concealed the

18   receivable from, amongst others, Refco's auditors, Thomas H.

19   Lee Partners, various lenders who, in 2004, participated in

20   Refco's senior secured credit facility, and the issuance of 9

21   percent senior subordinated notes, and also investors in

22   Refco's common stock.

23           Among the lenders to whom I knowingly caused the IGHI

24   receivable to be misrepresented was HSBC Bank, referenced in

25   Count Fifteen of the indictment.  I and other Refco executives

82FVBENP                    Plea

1   also used the interstate wires to accomplish these acts within

2   this district, as referenced in Counts Seven through Thirteen.

3   Furthermore, I caused funds obtained from the transaction with

4   Thomas H. Lee Partners, referenced in paragraph 34 of the

5   indictment, to be wired to various parties receiving proceeds

6   from the transaction, as referenced in Counts Sixteen through

7   Twenty, knowing that this money had been unlawfully obtained.

8          The IGHI receivable and related party transaction used

9   to conceal it were material information that Refco investors

10  and lenders would have wanted to have known prior to investing

11  in or lending money to Refco.  While I believed that I would be

12  able to pay the IGHI receivable down over time, and did, in

13  fact, ultimately pay off the receivable balance in its

14  entirety, I knew that failing to disclose the receivable was

15  wrong; I knew that obtaining funds from Refco's investors and

16  lenders based on misleading financial statements was also

17  wrong.

18         I also caused Refco to file documents with the SEC,

19  namely S1, S4, and 10-K that did not disclose the full extent

20  of the IGHI receivable or the transactions used to conceal it;

21  and, thus, were false and misleading with respect to material

22  facts.  I knew that failing to disclose these facts in public

23  filings and in connection with Refco's sale and registration of

24  Refco's notes and common stock was wrong, and I deeply regret

25  having done so.

82FVBENP                    Plea

1            Your Honor, I take full responsibility for my actions.

2    I wish to publicly apologize to my family and to all of those

3    who have been harmed by my conduct.  Thank you, your Honor.

4            THE COURT:  Mr. Barofsky, is there anything else you

5    would want me to ask the defendant?

6            MR. BAROFSKY:  Your Honor, can we just have a moment

7    to review?  There's a lot of elements.  Thank you, your Honor.

8            THE COURT:  Certainly.

9            (Pause)

10           MR. BAROFSKY:  Your Honor, just a couple of areas for

11   clarification.  First, if you can please ask the defendant to

12   confirm that he was a director or officer of Refco during this

13   relevant time period.  Should I go one-by-one?

14           THE COURT:  Mr. Bennett, can you confirm that?

15           THE DEFENDANT:  I was, your Honor.

16           MR. BAROFSKY:  Second, your Honor, that the

17   misstatements made about Refco's auditor was in connection with

18   the auditor's preparation of a financial statement, and that

19   occurred after April of 2005.

20           THE COURT:  Can you confirm that?

21           THE DEFENDANT:  That's correct, your Honor.

22           MR. BAROFSKY:  Your Honor, and if you can ask the

23   defendant to confirm he made reference to various wire

24   transfers and wire communications, as well as certain filings

25   in the indictment, if you could please confirm with the

82FVBENP                        Plea

1   defendant that those acts occurred on or about the dates set

2   forth in the indictment.

3         THE DEFENDANT:  They did, your Honor.

4         MR. BAROFSKY:  And finally, your Honor, as I noted

5   earlier, I will represent to the Court that HSBC was --

6   deposits were insured by the FDIC during the relevant time

7   period; and also that Refco was an entity that was required to

8   file the various reports and documents and registration

9   statements under the Exchange Acts of 1933 and 1934, as well as

10  to file financial statements with respect to the 10-K and the

11  misstatement to auditors account.  Thank you, your Honor.

12        THE COURT:  Mr. Bennett, do you still wish to plead

13  guilty?

14        THE DEFENDANT:  I do, your Honor, yes.

15        THE COURT:  Mr. Naftalis, do you know of any reason

16  that Mr. Bennett ought not plead guilty?

17        MR. NAFTALIS:  No, your Honor.

18        THE COURT:  Mr. Bennett, I'm satisfied that you

19  understand the nature of the charge against you and the

20  consequences of your plea; and that your plea is made

21  voluntarily and knowingly; and that there is a factual basis

22  for it.  Accordingly, I will accept your plea of guilty and

23  direct that a presentence report be prepared.

24        THE DEFENDANT:  Thank you, your Honor.

25        THE COURT:  As for a sentencing date, can I just

82FVBENP                    Plea

1    basically count out the requisite number of days or does the

2    government have a view that it should be maybe a little bit

3    more off into the future in light of the trial that's still

4    upcoming?

5              MR. BAROFSKY:  Your Honor, we think we can be prepared

6    in three months.

7              THE COURT:  All right.  Why don't we set sentencing

8    for May 20th at 4 o'clock.  And since I would anticipate some

9    significant presentence submissions, I think we should set a

10   schedule for that.  Why don't we say that the government's

11   submission is due -- the defense submission is due on May 6th,

12   and the government's on May 13th.

13             MR. BAROFSKY:  That's fine, your Honor.

14             MR. NAFTALIS:  Your Honor, if there are things in the

15   government submission that we want to respond to, that's sort

16   of --

17             THE COURT:  Doesn't give you quite enough time.

18             MR. NAFTALIS:  We don't have -- you're having us

19   first, so we don't really sort of provide -- they could go

20   first, we could go second; we wouldn't object to that.

21             MR. BAROFSKY:  We could do simultaneous submissions,

22   as well, your Honor, on the 6th and then we could each respond.

23             THE COURT:  Sounds like fun.

24             MR. BAROFSKY:  Okay.

25             MR. NAFTALIS:  It's a living.

82FVBENP                        Plea

1          THE COURT:  Let's not go there.  Okay?  Are we done?

2          MR. BAROFSKY:  No, your Honor.  There is the issue of

3    bail.  And at this time, your Honor, the government does

4    request that defendant be remanded.  And if your Honor will let

5    me, I would like to speak briefly on the topic.

6          THE COURT:  Okay.

7          MR. BAROFSKY:  Obviously the standard has changed

8    under the Bail Act under 3143.  Before when we appeared before

9    your Honor several years ago, the burden was ours to prove the

10   defendant was a risk of flight.  Now, of course, it is the

11   defendant's burden to prove by clear and convincing evidence

12   that he is not likely to flee.  And respectfully, we submit

13   that there have been some extremely significant changed

14   circumstances, that we respectfully submit the defendant cannot

15   meet the burden in this case.

16         First of all, under the current bond, which, as your

17   Honor may recall, is a $50,000,000 bond, secured by $5,000,000

18   in cash and two properties, that security is now essentially

19   worthless; it's essentially an unsecured bond, because all of

20   those properties and that money are subject to asset

21   forfeiture.  The $5,000,000 we have traced as direct proceeds

22   from the IPO, which the defendant has just admitted was money

23   that was fraudulently obtained, and we already have lis pendens

24   on both of the properties, because basically under substitute

25   assets, we'd be able to take those, as well.  Those are all

82FVBENP                    Plea

1   subject to asset forfeiture and, therefore, don't provide any

2   security for the existing bond.

3         Secondly, the defendant is facing a $2.4 billion asset

4   forfeiture.  We don't think he has $2.4 billion, but we do

5   believe that will essentially -- through proceeds and

6   substitute assets, once this conviction is final -- will

7   basically deprive the defendant of all of his assets.  We have

8   restrained a number of his assets pretrial, but we have not

9   been able to restrain assets that we haven't been able to prove

10  are directly traceable.  And we don't know the exact amount of

11  those items, but we believe that they are in the $20,000,000

12  range, which would certainly facilitate the ability of the

13  defendant to flee.

14        Third, and I guess the most obvious point, is the

15  defendant now faces an advisory guideline range of 315 years of

16  imprisonment.  And that obviously changes the calculus a lot

17  from when we last appeared before your Honor.  We're not

18  suggesting that your Honor is going to --

19        THE COURT:  He always faced that, right?

20        MR. BAROFSKY:  Yes, your Honor; but before,

21  pretrial -- I'm sorry, pre-guilty plea, there was no certainty

22  that he was necessarily going to be convicted in this case.

23  Now, jail is an inevitability.  And I don't mean to presume

24  what the ultimate sentence will be in this case, because

25  there's obviously no way to predict what the precise sentence

82FVBENP                         Plea

1    will be, but the best guess, I think, from anyone's

2    perspective, is that it will be a substantial prison sentence.

3    And for this defendant -- he is now with certainty facing such

4    a sentence that has -- under the guidelines is the equivalent

5    of a life sentence.

6              Defendant is 59 years old.  A sentence of -- a

7    significant sentence in this case may very well prove to be the

8    equivalent of a life sentence.  The defendant is facing certain

9    deportation after he serves that sentence.

10             THE COURT:  Not to a bad place though.

11             MR. BAROFSKY:  Not to a bad place, your Honor.  But it

12   does give the defendant a tremendous incentive to self-deport.

13   In other words, to flee the jurisdiction really with -- unlike

14   most cases, with very little downside.  The worse that happens

15   if he flees and gets caught is he's brought back to the United

16   States and does a jail sentence that probably will be the rest

17   of his life.  If he stays, he's facing pretty much the prospect

18   of the same result, a sentence that may, in fact, result in him

19   being in jail for the rest of his life, given his age.

20             And, your Honor, we respectfully submit that given the

21   shifting of the burden in these really remarkable circumstances

22   of a defendant who's not a U.S. citizen, who's facing the

23   equivalent of a life sentence, and who's now basically would be

24   free on an unsecured bond, that the circumstances dictate the

25   defendant should start serving his sentence, in effect,

82FVBENP                    Plea

1    immediately.  And the defendant should be remanded on the

2    grounds that he cannot meet his burden of demonstrating by

3    clear and convincing evidence that he is not a risk of flight.

4              THE COURT:  Mr. Naftalis.

5              MR. NAFTALIS:  Most respectfully, I find this

6    application most surprising and a baseless one.  And I say it

7    with -- most advisedly.

8              You have a situation here where our client, for almost

9    two and-a-half years, has met every single condition of the

10   bond that was set here.  Your Honor got a report today from the

11   office of pretrial services, which we were given a copy of when

12   we entered the room, in which the office of pretrial services

13   has pointed out that he has complied with the terms of his bail

14   all the way through.

15             And I can sort of punctuate that a little bit because,

16   in fact, if you check with Officer Forelli, who he deals with

17   in pretrial services, you could hear anecdotal information such

18   as Mr. Bennett was the one who has set up the monitoring system

19   in the house in New Jersey because, whatever, I guess they're

20   technophobes, like I, the marshals service, he actually set up

21   the monitoring service which passed their muster in the

22   electronic stuff.  Once, when his bracelet broke down, he

23   immediately reported it to Officer Forelli that it was

24   malfunctioning and he went in.  He's been meticulous in

25   reporting to these people.

1      And secondly, something that the government

2  consciously avoided bringing to your attention, his bond is

3  signed by the three immediate members of his family.  The three

4  of them who are American citizens:  His wife, his daughter, and

5  his son.  They have signed a $50,000,000 bond on his behalf,

6  and these are people with roots in the community.  The daughter

7  is a lawyer, works at a law firm; the son is an investment

8  banker with a leading firm.  The notion that he would run away

9  and do that to his family, I mean, is incomprehensible.  And

10  all we have is rhetoric from the government there.

11      You also have the strict monitoring conditions in

12  which he's under and which he's faithfully complied with for

13  the last two and-a-half years.  Of course, he has no passport;

14  his wife has given up his passport; he has no effective way of

15  leaving the country.

16      And with respect to other situations, in other

17  situations in high-profile cases where people were facing

18  enormous sentences, no such applications were ever granted.

19  For example, the *Computer Associates* case, where the CEO of

20  Computer Associates, Mr. Kumar, who, under the guidelines which

21  were then in effect, more applicable now, after the *Gall* case,

22  the guidelines are just, you know, one ingredient in the soup

23  for your Honor to consider under 3533.  He faced life

24  imprisonment under his guidelines.  After pleading guilty, he

25  continued to be free on bond, even though there were admissions

82FVBENP                    Plea

1    of obstruction of justice in that case.

2            After Kumar was sentenced or he got a 12-year

3    sentence, he continued to be allowed to be -- remained free on

4    bond to work out various issues of restitution and the like.

5            In the case in front of Judge Sand, the *Adelphia* case,

6    which is one of the cases, the Rigases, who got 15 and 20-year

7    sentences, one of them was an eighty -- somewhere in his

8    eighties, they were allowed to remain free on bond pending

9    appeal, even though they had the same sort of issues.  Even

10   Mr. Ebbers, who received the largest sentence in history I've

11   ever heard of, a real outlier sentence, 25 years, he was

12   allowed to remain free on bond pending appeal and the like.

13           And apart from the fact that there is not the

14   slightest bit of evidence for this most unfair application,

15   it's also prejudicial.  As your Honor knows, we have to put in

16   sentencing submissions.  And under 3533, your Honor has a lot

17   of things which you can properly consider in determining in

18   your best judgment what's a fair and just sentence under the

19   case here.  And obviously it's very prejudicial to us in being

20   able to work with our client, who for the last two and-a-half

21   years has been coming to our office every day on a daily basis

22   to work on the case with us.  So I don't see any good-faith

23   basis for any change in bond here whatsoever.

24           THE COURT:  Mr. Barofsky.

25           MR. BAROFSKY:  Your Honor, if there's any specific

82FVBENP                    Plea

1    points you'd like me to respond to.  The ones that jump out to

2    me is, I mean the notion that a defendant can't chronically

3    prepare for sentencing when he's incarcerated, obviously your

4    Honor knows countless defendants who are able to prepare for

5    sentencing when they are incarcerated; and having spent so much

6    time with Mr. Naftalis, I think they are pretty much -- I'm

7    sure they have contemplated this before, this is not the first

8    time.

9         As opposed to those other cases, defendants who are

10   released pending appeal after they've been convicted at trial

11   is a different situation.  There's obviously provisions within

12   3143 when there are issues on appeal that the judge finds are

13   significant issues that need to be considered and possibly

14   could result in the reversal of a conviction.  That's a

15   different -- those are different facts, and that's a different

16   standard.  Here, we have a guilty plea.  I don't think that

17   Mr. Bennett is going to be challenging his conviction in this

18   case.  He just gave a very detailed guilty plea.

19        With respect to his assurances to his family, I don't

20   mean to minimize the bond between Mr. Bennett and his family,

21   but on the flip side, we're looking at a man who just admitted

22   to telling a series of lies to a large number of victims that

23   resulted in the defrauding of $2.4 billion.  1.7 or 8 billion,

24   which we will show for restitution at the time of sentencing,

25   has not been collected.  People are out all of this money.

82FVBENP                        Plea

1    So this man maybe may have some allegiance to his

2    family, but I think you have to look at the flip side as to how

3    strong that may be by a man if he is willing to tell whatever

4    lie is necessary to -- you know, on proportions that are

5    mind-boggling, in the billions of dollars.

6    So we would respectfully submit that -- and we don't

7    contest the fact, by the way, to be clear, that Mr. Bennett has

8    complied with the conditions.  And that is certainly a relevant

9    factor that Mr. Naftalis points out and we don't contest it.

10   We just don't think that that's enough to meet his burden,

11   given his changed circumstances.  And that to allow a defendant

12   like this, who's also not a U.S. citizen, unlike those

13   individuals, out on what is essentially an unsecured bond, it

14   simply isn't the right course of action here.

15   MR. NAFTALIS:  Just one small point, which they

16   reminded me to mention.  Although Mr. Bennett never changed his

17   citizenship, like his wife, or became an American citizen like

18   his children, he's lived in the United States for more than 30

19   years; so it's not like he has any roots anyplace else.  So

20   it's a little unfair for this eleventh-hour application which

21   we heard about today to suggest as if he had someplace to go

22   to.

23   And the government ignored the situation in the *Kumar*

24   case.  He said that all these other cases where people were on

25   appeal.  In the *Kumar* case it was a plea of guilty with someone

1    facing, if one took the government's view of the thing, a life

2    sentence.  And he was allowed out, and he showed up.  Even

3    after he got his sentence of 12 years he remained out on bond

4    to work out the restitution things.

5         And we don't necessarily agree at all with the amount

6    of the forfeiture issues here.  I mean there's a forfeiture

7    issue in the case, but the numbers he tosses around are not

8    numbers that we have stipulated to or agreed to by any stretch

9    of the imagination, and he throws them around.

10        That's the only point I wanted to make.

11        THE COURT:  All right.  I'm not going to remand

12   Mr. Bennett, although I do think I can modify his bail

13   conditions to create greater security.  And I'm not going to do

14   so for a number of reasons, the most important of which is that

15   this indictment was filed in 2005.

16        If Mr. Bennett had wanted to flee, he should have fled

17   before he paid his lawyers all the money, and kept it, and gone

18   to an appealing location.  In fact, having pled guilty, to

19   leave now, extraditing him will be much easier.  So there's a

20   balance there.

21        In addition, I note that just by statute, to release

22   someone on appeal requires the same finding as the finding now.

23   The judicial officer has to be persuaded by clear and

24   convincing evidence that the person is not likely to flee.

25   That's half of the standard.  The appellate issue is the other

82FVBENP                    Plea

1     half, so it's the same standard.

2             And I also think that -- and I want to make it

3     clear -- that I don't make any prejudgments about the substance

4     of the case, but this is a case in which there has been a lot

5     of information, publicly, at least, from the bankruptcy

6     proceeding, and so this is a situation in which Mr. Bennett has

7     had the opportunity to see an examiner put the evidence

8     together.  This is not a situation where as the case approaches

9     trial, the government finally turns over information.  I think

10    Mr. Bennett has had a pretty good idea of the nature of the

11    case and the evidence for at least some time, which makes the

12    fact that he stays more significant.

13            The pretrial officer tells me that it would be easier

14    and more effective to monitor Mr. Bennett if he stayed in one

15    home or the other.  And, I guess -- and tells me that basically

16    the minute he leaves home they know about it.  So given that it

17    would take some time to -- since make an escape without a

18    passport, I think that if we modified the bail conditions to

19    limit his location, pretrial tells me that that makes it a more

20    secure situation.  In addition, if the government has any

21    particular practical economic conditions that you can think of,

22    I'm always willing to listen to those.

23            MR. BAROFSKY:  Your Honor, the posting of additional

24    assets by the defendant, they are largely forfeitable assets,

25    but to the extent that there are assets that have not been --

82FVBENP                    Plea

1  as I said, we estimate that it's in the range of approximately

2  $20,000,000.  If we could at least secure those assets, these

3  are assets that we've not yet secured by having him posted for

4  the bond.

5           In addition, because, frankly, we're going to get

6  those assets anyhow at the conclusion of this case, perhaps the

7  posting the requiring of assets from the children.  He

8  mentioned that the children are successful, one's an investment

9  banker.  And if they have property, that may increase the

10 incentive for Mr. Bennett to stay.

11          THE COURT:  I think it's enough that he's -- the bond

12 mortgages their future if he flees.  We're not taking his kids'

13 money.

14          MR. BAROFSKY:  We aren't.  I wouldn't suggest that we

15 would take it other than if he fled.  We would only be posting

16 whatever interest.  Because really right now the problem, your

17 Honor, and I hear what your Honor is saying, is that he has an

18 unsecured bond, and that just causes us a great deal of

19 concern.  I don't know what the circumstances are in *Kumar* or

20 *Ebbers*, but this is a situation if there is a third party

21 posting collateral --

22          THE COURT:  For all those people, the bottom line is

23 that for any defendant who was older and who was facing

24 sentencing, in, lets call it, the post-Enron era, the situation

25 was the same as for Mr. Bennett.  The possibility that their

82FVBENP                    Plea

1    sentence would be -- that their residence in the Bureau of

2    Prisons was the last residence they are going to have.

3         So I don't think this is really dramatically

4    different.  And I don't think the fact that he's a British

5    citizen changes the situation, that he has to -- I think he

6    gets the credit for having complied with all of his bail

7    conditions and having had two and-a-half years to reflect.

8         MR. BAROFSKY:  Your Honor, to be clear, I wasn't

9    rearguing the bail application.  I was merely trying to respond

10   to your Honor's question whether there were additional economic

11   circumstances.

12        THE COURT:  I'm not asking his children, okay?

13        MR. BAROFSKY:  Well, your Honor, then I would ask that

14   in the alternative, if the defendant could post additional

15   property or money that has not been seized or frozen by the

16   government to secure this bond to at least increase so that

17   there's some notional security of the bond.  And I would ask

18   for a number of $10,000,000 in cash or property.

19        MR. NAFTALIS:  Your Honor, I just think there is no

20   basis whatsoever for the application.  His children, the most

21   important things in the world, are on the hook for $50,000,000

22   if he were to leave.  As they've indicated, they don't have any

23   evidence of anything that he's ever done anything which would

24   indicate he would leave.  As your Honor said, quite correctly,

25   we've known about the evidence in this case; your Honor

82FVBENP                    Plea

1    remembers the litigation with respect to the bankruptcy trusts,

2    these report the motion practice there.  There's no secret

3    about that.  He's showed up all the time; he's complied with

4    all the conditions.  And there's not a reason in the world and

5    there's not a basis in the world for any change here

6    whatsoever.

7           MR. BAROFSKY:  Your Honor, respectfully, I don't see

8    any harm in having him post additional property that could only

9    be used at this time for the purposes to facilitate flight.  He

10   can't transfer these properties without violating the money

11   laundering laws at this point, and I don't see -- I don't even

12   understand how upping the collateral so as to prevent him from

13   fleeing prejudices him in any way.  And we're not asking even

14   for all of the money that we believe is out there, we're asking

15   for $10,000,000 to provide some additional security on what is

16   now an essentially an uncollateralized bond.  It doesn't really

17   move the ball tremendously for us, but it helps.  And at least

18   it would limit his ability to flee, should he make that

19   decision, that it makes more sense to self-deport, since he's

20   going to be going back to England anyhow before he has to face

21   the sentence.  I don't think the government's request is

22   shocking or surprising or terribly dramatic, but we do think it

23   would help, given the situation.

24          MR. NAFTALIS:  They have not shown anything for this

25   eleventh-hour request.  It's totally and absolutely baseless.

82FVBENP                    Plea

 1   And I don't think -- I don't know what property may or may not

 2   exist, but I don't think that there's any justification.  And

 3   they just can't come into court without any basis whatsoever

 4   and allege things where all the evidence shows that this

 5   application is frivolous.

 6          MR. BAROFSKY:  Your Honor, I've listened to this for a

 7   fair amount of time now.  And to characterize our application

 8   as frivolous and baseless and eleventh-hour I think is unfair.

 9          THE COURT:  At least the eleventh hour.

10          MR. BAROFSKY:  I don't know when we were supposed to

11   have made this application.  I don't know if Mr. Naftalis would

12   have had us make it when he notified us about the intent to

13   change his plea yesterday afternoon, I don't think so.  I think

14   the only time we can make a plea based on the changed

15   circumstance of the defendant entering a guilty plea is after

16   he enters the guilty plea.

17          As far as it being baseless, the notion that a

18   defendant who's facing 315 years of prison time --

19          THE COURT:  He wishes.

20          MR. BAROFSKY:  -- is -- that it's baseless to seek his

21   remand when he is an English citizen subject to deportation --

22          THE COURT:  Excuse me.  We're not -- we're sending him

23   to one of the most civilized countries in the world.  It's not

24   punishment to live in England, all right?

25          MR. BAROFSKY:  Exactly, your Honor, which is why we

82FVBENP                    Plea

1    would ask for additional collateral.

2            THE COURT:  And there is an extradition treaty between

3    the United States and Great Britain, so...

4            MR. BAROFSKY:  Your Honor, I just don't understand the

5    harm --

6            THE COURT:  Because I'm not sure that the purpose of

7    bail is to help you collect, you know, whatever you claim is

8    your eventual restitution.

9            MR. BAROFSKY:  Your Honor, if I wasn't clear on this

10   argument, I apologize.  The reason why we're asking for this is

11   to assure the defendant's appearance.  If that money is posted

12   as a bond, it's not so that we can eventually seize it.  If

13   it's posted as a bond, it's not available for him to use to

14   facilitate flight.  It's also to secure the bond.  This

15   original bond was issued because it was secured by money and

16   property.  Right now it's essentially not secured by money and

17   property.

18           THE COURT:  But that argument applies to any

19   additional money that he would put up.  You would say it was

20   just as forfeitable to you.  So it then becomes unsecured, the

21   same way.

22           MR. BAROFSKY:  But it's unrestrained property, Judge,

23   that's the difference.  This property is actually restrained on

24   top of the fact that it's -- because it's their direct

25   proceeds.

82FVBENP                    Plea

1          What I'm suggesting, these are other properties that

2     have not been restrained, because we're not able to restrain

3     certain properties that are not proceeds.  So this is money

4     that is available to the defendant for use if he wants to

5     facilitate flight.

6          The purpose of a bond, obviously security of a bond,

7     and why your Honor endorsed the order of a secured bond, was

8     because more security means less likelihood of flight.  And all

9     we're suggesting is taking this property that is now available

10    to the defendant and posting it as security for the bond.  And

11    obviously if we are unable to prove, as Mr. Naftalis suggests,

12    that this is property that's subject to asset forfeiture or

13    restitution, he'll get it back when -- at the time of his

14    sentencing or the time that he reports.

15         So we're not taking anything; we're not putting our

16    hands on stuff that we're not entitled to; we're just asking

17    that this bond be really secured, because right now we're

18    basically -- it's the exact same situation we had in October of

19    2005, when he's going out on the same conditions, it's

20    essentially an unsecured bond.  And I don't think that your

21    Honor would have ordered an unsecured bond back then, and we're

22    just asking for some additional security:  Money that is

23    available for the defendant or property, and that we have that

24    to secure the bond in case the defendant flees, and to

25    encourage him not to flee.

82FVBENP                         Plea

1          MR. NAFTALIS:  Apart from the fact that the government

2     has proffered not a single fact that anything has changed, I

3     don't agree with the notion that this bond is unsecured.  One

4     of the homes which is securing the bond -- there's $5,000,000

5     cash, there's two residences, is in a trust.  So without going

6     through all the legalities, I don't think it's so quickly

7     forfeitable, as they say.

8          And the notion of ignoring -- and that will be worked

9     out; we're not here to litigate that issue, but I just -- and

10    the notion that they can continue to ignore the fact that his

11    wife and children have signed a $50,000,000 bond that they will

12    be on the hook for and their lives will be ruined, the notion

13    there's not the slightest reason to suppose that he would do

14    this to his children, he never has, and I have nothing else to

15    say.

16         THE COURT:  I think $50,000,000 is a lot of money.

17    And it does directly affect wife, children, inheritances.  So

18    what about the issue of where he's going to live?

19         MR. NAFTALIS:  If your Honor wants -- feels it would

20    be better, pretrial services --

21         THE COURT:  That's what pretrial tells me.

22         MR. NAFTALIS:  I think he would -- there's a residence

23    in New York and a residence in New Jersey.  I think he would

24    prefer to be in New Jersey where his wife is, and then subject

25    to the fact he could just come to our offices and work with us,

82FVBENP                    Plea

1   which I think he's allowed to do, I think that would be his

2   preference in terms of the quality of the life until the

3   sentence, if that's --

4           THE COURT:  I get the high sign from pretrial; so

5   he'll stay in New Jersey.

6           MR. NAFTALIS:  Okay.

7           THE COURT:  Other than when he goes to you and also

8   when you have to get him to pretrial for -- to probation for

9   his interview.

10          MR. NAFTALIS:  Yes.

11          THE COURT:  Which we do need to do within the two

12  weeks so that the sentencing schedule can proceed.  And the

13  same is true for the government's description of the crimes.

14          Okay?  I think we're done then.

15          MR. NAFTALIS:  Thank you, your Honor.

16          MR. BAROFSKY:  Thank you, your Honor.

17          MR. GARCIA:  Thank you, your Honor.

18          THE DEFENDANT:  Thank you, your Honor.

19                          *    *    *

20

21

22

23

24

25