82KATROPps

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,

 4              v.                           05 CR 1192 (NRB)

 5    ROBERT TROSTEN,

 6              Defendant.

 7    ------------------------------x

 8                                     New York, N.Y.
                                       February 20, 2008
 9                                     5:30 p.m.

10
      Before:
11
                    HON. NAOMI REICE BUCHWALD
12
                                         District Judge
13

14                         APPEARANCES

15    MICHAEL J. GARCIA
           Acting United States Attorney for the
16         Southern District of New York
      BY:  CHRISTOPHER GARCIA
17         NEIL BAROFSKY
           Assistant United States Attorneys
18
      MORVILLO, ABRAMOWITZ, GRAND, IASON,
19    ANELLO & BOHRER, P.C.
           Attorneys for Defendant
20    BY:  ROBERT G. MORVILLO
           CHRISTOPHER J. MORVILLO
21         RACHEL M. KORENBLAT

22
      Also Present:  Robert W. Manchak, Criminal Investigator
23                   Rua M. Kelly, Assistant United States Attorney
                     Mary Beth Allen, Paralegal
24                   United States Attorney's Office

25
```

82KATROPps

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          05 CR 1192 (NRB)

5   ROBERT TROSTEN,

6            Defendant.

7   ------------------------------x

8                                    New York, N.Y.
                                     February 20, 2008
9                                    5:30 p.m.

10

11  Before:

12              HON. NAOMI REICE BUCHWALD

13                                   District Judge

14                    APPEARANCES

15  MICHAEL J. GARCIA
         Acting United States Attorney for the
16       Southern District of New York
    BY:  CHRISTOPHER GARCIA
17       NEIL BAROFSKY
         Assistant United States Attorneys
18
    MORVILLO, ABRAMOWITZ, GRAND, IASON,
19  ANELLO & BOHRER, P.C.
         Attorneys for Defendant
20  BY:  ROBERT G. MORVILLO
         CHRISTOPHER J. MORVILLO
21       RACHEL M. KORENBLAT

22
    Also Present:  Robert W. Manchak, Criminal Investigator
23                 Rua M. Kelly, Assistant United States Attorney
                   Mary Beth Allen, Paralegal
24                 United States Attorney's Office

25

                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

82KATROPps

1          (In open court)

2          THE CLERK:  The case is United States v. Robert

3      Trosten, Docket No. 05 Crim. 1192.  Is the government ready to

4      proceed?

5          MR. GARCIA:  Yes.  Good afternoon, your Honor.

6      Christopher Garcia on behalf of the government.  With me at

7      counsel table is Assistant United States Attorney Neil

8      Barofsky.  And with the Court's permission, also at counsel

9      table:  Robert Manchak, criminal investigator with our office;

10     Mary Beth Allen, paralegal with our office; and also Rua Kelly,

11     also an Assistant United States Attorney with our office.

12         THE CLERK:  And is the defense attorney ready to

13     proceed?

14         MR. R. MORVILLO:  We are, your Honor.  Mr. Trosten is

15     here.  For the record, my name is Robert Morvillo.  I represent

16     Mr. Trosten.  And seated to my left is Christopher Morvillo, my

17     co-counsel.

18         THE DEFENDANT:  Good afternoon.

19         THE COURT:  Good afternoon, Mr. Morvillo.

20         MR. R. MORVILLO:  I think it's my application, your

21     Honor.  We would apply to the Court for permission to withdraw

22     our previously entered plea of not guilty as to Counts One,

23     Two, Seven, Fifteen, and Seventeen of the indictment and enter

24     a plea of guilty.

25         THE COURT:  Mr. Trosten, if you will remain standing

82KATROPps

1    for a moment, would you raise your right hand, please.

2            Do you solemnly swear that the answers to the

3    questions I am about to ask you will be the truth, the whole

4    truth, and nothing but the truth, so help you God?

5            THE DEFENDANT:  I do, your Honor.

6            THE COURT:  Would you state your full name for me,

7    please.

8            THE DEFENDANT:  Robert Charles Trosten, Sr.

9            THE COURT:  And, Mr. Trosten, how old are you?

10           THE DEFENDANT:  38.

11           THE COURT:  Why don't you sit down.

12           THE DEFENDANT:  Thank you.

13           THE COURT:  Mr. Trosten, what was the last grade or

14   level of school that you completed?

15           THE DEFENDANT:  I finished undergraduate college with

16   a B.S. in accounting.

17           THE COURT:  At this time are you under the care of a

18   doctor or psychiatrist?

19           THE DEFENDANT:  Yes, I am.

20           THE COURT:  Which?

21           THE DEFENDANT:  A doctor -- a psychiatrist.

22           THE COURT:  And what condition is he treating you for?

23           THE DEFENDANT:  Dr. Neiman is treating me for sleep

24   and anxiety on occasion.

25           THE COURT:  And are you taking any medicine as a

82KATROPps

1    result of or in connection with that treatment?

2            THE DEFENDANT:  I take sleep medicine as needed and

3    anxiety medicine as needed.

4            THE COURT:  At the moment, are you under the influence

5    of any drug or alcohol?

6            THE DEFENDANT:  No, I'm not.

7            THE COURT:  Have you in fact ever been hospitalized or

8    treated for either alcoholism or narcotics addiction?

9            THE DEFENDANT:  No, I have not.

10           THE COURT:  And how are you feeling physically today?

11           THE DEFENDANT:  I feel great.

12           THE COURT:  Have you had sufficient time to discuss

13   the charges against you and your proposed plea with your

14   counsel, the Messrs. Morvillo?

15           THE DEFENDANT:  I have, yes.

16           THE COURT:  And have you been satisfied with the

17   advice and counsel that they have given to you?

18           THE DEFENDANT:  I am.

19           THE COURT:  And at this time, are you ready to change

20   your plea?

21           THE DEFENDANT:  I am indeed.

22           THE COURT:  And what is your plea at the moment?

23   Guilty or not guilty?

24           THE DEFENDANT:  Guilty.

25           THE COURT:  All right.  Mr. Trosten, in order to

82KATROPps

1    determine whether your plea is voluntary and made with a full

2    understanding of the charges against you and the consequences

3    of your plea, I will make certain statements to you and I will

4    ask you certain questions.  I want you to understand that I

5    need not accept your plea unless I am satisfied that you are in

6    fact guilty and that you fully understand your rights.

7            Now, Count One of the indictment charges you with a

8    conspiracy to commit securities fraud, wire fraud, bank fraud,

9    and money laundering, and to make false filings with the SEC

10   and material misstatements to auditors.  This crime carries a

11   maximum statutory penalty of five years in prison, a maximum

12   fine of the greatest of $250,000 or twice the gross pecuniary

13   gain derived from the offense or twice the gross pecuniary loss

14   to a person other than yourself as a result of the offense, a

15   $100 special assessment, and a mandatory term of supervised

16   release of three years.  Do you understand that those are the

17   charges in Count One and the maximum statutory penalties

18   provided for that charge?

19           THE DEFENDANT:  I do.

20           THE COURT:  Count Two charges you with securities

21   fraud.  And this crime carries a maximum possible sentence of

22   20 years in prison, a maximum fine of the greatest of $5

23   million or twice the gross pecuniary loss derived from the

24   offense, or twice the gross pecuniary loss -- I'm sorry.  I

25   think I said twice pecuniary loss.  It's twice the gross

82KATROPps

1    pecuniary gain derived from the offense or twice the gross

2    pecuniary loss to a person other than yourself as a result of

3    the offense, a $100 special assessment, and a maximum term of

4    supervised release of three years.  Do you understand that

5    those are the charges in Count Two and the maximum possible

6    penalties provided by law?

7         THE DEFENDANT:  I do.

8         THE COURT:  Count Seven charges you with wire fraud,

9    and this crime carries a maximum possible sentence of 20 years

10   in prison, a maximum fine of the greatest of $250,000 or twice

11   the gross pecuniary gain derived from the offense or twice the

12   gross pecuniary loss to a person other than yourself as a

13   result of the offense, a $100 special assessment, and a maximum

14   term of supervised release of three years.  Do you understand

15   that those are the charges in Count Seven and the maximum

16   statutory penalty provided for the crime of wire fraud?

17        THE DEFENDANT:  I do, your Honor.

18        THE COURT:  Count Fifteen charges you with bank fraud.

19   And this crime carries a maximum possible sentence of 30 years

20   in prison, a maximum fine of the greatest of $250,000 or twice

21   the gross pecuniary gain derived from the offense or twice the

22   gross pecuniary loss to a person other than yourself as a

23   result of the offense, a $100 special assessment, and a

24   mandatory -- or a maximum term of supervised release of five

25   years.  Do you understand that those are the charges in Count

82KATROPps

1  Fifteen and the maximum statutory penalty provided therefor?

2          THE DEFENDANT:  I do, your Honor.

3          THE COURT:  Count Seventeen charges you with money

4  laundering, and this crime carries a maximum sentence of ten

5  years in prison, a maximum fine of the greatest of $250,000 or

6  twice the gross pecuniary gain derived from the offense or

7  twice the gross pecuniary loss to a person other than yourself

8  as a result of the offense, a $100 mandatory special

9  assessment, and a maximum supervised release term of three

10  years.  Do you understand that that is the charge in Count

11  Seventeen and the maximum penalty provided for it by statute?

12          THE DEFENDANT:  I do, your Honor.

13          THE COURT:  And do you understand that, in addition to

14  the punishments which I just described, that the Court must

15  order restitution with respect to the charges in the

16  indictment?

17          THE DEFENDANT:  I'm sorry, your Honor?

18          THE COURT:  I said, do you understand that in addition

19  to the punishments that I've just described, that the Court

20  must order restitution --

21          THE DEFENDANT:  I do.

22          THE COURT:  -- with respect to the charges to which

23  you are pleading?

24          THE DEFENDANT:  I do.

25          THE COURT:  Do you understand that as part of your

82KATROPps

1  plea agreement, that you have admitted the forfeiture

2  allegations in the indictment and that you agree to forfeit to

3  the United States the sum of $2,400,000,000, as well as all the

4  specific property listed in schedule A to your plea agreement?

5      THE DEFENDANT:  I do, your Honor.

6      THE COURT:  And that as part of this plea agreement,

7  that you have agreed to not file any claims for any of the

8  forfeited property, and also to take such steps as necessary to

9  clear title to the specific property?

10     THE DEFENDANT:  I do, your Honor.

11     THE COURT:  And do you understand that you have the

12 right to plead not guilty and the right to a trial on the

13 charges against you and in fact the right to a jury trial?

14     THE DEFENDANT:  I do.

15     THE COURT:  At this time, Mr. Garcia, I would ask you,

16 please, to recite the elements of the crimes to which

17 Mr. Trosten is pleading.

18     MR. GARCIA:  Yes, your Honor.  With respect to Count

19 One, there are three elements: first, that there existed an

20 agreement or understanding to commit the objects charged;

21 second, that Mr. Trosten knowingly became a member of that

22 agreement or understanding; and, third, that one of the

23 co-conspirators knowingly committed at least one overt act in

24 furtherance of the conspiracy during the life of the

25 conspiracy.

1          With respect to Count Two, the securities fraud count,

2     the first element is that Mr. Trosten, in connection with the

3     purchase or sale of securities, here the notes described in

4     Count Two, did one or more of the following: employed a device,

5     scheme, or artifice to defraud; or made an untrue statement of

6     material fact; or omitted to state a material fact which made

7     what was said, under the circumstances, misleading; or engaged

8     in an act, practice, or course of business that operated or

9     would operate as a fraud or deceit upon a purchaser or seller.

10    Second, that Mr. Trosten acted knowingly, willfully, and with

11    intent to defraud.  And, third, that Mr. Trosten used or caused

12    to be used any means or instruments of transportation or

13    communication in interstate commerce, or the use of the mails,

14    in furtherance of the fraudulent conduct.

15          With respect to Count Seven, the wire fraud count,

16    there are five elements: first, that a scheme to defraud

17    existed; second, that Mr. Trosten must have participated in the

18    scheme with intent to defraud; third, that misrepresentations

19    or omissions must have related to material facts; fourth, that

20    the scheme was executed to obtain money or property; and

21    finally, that in executing the scheme, Mr. Trosten used or

22    caused to be used interstate wires, or the use of such wires

23    were reasonably foreseeable to him, as listed in the

24    indictment.  And here, your Honor, with respect to Count Seven,

25    it is alleged that on June 22, 2004, Mr. Trosten sent an

82KATROPps

1    e-mail.

2            With respect to Count Fifteen, the bank fraud charge,

3    your Honor, there are three elements: first, that there was a

4    scheme to defraud a bank by means of materially false or

5    fraudulent pretenses, representations, or promises; second,

6    that Mr. Trosten executed or attempted to execute the scheme

7    with intent to defraud the bank; and, third, that at the time

8    of the execution of the scheme, the bank had its deposits

9    insured by the Federal Deposit Insurance Corporation.

10           At this time, your Honor, the government would proffer

11   and represent that HSBC, which is identified in the indictment,

12   has its deposits, and had its deposits at the relevant period,

13   insured by the Federal Deposit Insurance Corporation.

14           Finally, your Honor, with respect to Count Seventeen,

15   the money laundering count, there are three elements: first,

16   that Mr. Trosten engaged or attempted to engage in monetary

17   transactions involving criminally derived property of a value

18   greater than $10,000; second, that the property involved in the

19   monetary transaction, or attempted transaction, was in fact

20   derived from specified unlawful activity; finally, that

21   Mr. Trosten acted knowingly.  And with respect to this count,

22   the specified unlawful activities are the wire fraud, bank

23   fraud, and securities fraud otherwise charged.

24           THE COURT:  Mr. Trosten, do you understand that if you

25   pled not guilty and went to trial, that the burden would be on

1   the government to prove each and every element of the crimes

2   charged beyond a reasonable doubt in order to convict you?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  Do you understand that at a trial, you

5   would have the right to be represented by an attorney at all

6   stages of the proceeding and if necessary an attorney would be

7   appointed for you?

8            THE DEFENDANT:  I do, your Honor.

9            THE COURT:  Do you understand that at a trial you

10  would have the right to confront and cross-examine witnesses

11  against you and the right not to be compelled to incriminate

12  yourself?

13           THE DEFENDANT:  Yes, your Honor.

14           THE COURT:  And do you understand that at a trial you

15  would be presumed innocent until such time, if ever, the

16  government established your guilt by competent evidence to the

17  satisfaction of the trier of fact beyond a reasonable doubt?

18           THE DEFENDANT:  I do, your Honor.

19           THE COURT:  And do you understand that at a trial, you

20  would have the right to testify and would also be entitled to

21  compulsory process, in other words, the right to call other

22  witnesses on your behalf?

23           THE DEFENDANT:  I do, your Honor.

24           THE COURT:  And do you understand that if your plea is

25  accepted, that there will be no further trial of any kind, so

82KATROPps

1    that by pleading guilty, you are waiving your right to a trial?

2            THE DEFENDANT:  I do.

3            THE COURT:  Do you understand that if you are

4    sentenced to a period of supervised release and if you violate

5    the terms of your supervised release, that an additional period

6    of jail time may be imposed without credit for the time that

7    you had previously spent on supervised release?

8            THE DEFENDANT:  I do.

9            THE COURT:  And do you understand that in connection

10   with your plea of guilty, that the Court may ask you certain

11   questions about the offense to which you have pled, and if you

12   answer those questions under oath and on the record and in the

13   presence of your lawyer, that your answers if false may later

14   be used against you in a prosecution for perjury or false

15   statement?

16           THE DEFENDANT:  I do, your Honor.

17           THE COURT:  And do you understand that, in determining

18   your sentence, that the Court is obligated to calculate the

19   applicable sentencing guidelines range and to consider that

20   range and possible departures under the guidelines, as well as

21   other factors concerning the nature and circumstance of the

22   offense and the history and characteristics of the defendant?

23           THE DEFENDANT:  I do, your Honor.

24           THE COURT:  Mr. Trosten, did you sign a plea agreement

25   earlier today?

82KATROPps

| | |
|---|---|
| 1 | THE DEFENDANT:  I did, your Honor. |
| 2 | THE COURT:  And before you signed it, did you discuss |
| 3 | it with your lawyers? |
| 4 | THE DEFENDANT:  I did. |
| 5 | THE COURT:  And before you signed it, did you read it? |
| 6 | THE DEFENDANT:  I did, your Honor. |
| 7 | THE COURT:  Let's just put the plea agreement to one |
| 8 | side for a moment.  Apart from the plea agreement, have any |
| 9 | threats or promises been made to you to make you plead guilty? |
| 10 | THE DEFENDANT:  No, your Honor. |
| 11 | THE COURT:  Again, apart from the plea agreement, have |
| 12 | any understandings or promises been made to you concerning the |
| 13 | sentence that you will receive? |
| 14 | THE DEFENDANT:  No, your Honor. |
| 15 | THE COURT:  Is your plea voluntary? |
| 16 | THE DEFENDANT:  Yes, it is. |
| 17 | THE COURT:  I would like to review a few portions of |
| 18 | the plea agreement with you.  Do you understand that pursuant |
| 19 | to this plea agreement, that you have undertaken to truthfully |
| 20 | and completely disclose all information about yourself and |
| 21 | others as required of you by the U.S. Attorney's Office; and |
| 22 | that you have agreed to fully cooperate with the U.S. |
| 23 | Attorney's Office, the United States Postal Inspection Service, |
| 24 | the Securities and Exchange Commission, and any other law |
| 25 | enforcement agency designated by the Office; that you have |

82KATROPps

1    agreed to attend all meetings as your presence is requested,

2    and to provide to the U.S. Attorney's Office any document or

3    other tangible evidence relating to any inquiry from the U.S.

4    Attorney's Office or other law enforcement agencies; that you

5    have agreed to truthfully testify before the grand jury and at

6    any other trial or court proceeding; that you have agreed to

7    fully disclose to the U.S. Attorney's Office any crimes that

8    you have committed and any civil or criminal proceedings in

9    which you have been or are a subject target or a witness; and

10   that you have further agreed to commit no further crimes

11   whatsoever?

12             THE DEFENDANT:  Yes, your Honor.

13             THE COURT:  And do you understand that the U.S.

14   Attorney's Office has no authority to agree not to prosecute

15   you for any possible criminal tax violations?

16             THE DEFENDANT:  I do, your Honor.

17             THE COURT:  And do you understand that if you fully

18   comply with this agreement, that you will not be further

19   prosecuted by the U.S. Attorney's Office for any crime related

20   to your participation in the crimes described in the

21   indictment, Counts One, Two, Seven, Fifteen, and Seventeen,

22   except for a possible criminal tax violation?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  And are you aware that this agreement

25   doesn't bind any other federal, state, or local prosecuting

82KATROPps

1    office?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  And do you understand further that the

4    sentence that you will receive is within the sole discretion of

5    the Court?

6            THE DEFENDANT:  Yes, your Honor, I do.

7            THE COURT:  And do you understand that if the United

8    States Attorney's Office determines that you have provided

9    substantial assistance in an investigation or prosecution and

10   fully complied with the understandings specified in this plea

11   agreement, that the U.S. Attorney's Office will file a motion

12   pursuant to Section 5K1.1 of the guidelines, requesting that

13   you be sentenced in accordance with the factors set forth in

14   that section?

15           THE DEFENDANT:  I do, your Honor.

16           THE COURT:  And do you understand that even if the

17   U.S. Attorney makes such a motion, that the issue of sentencing

18   remains within the discretion of the Court?

19           THE DEFENDANT:  I do.

20           THE COURT:  And do you understand that if the U.S.

21   Attorney's Office determines that you have not provided

22   substantial assistance, that they are released of any

23   obligation to file a 5K1.1 letter?

24           THE DEFENDANT:  I do, your Honor.

25           THE COURT:  And do you understand that, should you

82KATROPps

1    commit any further crimes or should it be determined that you

2    have given false, incomplete, or misleading testimony or

3    information, that you are thereafter subject to prosecution for

4    additional federal crimes?

5              THE DEFENDANT:  I do, your Honor.

6              THE COURT:  Do you understand that if it is determined

7    that you have committed further crimes or given false or

8    misleading testimony or otherwise violated this agreement, that

9    all statements made by you to the United States Attorney's

10   Office can be used against you in a subsequent prosecution?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  And are you entering this plea because you

13   are in fact guilty?

14             THE DEFENDANT:  I am, your Honor.

15             THE COURT:  And do you understand that as part of this

16   plea agreement, that you are waiving any right you might have

17   to have the government preserve any physical evidence for

18   future DNA testing or any right you might have for DNA testing

19   at the present time?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  And do you understand that this agreement

22   takes the place of any prior understanding that you may have

23   reached with the United States Attorney's Office and that there

24   are no conditions beyond those set forth in this written

25   agreement and that there cannot be any additional

82KATROPps

1    understandings that are not entered into in writing and signed?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Mr. Trosten, did you commit the offenses

4    that you are pleading guilty to?

5              THE DEFENDANT:  I did, your Honor.

6              THE COURT:  Would you tell me, please, what you did.

7              THE DEFENDANT:  Your Honor, first, I just would like

8    to state for the record that, when I said I felt great, it was

9    relating to medicines that I had taken, as opposed to feeling

10   ill because of those medicines, not because of my conduct,

11   which I deeply regret, your Honor.

12             THE COURT:  I would just like -- are you under the

13   influence of any medicine today?

14             THE DEFENDANT:  I am not, no.  No.

15             THE COURT:  OK.  And you have not had any trouble

16   following any of the questions I have asked you?

17             THE DEFENDANT:  No, I have not.  No, I have not.

18             Your Honor, while I was employed at Refco, I agreed

19   with other Refco executives to hide the true nature of Refco's

20   finances on Refco's financial statements.  I knew that Refco's

21   financial statements did not accurately reflect Refco's

22   financial condition, because the financial statements did not

23   disclose the full amount that Refco Group Holdings, Inc., a

24   related party, owed to Refco.  I understood that the RGHI

25   receivable was underreported because Philip Bennett, Refco's

1    former chief executive officer, and other Refco executives,

2    including me, were involved in a series of transactions at the

3    end of Refco's financial reporting periods to make it appear as

4    if a receivable was due from third-party customers rather than

5    from a related party.

6         The RGHI receivable was composed of, amongst other

7    things, historic customer losses, bad debts, and expenses that

8    RGHI incurred on behalf of Refco.

9         In addition, I participated in a number of

10   transactions that padded or inflated Refco's income.   For

11   example, I participated in transactions that shifted expenses

12   off the books of Refco and onto the books of Refco Group

13   Holdings, Inc.

14        I, along with other Refco executives, agreed to

15   conceal the true size and nature of the RGHI receivable from,

16   amongst others, Refco's auditors, Thomas H. Lee Partners; HSBC,

17   which, in 2004, participated in Refco's senior secured credit

18   facility, as referenced in paragraph 14 -- I'm sorry --

19   paragraph 41 and Count Fifteen of the indictment; and investors

20   who purchased bonds that Refco issued in 2004, as referenced in

21   Count Two of the indictment.

22        I left the company in August of 2004, one year before

23   the IPO of Refco.   I and other Refco executives used the

24   interstate wires to accomplish these acts within this district,

25   as referenced in Count Seven of the indictment.

1       Furthermore, I received funds obtained from the

2    transaction with Thomas H. Lee Partners, referenced in

3    paragraph 34 of the indictment, which I knew were proceeds from

4    unlawful activity, as referenced in Count Seventeen.

5       The RGHI receivable and the transactions used to

6    conceal it were material information that Refco investors and

7    lenders would have wanted to know before investing in or

8    lending money to Refco.

9       I knew that obtaining funds from Refco investors and

10   lenders based on misleading financial information was wrong.

11      Excuse me.

12      Your Honor, I take full responsibility for my actions

13   and my conduct.

14      I wish to apologize to my family and those that I

15   harmed by my conduct, which I deeply and sincerely regret, your

16   Honor.

17      Thank you.

18      THE COURT:  Mr. Garcia, is there anything else that

19   you wish me to ask Mr. Trosten?

20      MR. GARCIA:  No, your Honor.

21      THE COURT:  Mr. Trosten, do you still wish to plead

22   guilty?

23      THE DEFENDANT:  I do, your Honor.

24      THE COURT:  Mr. Morvillo, do you know of any reason

25   that Mr. Trosten ought not to plead guilty?

82KATROPps

1           MR. R. MORVILLO:  I do not, your Honor.

2           THE COURT:  All right.  Mr. Trosten, I am satisfied

3    that you understand the nature of the charge against you and

4    the consequences of your plea, and that your plea is made

5    voluntarily and knowingly, and that there is a factual basis

6    for your plea.  I will therefore accept your plea of guilty.

7           Mr. Garcia, do you want to give me a control date?

8           MR. GARCIA:  Your Honor, respectfully, the government

9    would request about a year for a control date.

10          THE COURT:  Let's just see if -- OK.  Well, February

11   20, 2009 is a Friday.  So you can write to me then.

12          All right.  Is there anything else at this time?

13          MR. GARCIA:  Nothing more, your Honor, from the

14   government.

15          THE COURT:  Mr. Morvillo?

16          MR. R. MORVILLO:  Nothing, your Honor.  Thank you for

17   accommodating my schedule by sitting as late as you are.

18          THE COURT:  We're always here at this time.

19          MR. GARCIA:  Thank you, Judge.

20                            o0o

21

22

23

24

25