```
      84H9GRAF
 1    UNITED STATES DISTRICT COURT
 1    SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x
 2
 3    UNITED STATES OF AMERICA,              New York, N.Y.
 3
 4             v.                            S4 05 Cr. 1192 (NRB)
 4
 5    TONE GRANT,
 5
 6                    Defendant.
 6
 7    ------------------------------x
 7
 8                                          April 17, 2008
 9                                          @ a.m.
 9
10
10    Before:
11
11                      HON. NAOMI REICE BUCHWALD,
12
12                                          District Judge
13
13
14                         APPEARANCES
14
15    MICHAEL J. GARCIA
15         United States Attorney for the
16         Southern District of New York
16    BY:  NEIL BAROFSKY
17         CHRISTOPHER GARCIA
17         Assistant United States Attorneys
18
18    ZUCKERMAN SPAEDER, LLP
19         Attorneys for Defendant
19    BY:  ROGER ZUCKERMAN
20         AITAN GOELMAN
20         NORMAN EISEN
21
21
22
23
24
25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300
```

3079

84H9GRAF

```
 1              (In open court: jury not present; time noted:
 2    11:53 a.m.)
 3              THE COURT:  Why don't we begin by reporting for the
 4    record the earlier notes that we received yesterday.
 5              The first note arrived in chambers about 3:25 and
 6    read:  "Maria Louisa Pedroza, Juror No. 8 voted as foreperson."
 7              Second note which arrived in chambers about 4:00:  "Is
 8    it possible to obtain a board with/an easel (and marker)?"
 9              The third note arrived upstairs about 4:25 and said:
10    "Can we please use the props with the timeline of events?
11    Thank you, signed forelady."  And we sent back a note that said
12    that we couldn't provide those since they were not in evidence.
13              About 11:35 this morning we received a note which I
14    will read into the record and which I provided copies to
15    counsel:  "Is there anything in evidence other than..." I think
16    they mean the "...notes that were taken by Grant at the
17    Marriott Hotel meeting between Grant and Bennett on May 17,
18    2004?"
19              I assume that there is sort of a word missing, which I
20    would guess a way to rewrite it:  Is there anything else in
21    evidence?  But I'm not saying we have to guess, but that's --
22              MR. BAROFSKY:  Another possible interpretation is that
23    the A with the little circle means about instead of at.  It may
24    mean at or it may mean about.
25              MR. ZUCKERMAN:  It doesn't make much sense if it's
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84H9GRAF

```
 1   about.  Then it would be the notes that were taken by Grant
 2   about.
 3            MR. BAROFSKY:  About the meeting.
 4            THE COURT:  I think actually if we're going to do a
 5   little document analysis -- I'm sorry I didn't give you copies
 6   of the earlier memos because they were so -- notes, because
 7   they were so ministerial.  But I will show you so that you can
 8   all see it, where the parenthesis and I wrote -- and I
 9   translate "and marker," it's a similar three-dot thing, so if
10   you want to look at that.
11            MR. BAROFSKY:  Judge, clearly we need some
12   clarification, I think we agree, on what they're asking for.
13            MR. ZUCKERMAN:  I don't object to clarification.  I
14   mean if your Honor wants to write a request for a little
15   additional.
16            MR. BAROFSKY:  Obviously it could apply to large
17   amounts of testimony about the meeting, depending on what
18   they're asking for.
19            THE COURT:  We don't need to battle it out.  We can
20   just ask them.
21            Should we write:  We are uncertain about the meaning
22   of your last note.  Could you please clarify your request?
23            Is that okay?
24            MR. ZUCKERMAN:  Fine.
25            MR. GOELMAN:  Your Honor, when does the Court plan on
                   SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
```

84H9GRAF

```
 1   feeding them lunch?
 2              THE COURT:  I think we ordered it for 1:00.
 3              MR. BAROFSKY:  Your Honor, can we take lunch at the
 4   same time?
 5              THE COURT:  If you're assuming that they are going to
 6   eat and not work -- there must be a space in time in there that
 7   you can be excused, but just make sure we have a way to get
 8   you.
 9              See you in a few minutes.
10              (Recess pending verdict)
11              (Jury not present; time noted:  12:27).
12              THE COURT:  Let me just read the responsive note into
13   the record.  It's Court Exhibit 6:  "One of the jurors wants to
14   know if there is any other evidence entered about the substance
15   of the conversation for the meeting..." again repeated "...for
16   the meeting, at the Marriott with Tone and Phillip other than
17   Tone Grant's handwritten notes."
18              Counsel agree on a response or is there a discussion
19   about it?
20              MR. BAROFSKY:  Your Honor, I think that one of the
21   discussions that we've just had with Mr. Zuckerman is -- I
22   don't want to speak for Mr. Zuckerman.
23              MR. ZUCKERMAN:  Go ahead.
24              THE COURT:  He'll correct you if you aren't playing
25   the role properly.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3082

84H9GRAF

 1          MR. BAROFSKY:  Its continued ambiguity on "evidence
 2  entered."  Our take from this was to think that it was
 3  testimonial as well as physical evidence.  Mr. Zuckerman
 4  believes that "entered" means just physical exhibits or
 5  documents that have been entered.
 6          MR. ZUCKERMAN:  That is correct.  And to amplify only
 7  briefly, I think there are some legal issues and a morass that
 8  we will enter, as the Court may hear if we continue to argue,
 9  about what exactly it means for the Court to search the record
10  for evidence that may relate to the substance of the meeting in
11  the form of testimony.  And you will hear, I think, a variety
12  of arguments from the government and from us about what may or
13  may not relate to the substance of the meeting in terms of the
14  inferences that are permissible for a juror to draw.
15          And we, as well, have some concerns about whether
16  that's a permissible undertaking for the Court; that is,
17  whether the Court can define for the jury what it believes to
18  be the evidence that the testimony -- the testimony that
19  relates to the substance of the meeting.
20          So, before entering that thicket, my thought was to
21  simply write another note and ask whether the evidence entered
22  that they are seeking relates to physical exhibits only or
23  whether it relates to physical exhibits and testimony.
24          If it relates to --
25          THE COURT:  Why would you think they would truly be
                    SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

3083

84H9GRAF
1  asking at this stage for physical exhibits?  In other words,
2  the government established that Mr. Bennett's secretary rented
3  this room.  But now that there is no real dispute, I don't
4  think, that the meeting occurred, it would seem a little odd to
5  me that that was really what they were focused on.  I would
6  have thought that -- I wouldn't have parsed the word "entered."
7  To me, it's:  Is there any other evidence about the substance
8  of the meeting which is in the record?
9          MR. ZUCKERMAN:  If that is --
10          THE COURT:  That's the way I would view it.
11          MR. ZUCKERMAN:  Fair enough.  I don't think that's
12  obvious.  But if that's the Court's view, then I think we're at
13  an important and awkward spot because there is a variety of
14  testimony -- there's scads of testimony that jurors could look
15  at to allow them to draw inferences about the meeting that
16  occurred and what occurred in the meeting.
17          THE COURT:  The substance of the conversation is what
18  they have asked for.
19          MR. ZUCKERMAN:  But, for example, testimony or
20  evidence regarding the nature of the notes, their preservation
21  and the like, is, in our judgment, relevant to the substance of
22  the conversation that occurred and was argued as such.
23          THE COURT:  That's argument.
24          MR. BAROFSKY:  I don't think there is any testimony
25  regarding preservation.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

84H9GRAF
```
 1              MR. ZUCKERMAN:  There's the subpoena.
 2              MR. BAROFSKY:  They have -- they have the physical
 3    documents back there.  That's why I think we were thinking that
 4    this had to be testimonial is because they have every exhibit.
 5              THE COURT:  Isn't really what -- finish.  It just
 6    seems to me there's one -- I think there's one obvious bit of
 7    testimony, and I assume that's what you're ultimately arguing
 8    about.
 9              MR. BAROFSKY:  We believe that --
10              MR. ZUCKERMAN:  I'll let the government make its point
11    and then we'll respond.  Why don't you go ahead.
12              MR. BAROFSKY:  Your Honor, we would point to our
13    interpretation is, would be the testimony of Earl Melamed, the
14    testimony of Sandy Maggio and the testimony of Robert Trosten.
15              THE COURT:  What did Melamed testify about what
16    happened at that meeting?  Was he there?
17              MR. BAROFSKY:  No, Judge, neither were any of these
18    three individuals.
19              THE COURT:  But the issue is what did -- I don't
20    have -- to me I assumed you were talking about the Santo Maggio
21    testimony as to whatever he said before he was going to be
22    talking about, and whatever he said afterwards that Bennett
23    told him.
24              MR. BAROFSKY:  Your Honor, I think clearly that as
25    well as Robert Trosten who has a similar conversation.
```

3085

84H9GRAF

```
 1              THE COURT:  I can't say that I recall that but that's
 2     okay.
 3              MR. BAROFSKY:  Our recollection is that Mr. Trosten
 4     has a similar conversation when he's asked to prepare a
 5     schedule of the related party receivable.
 6              THE COURT:  That's right.
 7              MR. BAROFSKY:  I'm not looking to tilt at windmills on
 8     the Melamed piece.  I'll tell you why I suggested it, was
 9     because the numbers that are reflected in the Grant notes match
10     up with the substance of the testimony of Earl Melamed, but
11     seeing your Honor's reaction --
12              THE COURT:  I think that was a terrific argument but I
13     don't think that that's -- I do not read the note that way.  I
14     think they are talking a much more direct --
15              MR. GOELMAN:  This, I think, is one of the dangers of
16     kind of wading into this morass and deciding what testimony.
17              THE COURT:  We do this all the time, right,
18     Mr. Goelman.  This is not like the first time the jury has
19     asked for:  Is there any testimony in the record about X?
20              MR. GOELMAN:  This is the first time that I've ever
21     seen it.
22              THE COURT:  I have seen many, many times where jurors
23     say:  Can we please have the testimony of John Smith about Y or
24     about X and then you go and you try and identify what John
25     Smith said in direct and cross and you send that back.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3086

84H9GRAF

1          MR. GOELMAN:  I have never before seen please identify
2    for us all the evidence, and if you interpret as testimony,
3    about a particular subject matter.  I think that takes it to an
4    entirely different level and it's dangerous for the parties and
5    for the Court to substitute for the jury's recollection about
6    what is and what is not related to a particular subject matter.
7          THE COURT:  I remember my husband used -- I don't
8    remember him, he's still here -- telling me the story once
9    about when he was a prosecutor and the juror asked:  What is
10   all the testimony related to Count 9 of the indictment, and the
11   note ultimately was there is no testimony about Count 9.  So
12   this is not the first time that jurors have asked this type of
13   question; maybe in your experience, but not in my experience.
14   And I understand that lawyers fight about this; that one side
15   wants a narrower interpretation, the other side wants a broader
16   interpretation.  And you each have your own -- oh, another
17   note -- and that there is a litigated reason for the argument.
18         "We need new jury verdict forms.  Also, does the
19   foreperson sign or both?  Or can someone come in and explain
20   the form to us?"
21         That's a first.  Okay, Mr. Goelman, we have a first
22   here.  I don't have any problem getting new forms -- clean
23   forms.  We can obviously print those out.
24         We could direct them to the part of the charge which
25   has the instruction.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

3087

84H9GRAF
```
 1              MR. GOELMAN:  On the verdict form?
 2              THE COURT:  Yes.
 3              MR. GOELMAN:  Your Honor, I don't know what --
 4    obviously this changes things.
 5              THE COURT:  I really don't know what the problem is.
 6              MR. GOELMAN:  The first note that the jury sent out:
 7    Is there anything in evidence other than the notes, I doubt
 8    that the jury doesn't remember that there was testimony from
 9    cooperators about this meeting.  So when you're saying is there
10    anything in evidence other than the notes, to me that is
11    looking for a tangible paper about the meeting.  And I don't
12    see the harm in just sending back:  Are you asking for -- a
13    note saying:  Do you want testimony or do you want exhibits?
14              THE COURT:  I don't need to battle that.  We can send
15    them another note about that.
16              But the question is maybe we should call them into the
17    courtroom and let me tell them.
18              MR. BAROFSKY:  About the verdict form?
19              THE COURT:  About the verdict form.
20              MR. ZUCKERMAN:  Fine.
21              THE COURT:  Josh, before we do, just go up and make
22    some new ones.
23              MR. BAROFSKY:  Judge, can we see the most recent note
24    by any chance?
25              THE COURT:  Absolutely.
```

3088

84H9GRAF

```
 1              Is it all right if we call the jury in?
 2              I will ask them before we talk about the verdict form,
 3     on the earlier note whether they are looking for an exhibit or
 4     they're looking for testimony as to the substance of the
 5     conversation.
 6              MR. BAROFSKY:  Judge, what -- an alternate suggestion
 7     is that if, just to send a note back to them saying if you --
 8     go ahead.
 9              MR. GARCIA:  One way to read that note potentially,
10     and I don't have it in front of me now, but it may be just a
11     simple question of:  Does the foreperson have to sign or
12     everybody else have to sign?
13              THE COURT:  Yeah.
14              MR. GARCIA:  One suggestion.
15              THE COURT:  I give them like 14 copies of the verdict
16     form.  So my thought is that because I give them that many
17     copies that they think that they all have to sign it.  I do it
18     so that there's a piece of paper that they can all take notes
19     on essentially.  I think that's about all that this is about,
20     that question.  But I can clarify it.  I'm going to just let
21     you know what I'm going to tell them is as to the verdict form
22     the only person that signs the verdict form is the foreperson.
23     Each count you have to deal with separately.  You have to have
24     a unanimous decision on each count.  If you have not -- if you
25     have not reached a unanimous decision on each count, keep
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3089

84H9GRAF

1    talking.
2            MR. BAROFSKY:  Your Honor, I think Mr. Garcia's
3    suggestion might be a good one and just to send a note back to
4    them with the first part; which is just that the way to -- the
5    foreperson only needs to sign the verdict form and sort of
6    without --
7            THE COURT:  But we have the other issue of the
8    testimony versus the exhibits.
9            MR. ZUCKERMAN:  I think it's appropriate for you to
10   clarify in their presence.
11           THE COURT:  Because they asked to have someone visit
12   them.  So I'm not going to go in there because that would be
13   not right.
14           MR. EISEN:  I had a case like that once.
15           MR. BAROFSKY:  Our concern --
16           THE COURT:  What's the concern?
17           MR. BAROFSKY:  It's not really a concern, it's just
18   that if they are close to a verdict, which they would suggest,
19   it may obviate a need to respond to the note.  That's all that
20   we --
21           THE COURT:  I'm not going to -- believe me, I'm going
22   to tell them -- the first thing I'll say:  Don't tell me
23   anything about where you are in your deliberations.  Let me
24   just ask you a question, let me tell you certain things.  Okay.
25           MR. BAROFSKY:  Thank you, your Honor.

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

3090

84H9GRAF

```
 1                (In open court; jury present; time noted:  12:49)
 2                THE COURT:  Sit down, everyone.  I asked you to come
 3      in, in the hopes that I can clarify by speaking to you some of
 4      the notes that you've been sending.
 5                First, one thing.  Absolutely do not say a word to me
 6      now about where you are in terms of your deliberations, not a
 7      word.  Okay.  I don't want to know any votes.  I don't want to
 8      know anything.
 9                Let me ask you first a question.  You asked in the
10      last note:  "One of the jurors wants to know if there is any
11      other evidence entered about the substance of the conversation
12      for the meeting at the Marriott with Tone and Phillip other
13      than Tone Grant's handwritten notes."
14                My question to you is:  Are you looking for other
15      testimony or are you looking for other exhibits?  Or possibly
16      both?
17                THE FOREPERSON:  I think both.
18                THE COURT:  Both.  Okay.
19                Then you had a question about the verdict forms and
20      you wanted to know if the foreperson signs -- it says "or
21      both."  I'm not sure what the "or both" is.  But let me just
22      explain to you that I give you lots of copies of the verdict
23      form just for you to keep track of your deliberations and your
24      vote.  The only person that signs the verdict form is the
25      foreperson.
```

3091

84H9GRAF

```
 1              I want to remind you that you have to deal with each
 2    count separately and that you can't return a verdict of guilty
 3    or not guilty unless you are unanimous.  Unanimous means
 4    everybody agrees.  And if you are not unanimous about anything
 5    at this point, I tell you to just keep talking.
 6              Does -- just ask does that clarify the questions about
 7    the verdict form?
 8              THE FOREPERSON:  Yes.
 9              THE COURT:  Anybody still have a question about the
10    verdict form?
11              Okay.  So let me give you -- we made up another bunch
12    of forms.  Let me give them to you, and we'll -- and Josh for
13    some reason, some odd thing is happening on his printer that
14    there are little stars on these forms, some place, we don't
15    know why.  We put a new cartridge in and it's doing something
16    weird.  Ignore that.  Stars are irrelevant.  Just follow the
17    typewritten material.
18              So let me send you back and we'll focus on what other
19    testimonial or documentary evidence there is.
20              It's the focus, and just confirm for me, is on the
21    substance of the meeting; in other words, what was said?  Is
22    that what you mean by substance?  Okay.  Very good.  Thank you.
23              (Jury deliberations resumed; time noted:  12:54 p.m.)
24              (Continued on next page)
25
```

3092

84H9GRAF
```
 1                (In open court)
 2                MR. BAROFSKY:  So, your Honor, we're going to look to
 3       identify the relevant portions of Maggio and Trosten's
 4       testimony about their conversations with Phil Bennett about the
 5       substance of the meeting both before and afterwards, what he
 6       planned to say and then whatever.
 7                THE COURT:  To me that seems to be what they're asking
 8       for.  Okay.  So obviously you'll try to agree and then you will
 9       Xerox with just the portions on the pages, black out the other
10       stuff.
11                MR. BAROFSKY:  We'll redact out any objections.
12                THE COURT:  Any objections, just exactly what the
13       question and answer is.
14                MR. GARCIA:  Will do.  Thank you, your Honor.
15                THE COURT:  I'll be upstairs.
16                (Recess pending verdict)
17                (In open court; jury not present; time noted:
18       2:23 p.m.)
19                THE COURT:  First, we received another note.  If I'm
20       correct, we're up to Court Exhibit 8.  And the jury has dated
21       it at 1:44.  And it says:  "Judge Buchwald, the last piece of
22       information we need is what was requested earlier.  Once we
23       obtain this information we can continue our deliberations."
24                I guess the record should reflect that the jury has
25       very recently been given the agreed-upon segments of
```

3093

84H9GRAF
1    Mr. Maggio's testimony and the -- and been told that there's
2    more to come and that now the issue concerns Mr. Trosten's
3    testimony, and there is a dispute about page 1210, lines 8
4    through 17.
5            MR. ZUCKERMAN:  Your Honor, that was the finish of my
6    cross-examination designed to attack the credibility of
7    Mr. Trosten specifically as it related to his description of
8    these key events.
9            So, while the -- his description of the events is
10   elucidating, the fact that the events occurred approximately --
11   that he is describing in his material was used approximately
12   three days before May 20, 2004 when he stole money, the jury
13   could infer from this defendant, certainly is a circumstance
14   that allows the jury to conclude that he is not giving an
15   accurate description of the events on May 17.
16           MR. GARCIA:  Respectfully, your Honor, this piece on
17   NavTech has nothing to do with the conversation that happened
18   on May 17 or May, 2004.  NavTech wasn't discussed.  This is not
19   impeachment of Mr. Trosten's recollection of the conversation
20   that happened.  It's impeachment generally of:  Mr. Trosten is
21   not a great guy.
22           THE COURT:  There's a lot of things that might go to
23   that.  I agree on the government with that.  That was a
24   decision I reached just when I read it before hearing any
25   argument.  So do you have a copy of this ready to go without
                 SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

3094

84H9GRAF

```
 1   the six lines?
 2              MR. GARCIA:  Yes, we do, your Honor.
 3              MR. ZUCKERMAN:  Could I raise an unrelated point
 4   that's no reflection on the Court's equipment but there is a --
 5   one of the stars that appears on the jury verdict form that's
 6   to go in is in the guilty box.
 7              THE COURT:  Not on my copy.
 8              MR. ZUCKERMAN:  It's like a bad omen.
 9              THE COURT:  We didn't mean it.  You remember I did
10   tell them that it was Josh's new cartridge.
11              MR. ZUCKERMAN:  If we could erase it, I'll hand mine
12   up.
13              THE COURT:  I'll take your word for it.  I'm just
14   telling you if you look at mine, the -- it really --
15              MR. ZUCKERMAN:  Good.  On this one the star is in not
16   guilty.
17              THE COURT:  They are kind of random, and I think I did
18   explain that to them and I was glad after the -- Bernie told me
19   that someone was concerned about it down here that I had
20   explained it.  I otherwise wouldn't have thought.
21              MR. ZUCKERMAN:  Are they printed or Xeroxed, I guess?
22              THE DEPUTY CLERK:  They are Xeroxed.
23              MR. ZUCKERMAN:  So you Xeroxed them off of that?
24              THE DEPUTY CLERK:  Not the copy you have.
25              THE COURT:  I took one of the group that Josh made for
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

3095

84H9GRAF
```
 1   the jury because I actually didn't have the verdict form.
 2          MR. ZUCKERMAN:  All right.
 3          THE COURT:  Josh, do you want to give this to
 4   Mr. Zuckerman.
 5          (Recess pending verdict)
 6          (In open court; jury not present)
 7          THE COURT:  The last note which is timed at 2:40,
 8   although the jurors apparently don't know what day it is
 9   because they said it was April 19.  The note reads:  "We have
10   reached our verdict."
11          So at this time call the jury back in.
12          (Jury renders verdict; time noted:  2:52 p.m.)
13          THE COURT:  Please be seated.  We have received your
14   note that you've reached a verdict.  And we will now proceed to
15   take that verdict.  Josh.
16          THE DEPUTY CLERK:  Will the jurors please answer
17   present when your name is called.
18          (Jury roll called; all present)
19          Will the foreperson please rise.
20          Has the jury agreed upon a verdict?
21          THE FOREPERSON:  Yes.
22          THE DEPUTY CLERK:  With respect to Count 1, conspiracy
23   to commit securities fraud, wire fraud, bank fraud and/or money
24   laundering, how do you find the defendant with respect to Count
25   1?
```

3096

84H9GRAF
```
 1                 THE FOREPERSON:  Guilty.
 2                 THE DEPUTY CLERK:  Count 2, securities fraud.  How do
 3     you find the defendant with respect to Count 2?
 4                 THE FOREPERSON:  Guilty.
 5                 THE DEPUTY CLERK:  Count 3, wire fraud.  How do you
 6     find the defendant with respect to Count 3?
 7                 THE FOREPERSON:  Guilty.
 8                 THE DEPUTY CLERK:  Count 4, bank fraud.  How do you
 9     find the defendant with respect to Count 4?
10                 THE FOREPERSON:  Guilty.
11                 THE DEPUTY CLERK:  Count 5, money laundering.  How do
12     you find the defendant with respect to count five?
13                 THE FOREPERSON:  Guilty.
14                 THE DEPUTY CLERK:  Ladies and gentlemen of the jury,
15     listen to your verdict as it stands recorded.
16                 With respect to Count 1, the defendant is found
17     guilty.
18                 With respect to Count 2, the defendant is found
19     guilty.
20                 With respect to Count 3, the defendant is found
21     guilty.
22                 With respect to Count 4, the defendant is found
23     guilty.
24                 With respect to Count 5, the defendant is found
25     guilty.
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

84H9GRAF
1              THE COURT:  Ladies and Gentlemen, is that your
2    verdict?
3              THE JURY:  Yes.
4              THE COURT:  Is there any further request to poll the
5    jury?
6              MR. ZUCKERMAN:  Yes, your Honor, please poll jury.
7              (Jury polled; each juror answered in the affirmative)
8              THE DEPUTY CLERK:  Jury polled.  Verdict unanimous.
9              THE COURT:  Counsel, other than my thanking the jury
10   for their service, do we need to keep them any further?
11             MR. ZUCKERMAN:  No, your Honor.
12             MR. BAROFSKY:  No, your Honor.
13             THE COURT:  Ladies and Gentlemen, when I was talking
14   to you yesterday and excusing the alternate jurors, I told you
15   then that I thank you for your service.  I never thank a jury
16   for its particular verdict.  That is always your decision.  And
17   I think -- I explained fairly clearly yesterday why it is that
18   we thank you and it's for your service and taking the time out
19   of your lives and in your case for being such a really terrific
20   jury.  We never had to wait for you in the morning, and I know
21   some of you came from quite a distance.  And you were
22   attentive.  And you worked hard.  And we very much appreciate
23   your service.  And I thank you again.  And you're excused.
24   Okay.  Thank you very much.
25             (Jury discharged)

3098

84H9GRAF

```
 1            THE COURT:  Are there any applications that I should
 2    be hearing?
 3            MR. BAROFSKY:  No, your Honor.
 4            THE COURT:  Okay.  Would someone remind me, because I
 5    don't even think I know, what are Mr. Grant's bail conditions?
 6            MR. GOELMAN:  He has a bond.  I forget the precise
 7    amount of the bond.  I actually don't have my bail file with
 8    me.  He has a bond that was entered when he was arraigned last
 9    January.
10            MR. BAROFSKY:  Your Honor, we don't have any objection
11    to bail being continued.
12            THE COURT:  I'm not suggesting that you should.  I
13    just was curious as to what the bail condition.
14            MR. BAROFSKY:  Unfortunately, I don't have the file --
15    I think it was a ten million dollar bond.  Your Honor, there
16    were some cosigners and it was a ten million dollar bond, and I
17    think travel was restricted to the 48 states.  And as I said, I
18    don't think we -- we don't have any objection to being
19    continued as such.
20            THE COURT:  Other than setting a sentencing date, is
21    there anything else we need to do?
22            MR. ZUCKERMAN:  No, your Honor.
23            THE COURT:  What about July 23?
24            MR. BAROFSKY:  Your Honor, I'm going to be away.  If
25    we do it the following week, I'll be around.
```

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

3099

84H9GRAF

1          THE COURT:  I'm hoping not to be here the following
2    week.
3          Is August 13 consistent with everyone's prior
4    schedule?
5          MR. ZUCKERMAN:  I don't have a calendar.  I'm sorry.
6    I think it is.  Mr. Eisen says he is not going to be here.
7          MR. BAROFSKY:  Nor is Mr. Garcia.
8          THE COURT:  Before I do the more elaborate version of
9    the schedule, August 7, does that work?
10         MR. BAROFSKY:  Fine for the government.
11         MR. ZUCKERMAN:  I think so, your Honor.
12         THE COURT:  I assume you're coming up from Washington
13   that morning.  Is something like 11:30 a good time?
14         MR. ZUCKERMAN:  I'm sure we'll come up the night
15   before.
16         THE COURT:  I don't think I have anything on that day
17   at this point.  So I'm just trying to get.
18         MR. ZUCKERMAN:  My sense is that, to allow for the
19   fullness of the proceeding, either the early afternoon or the
20   midmorning so that we have a fair amount of time.
21         THE COURT:  You've already learned that I work through
22   lunch.  Put it down for August 7 at 10:45.
23         MR. ZUCKERMAN:  Fine.
24         MR. BAROFSKY:  Fine, your Honor.
25         THE COURT:  I would like the defense submissions no
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

3100

84H9GRAF

1  later than July 18 in hand in chambers, and the government's
2  submission by July 31 in hand in chambers.  Okay.  I think
3  that's it.  Okay.
4          MR. BAROFSKY:  Thank you, your Honor.
5          MR. GARCIA:  Thank you, your Honor.
6          MR. ZUCKERMAN:  Thank you, your Honor.
7          (Adjourned)
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25