UNITED STATES DISTRICT COURT
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                  :

MARC S. KIRSCHNER, as Trustee of the Refco    :    07 Civ. 8165 (JSR)
Private Actions Trust,                         :    07 MDL No. 1902 (JSR)
                                  :

            Plaintiff,              :

                                  :    REPORT AND
      -v-                          :    RECOMMENDATION
                                  :    OF THE SPECIAL
PHILIP R. BENNETT, SANTO C. MAGGIO,     :    MASTER ON GRANT
ROBERT C. TROTSEN, MAYER BROWN, LLP, :    THORNTON'S MOTION TO
MAYER BROWN INTERNATIONAL, LLP,      :    DISMISS FOR LACK OF
And GRANT THORNTON, LLP,            :    STANDING
                                  :

            Defendants        :
                                  :
-------------------------------------------------------------x

Daniel J. Capra, Special Master:


      This is a report and recommendation to Hon. Jed S. Rakoff concerning a motion brought by the defendant Grant Thornton, LLP ("Grant Thornton") to dismiss the remaining claim against it in the amended complaint ("Amended Complaint") filed by Marc S. Kirschner as Trustee of the Refco Private Actions Trust ("Trustee").[1]  The motion to dismiss is for lack of standing.

      For the reasons discussed below, Grant Thornton's motion to dismiss should be denied.

## I. Background

      The Trustee originally filed this action in New York State Supreme Court against all the named defendants on behalf of Refco's foreign-exchange customers (the "FX Customers"), asserting claims under New York law for, *inter alia*, breach of fiduciary duty, fraud, and conversion. *See Kirschner v. Bennett*, 2008 WL 1990669 (S.D.N.Y. May 7, 2008) (denying Trustee's motion to

---

[1] After Refco applied for bankruptcy, the United States Bankruptcy Court for the Southern District of New York approved a Plan, which provided for the establishment of a "Private Actions Trust" ("PAT"), to prosecute claims owned by Refco creditors or shareholders that were independent of those held by the Refco debtors. Plaintiff Marc Kirschner was appointed as the Trustee.

1

remand or abstain on the ground that the case is "related" to Refco's Chapter 11 bankruptcy). In the original complaint the Trustee alleged that the FX Customers collectively suffered losses totaling more than half a billion dollars when insiders at Refco[2] diverted assets from their accounts at Refco Capital Markets ("RCM") in order to bankroll the Refco fraud.[3]

On August 25, 2009, Judge Lynch granted the motions to dismiss the original complaint that were made by Grant Thornton and Mayer Brown, but gave the Trustee leave to replead. *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 528 (S.D.N.Y. 2009). The Trustee amended his complaint against those defendants. In a Report and Recommendation dated June 3, 2010, the Special Master recommended that most of the claims for relief against Grant Thornton and Mayer Brown be dismissed, on the grounds that 1) Judge Lynch's broad rulings precluded relief on claims for breach of fiduciary duty and conversion; 2) while the amended complaint's allegations concerning fraudulent inducement were not precluded by Judge Lynch's rulings, a fraudulent inducement claim could only lie as to FX Customer deposits made after the date of Refco's leveraged buyout (LBO), as it was only after that date that Refco was — according to the Amended Complaint — hopelessly insolvent; and 3) the Trustee did not sufficiently allege that Mayer Brown substantially assisted the fraudulent inducement, but the Trustee had sufficiently alleged substantial assistance on Grant Thornton's part.

In sum, the Special Master recommended that all claims against Mayer Brown and Grant Thornton be dismissed, with one important exception: the motion to dismiss the claim for aiding and abetting fraudulent inducement against Grant Thornton should be denied with respect to those FX Customer deposits made after the date of the 2004 LBO.

In an order dated December 13, 2010, Judge Rakoff adopted the Special Master's Report and Recommendation in full. In particular, Judge Rakoff agreed that Judge Lynch's rulings should be adhered to as law of the case. Judge Rakoff observed that the "major grounds justifying reconsideration [of law of the case] are an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." December 13 Order at 3 (quoting *Virgin Atl. Airways, Ltd., v. Nat'l Mediation Bd.,* 846 F.2d 1245, 1255 (2d Cir. 1992)). Judge Rakoff concluded that no such circumstances were presented in this case.

---

[2] References to "Refco" include Refco Group Ltd. LLC and all of its affiliated entities, including Refco LLC, Refco Capital Markets ("RCM") and Refco Alternative Investments LLC ("RAI").

[3] The Special Master has filed a number of reports that describe the Refco fraud in detail. Familiarity with those prior R and Rs is presumed. All abbreviated terms used in those prior R and Rs are incorporated herein by reference.

This Report and Recommendation considers Grant Thornton's motion to dismiss the remaining claim for aiding and abetting fraudulent inducement on the ground that the injuries asserted by the FX Customers are derivative of the injuries suffered by RCM.[4]

## II. The Standing R and R and the *Kirschner* Opinion on *in pari delicto*.

In an Order dated March 31, 2010 entered in *Krys v. Sugrue*, Judge Rakoff adopted the conclusions from a Report and Recommendation of the Special Master regarding issues of standing (the "Standing R and R"). The plaintiffs in *Krys v. Sugrue* claimed injuries resulting from SPhinX funds being improperly transferred from segregated accounts at Refco LLC to unprotected accounts at RCM, where they were lost when the fraud at Refco was discovered and RCM declared bankruptcy. Insofar as relevant here, the Order on standing provided the followingt:

1. All claims brought by investors in the SPhinx funds were dismissed with prejudice for lack of standing,  because they replicated claims brought by SPhinX.

2. All claims brought by any SPhinX entities other than SPhinX Managed Futures Fund ("SMFF") were dismissed with prejudice, because the claims of the other entities were derivative of those pursued by SMFF.

3.  Most importantly, all claims of SMFF and PlusFunds that arose from the "Refco fraud" — defined as a) upstreaming assets from RCM); b) hiding an uncollectible receivable through various machinations including Round Trip Loans; and c) fraud occurring in the LBO and IPO — were dismissed without prejudice, subject to reconsideration should it

---

[4] The Trustee raised a procedural objection to the motion to dismiss, arguing that Rule 12(b)(6) does not permit successive motions to dismiss, and that Grant Thornton waived the standing argument by failing to raise it in its motion to dismiss the Amended Complaint. Grant Thornton responded that standing defects are never waived, and that it had raised the standing argument one time or another throughout the proceedings. At oral argument, these procedural matters were discussed. The Trustee recognized that Grant Thornton, if denied the opportunity to raise the standing issue in a motion to dismiss, would simply raise it in its answer. It was also noted that the Special Master had previously addressed the question of whether standing issues would be discussed at the oral argument on the motion to dismiss the Amended Complaint, having at that time recently issued the Standing R and R in *Krys v. Sugrue* (discussed infra) — but the Special Master determined that it would be prudent to defer consideration of the standing issues until a later date.

The Trustee ultimately abandoned its procedural objections at oral argument. Tr. at 75-76 ("we make the argument because it is procedurally improper, but you ought to reject her argument not because it is procedurally improper but because it's substantively defective"). Given this background, the Special Master finds that it is appropriate to consider the standing question at this juncture rather than to wait for it to be determined at a later point in the proceedings.

finally be determined that the Refco Trustee is barred by the *Wagoner* doctrine from bringing the claims of RCM. The dismissal was based on the conclusion that damages alleged from the Refco fraud were derivative of the damages suffered by RCM and so the claims for damage were the property of the RCM Estate. The dismissal *without prejudice* was based on the reasoning that if the Refco Trustee was found to be barred from recovery, the claims might be revived due to the equitable consideration of preventing a wrong without a remedy.

In *Kirschner v. KPMG, LLP,* 15 N.Y.3d 446, 912 N.Y.S.2d 508 (2010), the New York Court of Appeals, on certified questions from the Second Circuit, held that the Refco Trustee was subject to the *in pari delicto* defense and could not invoke the "adverse interest" exception to the *in pari delicto* doctrine. Accordingly, the Second Circuit affirmed Judge Lynch's ruling that the claims brought by the Refco Trustee on behalf of the Refco Estate against third parties such as Grant Thornton were barred by *in pari delicto* and the related *Wagoner* doctrine. *See Kirschner v. KPMG, LLP,* 626 F.3d 673 (2d Cir. 2010), *affirming Kirschner v. Grant Thornton, LLP,* 2009 WL 1286326 (S.D.N.Y.).

As the Refco Trustee has now been barred from recovery, it could be argued that the rationale of the Standing R and R could be used to allow indirectly injured parties to sue for the injuries that the Refco Trusteee cannot. But this possibility need not be addressed in this R and R, because the Trustee does not argue that the FX Customers are claiming derivative injuries that they can now raise because claims by RCM are barred by *in pari delicto*. Rather, the Trustee is arguing that the injuries suffered by the FX Customers are *direct* and not derivative, and therefore Grant Thornton's motion to dismiss on grounds of standing must be denied.

## III. Analysis of the Standing Arguments in This Case

### A. Grant Thornton's Argument.

Grant Thornton argues that the injuries suffered by the FX Customers were derivative because they resulted from the fact that RCM had no money to pay them back, due to the upstreaming of RCM assets by Refco. So in Grant Thornton's view, the primary injury was to RCM, and the FX Customers' injuries are no different from the injury suffered by any other creditor of RCM. According to Grant Thornton, these claims must be brought by the Trustee of the RCM Estate. Of course, the Trustee is barred from bringing such claims under the New York Court of Appeals' interpretation of *in pari delicto* in *Kirschner* — meaning that acceptance of the "derivative injury" argument together with *in pari delicto* results in a wrong without a remedy. But Grant Thornton claims that the New York Court of Appeals was quite comfortable with that result, as it stated: "why should the interests of innocent stakeholders of corporate fraudsters trump those of outside professionals who are the defendants in these cases?" *Kirschner v. KPMG,* 912 N.Y.S.2d at 525.

Finally, Grant Thornton argues that the FX Customers' claims are essentially identical to the

SPhinX claims concerning the Refco fraud that were dismissed without prejudice for lack of standing. Those claims were dismissed because they alleged an injury that was the same for all creditors of RCM and so were the property of the Refco Estate.

But Grant Thornton's arguments — while not without merit — fail to justify its motion to dismiss for lack of standing.

### B. The Case Law

Substantial case law mandates rejection of the motion to dismiss for lack of standing is supported by substantial case law. Most importantly Judge Lynch, in his opinion dismissing the original complaint in this action, rejected the defendants' argument that the FX Customers lacked standing to claim relief for the monies lost at RCM. Judge Lynch reviewed and rejected the defendants' standing argument in the following passage:

The Professional Defendants also argue that * * * the Trustee's claims on behalf of the FX Customers should be dismissed because the customers' claims are derivative of those brought by RCM and therefore only RCM's bankruptcy estate may pursue them. * * * The FX Customers are pursuing state-law claims against third-parties for the injury they suffered when Refco insiders stole from their FX accounts. This is a simple claim, for which the FX Customers clearly have standing * * * . * * * In any event, to the extent that the Professional Defendants object to the customers' standing on the grounds that a "double recovery" is possible, such concerns have been made moot by this Court's recent decision in *Kirschner v. Grant Thornton LLP*, which found that the Trustee, standing in the shoes of the bankruptcy estate, could not pursue aiders and abettors because a debtor has no standing to sue to recover for a wrong in which he took part.

648 F.Supp.2d at 533, n. 12.  Of course, any concern about "double recovery" that might deny standing to the FX Customers has been completely obliterated by the New York Court of Appeals' and the Second Circuit's decisions in *Kirschner* — rendering Grant Thornton's argument even weaker than Judge Lynch found it.

It must be remembered that Grant Thornton substantially benefitted from the law of the case as applied to the Amended Complaint — specifically with respect to Judge Lynch's expansive interpretation of the Margin Annex. In that light, its attempt to extricate itself from the law of the case with respect to standing is, to say the least,  short on equity.

Grant Thornton argues that the law of the case is inapplicable because Judge Lynch was reviewing the FX Customers' claims that Refco insiders "stole from their FX accounts." Id.[5]  Grant

---

[5] Those claims were dismissed not for lack of standing but for failing to plead a primary wrong and inadequate allegations of aiding and abetting. As to the primary wrongs, Judge Lynch essentially held that the terms of the Margin Annex gave RCM the right to take monies out of the

Thornton contends that Judge Lynch's standing analysis is not applicable to the Trustee's fraudulent *inducement* claim that survived the motion to dismiss the Amended Complaint.

But the change to a fraudulent inducement theory does nothing to change the standing issue. Grant Thornton argues that the fraudulent inducement claim is dependent on the fact that RCM declared bankruptcy and was unable to pay on its accounts, therefore the claim is derivative of RCM's injury. But that description of events is equally applicable to the claim that Refco "stole from their FX accounts." That "stealing" only came to light because RCM was unable to pay on the accounts once the Refco fraud was disclosed — there would have been no injury if RCM could have paid back what was siphoned. So if, as Judge Lynch declared, there is standing for the claim of "stealing," there is also standing for the claim of fraudulent inducement. Nothing in the Amended Complaint changes the basic fact that the FX Customers have alleged, in Judge Lynch's words, a "simple claim" for injury, for which they "clearly have standing."

Grant Thornton cites *Primavera Familienstiftung v. Askin*, 1996 WL 494904, at *14 (S.D.N.Y.1996), for the proposition that if an individual's claim is derivative of a corporation's injury, the individual cannot recover on that derivative claim even if the corporation is found to be barred by *in pari delicto*. But as stated above, the Trustee is not arguing that a bar on derivative claims has been lifted by the dismissal of the RCM Trustee's claims under *in pari delicto/Wagoner*. What is more important about *Primavera* for present purposes is that the court there recognized that the fraudulent inducement claims brought by the shareholders of the bankrupt corporation in that case were *direct* and not derivative — because the injuries resulted when the plaintiffs were fraudulently induced to give value to the corporation while not receiving fair value in return. 1996 WL 49404, at *14. The court contrasted the fraudulent inducement of purchase claims — personal to the purchasers — from claims of damage derived from mismanagement and diminution of share value occurring *after* the purchase, which affected all creditors equally and belonged to the corporation. In this case, the FX Customers — as Judge Lynch noted — are suing for injuries suffered by them personally when they placed their money in a company that was hopelessly insolvent *at the time of the placement*. Those claims are not dependent on subsequent acts of waste or mismanagement that are equally applicable to all creditors. *See also Jones v. Pricewaterhousecoopers, LLC,* 6 Misc.3d 1014A, at *4, 800 N.Y.S.2d 348 (Sup.Ct. N.Y.Co., 2004) (claims of partnership's investors for excessive management fees were derivative because the fees were paid by the partnership: "However, to the extent that Plaintiffs assert direct claims, such as fraud in the inducement of their initial investment in the Partnership, they are not derivative and the court therefore declines to dismiss them.") (citing *Hirsch v. Arthur Andersen & Co.*, 72 F3d 1085, 1094 (2d Cir.1995) (claims based upon distribution of misleading private placement memoranda to investors was property of investors, not Trustee in bankruptcy).[6]

---

FX accounts for whatever purpose, therefore there was no fraud, breach of fiduciary duty, or conversion.

[6] The decision in *Jones* eventually reached the New York Court of Appeals. The court there noted that the defendant had conceded that "plaintiffs, as limited partners of a partnership, may assert a direct claim of fraudulent inducement." The Court found, however, that the plaintiffs had

Grant Thornton seeks to distinguish the result in *Primavera* by the fact that the plaintiffs there were shareholders of the corporation while the FX customers were depositors at RCM. But this is a distinction without a difference. In both cases, the claimants were fraudulently induced to give up a thing of value for a thing of less value *on the date of the transaction*. This is a loss directly suffered by the individual, and not by the corporation.[7]

*GICC Capital Corp. v. Technology Finance Group, Inc*., 30 F.3d 289 (2d Cir.1994), also provides strong support for standing in this case. In *GICC*, a creditor of a defunct corporation was found to have standing to bring a fraud-based claim, alleging that the defendants issued the plaintiff a note at the very time that it was stripping the assets from the corporation so that it could not pay the note. The court in *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 238 (2d Cir. 1999),[8] explained the standing determination in *GICC* as follows:

> In *GICC Capital Corp. v. Technology Finance Group, Inc.*, 30 F.3d 289, 290 (2d Cir.1994), plaintiff accepted a promissory note from defendants as part of an unrelated settlement. During the negotiation of the terms and issuance of the note the defendants did not disclose that, *at the same time* they were agreeing to cause the corporation to issue the note, they were stripping it of assets, rendering it unable to meet that obligation. The defendants' failure to disclose the stripped-down status of the corporation induced the plaintiff to accept the note in settlement. We stated that because of the timing and magnitude of the note, the plaintiffs had RICO standing. In other words, if the plaintiffs had accepted a promissory note from a corporation that was at that time able to repay the note, and *later* the defendants stripped the corporation, the injury would have been indirect because it would have derived wholly from injuries to the corporation. But, when the promissory note was issued, the corporation had already been stripped of enough assets to undermine the possibility of repayment. Thus, because of the defendants' misrepresentations, the plaintiff in *GICC* * * * accepted an over-valued asset, the note, in exchange for the settlement of their litigation claims. The injury was direct because the plaintiff was immediately injured in the process of negotiating the settlement contract with the defendants, rather than as a derivative result of later injuries

---

not sufficiently alleged that the damages they asserted were the plaintiffs' share of losses to the partnership. *Continental Cas. Co. v. Pricewaterhousecoopers,LLP*, 15 N.Y.3d 264,270-71. 907 N.Y.S.2d 139 (2010). The rationale for the Court of Appeals' rejection of the direct claims has no bearing on the motion to dismiss in this case.

[7] Grant Thornton cites no case law supporting the distinction it proposes as to standing between customers and shareholders where both are fraudulently induced to give value to the corporation.

[8] *Laborers Local* involved derivative claims and the court accordingly held that the plaintiffs lacked standing. The plaintiffs were labor union health and trust funds that sued tobacco manufacturers for the monies they had to pay due to health-related issues caused by smoking of union members. But the funds only had to pay because the smokers were injured; it was the smokers that suffered the direct injury.

to a third party namely, the corporation that issued the note.

(some citations omitted; emphasis in original).

Like the plaintiff in *GICC,* the FX Customers gave value to RCM when, at the same time, Refco knew it was hopelessly insolvent — in the words of the Second Circuit, they "accepted an over-valued asset" and were "immediately injured."[9] This is not a case in which the FX Customers received a fair exchange and *then* a fraud occurred — in which case they would have suffered a wrong identical to all those doing business with Refco. This is a case in which the FX Customers were defrauded at the very time they gave Refco value. And like the plaintiff in *GICC,* the FX Customers gave value at a time when an undisclosed fraud "undermine[d] the possibility of repayment."

Grant Thornton argues that the FX Customers who deposited funds after the LBO did not lose money until Refco declared bankruptcy — at which point they suffered the same injury as every other creditor. Grant Thornton notes the Trustee's concession that RCM kept some funds to pay on withdrawals even as it was having almost all its assets upstreamed to fund Refco. But this fact does not distinguish *GICC* or lead to a conclusion of lack of standing. While RCM kept a little money on hand to handle the random withdrawal, it obviously did not keep enough money on hand to pay for the withdrawals that would occur (and did occur) if its true financial condition were disclosed. This means that at the very point at which a post-LBO deposit was made, the real-life value to the depositor was significantly diminished because of the undisclosed risk that events would operate to preclude full recovery. Certainly that risk devalued the account at the very time of the transaction — just as in *GICC,* where the value of the note was immediately diminished upon its purchase due to the corporation's undisclosed hopeless financial condition.[10] In both cases, the undisclosed fraud "undermine[d] the possibility of repayment" at the time of the transaction. In both cases, the exchange appeared to give equal value but it did not because of the undisclosed condition of the corporation. *See In re Coated Sales, Inc.,* 144 B.R. 663, 668 (S.D.N.Y. 1992) (fair market value of an asset cannot be determined in a vacuum, but presumes that both buyer and seller are aware of all relevant information: "This assures that the valuation is based in reality.").

Notably, there was no allegation in *GICC* that the note was *completely* without market value at the very point of sale. Rather the allegation was that the plaintiff who received the note was defrauded into thinking that it had a certain value when in fact the value was substantially diminished

---

[9] It is to be remembered that the claims remaining in this case are limited to the loss of deposits made at RCM after the date of the LBO — the point at which the Trustee alleges Refco was hopelessly insolvent.

[10] Grant Thornton seeks to distinguish *GICC* on the same ground it sought to distinguish *Primavera* – that the plaintiff bought a note, i.e., a res, while the FX Customers made a deposit into an account. But as stated above, this is a distinction without a difference as to standing. In both instances the transaction was one in which value was given but equivalent value was not received due to an alleged fraud.

by the corporation's actual inability to pay — an inability that was not disclosed until some time later. It was sufficient that the undisclosed fraud "undermine[d] the possibility of repayment." The same is true in this case.

Finally, the Second Circuit's decision in *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir.1988), indicates that standing should be found in this case. In *Rhodes*, officers of the defendant corporation fraudulently concealed the availability of a major asset, leading the plaintiff creditor to agree to a reorganization plan where it relinquished all but 17.5 percent of its allowed claim against the debtor corporation. This injury was direct because "it was not dependent upon any actual injury the debtor corporation may have suffered as a result of the concealment, but instead arose solely from the misrepresentation by the defendant officers to the plaintiff creditor about the status of the debtor's assets." *Laborers Local*, 191 F.3d at 238. As in this case, the plaintiff in *Rhodes* lost value, at the time of the transaction, due to a fraudulent concealment. As in this case, at the time of the transaction, there was *no loss* to the corporation at the time of the challenged transaction — the only loss was to the plaintiff —   and therefore it cannot be said that the plaintiff was suing derivatively for a loss suffered by the corporation.

In sum, the case law establishes that the Trustee has standing to pursue the remaining claim for fraudulent inducement as to FX deposits made after the date of the LBO.

### C. The Standing R and R

Grant Thornton argues that the reasoning and recommendations in the Standing R and R mandate a dismissal on standing grounds in this action. As discussed above, the Standing R and R concluded that SPhinX/PlusFunds did not have standing for claims for injury due to the Refco fraud. With regard to the Refco fraud, the plaintiffs in *Krys v. Sugrue* claimed that third parties were responsible for propping up Refco, thus allowing Refco to continue to siphon SPhinX assets that were improperly placed at RCM.

One critical difference in this case is that the amended complaint in *Krys v. Sugrue* never specifically alleged fraudulent inducement, i.e.,  that a deposit was made at Refco at a time when Refco was hopelessly insolvent. Indeed concerns about Refco's insolvency would not have been as critical to SPhinX because, according to the *Krys v. Sugrue* complaint, the innocent insiders thought that the funds were segregated and thus protected from any Refco insolvency. That is why SMFF had standing to challenge the allegedly unauthorized transfers from Refco LLC to RCM — it was at the point of unauthorized transfer that specific representations made to SphinX were violated. In contrast, RCM's bankruptcy *after* the transfers affected all of RCM's creditors in the same way and the damages at that point were caused by the fact that RCM had been looted.

The Trustee's claim in this case is akin to the claim for damages to SMFF for which the defendants (including Grant Thornton) conceded the JOL  in *Krys v. Sugrue*  had standing. SMFF had standing to sue for misrepresentations directed to SMFF as to the value of a transaction (the value critically dependent on the right to segregation), which valuation was diminished as a result

of a wrongful transfer specifically directed at SMFF assets — and not dependent on harm to the corporation.   Indeed the unauthorized transfers from Refco LLC *benefitted* rather than harmed RCM.  The same is true with respect to the deposits made by FX Customers after the LBO — the Customers did not receive value at the time of the wrong, and the wrong benefitted rather than harmed the corporation.

Thus, there is nothing in the Standing R and R that mandates a finding of lack of standing as to the fraudulent inducement claim that remains in this action. Certainly there is nothing in the Standing R and R that was intended to reject Judge Lynch's finding that the FX Customers "clearly have standing" in this case.

In sum, the Standing R and R does not mandate dismissal of the Trustee's remaining claim in this action. Indeed the defendants' concession in *Krys v. Sugrue* that SMFF had standing to pursue claims for wrongful transfers to RCM *supports* the finding of standing in this action.

**IV. Conclusion**

***The motion to dismiss the remaining claim against Grant Thornton for lack of standing should be denied.***

Daniel J. Capra
Special Master

Dated: February 14, 2011
New York, New York

10